UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

| | | |
|---|---|---|
| ZEFERINA MONTELONGO, | ) | FILED: MARCH 21, 2008 |
| | ) | 08CV1687         TC |
| Plaintiff, | ) | JUDGE ANDERSEN |
| | ) | MAGISTRATE JUDGE SCHENKIER |
| v. | ) | Case No. |
| | ) | |
| WINTERSET DENTAL CARE, P.C., | ) | JURY TRIAL DEMANDED ON |
| *et. al,* | ) | ALL COUNTS |
| Defendants. | ) | |

## **DEFENDANT MERCK & CO., INC.'S NOTICE OF REMOVAL**

PLEASE TAKE NOTICE that pursuant to 28 U.S.C. §§ 1441 and 1446 Defendant Merck

& Co., Inc. ("Merck") hereby gives notice that the above-captioned action, Civil Action 2007 L

7858 E, pending in the Circuit Court of Cook County, Illinois, is hereby removed to the United

States District Court for the Northern District of Illinois, Eastern Division.  In support of

removal, Merck respectfully states to the Court the following:

## **THE FOSAMAX® MULTIDISTRICT LITIGATION**

1.      This action involves allegations regarding the prescription medication

FOSAMAX®.  On August 16, 2006, the Judicial Panel on Multidistrict Litigation ("MDL

Panel") issued an order transferring 18 FOSAMAX® products liability cases to the United States

District Court for the Southern District of New York (Keenan, J.) for coordinated pretrial

proceedings under 28 U.S.C. § 1407.  *In re Fosamax Products Liability Litigation,* MDL No.

1789.  Processes for quickly sending additional related cases to Judge Keenan have been set in

place.  As of this date, the MDL Panel has issued 48 Conditional Transfer Orders requiring the

transfer of an additional 127 actions to MDL 1789, where a total of 389 cases are now pending,

including both the transferred cases and cases filed directly in the transferee court.  Merck will

seek the transfer of this action to MDL-1789, and will in the next week provide the MDL Panel

notice of this action pursuant to the "tag-along" procedure contained in the MDL Rules.

## **GROUNDS FOR REMOVAL**

2.      On or about July 2007, Plaintiff commenced this action entitled *Montelongo  v.*

*Winterset Dental Care, P.C. et. al,* Civil Action No. 2007 L 7858 E in the Circuit Court for Cook

County, Illinois.  Merck was not named as a defendant in the original complaint.  On February

14, 2008, Plaintiff filed a Second Amended Complaint, naming Merck as a defendant for the first

time.  Merck was served with the Complaint on February 26, 2008.

3.      For the reasons set forth in more detail below, this Court should assume

jurisdiction over this action pursuant to 28 U.S.C. § 1332 because this matter is a civil action in

which the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest, and

is between citizens of different states, when the improperly joined, misjoined, and fraudulently

joined parties are excluded.

4.      Upon information and belief, Plaintiff was at the time of the filing of the

Complaint and is now a citizen of Illinois.  (See Complaint, Count IV  ¶¶ 1-3.)

5.      Merck is now, and was at the time Plaintiff commenced this action, a corporation

organized under the laws of the State of New Jersey with its principal place of business in New

Jersey and, therefore, is a citizen of New Jersey for purposes of determining diversity.  28 U.S.C.

§ 1332(c)(1).  (Complaint, Count IV ¶ 2.)  In addition to Merck, the Plaintiff has improperly

sought to join as defendants Winterset Dental Care, P.C. and two of its employees, Dentists Anil

K. Agarwal and Gary F. Adler (collectively "the Dental Defendants").  The Dental Defendants

are alleged to be residents of the State of Illinois.  (Complaint ¶¶ 3-6.)

6.      The Plaintiff's allegations against Merck in this case repeat the same form allegations that have been copied by other plaintiffs in the Fosamax MDL proceedings.  As more fully set forth below, this case is properly removed to this Court because Plaintiff has misjoined and/or fraudulently joined the Dental Defendants as parties to this case, in an effort to defeat this Court's proper jurisdiction.  There is complete diversity of citizenship between the proper parties and no defendant properly joined is a citizen of Illinois.

## I.    MERCK HAS SATISFIED THE PROCEDURAL REQUIREMENTS FOR REMOVAL.

7.      Merck was served with the Second Amended Complaint on February 26, 2007. This Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b), within 30 days of service of the Complaint upon Merck.

8.      Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders received by Merck, which include the Second Amended Complaint and a Summons, are attached hereto at Exhibit A.

9.      A copy of the original Complaint, to which Merck is not a defendant, is attached hereto at Exhibit B.  A copy of the Amended Complaint, to which Merck is also not a defendant, is attached hereto at Exhibit C.  As discussed more fully below, the claims against Merck bear no relationship to the previously filed claims against the Dental Defendants, and Merck is filing, concurrently with this Notice, a Motion to sever the claims against Merck and to stay those claims pending their transfer to the Fosamax MDL Proceedings.

10.     Venue is proper in this Court because it is "the district and division embracing the place where such action is pending."  *See* 28 U.S.C. § 1441(a).  Therefore, this action is properly removed to the Northern District of Illinois, Eastern Division pursuant to 28 U.S.C. § 83(a).

11.     All defendants who have been properly joined to these claims against Merck join in this removal.[1]

12.     No previous application has been made for the relief requested herein.

13.     Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon counsel for Plaintiff and a copy is being filed with the Clerk of the Circuit Court for Cook County, Illinois.

## II.     REMOVAL IS PROPER BECAUSE THIS COURT HAS SUBJECT MATTER JURISDICTION PURSUANT TO 28 U.S.C. §§ 1332 AND 1441.

14.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because this is a civil action in which the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest, and is between citizens of different states.

### A.     The amount in controversy requirement is satisfied.

15.     It is apparent from the face of the Complaint that Plaintiff seeks recovery of an amount in excess of $75,000, exclusive of costs and interest.

16.     Plaintiff alleges that, as a result of ingesting FOSAMAX®, she "suffered severe and permanent jaw injuries" including osteonecrosis of the jaw, and that "her lower jaw bone became infected and abscessed so as to cause the bone to decay and slough away requiring the placement of a metal plate in her jaw."  (Complaint, Count IV ¶ 9.)

17.     Plaintiff claims to have suffered injuries that include "severe and unnecessary anguish," distress and pain," and "her jaw became useless for eating and speaking."  (Complaint, Count IV ¶ 9.)   Plaintiff alleges that she underwent "great pain and suffering," "was caused to

---

[1]    It is well-settled that a co-defendant who is fraudulently joined need not consent to or join in removal.  *See Shaw v. Dow Brands, Inc.*, 994 F.2d 364, 369 (7th Cir. 1993); *Siderits v. State of Indiana*, 830 F. Supp. 1156, 1160 (N.D. Ind. 1993); *Hess v. Great Atlantic & Pacific Tea Co., Inc.*, 520 F. Supp. 373, 375-76 (N.D. Ill. 1981).

spend large sums of money as and for medical, dental, and hospital care and attention," will have

such expenses in the future, and became disfigured and disabled.  *Id.*  Plaintiff seeks

compensatory damages from Merck "in an amount in excess of $50,000."  (Complaint, Counts

IV and V.)

18.    While there is not a record of prior cases that specifically involve osteonecrosis of

the jaw – a fact which may be attributable to the fact that osteonecrosis of the jaw is a rare

disorder and cases alleging liability against pharmaceutical manufacturers for allegedly causing

the same had, prior to very recently, been non-existent – there are:

- numerous reported cases in which jaw or similar facial injury led to jury or court

  awards far in excess of $75,000.  *See, e.g., Howie v. Walsh*, 609 S.E.2d 249 (N.C.

  App. 2005) (addressing jury award of $300,000 against dentist who fractured

  patient's jaw during procedure); *Becker v. Woods*, 806 N.Y.S.2d 704 (N.Y. App. Div.

  2005) (affirming jury award of $840,000 in damages where dental patient suffered

  from permanent paresthesia); *Preston v. Dupont*, 35 P.3d 433 (Colo. 2001)

  (addressing jury award of more than $250,000 for damage to alveolar nerve in jaw);

  *Bowers v. Liuzza*, 769 So.2d 88 (La. App.), *writ. denied*, 776 So.2d 468 (La. 2000)

  (finding that minimum adequate damage award for nerve damage in jaw was an

  amount that exceeded $175,000); *Becker v. Halliday*, 554 N.W. 2d 67 (Mich. App.

  1996) (jury award of $200,000 in damages, where syringe lodged in upper jaw);

  *Herpin v. Witherspoon*, 664 So.2d 515 (La. App. 1995) (plaintiff entitled to receive

  more than $75,000 as a result of temporomandibular joint (TMJ) dysfunction);

  *Washburn v. Holbrook*, 806 P.2d 702 (Or. App. 1991) (affirming jury finding of

  $400,000 in damages as a result of damage to jaw during root canal); and

- numerous prior cases that reveal that potential awards based on osteonecrosis or avascular necrosis of the hip, knee, or other joint, exceed the $75,000 jurisdictional amount. *See, e.g., Barbee v. United States*, 2005 W.L. 3336504, at *1-2 (W.D. Wis. 2006) (finding that plaintiff suffered nearly $700,000 in damages for hip injuries that included avascular necrosis); *Shaver v. United States*, 319 F.Supp. 2d 649 (M.D.N.C. 2004) (awarding more than $75,000 in damages for osteonecrosis in knee caused by automobile accident); *Piselli v. 75th Street Medical*, 808 A.2d 508 (Md. 2002) (addressing jury award of $410,000 for medical malpractice that led to avascular necrosis of the hip); *Collier v. Cawthon*, 570 S.E.2d 53 (Ga. App. 2002) (affirming jury award of $170,000 for avascular necrosis of the hip).

19.    The Plaintiff's claims of "significant injury" as a result of osteonecrosis, and the compensatory and punitive damages that she seeks, thus far exceed this Court's minimum $75,000 jurisdictional limit.

**B.    There is complete diversity between the parties.**

20.    There is complete diversity between the Plaintiff and Merck, the only properly joined Defendant.

21.    Upon information and belief, Plaintiff was at the time of the filing of the Complaint and is now a citizen of Illinois.  (See Complaint, Count IV  ¶¶ 1-3.)

22.    Merck is now, and was at the time Plaintiff commenced this action, a corporation organized under the laws of the State of New Jersey with its principal place of business in New Jersey and, therefore, is a citizen of New Jersey for purposes of determining diversity.  28 U.S.C. § 1332(c)(1).  (Complaint, Count IV ¶ 2.)

23.    For the reasons set forth in § II.C, below, the remaining named defendants – the Dental Defendants – are fraudulently or improperly joined. Therefore, their citizenship must be ignored for the purposes of determining the propriety of removal.

**C.    The Dental Defendants have been fraudulently joined or are improperly joined and, therefore, their citizenship can be ignored for the purposes of removal.**

24.    The Dental Defendants are not proper parties to this case, but have been fraudulently joined and misjoined to defeat diversity. Accordingly, her citizenship should be ignored for purposes of determining diversity. *See, e.g., Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921); *Schwartz v. State Farm Mutual Automobile Ins. Co.*, 174 F.3d 875, 878 (7th Cir. 1999); *Hoosier Energy Rural Electric Co-op., Inc. v. Amoco Tax Leasing IV Corp.*, 34 F.3d 1310, 1315 (7th Cir. 1994).

25.    In the Seventh Circuit, "[d]iversity jurisdiction cannot be destroyed by joinder of nondiverse parties if such joinder is fraudulent." *Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir. 1993). In determining whether a defendant was fraudulently joined, the Seventh Circuit requires not just an analysis of whether plaintiff stated a "claim," but also whether plaintiff has a "reasonable possibility" of recovery on that claim. *See Schwartz*, 174 F.3d at 878 (finding removal proper because of fraudulent joinder, notwithstanding the fact that plaintiff had a "claim" under the concept of notice pleading).

26.    Parties are improperly joined or misjoined where there is no common transaction or occurrence connecting the claims against those parties. *See* Fed. R. Civ. Proc. 20.

27.    The Plaintiff claims that she received dental care from the Dental Defendants, and that she had a number of teeth extracted by the Dental Defendants. (Complaint, Count I ¶¶ 3-4.) According to the Plaintiff, the Dental Defendants extracted her teeth in a negligent and violent manner, causing trauma to her mouth, failed to examine her to determine her "hyper

susceptibility" to a post extraction infection, failed to thoroughly examine her after the extraction, failed to take the proper post-extraction steps to prevent infection, failed to recognize that she had a syndrome wholly unrelated to Fosamax (Sjoren's syndrome) that made her susceptible to infection, failed to recognize and treat the infection, failed to administer antibiotics, and were otherwise negligent in providing dental care. (Complaint, Count I ¶ 6). She alleges that this negligence by the Dental Defendants caused the damages of which she complains. (Complaint, Count I ¶ 7-8.)

28.    The fraudulent and improper joinder of the Dental Defendants is obvious under well-settled state law because (i) the Plaintiff's claims for dental malpractice are not based upon the same transaction or occurrence as Plaintiff's use of Fosamax and (ii) to the extent that Plaintiff claims that the Dental Defendants should have been aware of the alleged danger of Fosamax, such claims are in direct conflict with the Plaintiff's assertion that Merck failed to provide warnings as to those same alleged dangers.

29.    To the extent that the claims against the Dental Defendants are based on alleged negligence in performing oral surgery, or preventing, diagnosing, or treating infection, such claims have nothing in common with the products liability claims against Merck, and fail to meet the requirements for proper joinder under Federal Rule of Civil Procedure 20. *In re Rezulin Prods. Liab. Litig.*, Case No. 00 Civ. 2483 (LAK), 2003 W.L. 21276425 (S.D.N.Y. June 2., 2003), the court found that malpractice claims against the plaintiff's former physicians were not properly joined to a products liability complaint, where the plaintiff alleged that the physicians had failed to properly diagnose and monitor the plaintiff's medical condition, where that condition allegedly arose from the use of a drug. The court held that the malpractice claim against the doctors did not arise from the same transaction or occurrence as the claims against the

drug's manufacturer.  The Plaintiff's claims against the Dental Defendants suffer from the same

defect.

30.    The Plaintiff cannot assert claims against the Dental Defendants based upon an

allegation that they knew or should have known of some presumed link between Fosamax and

osteonecrosis, where the Plaintiff *also* contends that Merck withheld that information and failed

to provide warnings.  *See In re Baycol Prods. Litig.*, Case No. 03-3150, 2003 WL 23305516, at

*2 (D. Minn, Dec. 15, 2003) (finding doctor fraudulently joined because, where plaintiff claimed

that manufacturer failed to properly represent the risks of a drug, the plaintiff "failed to

demonstrate that her physician knew or should have known of Baycol's risks"); *Spier v. Bayer*

*Corp.*, No. 02-4835, 2003 WL 21223842 (D. Minn. May 27, 2003) (same); Opinion and Order

filed October 3, 2003, in *Omobude v. Merck & Co., Inc.*, Civil Action No. 3:03CV528LN (S.D.

Miss.), at 3 (finding doctors fraudulently joined to products liability complaint where Plaintiff

claimed that Merck concealed information relating to drug, and also claimed that the doctors

failed to act upon that same information) (Exhibit D hereto).[2]  Plaintiff does not specify that any

of its medical malpractice claims against the Dental Defendants relate to Fosamax.  Even if the

Plaintiff had done so, however, those claims cannot properly be interpreted as an assertion that

the dentists should have adopted some different course of treatment based upon the same

knowledge that Plaintiff asserts that Merck concealed.

---

[2]    *See also In re Rezulin Prods. Liab. Litig.*, Case No. 00 Civ. 2483 (LAK), 2003 WL 21276425 (S.D.N.Y. June 2., 2003) (affirming magistrate judge's conclusion that plaintiffs had no likelihood of success on claims that physicians had failed to warn of the risks of a drug, where same claims were asserted against manufacturer of drug); Opinion and Order filed Nov. 27, 2003, in *In re Phenylpropanolamine (PPA) Prods. Liab. Litig*, Case No. C02-423R (W.D. Wash.) (Exhibit E hereto) (finding pharmacy fraudulently joined and concluding that allegations that manufacturer concealed information directly conflicted with claim that pharmacy should have acted on that information).

31.    Hence, there is complete diversity between the plaintiffs and defendants, and this court has subject matter jurisdiction under 28 U.S.C. § 1332.

32.    In addition, no defendant properly joined and served to the claims against Merck is a citizen of the state in which this action was brought.  Under the clear language of 28 U.S.C. § 1441(b), this action is properly removed to this Court by Merck.

WHEREFORE, Defendant Merck respectfully removes this action from the Circuit Court for Cook County, Illinois to this Court pursuant to 28 U.S.C. § 1441.

Dated:  March 21, 2008

Respectfully submitted,

BRYAN CAVE LLP

By: _____s/ Dmitry Shifrin_____
        Dmitry Shifrin, #6279415
        161 North Clark Street, Suite 4300
        Chicago, IL  60601-3315
        Telephone:  (312) 602-5000
        Facsimile:  (312) 602-5050

        and

        Stephen G. Strauss, #6278807
        Bryan Cave LLP
        211 North Broadway, Suite 3600
        St. Louis, MO  63102-2750
        Telephone:  (314) 259-2000
        Facsimile:   (314) 259-2020

        *Attorneys for Merck & Co., Inc.*

2826492                                      10

## <u>CERTIFICATE</u>

I hereby certify that on this 21st day of March, 2008, a copy of the foregoing was served by first class mail, postage prepaid, on:


Katherine A. Cardenas
Lucas and Cardenas, P.C.
77 West Washington Street, Suite 900
Chicago, IL 60602

Attorneys for Plaintiff


John Green
Green Law Offices
200 West Jackson
Suite 2060
Chicago, IL  60606
(312) 676-5980


Drew Balac
Weldon-Linne & Vogt
105 W. Madison, Suite 1400
Chicago, IL  60602
(312) 236-5151


Attorneys for Dental Defendants


_____ s/ Dmitry Shifrin_____

| 2120 - Served | 2121 - Served | |
|---|---|---|
| 2220 - Not Served | 2221 - Not Served | |
| 2320 - Served By Mail | 2321 - Served By Mail | |
| 2420 - Served By Publication | 2421 - Served By Publication | |
| SUMMONS | ALIAS - SUMMONS | CCG N001-10M-1-07-05 ( ) |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, _____LAW_____ DIVISION

(Name all parties)

ZEFERINA MONTELONG, Plaintiff

v.

WINTERSET DENTAL CARE, P.C., ANIL K. AGARWAL, D.D.S., ind. & as agent & servant of WINTERSET DENAL CARE, P.C., GARY F. ALDER, D.D.S., ind. & as agent & servant of WINTERSET DENTAL CARE, P.C., and MERCK & CO., INC., a foreign corporation, Defendants.

**SUMMONS**

No. 2007 L 7858 E

MERCK & CO., INC., a foreign corp.
c/o CT Corporation System
208 South LaSalle Street, Suite 814
Chicago, Illinois 60604

**To each Defendant:**

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room __801_____, Chicago, Illinois 60602

☐ **District 2 - Skokie**
5600 Old Orchard Rd.
Skokie, IL 60077

☐ **District 3 - Rolling Meadows**
2121 Euclid
Rolling Meadows, IL 60008

☐ **District 4 - Maywood**
1500 Maybrook Ave.
Maywood, IL 60153

☐ **District 5 - Bridgeview**
10220 S. 76th Ave.
Bridgeview, IL 60455

☐ **District 6 - Markham**
16501 S. Kedzie Pkwy.
Markham, IL 60426

☐ **Child Support**
28 North Clark St., Room 200
Chicago, Illinois 60602

**You must file within 30 days after service of this Summons, not counting the day of service.**
**IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.**

**To the officer:**

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

Atty. No.: 34554

Name: Katherine A. Cardenas/Lucas and Cardenas, P.C.

Atty. for: Plaintiff

Address: 77 West Washington Street, Suite 900

City/State/Zip: Chicago, Illinois 60602

Telephone: 312/781-0082

Service by Facsimile Transmission will be accepted at:

WITNESS,_____, _____

_____
**Clerk of Court**

Date of service: _____, _____
(To be inserted by officer on copy left with defendant or other person)

312      332-4718
(Area Code)   (Facsimile Telephone Number)

**Exhibit A**

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Attorney No. 34554

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

| | | |
|---|---|---|
| ZEFERINA MONTELONGO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No.    2007 L 7858 E |
| | ) | |
| WINTERSET DENTAL CARE, P.C., | ) | |
| ANIL K. AGARWAL, D.D.S., individually and | ) | |
| as agent and servant of WINTERSET | ) | |
| DENTAL CARE, P.C., GARY F. ALDER, D.D.S. | ) | |
| individually and as agent and servant of | ) | |
| WINTERSET DENTAL CARE, P.C., and | ) | |
| MERCK & CO., INC., a foreign corporation, | ) | |
| | ) | |
| Defendants. | ) | |

## SECOND AMENDED COMPLAINT AT LAW
### (Dental Malpractice and Product Liability)

Now comes the plaintiff, Zeferina Montelongo, by her attorneys, Law Offices of Lucas

and Cárdenas, P.C., and as and for her cause of action against the defendant, Winterset Dental

Care, P.C., Anil K. Agarwal, D.D.S., individually and as agent and servant of Winterset Dental

Care, P.C. Gary F. Alder, D.D.S., individually and as agent and servant of Winterset Dental Care,

P.C., and Merck & Co., Inc., a foreign corporation, states the following:

### Count I–Malpractice Winterset Dental Care, P.C.

1.    On July 28, 2005 and for a long time prior and subsequent thereto the

defendant, Winterset Dental Care, P.C., was and is now an Illinois corporation practicing

dentistry in the Chicago Metropolitan Area.

- 2 -

2.      On the date aforesaid and prior and subsequent thereto, the defendant,
Winterset Dental Care, P.C., by and through its agents and servants, held itself out to the
public as "a different kind of dentistry for all different kinds of patients" including but not
limited to restorative care, prosthodontics, periodontics, endodontics, preventive care, sleep
dentistry and cosmetic dentistry.

3.      On the date aforesaid and prior and subsequent thereto, the defendant,
Winterset Dental Care, P.C., by and through its agents and servants, performed general dental
care for the plaintiff, Zeferina Montelongo.

4.      On the date aforesaid the defendant, Winterset Dental Care, P.C., by and
through its agents and servants, extracted plaintiff's teeth numbered 23, 24, 25 and 26 and,
shortly thereafter, measured, fit her, and provided her with a replacement dental plate and
follow-up dental care.

5.      In the process of extracting the aforesaid teeth and providing the replacement
dental plate and follow-up care, it was duty of the defendant, Winterset Dental Care, P.C., by
and through its agents and servants, to do so in a reasonably careful and safe manner.

6.      In disregard to the duty described in the foregoing paragraph, the defendant,
Winterset Dental Care, P.C., by and through its agents and servants, was guilty of one or more
of the following professional careless and negligent acts and/or omissions:

        a.      Extracted the plaintiff's teeth in a negligent and violent manner,
causing trauma to the surrounding tissues;

        b.      Failed to make a careful and thorough examination of plaintiff's
teeth and surrounding tissues and bone before the extractions to determine the
plaintiff's hyper susceptibility to post extraction infection;

- 3 -

c.      Failed to make careful and thorough examinations of plaintiff's lower jaw post-extraction to determine the cause of plaintiff's pain;

d.      Failed to take proper and indicated actions to prevent post-extraction infections;

e.      Failed to make the proper impressions and proper and timely adjustments to insure that plaintiff's replacement partial plate fit the plaintiff's oral structures;

f.      Failed to perform timely and appropriate post-extraction tests to determine the cause of plaintiff's pain;

g.      Failed to properly and timely diagnose the plaintiff's post-extraction infection;

h.      Failed to recognize and appreciate the plaintiff's pre-existing Sjören's syndrome as a presentation that made her more susceptible to post-extraction infection;

i.      Failed to refer her timely to a specialist when he was unable to determine the cause of her intractable post-extraction pain and discomfort;

j.      Failed to timely take the appropriate films of the plaintiff's mouth and jaw;

k.      Failed to administer pre-extraction prophylactic antibiotic medication;

l.      Failed to timely administer antibiotic medication post-extraction;

m.      Otherwise carelessly and negligent extracted plaintiff's teeth, provide the replacement partial plate, and provide post-extraction dental care.

7.      As a direct and proximate result of the one or more of the foregoing careless and negligent acts and/or omissions, plaintiff sustained severe and permanent injuries, in that her lower jaw bone became infected and abscessed so as to cause the bone to decay and slough away requiring the placement of a metal plate in her jaw. Because of the injuries, plaintiff suffered severe and unnecessary anguish, distress and pain and her jaw became useless for

- 4 -

eating and speaking, and remained so for a long time. To this date it is difficult for her to eat

or speak, all to plaintiff's damage. She was caused to endure great pain and suffering and in

the future will be caused to endure such pain and suffering; she was caused to have an

increased risk of injury; she was caused to expend large sums of money as and for medical,

dental and hospital care and attention in an effort to cure herself of these injuries and in the

future will be caused to make such expenditures; she was caused to become disfigured and

disabled; she was caused to absent herself from her regular employment, thereby losing large

sums of money in the form of lost wages and in the future will be caused to sustain such

losses.

8.    Plaintiff was not aware of her infection, its causes and its affect on her mouth

and jaw until she sought the help of another dentist on April 18, 2006 who, upon examination

and proper tests, diagnosed an abscess and infection and referred her to specialists for follow-

up care and treatment.

9.    Plaintiff's attorney, Katherine A. Cárdenas, attaches hereto her affidavit that she

has obtained a consultation of a health care professional as required by 735 ILCS 5/2-

622(a)(1).  A copy of the affidavit and the corresponding dental report is attached hereto as

"Exhibit A."

WHEREFORE, plaintiff, Zeferina Montelongo, prays for judgment against the defendant,

Winterset Dental Care, P.C., in an amount in excess of $50,000.00 and her costs of suit.

- 5 -

## Count II–Malpractice vs. Agarwal, D.D.S.,
## Individually and as Agent and Servant
## of Winterset Dental Care, P.C.

1.      On July 28, 2005 and for a long time prior and subsequent thereto the defendant, Anil K. Agarwal, D.D.S., was and is now an Illinois licensed dentist practicing dentistry in the Chicago Metropolitan Area.

2.      On the date aforesaid and prior and subsequent thereto, the defendant, Anil K. Agarwal, D.D.S., held himself out to the public as a dentist offering "a different kind of dentistry for all different kinds of patients" including but not limited to restorative care, prosthodontics, periodontics, endodontics, preventive care, sleep dentistry and cosmetic dentistry.

3.      On the date aforesaid and prior and subsequent thereto, the defendant, Anil K. Agarwal, D.D.S., individually and as agent and servant of Winterset Dental Care, P.C., performed general dental care for the plaintiff, Zeferina Montelongo.

4.      On the date aforesaid the defendant, Anil K. Agarwal, D.D.S., individually and as agent and servant of Winterset Dental Care, P.C., extracted plaintiff's teeth numbered 23, 24, 25 and 26 and, shortly thereafter, measured, fit her, and provided her with a replacement dental plate and follow-up dental care.

5.      In the process of extracting the aforesaid teeth and providing the replacement dental plate and follow-up care, it was duty of the defendant, Anil K. Agarwal, D.D.S., individually and as agent and servant of Winterset Dental Care, P.C., to do so in a reasonably careful and safe manner.

- 6 -

6.   In disregard to the duty described in the foregoing paragraph, the defendant,

Anil K. Agarwal, D.D.S., individually and as agent and servant of Winterset Dental Care, P.C.,

was guilty of one or more of the following professional careless and negligent acts and/or

omissions:

a.   Extracted the plaintiff's teeth in a negligent and violent manner, causing trauma to the surrounding tissues;

b.   Failed to make a careful and thorough examination of plaintiff's teeth and surrounding tissues and bone before the extractions to determine the plaintiff's hyper susceptibility to post extraction infection;

c.   Failed to make careful and thorough examinations of plaintiff's lower jaw post-extraction to determine the cause of plaintiff's pain;

d.   Failed to take proper and indicated actions to prevent post-extraction infections;

e.   Failed to make the proper impressions and proper and timely adjustments to insure that plaintiff's replacement partial plate fit the plaintiff's oral structures;

f.   Failed to perform timely and appropriate post-extraction tests to determine the cause of plaintiff's pain;

g.   Failed to properly and timely diagnose the plaintiff's post-extraction infection;

h.   Failed to recognize and appreciate the plaintiff's pre-existing Sjören's syndrome as a presentation that made her more susceptible to post-extraction infection;

i.   Failed to refer her timely to a specialist when he was unable to determine the cause of her intractable post-extraction pain and discomfort;

j.   Failed to timely take the appropriate films of the plaintiff's mouth and jaw;

k.   Failed to administer pre-extraction prophylactic antibiotic medication;

- 7 -

l.    Failed to timely administer antibiotic medication post-extraction;

m.    Otherwise carelessly and negligent extracted plaintiff's teeth, provide the replacement partial plate, and provide post-extraction dental care.

7.    As a direct and proximate result of the one or more of the foregoing careless and negligent acts and/or omissions, plaintiff sustained severe and permanent injuries, in that her lower jaw bone became infected and abscessed so as to cause the bone to decay and slough away requiring the placement of a metal plate in her jaw. Because of the injuries, plaintiff suffered severe and unnecessary anguish, distress and pain and her jaw became useless for eating and speaking, and remained so for a long time. To this day it is difficult for her to eat or speak, all to plaintiff's damage. She was caused to endure great pain and suffering and in the future will be caused to endure such pain and suffering; she was caused to have an increased risk of injury; she was caused to expend large sums of money as and for medical, dental and hospital care and attention in an effort to cure herself of these injuries and in the future will be caused to make such expenditures; she was caused to become disfigured and disabled; she was caused to absent herself from her regular employment, thereby losing large sums of money in the form of lost wages and in the future will be caused to sustain such losses.

8.    Plaintiff was not aware of her infection, its causes and its affect on her mouth and jaw until she sought the help of another dentist on April 18, 2006 who, upon examination and proper tests, diagnosed an abscess and infection and referred her to specialists for follow-up care and treatment.

9.    Plaintiff's attorney, Katherine A. Cárdenas, attaches hereto her affidavit that she has obtained a consultation of a health care professional as required by 735 ILCS 5/2-

- 8 -

622(a)(1). A copy of the affidavit and the corresponding dental report is attached hereto as "Exhibit B."

WHEREFORE, plaintiff, Zeferina Montelongo, prays for judgment against the defendant, Anil K. Agarwal, D.D.S., individually and as agent and servant of Winterset Dental Care, P.C., in an amount in excess of $50,000.00 and her costs of suit.

### Count III—Malpractice vs. Alder, D.D.S., Individually and as Agent and Servant of Winterset Dental Care, P.C.

1.    On July 28, 2005 and for a long time prior and subsequent thereto the defendant, Gary F. Alder, D.D.S., was and is now an Illinois licensed dentist practicing general dentistry in the Chicago Metropolitan Area.

2.    On the date aforesaid and prior and subsequent thereto, the defendant, Gary F. Alder, D.D.S., individually and as agent and servant of Winterset Dental Care, P.C., performed general dental care for the plaintiff, Zeferina Montelongo.

3.    On the date aforesaid the defendant, Gary F. Alder, D.D.S., individually and as agent and servant of Winterset Dental Care, P.C., extracted plaintiff's teeth numbered 23, 24, 25 and 26 and, shortly thereafter, measured, fit her, and provided her with a replacement dental plate and follow-up dental care.

4.    In the process of extracting the aforesaid teeth and providing the replacement dental plate and follow-up care, it was duty of the defendant, Gary F. Alder, D.D.S., individually and as agent and servant of Winterset Dental Care, P.C., to do so in a reasonably careful and safe manner.

- 9 -

5.    In disregard to the duty described in the foregoing paragraph, the defendant,

Gary F. Alder, D.D.S., individually and as agent and servant of Winterset Dental Care, P.C., was

guilty of one or more of the following professional careless and negligent acts and/or

omissions:

a.    Extracted the plaintiff's teeth in a negligent and violent manner, causing trauma to the surrounding tissues;

b.    Failed to make a careful and thorough examination of plaintiff's teeth and surrounding tissues and bone before the extractions to determine the plaintiff's hyper susceptibility to post extraction infection;

c.    Failed to make careful and thorough examinations of plaintiff's lower jaw post-extraction to determine the cause of plaintiff's pain;

d.    Failed to take proper and indicated actions to prevent post-extraction infections;

e.    Failed to make the proper impressions and proper and timely adjustments to insure that plaintiff's replacement partial plate fit the plaintiff's oral structures;

f.    Failed to perform timely and appropriate post-extraction tests to determine the cause of plaintiff's pain;

g.    Failed to properly and timely diagnose the plaintiff's post-extraction infection;

h.    Failed to recognize and appreciate the plaintiff's pre-existing Sjören's syndrome as a presentation that made her more susceptible to post-extraction infection;

i.    Failed to refer her timely to a specialist when he was unable to determine the cause of her intractable post-extraction pain and discomfort;

j.    Failed to timely take the appropriate films of the plaintiff's mouth and jaw;

k.    Failed to administer pre-extraction prophylactic antibiotic medication;

- 10 -

l.     Failed to timely administer antibiotic medication post-extraction;

m.     Otherwise carelessly and negligent extracted plaintiff's teeth,
provide the replacement partial plate, and provide post-extraction dental care.

6.     As a direct and proximate result of the one or more of the foregoing careless and
negligent acts and/or omissions, plaintiff sustained severe and permanent injuries, in that her
lower jaw bone became infected and abscessed so as to cause the bone to decay and slough
away requiring the placement of a metal plate in her jaw. Because of the injuries, plaintiff
suffered severe and unnecessary anguish, distress and pain and her jaw became useless for
eating and speaking, and remained so for a long time. To this day it is difficult for her to eat or
speak, all to plaintiff's damage. She was caused to endure great pain and suffering and in the
future will be caused to endure such pain and suffering; she was caused to have an increased
risk of injury; she was caused to expend large sums of money as and for medical, dental and
hospital care and attention in an effort to cure herself of these injuries and in the future will be
caused to make such expenditures; she was caused to become disfigured and disabled; she
was caused to absent herself from her regular employment, thereby losing large sums of
money in the form of lost wages and in the future will be caused to sustain such losses.

7.     Plaintiff was not aware of her infection, its causes and its affect on her mouth
and jaw until she sought the help of another dentist on April 18, 2006 who, upon examination
and proper tests, diagnosed an abscess and infection and referred her to specialists for follow-
up care and treatment.

8.     Plaintiff's attorney, Katherine A. Cárdenas, attaches hereto her affidavit that she
has obtained a consultation of a health care professional as required by 735 ILCS 5/2-

- 11 -

622(a)(1). A copy of the affidavit and the corresponding dental report is attached hereto as "Exhibit C."

WHEREFORE, plaintiff, Zeferina Montelongo, prays for judgment against the defendant, Gary F. Alder, D.D.S., individually and as agent and servant of Winterset Dental Care, P.C., in an amount in excess of $50,000.00 and her costs of suit.

### Count IV—Product Liability (Negligence) vs. Merck & Co., Inc.

1.  On or about July 28, 2005, and prior and subsequent thereto, defendant Merck & Co., Inc. (Merck) was engaged in the design, manufacture, testing, marketing, distribution and sale of prescription drugs including FOSAMAX.

2.  Merck is incorporated in the State of New Jersey with its principal place of business in that state.

3.  Merck is authorized to do business in the State of Illinois.

4.  On the date aforesaid and prior and subsequent thereto, the defendant, Merck, by and through its agents and servants, held FOSAMAX out to the public as an acceptable treatment for osteoporosis.

5.  Sometime in 2005, the plaintiff was prescribed FOSAMAX for the treatment of her osteoporosis.

6.  It was then and there the duty of Merck to provide any and all patients on FOSAMAX with a safe and effective treatment for osteoporosis.

7.  It was then and there the duty of Merck to provide any and all patients on FOSAMAX with a true and correct list of possible side effects and complications.

- 12 -

8.    In disregard to the duties described in the foregoing paragraphs, the defendant,

Merck, by and through its agents and servants, was guilty of one or more of the following

negligent acts and/or omissions:

a.    Failed to warn the plaintiff that FOSAMAX was likely to inhibit vascular supply to her mandibles (lower jaws) and maxillae (upper jaws);

b.    Knew or should have known that FOSAMAX would create a compromised vascular supply to the jaw bones and any injury thereto could turn into a non-healing wound causing necrosis (bone death) and osteomyelitis (inflammation of bone marrow);

c.    Failed to warn the plaintiff that FOSAMAX would create a compromised vascular supply to the jaw bones and any injury thereto could turn into a non-healing wound causing necrosis (bone death) and osteomyelitis (inflammation of bone marrow);

d.    Failed to warn the plaintiff that any dental work while on FOSAMAX could cause irreparable injury to her jaw;

e.    Failed to warn the plaintiff that the FDA found that osteonecrosis of the jaw was a class effect which specifically extended to the oral bisphosphonate, FOSAMAX;

f.    Failed to list osteonecrosis of the jaw as a complication and/or side effect on its FOSAMAX labeling;

g.    Otherwise carelessly and negligently marketed and allowed uninformed patients to ingest FOSAMAX.

9.    As a direct and proximate result of the one or more of the foregoing careless and

negligent acts and/or omissions, plaintiff sustained severe and permanent injuries, in that her

lower jaw bone became infected and abscessed so as to cause the bone to decay and slough

away requiring the placement of a metal plate in her jaw. Because of the injuries, plaintiff

suffered severe and unnecessary anguish, distress and pain and her jaw became useless for

eating and speaking, and remained so for a long time. To this date it is difficult for her to eat

- 13 -

or speak, all to plaintiff's damage. She was caused to endure great pain and suffering and in the future will be caused to endure such pain and suffering; she was caused to have an increased risk of injury; she was caused to expend large sums of money as and for medical, dental and hospital care and attention in an effort to cure herself of these injuries and in the future will be caused to make such expenditures; she was caused to become disfigured and disabled; she was caused to absent herself from her regular employment, thereby losing large sums of money in the form of lost wages and in the future will be caused to sustain such losses.

10.    Plaintiff was not aware of her infection, its causes and its affect on her mouth and jaw until she sought the help of another dentist on April 18, 2006 who, upon examination and proper tests, diagnosed an abscess and infection and referred her to specialists for follow-up care and treatment.

WHEREFORE, plaintiff, Zeferina Montelongo, prays for judgment against the defendant, Merck & Co., Inc., in an amount in excess of $50,000.00 and her costs of suit.

### Count V– Strict Product Liability vs. Merck & Co., Inc.

1.    Plaintiff repeats and realleges paragraphs 1 through 5 of Count IV of her complaint.

6.    It was then and there the duty of Merck to provide any and all patients on FOSAMAX with a safe and effective treatment for osteoporosis.

7.    It was then and there the duty of Merck to provide any and all patients on FOSAMAX with a true and correct list of possible side effects and complications.

- 14 -

8. In disregard to the duties described in the foregoing paragraphs, the defendant,

Merck, allowed FOSAMAX to be placed into the stream of commerce when it knew or should

have known it was defective and unreasonably dangerous.

9. FOSAMAX was defective and unreasonably dangerous in the following respects:

a. Merck knew or should have known that FOSAMAX was likely to
inhibit vascular supply to patients' mandibles (lower jaws) and maxillae (upper
jaws);

b. Merck knew or should have known that FOSAMAX would create a
compromised vascular supply to the jaw bones and any injury thereto could turn
into a non-healing wound causing necrosis (bone death) and osteomyelitis
(inflammation of bone marrow);

c. Merck failed to warn that FOSAMAX would create a compromised
vascular supply to the jaw bones and any injury thereto could turn into a non-
healing wound causing necrosis (bone death) and osteomyelitis (inflammation of
bone marrow);

d. Merck failed to warn that any dental work while on FOSAMAX
could cause irreparable injury to her jaw;

e. Merck failed to warn that the FDA found that osteonecrosis of the
jaw was a class effect which specifically extended to the oral bisphosphonate,
FOSAMAX;

f. Merck failed to list osteonecrosis of the jaw as a complication
and/or side effect on its FOSAMAX labeling;

g. Otherwise carelessly and negligently marketed and allowed
uninformed patients to ingest FOSAMAX.

10. As a direct and proximate result of the one or more of the foregoing careless and

negligent acts and/or omissions, plaintiff sustained severe and permanent injuries, in that her

lower jaw bone became infected and abscessed so as to cause the bone to decay and slough

away requiring the placement of a metal plate in her jaw. Because of the injuries, plaintiff

suffered severe and unnecessary anguish, distress and pain and her jaw became useless for

- 15 -

eating and speaking, and remained so for a long time. To this date it is difficult for her to eat or speak, all to plaintiff's damage. She was caused to endure great pain and suffering and in the future will be caused to endure such pain and suffering; she was caused to have an increased risk of injury; she was caused to expend large sums of money as and for medical, dental and hospital care and attention in an effort to cure herself of these injuries and in the future will be caused to make such expenditures; she was caused to become disfigured and disabled; she was caused to absent herself from her regular employment, thereby losing large sums of money in the form of lost wages and in the future will be caused to sustain such losses.

11.    Plaintiff was not aware of her infection, its causes and its affect on her mouth and jaw until she sought the help of another dentist on April 18, 2006 who, upon examination and proper tests, diagnosed an abscess and infection and referred her to specialists for follow-up care and treatment.

WHEREFORE, plaintiff, Zeferina Montelongo, prays for judgment against the defendant, Merck & Co., Inc., in an amount in excess of $50,000.00 and her costs of suit.

ZEFERINA MONTELONGO, Plaintiff

By _Natherine A. Cárdenas_

One of Her Attorneys

David H. Lucas
Katherine A. Cárdenas
LAW OFFICES OF LUCAS AND CÁRDENAS, P.C.
Attorneys for Plaintiff
77 West Washington Street, Suite 900
Chicago, Illinois 60602
312/781-0082
Attorney No. 34554

Attorney No. 34554

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

ZEFERINA MONTELONGO,                          )
                                              )
                    Plaintiff,                )
                                              )
            vs.                               )     No.    2007 L 7858 E
                                              )
WINTERSET DENTAL CARE, P.C.,                  )
ANIL K. AGARWAL, D.D.S., individually and     )
as agent and servant of WINTERSET             )
DENTAL CARE, P.C., and GARY F. ALDER,         )
D.D.S. individually and as agent and          )
servant of WINTERSET DENTAL CARE, P.C.,)
                                              )
                    Defendants.               )

## AFFIDAVIT OF ATTORNEY KATHERINE A. CÁRDENAS

I, Katherine A. Cárdenas, attorney, hereby swear and affirm under oath as follows:

1.      I am the attorney for the plaintiff in the above-captioned cause of action.

2.      I have consulted and reviewed the facts of this case with a health care
        professional whom I believe is (a) knowledgeable in the relevant issues in this
        case, (b) practices in the same area of health care and medicine that is at issue
        in this case and (c) and meets the requirements of an expert witness.

3.      Jeffery West, D.D.S. has determined in a written report, after reviewing the
        dental records, that there is a reasonable and meritorious cause for filing this
        cause of action against the above-named defendants.

4.      Based upon Dr. West's review, I have concluded that there is a reasonable and
        meritorious cause for filing this cause of action against the above-named
        defendants.


Blumberg No. 5113    PLAINTIFF'S
EXHIBIT
A

- 2 -

Affiant sayeth further not.

Katherine A. Cárdenas

Subscribed and sworn to before me at
Chicago, Illinois on October 22 , 2007.

Notary Public

"OFFICIAL SEAL"
JOANNA V. CALAMUS
Notary Public, State of Illinois
My Commission Expires 04/22/2008

David H. Lucas
Katherine A. Cárdenas
LAW OFFICES OF LUCAS AND CÁRDENAS, P.C.
77 West Washington Street, Suite 900
Chicago, Illinois 60602
312/781-0082
Attorney No. 34554

Attorney No. 34534

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION



| | |
|---|---|
| ZEFERINA MONTELONGO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs | ) No.    2007 L 7858 E |
| | ) |
| WINTERSET DENTAL CARE, P.C. and | ) |
| ANIL K. AGARWAL, D.D.S., individually and | ) |
| as agent and servant of WINTERSET | ) |
| DENTAL CARE, P C., | ) |
| | ) |
| Defendants. | ) |

### 622 REPORT - WINTERSET DENTAL CARE, P.C.

My name is Jeffery F. West, D.D.S. I am a dentist licensed to practice dentistry in all its branches. I currently practice dentistry in North Carolina. By reason of my education and experience I am familiar with and know the applicable standards of care, methods, procedures and treatments relevant to the allegations at issue in this case.

I have reviewed Ms. Zeferina Montelongo's records from Winterset Dental Care, P.C., her drug history from Prime Therapeutics, LLC, and medical records from University of Illinois at Chicago. Based upon my review of these records, it is my opinion that there is a reasonable and meritorious cause for filing a lawsuit against Winterset Dental Care, P.C. for its care and treatment of Zeferina Montelongo. Winterset Dental Care, P.C., through its agents and servants, provided substandard care and treatment to Ms. Montelongo in that it failed to properly prescribe antibiotics pre and post extraction for the extractions done on September 28, 2005, failed to properly diagnose cause of plaintiff's post extraction pain, failed to timely refer the plaintiff to an oral surgeon or other a specialist, failed to properly and timely diagnose plaintiff's post extraction infection, and failed to prevent plaintiff's severe infection when it knew

PLAINTIFF'S
EXHIBIT
A

- 2 -

or should have known that plaintiff's pre-existing medical conditions and medications caused

her to be more susceptible to infection. These acts and omissions were the proximate cause of

the plaintiff's irreparable jaw bone damage and necessitated placement of plate.

Jeffrey F. West, D.D.S.
1388 S. Sharon Amity Road, Suite 201
Charlotte, North Carolina 28211
Dental License No. 4419

Attorney No. 34554

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

ZEFERINA MONTELONGO,                    )
                                        )
                    Plaintiff,          )
                                        )
        vs.                             )     No.    2007 L 7858 E
                                        )
WINTERSET DENTAL CARE, P.C. and         )
ANIL K. AGARWAL, D.D.S., individually and )
as agent and servant of WINTERSET       )
DENTAL CARE, P.C.,                      )
                                        )
                    Defendants.         )

### 622 REPORT - ANIL K. AGARWAL, D.D.S.

My name is Jeffery F. West, D.D.S. I am a dentist licensed to practice dentistry in all its
branches. I currently practice dentistry in North Carolina. By reason of my education and
experience I am familiar with and know the applicable standards of care, methods, procedures
and treatments relevant to the allegations at issue in this case.

I have reviewed Ms. Zeferina Montelongo's records from Winterset Dental Care, P.C.,
her drug history from Prime Therapeutics, LLC, and medical records from University of Illinois
at Chicago. Based upon my review of these records, it is my opinion that there is a reasonable
and meritorious cause for filing a lawsuit against Anil K. Agarwal, D.D.S. for his care and
treatment of Zeferina Montelongo. Anil K. Agarwal, D.D.S. provided substandard care and
treatment to Ms. Montelongo in that he failed to properly prescribe antibiotics pre and post
extraction for the extractions done on September 28, 2005, failed to properly diagnose the
cause of plaintiff's post extraction pain, failed to timely refer the plaintiff to an oral surgeon or
other a specialist, failed to properly and timely diagnose plaintiff's post extraction infection, and
failed to prevent plaintiff's severe infection when he knew or should have known that plaintiff's



PLAINTIFF'S
EXHIBIT
B
Blumberg No. 5119

- 2 -

pre-existing medical conditions and medications caused her to be more susceptible to infection.

These acts and omissions were the proximate cause of the plaintiff's irreparable jaw bone

damage and necessitated placement of plate.

Jeffery F. West, D.D.S.
135 S. Sharon Amity Road, Suite 201
Charlotte, North Carolina 28211
Dental License No. NC  44 19

Attorney No. 34554

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

|  |  |  |  |
|---|---|---|---|
| ZEFERINA MONTELONGO, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| vs. | ) | No. | 2007 L 7858 E |
| | ) | | |
| WINTERSET DENTAL CARE, P.C. and | ) | | |
| ANIL K. AGARWAL, D.D.S., individually and | ) | | |
| as agent and servant of WINTERSET | ) | | |
| DENTAL CARE, P.C., | ) | | |
| | ) | | |
| Defendants. | ) | | |

### 622 REPORT - GARY F. ALDER, D.D.S.

My name is Jeffery F. West, D.D.S. I am a dentist licensed to practice dentistry in all its branches. I currently practice dentistry in North Carolina. By reason of my education and experience I am familiar with and know the applicable standards of care, methods, procedures and treatments relevant to the allegations at issue in this case.

I have reviewed Ms. Zeferina Montelongo's records from Winterset Dental Care, P.C., her drug history from Prime Therapeutics, LLC, and medical records from University of Illinois at Chicago. Based upon my review of these records, it is my opinion that there is a reasonable and meritorious cause for filing a lawsuit against Gary F. Alder, D.D.S. for his care and treatment of Zeferina Montelongo. Gary F. Alder, D.D.S. provided substandard care and treatment to Ms. Montelongo in that he failed to properly prescribe antibiotics pre and post extraction for the extractions done on September 28, 2005, failed to properly diagnose the cause of plaintiff's post extraction pain, failed to timely refer the plaintiff to an oral surgeon or other a specialist, failed to properly and timely diagnose plaintiff's post extraction infection, and failed to prevent plaintiff's severe infection when he knew or should have known that plaintiff's

PLAINTIFF'S EXHIBIT

- 2 -

pre-existing medical conditions and medications caused her to be more susceptible to infection.

These acts and omissions were the proximate cause of the plaintiff's irreparable jaw bone

damage and necessitated placement of plate.

Jeffery F. West, D.D.S.
1358. Sharon Amity Road, Suite 201
Charlotte, North Carolina 28211
Dental License No. NC 4419

Attorney No. 34554

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

ZEFERINA MONTELONGO, )
)
                  Plaintiff, )
)
        vs. )       No.
)
WINTERSET DENTAL CARE, P.C. and )
ANIL K. AGARWAL, D.D.S., individually and )
as agent and servant of WINTERSET )
DENTAL CARE, P.C., )
)        2007L007858
                           )       CALENDAR/ROOM E
                Defendants. )     TIME 00:00
                                Medical Malpractice

## COMPLAINT AT LAW
## (Dental Malpractice)

Now comes the plaintiff, Zeferina Montelongo, by her attorneys, Law Offices of Lucas

and Cárdenas, P.C., and as and for her cause of action against the defendant, Winterset Dental

Care, P.C. and Anil K. Agarwal, D.D.S., individually and as agent and servant of Winterset

Dental Care, P.C., states the following:

### Count I—Malpractice Winterset Dental Care, P.C.

1.      On July 28, 2005 and for a long time prior and subsequent thereto the

defendant, Winterset Dental Care, P.C., was and is now an Illinois corporation practicing

general dentistry in the Chicago Metropolitan Area.

2.      On the date aforesaid and prior and subsequent thereto, the defendant,

Winterset Dental Care, P.C., by and through its agents and servants, performed general dental

care for the plaintiff, Zeferina Montelongo.

**Exhibit B**

- 2 -

3.     On the date aforesaid the defendant, Winterset Dental Care, P.C., by and through its agents and servants, extracted plaintiff's teeth numbered 23, 24, 25 and 26 and, shortly thereafter, measured, fit her, and provided her with a replacement dental plate and following-up dental care.

4.     In the process of extracting the aforesaid teeth and providing the replacement dental plate and follow-up care, it was duty of the defendant, Winterset Dental Care, P.C., by and through its agents and servants, to do so in a reasonably careful and safe manner.

5.     In disregard to the duty described in the foregoing paragraph, the defendant, Winterset Dental Care, P.C., by and through its agents and servants, was guilty of one or more of the following professional careless and negligent acts and/or omissions:

   a.     Extracted the plaintiff's teeth in a negligent and violent manner, causing trauma to the surrounding tissues;

   b.     Failed to make a careful and thorough examination of plaintiff's teeth and surrounding tissues and bone before the extractions to determine the plaintiff's hyper susceptibility to post extraction infection;

   c.     Failed to make careful and thorough examinations of plaintiff's lower jaw post-extraction to determine the cause of plaintiff's pain;

   d.     Failed to take proper and indicated actions to prevent post-extraction infections;

   e.     Failed to make the proper impressions and proper and timely adjustments to insure that plaintiff's replacement partial plate fit the plaintiff's oral structures;

   f.     Failed to perform timely and appropriate post-extraction tests to determine the cause of plaintiff's pain;

   g.     Failed to properly and timely diagnose the plaintiff's post-extraction infection;

- 3 -

    h.      Failed to recognize and appreciate the plaintiff's pre-existing Sjören's syndrome as a presentation that made her more susceptible to post-extraction infection;

    i.      Failed to refer her timely to a specialist when he was unable to determine the cause of her intractable post-extraction pain and discomfort;

    j.      Failed to timely take the appropriate films of the plaintiff's mouth and jaw;

    k.      Failed to administer pre-extraction prophylactic antibiotic medication;

    l.      Failed to timely administer antibiotic medication post-extraction;

    m.      Otherwise carelessly and negligent extracted plaintiff's teeth, provide the replacement partial plate, and provide post-extraction dental care.

    6.      As a direct and proximate result of the one or more of the foregoing careless and negligent acts and/or omissions, plaintiff sustained severe and permanent injuries, in that her lower jaw bone became infected and abscessed so as to cause the bone to decay and slough away requiring the placement of a metal plate in her jaw. Because of the injuries, plaintiff suffered severe and unnecessary anguish, distress and pain and her jaw became useless for eating and speaking, and remained so for a long time. To this date it is difficult for her to eat or speak, all to plaintiff's damage. She was caused to endure great pain and suffering and in the future will be caused to endure such pain and suffering; she was caused to have an increased risk of injury; she was caused to expend large sums of money as and for medical, dental and hospital care and attention in an effort to cure herself of these injuries and in the future will be caused to make such expenditures; she was caused to become disfigured and disabled; she was caused to absent herself from her regular employment, thereby losing large

- 4 -

sums of money in the form of lost wages and in the future will be caused to sustain such losses.

7.    Plaintiff was not aware of her infection, its causes and its affect on her mouth and jaw until she sought the help of another dentist on April 18, 2006 who, upon examination and proper tests, diagnosed an abscess and infection and referred her to specialists for following-up care and treatment.

8.    Plaintiff's attorney, Katherine A. Cárdenas, attaches hereto her affidavit that she was unable to obtain a consultation of a health care professional as required by 735 ILCS 5/2-622(a)(1) because the statute of limitations might or would impair the action and the consultation required could not be obtained before the expiration of the statute of limitations.

WHEREFORE, plaintiff, Zeferina Montelongo, prays for judgment against the defendant, Winterset Dental Care, P.C., in an amount in excess of $50,000.00 and her costs of suit.

#### Count II–Malpractice vs. Agarwal, D.D.S.,
#### Individually and as Agent and Servant
#### of Winterset Dental Care, P.C.

1.    On July 28, 2005 and for a long time prior and subsequent thereto the defendant, Anil K. Agarwal, D.D.S., was and is now an Illinois licensed dentist practicing general dentistry in the Chicago Metropolitan Area.

2.    On the date aforesaid and prior and subsequent thereto, the defendant, Anil K. Agarwal, D.D.S., individually and as agent and servant of Winterset Dental Care, P.C., performed general dental care for the plaintiff, Zeferina Montelongo.

3.    On the date aforesaid the defendant, Anil K. Agarwal, D.D.S., individually and as agent and servant of Winterset Dental Care, P.C., extracted plaintiff's teeth numbered 23, 24,

- 5 -

25 and 26 and, shortly thereafter, measured, fit her, and provided her with a replacement dental plate and following-up dental care.

4.      In the process of extracting the aforesaid teeth and providing the replacement dental plate and follow-up care, it was duty of the defendant, Anil K. Agarwal, D.D.S., individually and as agent and servant of Winterset Dental Care, P.C., to do so in a reasonably careful and safe manner.

5.      In disregard to the duty described in the foregoing paragraph, the defendant, Anil K. Agarwal, D.D.S., individually and as agent and servant of Winterset Dental Care, P.C., was guilty of one or more of the following professional careless and negligent acts and/or omissions:

        a.      Extracted the plaintiff's teeth in a negligent and violent manner, causing trauma to the surrounding tissues;

        b.      Failed to make a careful and thorough examination of plaintiff's teeth and surrounding tissues and bone before the extractions to determine the plaintiff's hyper susceptibility to post extraction infection;

        c.      Failed to make careful and thorough examinations of plaintiff's lower jaw post-extraction to determine the cause of plaintiff's pain;

        d.      Failed to take proper and indicated actions to prevent post-extraction infections;

        e.      Failed to make the proper impressions and proper and timely adjustments to insure that plaintiff's replacement partial plate fit the plaintiff's oral structures;

        f.      Failed to perform timely and appropriate post-extraction tests to determine the cause of plaintiff's pain;

        g.      Failed to properly and timely diagnose the plaintiff's post-extraction infection;

- 6 -

      h.     Failed to recognize and appreciate the plaintiff's pre-existing Sjören's syndrome as a presentation that made her more susceptible to post-extraction infection;

      i.     Failed to refer her timely to a specialist when he was unable to determine the cause of her intractable post-extraction pain and discomfort;

      j.     Failed to timely take the appropriate films of the plaintiff's mouth and jaw;

      k.     Failed to administer pre-extraction prophylactic antibiotic medication;

      l.     Failed to timely administer antibiotic medication post-extraction;

      m.     Otherwise carelessly and negligent extracted plaintiff's teeth, provide the replacement partial plate, and provide post-extraction dental care.

      6.     As a direct and proximate result of the one or more of the foregoing careless and negligent acts and/or omissions, plaintiff sustained severe and permanent injuries, in that her lower jaw bone became infected and abscessed so as to cause the bone to decay and slough away requiring the placement of a metal plate in her jaw. Because of the injuries, plaintiff suffered severe and unnecessary anguish, distress and pain and her jaw became useless for eating and speaking, and remained so for a long time. To this day it is difficult for her to eat or speak, all to plaintiff's damage. She was caused to endure great pain and suffering and in the future will be caused to endure such pain and suffering; she was caused to have an increased risk of injury; she was caused to expend large sums of money as and for medical, dental and hospital care and attention in an effort to cure herself of these injuries and in the future will be caused to make such expenditures; she was caused to become disfigured and disabled; she was caused to absent herself from her regular employment, thereby losing large sums of money in the form of lost wages and in the future will be caused to sustain such losses.

- 7 -

7.     Plaintiff was not aware of her infection, its causes and its affect on her mouth and jaw until she sought the help of another dentist on April 18, 2006 who, upon examination and proper tests, diagnosed an abscess and infection and referred her to specialists for following-up care and treatment.

8.     Plaintiff's attorney, Katherine A. Cárdenas, attaches hereto her affidavit that she was unable to obtain a consultation of a health care professional as required by 735 ILCS 5/2-622(a)(1) because the statute of limitations might or would impair the action and the consultation required could not be obtained before the expiration of the statute of limitations.

WHEREFORE, plaintiff, Zeferina Montelongo, prays for judgment against the defendant, Anil K. Agarwal, D.D.S., individually and as agent and servant of Winterset Dental Care, P.C., in an amount in excess of $50,000.00 and her costs of suit.

ZEFERINA MONTELONGO, Plaintiff

By _Katherine A. Cárdenas_
/One of Her Attorneys

David H. Lucas
Katherine A. Cárdenas
LAW OFFICES OF LUCAS AND CÁRDENAS, P.C.
Attorneys for Plaintiff
77 West Washington Street, Suite 900
Chicago, Illinois 60602
312/781-0082
Attorney No. 34554

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

| | | |
|---|---|---|
| ZEFERINA MONTELONGO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. |
| | ) | |
| WINTERSET DENTAL CARE, P.C. and ANIL K. | ) | |
| AGARWAL, D.D.S., individually and as agent | ) | |
| and servant of WINTERSET DENTAL CARE, P.C., | ) | |
| | ) | |
| Defendants. | ) | |

### AFFIDAVIT PURSUANT TO 735 ILCS 5/2-622(a)(2)

Katherine A. Cárdenas, being first duly sworn, on her oath deposes and states:

1.    She is an attorney at law licensed to practice law in the State of Illinois.

2.    She is one of the attorneys representing the plaintiff in this case.

3.    She has been unable to obtain a consultation required by 735 ILCS 5/2-622(a)(1) before

the statute of limitations may or will expire in this cause.

4.    She intends to file her affidavit and consultant report within 90 days from the date of the

filing of this complaint.

_Katherine A. Cárdenas_
Katherine A. Cárdenas

Subscribed and sworn to before me at

Chicago, Illinois on July 26, 2007.

_Joanna V. Calamus_
Notary Public

"OFFICIAL SEAL"
JOANNA V. CALAMUS
Notary Public, State of Illinois
My Commission Expires 04/22/2008

David H. Lucas
Katherine A. Cárdenas
LAW OFFICES OF LUCAS AND CARDENAS, P.C.
77 West Washington Street, Suite 900
Chicago, Illinois 60602
312/781-0082
Attorney No. 34554

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

ZEFERINA MONTELONGO,    )
    )
    Plaintiff,    )
    )
    vs.    )    No.
    )
WINTERSET DENTAL CARE, P.C. and    )
ANIL K. AGARWAL, D.D.S., individually and    )
as agent and servant of WINTERSET    )
DENTAL CARE, P.C.,    )
    )
    Defendants.    )

2007L007858
CALENDAR/ROOM E
TIME 00:00
Medical Malpractice

## AFFIDAVIT OF DAMAGES
## SUPREME COURT RULE 222

The undersigned, being first duly sworn upon oath, deposes and states that she is the

attorney for Zeferina Montelongo, a party to the above-entitled cause of action, seeking money

damages and states that this cause of action does exceed $50,000.00.

_Katherine A. Cárdenas_
Katherine A. Cárdenas

Subscribed and sworn to before me at

Chicago, Illinois on July 26, 2007.

_Joanna V. Calamus_
Notary Public

"OFFICIAL SEAL"
JOANNA V. CALAMUS
Notary Public, State of Illinois
My Commission Expires 04/22/2008

David H. Lucas
Katherine A. Cárdenas
LAW OFFICES OF LUCAS AND CÁRDENAS, P.C.
Attorneys for Plaintiff
77 West Washington Street, Suite 900
Chicago, Illinois 60602
312/781-0082
Attorney No. 34554

Attorney No. 34554

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

ZEFERINA MONTELONGO,                      )
                                          )
                    Plaintiff,            )
                                          )
        vs.                               )       No.    2007 L 7858 E
                                          )
WINTERSET DENTAL CARE, P.C.,              )
ANIL K. AGARWAL, D.D.S., individually and )
as agent and servant of WINTERSET         )
DENTAL CARE, P.C., and GARY F. ALDER,     )
D.D.S., individually and as agent and     )
servant of WINTERSET DENTAL CARE, P.C.,)
                                          )
                    Defendants.           )

### AMENDED COMPLAINT AT LAW
### (Dental Malpractice)

Now comes the plaintiff, Zeferina Montelongo, by her attorneys, Law Offices of Lucas

and Cárdenas, P.C., and as and for her cause of action against the defendant, Winterset Dental

Care, P.C., Anil K. Agarwal, D.D.S., individually and as agent and servant of Winterset Dental

Care, P.C. and Gary F. Alder, D.D.S., individually and as agent and servant of Winterset Dental

Care, P.C., states the following:

### Count I—Malpractice Winterset Dental Care, P.C.

1.      On July 28, 2005 and for a long time prior and subsequent thereto the

defendant, Winterset Dental Care, P.C., was and is now an Illinois corporation practicing

dentistry in the Chicago Metropolitan Area.

2.      On the date aforesaid and prior and subsequent thereto, the defendant,

Winterset Dental Care, P.C., by and through its agents and servants, held itself out to the

**Exhibit C**

- 2 -

public as "a different kind of dentistry for all different kinds of patients" including but not limited to restorative care, prosthodontics, periodontics, endodontics, preventive care, sleep dentistry and cosmetic dentistry.

3.      On the date aforesaid and prior and subsequent thereto, the defendant, Winterset Dental Care, P.C., by and through its agents and servants, performed general dental care for the plaintiff, Zeferina Montelongo.

4.      On the date aforesaid the defendant, Winterset Dental Care, P.C., by and through its agents and servants, extracted plaintiff's teeth numbered 23, 24, 25 and 26 and, shortly thereafter, measured, fit her, and provided her with a replacement dental plate and following-up dental care.

5.      In the process of extracting the aforesaid teeth and providing the replacement dental plate and follow-up care, it was duty of the defendant, Winterset Dental Care, P.C., by and through its agents and servants, to do so in a reasonably careful and safe manner.

6.      In disregard to the duty described in the foregoing paragraph, the defendant, Winterset Dental Care, P.C., by and through its agents and servants, was guilty of one or more of the following professional careless and negligent acts and/or omissions:

        a.      Extracted the plaintiff's teeth in a negligent and violent manner, causing trauma to the surrounding tissues;

        b.      Failed to make a careful and thorough examination of plaintiff's teeth and surrounding tissues and bone before the extractions to determine the plaintiff's hyper susceptibility to post extraction infection;

        c.      Failed to make careful and thorough examinations of plaintiff's lower jaw post-extraction to determine the cause of plaintiff's pain;

        d.      Failed to take proper and indicated actions to prevent post-extraction infections;

- 3 -

e.    Failed to make the proper impressions and proper and timely adjustments to insure that plaintiff's replacement partial plate fit the plaintiff's oral structures;

f.    Failed to perform timely and appropriate post-extraction tests to determine the cause of plaintiff's pain;

g.    Failed to properly and timely diagnose the plaintiff's post-extraction infection;

h.    Failed to recognize and appreciate the plaintiff's pre-existing Sjören's syndrome as a presentation that made her more susceptible to post-extraction infection;

i.    Failed to refer her timely to a specialist when he was unable to determine the cause of her intractable post-extraction pain and discomfort;

j.    Failed to timely take the appropriate films of the plaintiff's mouth and jaw;

k.    Failed to administer pre-extraction prophylactic antibiotic medication;

l.    Failed to timely administer antibiotic medication post-extraction;

m.    Otherwise carelessly and negligent extracted plaintiff's teeth, provide the replacement partial plate, and provide post-extraction dental care.

7.    As a direct and proximate result of the one or more of the foregoing careless and negligent acts and/or omissions, plaintiff sustained severe and permanent injuries, in that her lower jaw bone became infected and abscessed so as to cause the bone to decay and slough away requiring the placement of a metal plate in her jaw. Because of the injuries, plaintiff suffered severe and unnecessary anguish, distress and pain and her jaw became useless for eating and speaking, and remained so for a long time. To this date it is difficult for her to eat or speak, all to plaintiff's damage. She was caused to endure great pain and suffering and in the future will be caused to endure such pain and suffering; she was caused to have an

- 4 -

increased risk of injury; she was caused to expend large sums of money as and for medical, dental and hospital care and attention in an effort to cure herself of these injuries and in the future will be caused to make such expenditures; she was caused to become disfigured and disabled; she was caused to absent herself from her regular employment, thereby losing large sums of money in the form of lost wages and in the future will be caused to sustain such losses.

8.      Plaintiff was not aware of her infection, its causes and its affect on her mouth and jaw until she sought the help of another dentist on April 18, 2006 who, upon examination and proper tests, diagnosed an abscess and infection and referred her to specialists for following-up care and treatment.

9.      Plaintiff's attorney, Katherine A. Cárdenas, attaches hereto her affidavit that she has obtained a consultation of a health care professional as required by 735 ILCS 5/2-622(a)(1). A copy of the affidavit and the corresponding dental report is attached hereto as "Exhibit A."

WHEREFORE, plaintiff, Zeferina Montelongo, prays for judgment against the defendant, Winterset Dental Care, P.C., in an amount in excess of $50,000.00 and her costs of suit.

### Count II—Malpractice vs. Agarwal, D.D.S.,
### Individually and as Agent and Servant
### of Winterset Dental Care, P.C.

1.      On July 28, 2005 and for a long time prior and subsequent thereto the defendant, Anil K. Agarwal, D.D.S., was and is now an Illinois licensed dentist practicing dentistry in the Chicago Metropolitan Area.

- 5 -

2.    On the date aforesaid and prior and subsequent thereto, the defendant, Anil K. Agarwal,D.D.S., held himself out to the public as a dentist offering "a different kind of dentistry for all different kinds of patients" including but not limited to restorative care, prosthodontics, periodontics, endodontics, preventive care, sleep dentistry and cosmetic dentistry.

3.    On the date aforesaid and prior and subsequent thereto, the defendant, Anil K. Agarwal, D.D.S., individually and as agent and servant of Winterset Dental Care, P.C., performed general dental care for the plaintiff, Zeferina Montelongo.

4.    On the date aforesaid the defendant, Anil K. Agarwal, D.D.S., individually and as agent and servant of Winterset Dental Care, P.C., extracted plaintiff's teeth numbered 23, 24, 25 and 26 and, shortly thereafter, measured, fit her, and provided her with a replacement dental plate and following-up dental care.

5.    In the process of extracting the aforesaid teeth and providing the replacement dental plate and follow-up care, it was duty of the defendant, Anil K. Agarwal, D.D.S., individually and as agent and servant of Winterset Dental Care, P.C., to do so in a reasonably careful and safe manner.

6.    In disregard to the duty described in the foregoing paragraph, the defendant, Anil K. Agarwal, D.D.S., individually and as agent and servant of Winterset Dental Care, P.C., was guilty of one or more of the following professional careless and negligent acts and/or omissions:

      a.    Extracted the plaintiff's teeth in a negligent and violent manner, causing trauma to the surrounding tissues;

      b.    Failed to make a careful and thorough examination of plaintiff's teeth and surrounding tissues and bone before the extractions to determine the plaintiff's hyper susceptibility to post extraction infection;

- 6 -

    c.      Failed to make careful and thorough examinations of plaintiff's lower jaw post-extraction to determine the cause of plaintiff's pain;

    d.      Failed to take proper and indicated actions to prevent post-extraction infections;

    e.      Failed to make the proper impressions and proper and timely adjustments to insure that plaintiff's replacement partial plate fit the plaintiff's oral structures;

    f.      Failed to perform timely and appropriate post-extraction tests to determine the cause of plaintiff's pain;

    g.      Failed to properly and timely diagnose the plaintiff's post-extraction infection;

    h.      Failed to recognize and appreciate the plaintiff's pre-existing Sjören's syndrome as a presentation that made her more susceptible to post-extraction infection;

    i.      Failed to refer her timely to a specialist when he was unable to determine the cause of her intractable post-extraction pain and discomfort;

    j.      Failed to timely take the appropriate films of the plaintiff's mouth and jaw;

    k.      Failed to administer pre-extraction prophylactic antibiotic medication;

    l.      Failed to timely administer antibiotic medication post-extraction;

    m.      Otherwise carelessly and negligent extracted plaintiff's teeth, provide the replacement partial plate, and provide post-extraction dental care.

    7.      As a direct and proximate result of the one or more of the foregoing careless and negligent acts and/or omissions, plaintiff sustained severe and permanent injuries, in that her lower jaw bone became infected and abscessed so as to cause the bone to decay and slough away requiring the placement of a metal plate in her jaw. Because of the injuries, plaintiff suffered severe and unnecessary anguish, distress and pain and her jaw became useless for

- 7 -

eating and speaking, and remained so for a long time.  To this day it is difficult for her to eat or

speak, all to plaintiff's damage.  She was caused to endure great pain and suffering and in the

future will be caused to endure such pain and suffering; she was caused to have an increased

risk of injury; she was caused to expend large sums of money as and for medical, dental and

hospital care and attention in an effort to cure herself of these injuries and in the future will be

caused to make such expenditures; she was caused to become disfigured and disabled; she

was caused to absent herself from her regular employment, thereby losing large sums of

money in the form of lost wages and in the future will be caused to sustain such losses.

8.      Plaintiff was not aware of her infection, its causes and its affect on her mouth

and jaw until she sought the help of another dentist on April 18, 2006 who, upon examination

and proper tests, diagnosed an abscess and infection and referred her to specialists for

following-up care and treatment.

9.      Plaintiff's attorney, Katherine A. Cárdenas, attaches hereto her affidavit that she

has obtained a consultation of a health care professional as required by 735 ILCS 5/2-

622(a)(1).  A copy of the affidavit and the corresponding dental report is attached hereto as

"Exhibit B."

WHEREFORE, plaintiff, Zeferina Montelongo, prays for judgment against the defendant,

Anil K. Agarwal, D.D.S., individually and as agent and servant of Winterset Dental Care, P.C., in

an amount in excess of $50,000.00 and her costs of suit.

- 8 -

### Count III—Malpractice vs. Alder, D.D.S.,
### Individually and as Agent and Servant
### of Winterset Dental Care, P.C.

1.      On July 28, 2005 and for a long time prior and subsequent thereto the defendant, Gary F. Alder, D.D.S., was and is now an Illinois licensed dentist practicing general dentistry in the Chicago Metropolitan Area.

2.      On the date aforesaid and prior and subsequent thereto, the defendant, Gary F. Alder, D.D.S., individually and as agent and servant of Winterset Dental Care, P.C., performed general dental care for the plaintiff, Zeferina Montelongo.

3.      On the date aforesaid the defendant, Gary F. Alder, D.D.S., individually and as agent and servant of Winterset Dental Care, P.C., extracted plaintiff's teeth numbered 23, 24, 25 and 26 and, shortly thereafter, measured, fit her, and provided her with a replacement dental plate and following-up dental care.

4.      In the process of extracting the aforesaid teeth and providing the replacement dental plate and follow-up care, it was duty of the defendant, Gary F. Alder, D.D.S., individually and as agent and servant of Winterset Dental Care, P.C., to do so in a reasonably careful and safe manner.

5.      In disregard to the duty described in the foregoing paragraph, the defendant, Gary F. Alder, D.D.S., individually and as agent and servant of Winterset Dental Care, P.C., was guilty of one or more of the following professional careless and negligent acts and/or omissions:

        a.      Extracted the plaintiff's teeth in a negligent and violent manner, causing trauma to the surrounding tissues;

- 9 -

b.      Failed to make a careful and thorough examination of plaintiff's teeth and surrounding tissues and bone before the extractions to determine the plaintiff's hyper susceptibility to post extraction infection;

c.      Failed to make careful and thorough examinations of plaintiff's lower jaw post-extraction to determine the cause of plaintiff's pain;

d.      Failed to take proper and indicated actions to prevent post-extraction infections;

e.      Failed to make the proper impressions and proper and timely adjustments to insure that plaintiff's replacement partial plate fit the plaintiff's oral structures;

f.      Failed to perform timely and appropriate post-extraction tests to determine the cause of plaintiff's pain;

g.      Failed to properly and timely diagnose the plaintiff's post-extraction infection;

h.      Failed to recognize and appreciate the plaintiff's pre-existing Sjören's syndrome as a presentation that made her more susceptible to post-extraction infection;

i.      Failed to refer her timely to a specialist when he was unable to determine the cause of her intractable post-extraction pain and discomfort;

j.      Failed to timely take the appropriate films of the plaintiff's mouth and jaw;

k.      Failed to administer pre-extraction prophylactic antibiotic medication;

l.      Failed to timely administer antibiotic medication post-extraction;

m.      Otherwise carelessly and negligent extracted plaintiff's teeth, provide the replacement partial plate, and provide post-extraction dental care.

6.      As a direct and proximate result of the one or more of the foregoing careless and negligent acts and/or omissions, plaintiff sustained severe and permanent injuries, in that her lower jaw bone became infected and abscessed so as to cause the bone to decay and slough

- 10 -

away requiring the placement of a metal plate in her jaw. Because of the injuries, plaintiff
suffered severe and unnecessary anguish, distress and pain and her jaw became useless for
eating and speaking, and remained so for a long time. To this day it is difficult for her to eat or
speak, all to plaintiff's damage. She was caused to endure great pain and suffering and in the
future will be caused to endure such pain and suffering; she was caused to have an increased
risk of injury; she was caused to expend large sums of money as and for medical, dental and
hospital care and attention in an effort to cure herself of these injuries and in the future will be
caused to make such expenditures; she was caused to become disfigured and disabled; she
was caused to absent herself from her regular employment, thereby losing large sums of
money in the form of lost wages and in the future will be caused to sustain such losses.

7.      Plaintiff was not aware of her infection, its causes and its affect on her mouth
and jaw until she sought the help of another dentist on April 18, 2006 who, upon examination
and proper tests, diagnosed an abscess and infection and referred her to specialists for
following-up care and treatment.

8.      Plaintiff's attorney, Katherine A. Cárdenas, attaches hereto her affidavit that she
has obtained a consultation of a health care professional as required by 735 ILCS 5/2-
622(a)(1). A copy of the affidavit and the corresponding dental report is attached hereto as
"Exhibit C."

- 11 -

WHEREFORE, plaintiff, Zeferina Montelongo, prays for judgment against the defendant,

Gary F. Alder, D.D.S., individually and as agent and servant of Winterset Dental Care, P.C., in

an amount in excess of $50,000.00 and her costs of suit.

ZEFERINA MONTELONGO, Plaintiff

By _Katherine A. Cárdenas_

One of Her Attorneys

David H. Lucas
Katherine A. Cárdenas
LAW OFFICES OF LUCAS AND CÁRDENAS, P.C.
Attorneys for Plaintiff
77 West Washington Street, Suite 900
Chicago, Illinois 60602
312/781-0082
Attorney No. 34554

Attorney No. 34554

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

| | | |
|---|---|---|
| ZEFERINA MONTELONGO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No.    2007 L 7858 E |
| | ) | |
| WINTERSET DENTAL CARE, P.C., | ) | |
| ANIL K. AGARWAL, D.D.S., individually and | ) | |
| as agent and servant of WINTERSET | ) | |
| DENTAL CARE, P.C., and GARY F. ALDER, | ) | |
| D.D.S. individually and as agent and | ) | |
| servant of WINTERSET DENTAL CARE, P.C.,) | | |
| | ) | |
| Defendants. | ) | |

## AFFIDAVIT OF ATTORNEY KATHERINE A. CÁRDENAS

I, Katherine A. Cárdenas, attorney, hereby swear and affirm under oath as follows:

1.    I am the attorney for the plaintiff in the above-captioned cause of action.

2.    I have consulted and reviewed the facts of this case with a health care professional whom I believe is (a) knowledgeable in the relevant issues in this case, (b) practices in the same area of health care and medicine that is at issue in this case and (c) and meets the requirements of an expert witness.

3.    Jeffery West, D.D.S. has determined in a written report, after reviewing the dental records, that there is a reasonable and meritorious cause for filing this cause of action against the above-named defendants.

4.    Based upon Dr. West's review, I have concluded that there is a reasonable and meritorious cause for filing this cause of action against the above-named defendants.



PLAINTIFF'S
EXHIBIT
A

- 2 -

Affiant sayeth further not.

Katherine A. Cárdenas

Subscribed and sworn to before me at
Chicago, Illinois on October 2 2 , 2007.

Notary Public

**"OFFICIAL SEAL"**
JOANNA V. CALAMUS
Notary Public, State of Illinois
My Commission Expires 04/22/2008

David H. Lucas
Katherine A. Cárdenas
LAW OFFICES OF LUCAS AND CARDENAS, P.C.
77 West Washington Street, Suite 900
Chicago, Illinois 60602
312/781-0082
Attorney No. 34554

Attorney No. 34554

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

| | |
|---|---|
| ZEFERINA MONTELONGO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   No.   2007 L 7858 E |
| | ) |
| WINTERSET DENTAL CARE, P.C. and | ) |
| ANIL K. AGARWAL, D.D.S., individually and | ) |
| as agent and servant of WINTERSET | ) |
| DENTAL CARE, P.C., | ) |
| | ) |
| Defendants. | ) |

### 622 REPORT - WINTERSET DENTAL CARE, P.C.

My name is Jeffery F. West, D.D.S. I am a dentist licensed to practice dentistry in all its branches. I currently practice dentistry in North Carolina. By reason of my education and experience I am familiar with and know the applicable standards of care, methods, procedures and treatments relevant to the allegations at issue in this case.

I have reviewed Ms. Zeferina Montelongo's records from Winterset Dental Care, P.C., her drug history from Prime Therapeutics, LLC, and medical records from University of Illinois at Chicago. Based upon my review of these records, it is my opinion that there is a reasonable and meritorious cause for filing a lawsuit against Winterset Dental Care, P.C. for its care and treatment of Zeferina Montelongo. Winterset Dental Care, P.C., through its agents and servants, provided substandard care and treatment to Ms. Montelongo in that it failed to properly prescribe antibiotics pre and post extraction for the extractions done on September 28, 2005, failed to properly diagnose cause of plaintiff's post extraction pain, failed to timely refer the plaintiff to an oral surgeon or other a specialist, failed to properly and timely diagnose plaintiff's post extraction infection, and failed to prevent plaintiff's severe infection when it knew



PLAINTIFF'S EXHIBIT
A

- 2 -

or should have known that plaintiff's pre-existing medical conditions and medications caused her to be more susceptible to infection.  These acts and omissions were the proximate cause of the plaintiff's irreparable jaw bone damage and necessitated placement of plate.

Jeffery F. West, D.D.S.
135 S. Sharon Amity Road, Suite 201
Charlotte, North Carolina 28211
Dental License No. 4419

Attorney No. 34554

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

ZEFERINA MONTELONGO,                    )
                                        )
                    Plaintiff,          )
                                        )
        vs.                             )       No.    2007 L 7858 E
                                        )
WINTERSET DENTAL CARE, P.C. and         )
ANIL K. AGARWAL, D.D.S., individually and )
as agent and servant of WINTERSET       )
DENTAL CARE, P.C.,                      )
                                        )
                    Defendants.         )

## 622 REPORT - ANIL K. AGARWAL, D.D.S.

My name is Jeffery F. West, D.D.S. I am a dentist licensed to practice dentistry in all its

branches. I currently practice dentistry in North Carolina. By reason of my education and

experience I am familiar with and know the applicable standards of care, methods, procedures

and treatments relevant to the allegations at issue in this case.

I have reviewed Ms. Zeferina Montelongo's records from Winterset Dental Care, P.C.,

her drug history from Prime Therapeutics, LLC, and medical records from University of Illinois

at Chicago. Based upon my review of these records, it is my opinion that there is a reasonable

and meritorious cause for filing a lawsuit against Anil K. Agarwal, D.D.S. for his care and

treatment of Zeferina Montelongo. Anil K. Agarwal, D.D.S. provided substandard care and

treatment to Ms. Montelongo in that he failed to properly prescribe antibiotics pre and post

extraction for the extractions done on September 28, 2005, failed to properly diagnose the

cause of plaintiff's post extraction pain, failed to timely refer the plaintiff to an oral surgeon or

other a specialist, failed to properly and timely diagnose plaintiff's post extraction infection, and

failed to prevent plaintiff's severe infection when he knew or should have known that plaintiff's



PLAINTIFF'S
EXHIBIT
B

- 2 -

pre-existing medical conditions and medications caused her to be more susceptible to infection. These acts and omissions were the proximate cause of the plaintiff's irreparable jaw bone damage and necessitated placement of plate.

Jeffery F. West, D.D.S.
135 S. Sharon Amity Road, Suite 201
Charlotte, North Carolina 28211
Dental License No. NC 4419

Attorney No. 34554

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

| | | |
|---|---|---|
| ZEFERINA MONTELONGO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No.    2007 L 7858 E |
| | ) | |
| WINTERSET DENTAL CARE, P.C. and | ) | |
| ANIL K. AGARWAL, D.D.S., individually and | ) | |
| as agent and servant of WINTERSET | ) | |
| DENTAL CARE, P.C., | ) | |
| | ) | |
| Defendants. | ) | |

## 622 REPORT - GARY F. ALDER, D.D.S.

My name is Jeffery F. West, D.D.S. I am a dentist licensed to practice dentistry in all its branches. I currently practice dentistry in North Carolina. By reason of my education and experience I am familiar with and know the applicable standards of care, methods, procedures and treatments relevant to the allegations at issue in this case.

I have reviewed Ms. Zeferina Montelongo's records from Winterset Dental Care, P.C., her drug history from Prime Therapeutics, LLC, and medical records from University of Illinois at Chicago. Based upon my review of these records, it is my opinion that there is a reasonable and meritorious cause for filing a lawsuit against Gary F. Alder, D.D.S. for his care and treatment of Zeferina Montelongo. Gary F. Alder, D.D.S. provided substandard care and treatment to Ms. Montelongo in that he failed to properly prescribe antibiotics pre and post extraction for the extractions done on September 28, 2005, failed to properly diagnose the cause of plaintiff's post extraction pain, failed to timely refer the plaintiff to an oral surgeon or other a specialist, failed to properly and timely diagnose plaintiff's post extraction infection, and failed to prevent plaintiff's severe infection when he knew or should have known that plaintiff's

PLAINTIFF'S
EXHIBIT
C

- 2 -

pre-existing medical conditions and medications caused her to be more susceptible to infection. These acts and omissions were the proximate cause of the plaintiff's irreparable jaw bone damage and necessitated placement of plate.

Jeffery F. West, D.D.S.
1353 Sharon Amity Road, Suite 201
Charlotte, North Carolina 28211
Dental License No. _NC 4419_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

FILED

OCT 03 2003

J.T. NOBLIN, CLERK
BY_____ DEPUTY

FRANK OMOBUDE, INDIVIDUALLY AND
ON BEHALF OF THE WRONGFUL DEATH
BENEFICIARIES OF JOSEPHINE
OMOBUDE, DECEASED                                         PLAINTIFF

VS.                                      CIVIL ACTION NO. 3:03CV528LN

MERCK & CO., INC. AND
ROBERT M. EVANS, M.D.                                     DEFENDANTS

<u>MEMORANDUM OPINION AND ORDER</u>

This cause is before the court on the motion of plaintiff
Frank Omobude, individually and on behalf of the wrongful death
beneficiaries of Josephine Omobude, to remand pursuant to 28
U.S.C. § 1447.  Defendant Merck & Co., Inc. has responded to the
motion and the court, having considered the memoranda of
authorities submitted by the parties, concludes that the motion is
not well taken and should be denied.

Plaintiff, a citizen of Mississippi, brought this suit in the
Circuit Court of Hinds County, Mississippi seeking to recover
damages for the alleged wrongful death of his mother, Josephine
Omobude, which he alleges resulted from her use of the
prescription drug Vioxx.  Plaintiff sued Merck, the non-resident
corporation that manufactured and distributed Vioxx, and also
named as a defendant Robert M. Evans, M.D., the local physician
who is alleged to have prescribed Vioxx to Josephine Omobude.
Merck timely removed the case on the basis of diversity

Exhibit D

jurisdiction under 28 U.S.C. § 1332,[1] contending, based on the
allegations of plaintiff's complaint, that the requirement of an
amount in controversy in excess of $75,000 is clearly satisfied,[2]
and contending further that there is complete diversity of
citizenship since Dr. Evans, though a Mississippi resident, has
been fraudulently joined to defeat diversity.  See Heritage Bank
v. Redcom Labs., Inc., 250 F.3d 319, 323 (5th Cir. 2001)
(fraudulent joinder of non-diverse will not defeat diversity
jurisdiction).

The premise of Merck's fraudulent joinder argument, as
gleaned from its notice of removal and its response to plaintiff's
motion to remand, is that plaintiff's complaint does not allege a
sufficient factual basis for his putative claim against Dr. Evans.
In particular, Merck notes that throughout his complaint,
plaintiff repeatedly and consistently asserts that Merck
encouraged the use of Vioxx in "improper customers;" that it
"misrepresented the safety and effectiveness of this drug and
concealed or understated its dangerous side effects;" that despite
knowledge of the defective nature of its product and for the
purpose of increasing its sales and profits at the expense of the

---

[1]     That statute provides, in pertinent part, as follows:
(a) The district courts shall have original jurisdiction
of all civil actions where the matter in controversy
exceeds the sum or value of $75,000, exclusive of
interest and costs, and is between (1) citizens of
different states.

[2]     The court notes that plaintiff has not disputed that the
amount in controversy exceeds $75,000.

general public's health and safety, Merck aggressively marketed
Vioxx both directly to the consuming public and indirectly to
physicians through drug sales representatives as effective and
safe and with inadequate warnings and instructions; and that Merck
failed to provide timely and adequate post-marketing warnings or
instructions after the manufacturer knew of the risk of injury
from Vioxx. On the basis of these allegations, plaintiff alleges
claims against Merck for strict liability, negligence, breach of
express and implied warranties and fraudulent misrepresentation.
Merck argues that in light of plaintiff's repeated allegations
that Merck misrepresented the safety and efficacy of its product
and consistently concealed the known risks and dangers not only
from the consuming public but also from physicians, plaintiff's
charge of medical negligence against Dr. Evans based on nothing
more than a conclusory allegation, wholly unaccompanied by any
factual support, that Dr. Evans "knew, or should have known, of
the dangerous side effects of these medications," and that "his
prescribing such medications in light of such knowledge presents a
deviation from the standard of care," is manifestly insufficient
to state a cognizable claim.

In similar cases, this court has held that conclusory and
contradictory allegations of knowledge, which were belied by the
factual allegations of the complaint, demonstrated that the
resident defendants against whom such allegations of knowledge
were made, had been fraudulently joined. See Brown v. Bristol
Myers Squibb Co., Civ. Action No. 4:02CV301LN, slip op. at 11-12

3

(S.D. Miss. Dec. 2, 2002) (resident physician fraudulently joined
where claim was asserted in conclusory terms and contradicted by
allegations of the pharmaceutical manufacturer's concealment or
misrepresentation of information); Louis v. Wyeth-Ayerst
Pharmaceuticals. Inc., Civ. Action No. 5:02CV102LN (S.D. Miss.
Sept. 25, 2000) (same with respect to resident pharmacy
defendant); see also In re Rezulin Prods. Liab. Litig., No. 00
Civ. 2843, 2003 WL 31852826, at *2 (S.D.N.Y. Dec. 18, 2002)
(physician defendant fraudulently joined based on conclusory
allegations). In the court's opinion, the same conclusion is in
order here.

In so concluding, the court is aware of plaintiff's argument
that "[a] party may plead alternative and inconsistent facts or
remedies against several parties without being barred." Guy James
Constr. Co. v. Trinity Indus., Inc., 644 525, 530 (5th Cir. 1981).
While this may be true generally, the court's point here is that
the plaintiff has not pled inconsistent facts, but rather has pled
consistent facts that are inconsistent with the conclusion he
pleads as to Dr. Evans. Every factual allegation this plaintiff
has made is to the effect that Merck withheld and concealed and
misrepresented the true facts regarding Vioxx; and yet, without
alleging any factual basis for the charge, plaintiff concludes
that Dr. Evans "knew or should have known" the truth about Vioxx
that Merck had misrepresented and concealed.

The court does not suggest that a "knew or should have known"
allegation" will necessarily always be conclusory and hence

4

M00350754

insufficient to state a cognizable claim simply because it is not
attended by a specific factual allegation as to the source of such
knowledge.  However, in cases like this, where a plaintiff has
specifically alleged facts from which one would necessarily infer
that the defendant in question would not have known information
otherwise alleged to have been misrepresented or concealed from
him, then in the court's opinion, in that limited circumstance, to
sustain his pleading burden, the plaintiff would have to plead at
least some facts tending to show why or how the defendant knew or
should have known of the information that has been misrepresented
to or concealed from him.  Otherwise, the court would be in the
untenable position of assuming that a factual basis exists for a
conclusory allegation that is entirely inconsistent with every
factual allegation in the complaint.  No precedent of which this
court is aware suggests that this would be proper.[3]  The caselaw,

_____

[3]    Plaintiff has cited a number of cases from this district
in which claims against physician and pharmacy defendants have
been found sufficient to state a claim, but in the court's
opinion, these cases are readily distinguishable.  Henderson v.
GlaxoSmithKline, No. 5:01CV159BrS (S.D. Miss. March 21, 2000),
involved a question of fraudulent misjoinder, which is not an
issue here.  In Hancock v. Bayer Corp., No. 3:03CV67WS (S.D. Miss.
Apr. 18, 2003), plaintiff alleged that the physicians in question
had committed numerous acts of negligence other than merely
prescribing an allegedly defective drug, such as failing to timely
recognize the plaintiffs' adverse drug reactions, failing to
monitor the plaintiffs, and prescribing the drug in the wrong
dosage and in a manner inconsistent with the product labeling and
contraindicated usages.  Womack v. Bayer Corp., No. 3:03CV157WS
(S.D. Miss. Apr. 18, 2003), involved specific allegations of
alleged negligence by the defendant doctor, including that the
physicians should have known of the risks in light of warnings
actually issued to physicians by Bayer.  No such claims were pled
here.  Likewise in the several Bayer cases remanded by Judge
Pickering and cited by plaintiff, including Easterling v. Bayer

5

A00350755

in fact, is to the contrary. See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 313 (5th Cir. 2002) (stating that the court will not "accept as true conclusory allegations or unwarranted deductions of fact"); Sago v. Wal-Mart Stores, Inc., 2003 WL 22076954, at *2 (S.D. Miss. 2003) (holding that "conclusory or generic allegations of wrongdoing on the part of the non-diverse defendant are not sufficient to show that the defendant was not fraudulently joined") (citing Badon v. RJR Nabisco, Inc., 224 F.3d 382, 392-93 (5th Cir. 2000); cf. Fernandez-Montes v. Allied Pilots Ass'n, 987 F.2d 278, 284 (5th Cir. 1996) ("When considering a motion to dismiss for failure to state a claim, the district court must take the factual allegations of the complaint as true and resolve any ambiguities or doubts regarding the sufficiency of the claim in favor of the plaintiff. However, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."); Ross v. Citifinancial, Inc., 2003 WL 22026346, at *3 (5th Cir. 2003) (noting court's recognition of "the similarity between standards for Federal Rule of Civil Procedure 12(b)(6) (failure to state claim) and fraudulent

---

Corp., No. 2:03CV37PG (S.D. Miss. Apr. 24, 2003), Dearman v. Bayer Corp., No. 2:03CV38PG (S.D. Miss. Apr. 24, 2003), Jones v. Bayer Corp., No. 2:03CV53PG (S.D. Miss. Apr. 24, 2003), Keys v. Bayer Corp., No. 2:03CV39PG (S.D. Miss. Apr. 24, 2003), and Sumrall v. Bayer, No. 2:03CV52PG (S.D. Miss. Apr. 24, 2003), the court found that the plaintiffs had made specific allegations of negligence against the resident doctors "for failing to properly monitor and test each of the Plaintiffs according to the defendant drug companies' recommendations." No such allegations were made in plaintiff's complaint in the case at bar. See infra note 4.

6

joinder" but noting that the latter inquiry is broader); <u>Cranston</u>
<u>v. Mariner Healthcare Mgmt. Co.</u>, 2003 WL 21517999, at *4 (N.D.
Miss. 2003)(stating that on motion to dismiss, "[t]he court will
not accept as true any conclusory allegations or unwarranted
deductions of fact").[4]

---

[4]    The court notes that the only claim plaintiff has
alleged against Dr. Evans in his complaint is medical negligence
based on the allegation that Dr. Evans "knew, or should have
known, of the dangerous side effects of these medications" and his
prescribing "said medications in light of such knowledge." In his
motion to remand, however, plaintiff attempts to recharacterize
and add to his claim against Dr. Evans. He argues, for example,
that his claim that Merck produced and distributed defective
products does not preclude his claim against Dr. Evans with regard
to his "negligence in prescribing Vioxx or his negligence in
monitoring plaintiff." He argues further that

> [j]ust as Merck failed to adequately warn Plaintiff's
> Decedent's physician, Dr. Evans failed to conduct
> regular monitoring of Plaintiff's Decedent to ensure the
> discovery of potentially serious side effects.
> including, not limited to, failing to perform adequate
> tests before the initiation of Vioxx treatment, and
> failing to subsequently perform other tests after
> initiation of Vioxx therapy to monitor any change in the
> status of Plaintiff's decedent. . . . Defendant Evans
> also failed to warn Plaintiff's Decedent of possible
> side effects. . . .

None of these allegations, or any hint of such allegations,
appears anywhere in the complaint which, as to Dr. Evans, alleges
only that he was negligent in prescribing Vioxx when he knew, or
should have known, of the dangers of the drug.  Plaintiff cannot
secure remand on the basis of allegations and claims that are not
set forth in his state court pleading.  <u>See</u> However, the
Cavallinis did not cite, nor have we found, any case in which such
evidence has been considered to determine whether a claim has been
stated against the nondiverse defendant under a legal theory not
alleged in the state court complaint.
<u>Cavallini v. State Farm Mut. Auto Ins. Co.</u>, 44 F.3d 256, 263
263 n.14 (5th Cir. 1995)(rejecting plaintiff's "assertion that
post-removal affidavits can be used to defeat removal by
presenting new causes of action").

7

MDL00335...757

For the foregoing reasons, the court concludes that plaintiff's motion to remand is not well taken and should be denied.

Accordingly, it is ordered that plaintiff's motion to remand is denied.

SO ORDERED this 3rd day of October, 2003.

_____
UNITED STATES DISTRICT JUDGE

8

**CT** CORPORATION
A WoltersKluwer Company



**Service of Process
Transmittal**
02/26/2008
CT Log Number 513128229

**TO:**   Debra A Bollwage, Assistant Secretary
Merck & Co., Inc.
One Merck Drive
Whitehouse Station, NJ 08889-0100

**RE:**   **Process Served in Illinois**

**FOR:**   Merck & Co., Inc. (Domestic State: NJ)

FEB 2 7 2008

---

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Zeferina Montelongo, Pltf. vs. Winterset Dental Care, P.C., et al. including Merck & Co., Inc., Dfts. |
| **DOCUMENT(S) SERVED:** | Summons (2 Sets), Complaint, Exhibit(s) |
| **COURT/AGENCY:** | Cook County Circuit Court - Cook County Department - Law Division, IL<br>Case # 2007L 7858 |
| **NATURE OF ACTION:** | Medical Injury - Improper Care and Treatment - Negligent and violent manner causing trauma to the surrounding tissues |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Chicago, IL |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 02/26/2008 at 10:00 |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days, not counting the day of service |
| **ATTORNEY(S) / SENDER(S):** | Katherine A. Cardenas<br>Lucas and Cardenas, P.C.<br>77 West Washington Street<br>Suite 900<br>Chicago, IL 60602<br>312-781-0082 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  Fed Ex Priority Overnight , 790456455638 |
| **SIGNED:**<br>**PER:**<br>**ADDRESS:**<br><br>**TELEPHONE:** | C T Corporation System<br>Tawana Carter<br>208 South LaSalle Street<br>Suite 814<br>Chicago, IL 60604<br>312-345-4336 |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

| | |
|---|---|
| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| **SUMMONS** | **ALIAS - SUMMONS**    CCG N001-10M-1-07-05 (                    ) |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, LAW _____ DIVISION

(Name all parties)

ZEFERINA MONTELONG, Plaintiff

v.

WINTERSET DENTAL CARE, P.C., ANIL K. AGARWAL,
D.D.S., ind. & as agent & servant of WINTERSET DENAL
CARE, P.C., GARY F. ALDER, D.D.S., ind. & as agent
& servant of WINTERSET DENTAL CARE, P.C., and
MERCK & CO., INC., a foreign corporation, Defendants.
**SUMMONS**

No. 2007 L 7858 E _____

MERCK & CO., INC., a foreign corp.
c/o CT Corporation System
208 South LaSalle Street, Suite 814
Chicago, Illinois 60604

**To each Defendant:**

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room 801 _____, Chicago, Illinois 60602

| | | |
|---|---|---|
| ☐ **District 2 - Skokie**<br>5600 Old Orchard Rd.<br>Skokie, IL 60077 | ☐ **District 3 - Rolling Meadows**<br>2121 Euclid<br>Rolling Meadows, IL 60008 | ☐ **District 4 - Maywood**<br>1500 Maybrook Ave.<br>Maywood, IL 60153 |
| ☐ **District 5 - Bridgeview**<br>10220 S. 76th Ave.<br>Bridgeview, IL 60455 | ☐ **District 6 - Markham**<br>16501 S. Kedzie Pkwy.<br>Markham, IL 60426 | ☐ **Child Support**<br>28 North Clark St., Room 200<br>Chicago, Illinois 60602 |

You must file within 30 days after service of this Summons, not counting the day of service.
**IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.**

**To the officer:**

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

FEB 1 4 2008

| | |
|---|---|
| Atty. No.: 34554 | WITNESS, _____, _____ |
| Name: Katherine A. Cardenas/Lucas and Cardenas, P.C. | |
| Atty. for: Plaintiff | **Clerk of Court** |
| Address: 77 West Washington Street, Suite 900 | |
| City/State/Zip: Chicago, Illinois 60602 | Date of service: _____, _____ |
| Telephone: 312/781-0082 | (To be inserted by officer on copy left with defendant or other person) |
| Service by Facsimile Transmission will be accepted at: _____ | 312    332-4718 |
| | (Area Code)    (Facsimile Telephone Number) |

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

_____ FILED   _____ ENTERED
_____ LODGED   _____ RECEIVED

**NOV 27 2002**

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY _____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

IN RE: PHENYLPROPANOLAMINE
(PPA) PRODUCTS LIABILITY
LITIGATION,

MDL NO. 1407

ORDER DENYING PLAINTIFF'S
MOTION TO REMAND

This document relates to:

Barnett, et al. v. American
Home Products Corp., et al.,
No. C02-423R

THIS MATTER comes before the court on the motion of plain-
tiffs to remand the case to state court in Mississippi.  Having
reviewed the papers filed in support of and in opposition to this
motion, the court rules as follows:

I.   BACKGROUND

Plaintiffs purchased a variety of over-the-counter drugs
including, but not limited to, products sold under the trade
names "Robitussin," "Alka-Seltzer Plus," "Dimetapp," "Tavist D,"
"BC," "Triaminic," "Contac," "Comtrex," and "Equate Tussin CF."
All of these products contained the ingredient phenylpro-
panolamine ("PPA").  The individuals later consumed the medica-
tion and suffered unidentified types of injuries.  In June 2001,
plaintiffs filed an amended complaint in Mississippi state court
linking the PPA in the medicine with the injuries sustained.

ORDER
Page - 1 -



CV 02 00423  00000043

**Exhibit E**

1     The complaint alleges numerous causes of action against both

2 manufacturers and distributors of PPA-containing products, as

3 well as several retail stores that sold those products.  One of

4 the stores named as a defendant, Bill's Dollar Stores, Inc.,

5 d/b/a Bill's Dollar Store ("Bill's Dollar Store"), is a Missis-

6 sippi corporation.  Two of the six total plaintiffs purchased

7 PPA-containing products from Bill's Dollar Store.[1]

8     Defendants removed the complaint to federal court alleging

9 that plaintiffs fraudulently joined Bill's Dollar Store.  Plain-

10 tiffs moved to remand to state court.  The case was later trans-

11 ferred to this court as part of a multi-district litigation

12 ("MDL").

13                     II.  ANALYSIS

14     A plaintiff cannot defeat federal jurisdiction by fraudu-

15 lently joining a non-diverse party.  As an MDL court sitting in

16 the Ninth Circuit, this court applies the Ninth Circuit's fraudu-

17 lent joinder standard to the motion to remand.  See, e.g., In re

18 Diet Drugs Prods. Liab. Litig., 220 F. Supp. 2d 414, 423 (E.D.

19 Pa. 2002); In re Bridgestone/Firestone, 204 F. Supp. 2d 1149,

20 1152 n.2 (S.D. Ind. 2002); In re Tobacco/Gov'tal Health Care

21 Costs Litig., 100 F. Supp. 2d 31, 34 n.1 (D. D.C. 2000); In re

22 _____

23    [1]Defendants assert the misjoinder of these plaintiffs'
   claims and request that the court sever and deny remand as to the
24 four plaintiffs who did not purchase any products from Bill's
   Dollar Store, or from any other Mississippi store.  However,
25 because, as discussed below, the court denies remand as to all
   plaintiffs named in this action, the court need not address the
26 question of misjoinder at this time.

ORDER
Page - 2 -

1  <u>Ford Motor Co. Bronco II Prods. Liab. Litig.</u>, MDL-991, 1996 U.S.
2  Dist. LEXIS 6769, at *2-4 (E.D. La. May 16, 1996).[2]  Under this
3  standard, joinder of a non-diverse party is deemed fraudulent
4  "'[i]f the plaintiff fails to state a cause of action against a
5  resident defendant, and the failure is obvious according to the
6  settled rules of the state.'"  <u>Morris v. Princess Cruises, Inc.</u>,
7  236 F.3d 1061, 1067 (9ᵗʰ Cir. 2001) (quoting <u>McCabe v. General</u>
8  <u>Foods Corp.</u>, 811 F.2d 1336, 1339 (9ᵗʰ Cir. 1987)).[3]

9      The propriety of removal to federal court is determined from
10  the allegations in the complaint at the time of removal.  <u>See</u>
11  <u>Ritchey v. Upjohn Drug Co.</u>, 139 F.3d 1313, 1318 (9ᵗʰ Cir. 1998)
12  However, in the case of fraudulent joinder, the defendant "'is
13  entitled to present the facts showing the joinder to be fraudu-
14  lent.'"  <u>Id.</u> (quoting <u>McCabe</u>, 811 F.2d at 1339).  <u>See also Morris</u>

15  _____

16      [2] <u>See generally</u> <u>Menowitz v. Brown</u>, 991 F.2d 36, 40-41 (2d
     Cir. 1993); <u>In Re Korean Airlines Disaster</u>, 829 F.2d 1171, 1174-
17  76 (D.C. Cir. 1987).

18      [3] However, as a practical matter, application of the Fifth
     Circuit's fraudulent joinder standard would not alter the court's
19  conclusion.  <u>See</u> <u>Badon v. RJR Nabisco, Inc.</u>, 224 F.3d 382, 393
     (5th Cir. 2000) (remand is denied where there is "no reasonable
20  basis for predicting that plaintiffs might establish liability .
     . . against the in-state defendants.")  For example, recent MDL
21  courts utilized fraudulent joinder standards similar, and in one
     case identical, to the Fifth Circuit's standard in deeming
22  Mississippi pharmacies and their employees fraudulently joined
     for reasons similar to those expressed in this opinion.  <u>See In</u>
23  <u>re Diet Drugs Prods. Liab. Litig.</u>, 220 F. Supp. 2d at 423-24
     (noting that there had been "a pattern of pharmacies being named
24  in complaints, but never pursued to judgment, typically being
     voluntarily dismissed at some point after the defendants' ability
25  to remove the case has expired"); <u>In re Rezulin Prods. Liab.</u>
     <u>Litig.</u>, 133 F. Supp. 2d 272, 279 & n.3, 288-92 (S.D.N.Y. 2001).
26

ORDER
Page - 3 -

1  236 F.3d at 1067-68 (citing <u>Cavallini v. State Farm Mut. Auto.</u>
2  <u>Ins. Co.</u>, 44 F.3d 256, 263 (5th Cir. 1995) for the proposition
3  that the court may "'pierc[e] the pleadings'" and consider
4  "summary judgment-type evidence.")

5      Defendants allege that plaintiffs fraudulently joined Bill's
6  Dollar Store, while plaintiffs claim the existence of legitimate
7  causes of action against Bill's Dollar Store, including products
8  liability, negligence, misrepresentation, and implied warranty
9  claims.   The parties also argue as to the relevance of a bank-
10  ruptcy petition filed by Bill's Dollar Store prior to the filing
11  of this suit.

12  A.   <u>Products Liability</u>

13      The complaint contains failure to warn and design defect
14  allegations pursuant to the Mississippi Products Liability Act.
15  Miss. Code Ann. § 11-1-63.  Under the Products Liability Act,
16  plaintiff must show that at the time the product left the control
17  of the manufacturer or seller, it was defective in failing to
18  contain adequate warnings or instructions, and/or was designed in
19  a defective manner.  Miss. Code Ann. § 11-1-63 (a)(i)(2)-(3).
20  Plaintiff must also show that the manufacturers and sellers knew,
21  or in light of reasonably available knowledge or the exercise of
22  reasonable care should have known, about the danger that caused
23  the alleged damage.  Miss. Code Ann. § 11-1-63 (c)(i),(f)(i).[4]

24  _____

25      [4] <u>See also</u> <u>Huff v. Shopsmith, Inc.</u>, 786 So.2d 383, 387 (Miss.
    2001)("With the adoption of 11-1-63, common law strict liability,
26  as laid out in <u>State Stove Mfg. Co. v. Hodges</u>, 189 So.2d 113

    ORDER
    Page - 4 -

1    Plaintiffs allege in the complaint that "defendants" or "all
2  defendants" knew or should have known of dangers associated with
3  PPA.   Moreover, plaintiffs specifically aver this knowledge or
4  reason to know on the part of the retailer defendants, including
5  Bill's Dollar Store.  However, the court finds that no factual
6  basis can be drawn from the complaint that Bill's Dollar Store
7  had knowledge or reason to know of any dangers allegedly associ-
8  ated with PPA.

9    First, the complaint utilizes the plural "defendants" in a
10 number of allegations that one could not reasonably interpret to
11 include Bill's Dollar Store. See, e.g., Louis v. Wyeth-Ayerst
12 Pharm., Inc., No. 5:00CV102LN, slip op. at 5-9 (S.D. Miss. Sep.
13 25, 2000) (finding products liability allegations lodged against
14 "defendants" conclusory where there was no factual support for
15 conclusion that Mississippi pharmacies had knowledge or reason to
16 know of alleged dangers associated with various diet drugs).[5]

17 ——————————————————————

18 (Miss. 1966), is no longer the authority on the necessary
   elements of a products liability action.")
19
       [5] See also In re Diet Drugs Prods. Liab. Litig., 220 F. Supp.
20 2d at 424 (finding complaints, including failure to warn,
   negligence, breach of warranty, and strict liability claims,
21 devoid of specific allegations against Mississippi pharmacies and
   "filled instead with general statements levied against all
22 defendants, which most properly can be read as stating claims
   against drug manufacturers."); In re Rezulin Products Liab.
23 Litig., 133 F. Supp. 2d at 291 (finding improper joinder in case
24 where Mississippi pharmacies were lumped in with manufacturers
   and acts alleged, including failure to warn, breach of warranty,
25 and fraud, were attributed to "'defendants' generally", but
   never connected to the pharmacies); accord Badon, 224 F.3d at
26 391-93 ("While the amended complaint does often use the word

   ORDER
   Page - 5 -

1   For example, the complaint describes "defendants" as members of
2   the Non-Prescription Drug *Manufacturers* Association ("NDMA").
3   Through this association, "defendants" purportedly participated
4   in numerous discussions relating to the safety of PPA over the
5   past two decades, had representatives sit on the NDMA PPA Task
6   Force, and funded relevant studies.  In other words, plaintiffs,
7   in significant part, demonstrate "defendants'" knowledge as to
8   risks allegedly posed by PPA through activities engaged in by
9   manufacturer defendants alone.

10      Indeed, while "defendants" are alleged to have been aware or
11  to have had responsibility for awareness of numerous *scientific*
12  journal articles, incident reports, medical textbooks, and other
13  reports containing information as to risks of PPA consumption,
14  general *medical* practitioners are excluded from this awareness
15  and described as being not "fully informed."  The complaint
16  supplies no factual support for a conclusion that a dollar store
17  possessed medical and scientific knowledge beyond that possessed
18  by medical practitioners.

19      Second, the complaint specifically lays the responsibility
20  for allegedly concealing dangers posed by PPA on the manufacturer
21  defendants.  For example, the complaint alleges that the manufac-
22  turer defendants concealed material facts regarding PPA through
23  product packaging, labeling, advertising, promotional campaigns
24  ──────────────────────
25  'defendants,' frequently it is evident that such usage could not
    be referring to the 'Tobacco Wholesalers.'"; finding conspiracy
26  allegations against Louisiana defendants entirely general).

ORDER
Page − 6 −

1  and materials, and other methods.  This allegation directly
2  undermines and contradicts the idea that Bill's Dollar Store had
3  knowledge or reason to know of alleged defects.  See, e.g.,
4  Louis, slip op. at 4-5 (finding complaint's "major theme" to
5  consist of the "manufacturers' intentional concealment of the
6  true risks of the drug(s), coupled with dissemination through
7  various media of false and misleading information of the safety
8  of the drug(s) at issue, [which belied] any suggestion of knowl-
9  edge, or reason to know by [the] resident defendants.")  Cf. In re
10 Rezulin Products Liab. Litig., 133 F. Supp. 2d 272, 290 (S.D.N.Y.
11 2001) (finding Mississippi pharmacies facing failure to warn
12 claims fraudulently joined where "the theory underlying the
13 complaints [was] that the manufacturer defendants hid the dangers
14 of Rezulin from plaintiffs, the public, physicians, distributors
15 and pharmacists -- indeed from everyone.")

16     In sum, the court concludes that one could not reasonably
17 read the complaint to support the idea that the retailer defen-
18 dants had knowledge or reason to know of any dangers allegedly
19 associated with PPA.  Indeed, reading the complaint as a whole,
20 this allegation reveals itself as directed towards the manufac-
21 turer defendants alone.  As such, the court finds that plaintiffs
22 fail to state a products liability cause of action against Bill's
23 Dollar Store.[6]

24 _____

25     [6] The complaint once alludes to an "alternative" breach of
   express warranty claim under the Products Liability Act.  See
26 Miss. Code Ann. § 11-1-63 (a)(i)(4) (requiring a showing that the

B.    Negligence and Misrepresentation

     The complaint alleges negligence and misrepresentation by
Bill's Dollar Store. A negligence cause of action also requires
a showing of knowledge or reason to know on the part of the
seller. See, e.g., R. Clinton Constr. Co. v. Bryant & Reaves,
Inc., 442 F. Supp. 838, 851 (N.D. Miss. 1977) ("The rule is well
settled that in order to fasten liability upon a party for
negligence, it must be shown by a preponderance of the evidence
that he knew or through the exercise of reasonable care should
have known that his selection of a [product] would cause damage
to his customer.")[7]  A misrepresentation cause of action requires

_____

seller breached an express warranty or failed to conform to other
express factual representations upon which the claimant relied).
However, the products liability allegations go on to touch solely
upon failure to warn and design defect claims. Because the
complaint lacks any factual basis for support of a breach of
express warranty claim against Bill's Dollar Store, the court
also finds this bare allegation insufficient to support remand.

     [7]Accord Louis, slip op. at 3-4 & n.3 ("[K]nowledge, or a
reason to know, is also a necessary requisite for any claim of
failure to warn or negligence that a plaintiff might undertake to
assert extraneous to a claim under the Products Liability Act
itself (assuming solely for the sake of argument that such a
claim could exist)."); Cadillac Corp. v. Moore, 320 So.2d 361,
365 (Miss. 1975) (discussing negligence in "vendor/purchaser"
context and stating that "fault on the part of a defendant so as
to render him liable is to be found in action or nonaction,
accompanied by knowledge, actual or implied, of the probable
result of his conduct.") Cf. Moore v. Memorial Hosp. of
Gulfport, 825 So.2d 658, 664-66 (Miss. 2002) (extending "learned
intermediary" doctrine to pharmacists in case involving
prescription drug, and holding no actionable negligence claim
could exist against a pharmacy unless a plaintiff indisputably
informed the pharmacy of health problems which contraindicated
the use of the drug in question, or the pharmacist filled

ORDER
Page - 8 -

1 a plaintiff to show:

2      (1) a representation; (2) its falsity; (3) its materi-
       ality; (4) the speaker's knowledge of its falsity or
3      ignorance of its truth; (5) the speaker's intent that
       the representation should be acted upon by the hearer
4      and in the manner reasonably contemplated; (6) the
       hearer's ignorance of its falsity; (7) the hearer's
5      roliance on its truth; (8) the hearer's right to rely
       thereon; and (9) the hearer's consequent and proximate
6      injury.

7 Johnson v. Parke-Davis, 114 F. Supp. 2d 522, 525 (S.D. Miss.

8 2000) (citing Allen v. Mac Tools, Inc., 671 So.2d 636, 642 (Miss.

9 1996)).

10      Again, the court finds that the general and contradictory

11 allegations in the complaint do not support the existence of any

12 knowledge or reason to know on the part of Bill's Dollar Store to

13 support a negligence cause of action.  The court finds the

14 complaint similarly bereft of any factual support for the idea

15 that Bill's Dollar Store made any misrepresentations whatsoever

16 to plaintiffs regarding the PPA-containing products.  See, e.g.,

17 Johnson, 114 F. Supp. 2d at 525 ("Suffice it to say that Plain-

18 tiffs have no proof . . . that any of the named [Mississippi]

19 representatives made any representations directly to any of the

20 Plaintiffs.  Thus, none of the Plaintiffs was the 'hearer' of any

21 of the sales representatives' alleged misrepresentations.";

22 finding plaintiffs had no cause of action for misrepresentation).

23 Instead, as discussed above, the complaint attributes this

24

25 _____

26 prescriptions in quantities inconsistent with the recommended
   dosage guidelines).

ORDER
Page - 9 -

1 | behavior to the manufacturing defendants alone.  As such, the
2 | court also finds that plaintiffs fail to state negligence and
3 | misrepresentation causes of action against Bill's Dollar Store.
4 | C.    Implied Warranty
5 |      The complaint also alleges that Bill's Dollar Store breached
6 | implied warranties of merchantability and fitness for particular
7 | purpose.  See Miss. Code Ann. §§ 75-2-314, 315.  The complaint
8 | accuses "defendants" of breaching the implied warranty of mer-
9 | chantability in failing to adequately label containers and
10 | packages containing PPA, and because the products sold failed to
11 | conform to promises or affirmations of facts made on the contain-
12 | ers or labels.  See Miss. Code Ann. § 75-2-314 (2)(e)-(f).  The
13 | complaint accuses both manufacturers and sellers of breaching the
14 | implied warranty of fitness for particular purpose where they had
15 | reason to know of the particular use of the products, and the
16 | purchasers relied on the sellers' skill or judgment in selecting
17 | and furnishing suitable and safe products.  See Miss. Code Ann. §
18 | 75-2-315.
19 |      In order to recover for breach of implied warranty, a buyer
20 | "must within a reasonable time after he discovers or should have
21 | discovered any breach notify the seller of breach or be barred
22 | from any remedy."  Miss. Code Ann. § 75-2-607 (3)(a); accord C.R.
23 | Daniels, Inc. v. Yazoo Mfg. Co., 641 F. Supp. 205, 210-11 (S.D.
24 | Miss. 1986); Gast v. Rogers-Dingus Chevrolet, 585 So. 2d 725,
25 | 730-31 (Miss. 1991).  Here, the complaint contains no indication
26 | that plaintiffs provided Bill's Dollar Store with any notice as

ORDER
Page - 10 -

1 to an alleged breach of warranty prior to the institution of this
2 lawsuit.

3     Additionally, with respect to the merchantability claim, the
4 complaint contains no factual support for a conclusion that
5 Bill's Dollar Store was in any way involved with the labeling
6 and/or packaging of the products at issue.  Instead, the com-
7 plaint alleges that the manufacturer defendants concealed mate-
8 rial facts regarding PPA through product packaging and labeling.

9     The court likewise finds plaintiffs' fitness for particular
10 purpose allegation insufficient. "Mississippi does not recognize
11 an implied warranty of fitness for a particular purpose when the
12 good is purchased for the ordinary purpose of a good of that
13 kind." Farris v. Coleman Co., 121 F. Supp. 2d 1014, 1018 (N.D.
14 Miss. 2000) (fitness for particular purpose claim failed where
15 plaintiff purchased cooler to keep food and beverages cold - the
16 ordinary purpose for which a cooler is used).  Here, plaintiffs
17 attested that they purchased PPA-containing products to remedy
18 their "cold, flu, sinus and/or allergy symptoms" - the ordinary
19 purpose of these medications.

20     Therefore, for the reasons stated above, the court finds
21 that plaintiffs fail to state implied warranty causes of action
22 against Bill's Dollar Store.

23 D.   Bankruptcy

24     Bill's Dollar Store filed a bankruptcy petition in February
25 2001, several months prior to the filing of plaintiffs' com-
26 plaint.  The filing of the bankruptcy petition operates as a stay

ORDER
Page - 11 -

1  on judicial or other proceedings brought against Bill's Dollar
2  store that were or could have commenced prior to the commencement
3  of the bankruptcy proceeding.  See 11 U.S.C. § 362(a); In re
4  Cajun Elec. Power Co-Op, Inc., 185 F.3d 446, 457 (5th Cir. 1999).

5       Plaintiffs argue that the automatic stay poses no barrier to
6  relief given that they were unaware of the bankruptcy petition at
7  the time they filed their complaint, and because they anticipate
8  that the Bankruptcy Court will agree to their pending request to
9  lift the stay.  However, whether or not plaintiffs knew of the
10  petition and whether or not the stay may later be lifted, the
11  fact remains that, at the time plaintiffs filed their complaint,
12  the stay operated to prohibit their lawsuit.  As noted above, the
13  court determines jurisdiction based on the claims as stated at
14  the time of removal.  As such, the court finds the existence of
15  the stay at the time of filing serves as an additional reason to
16  deny remand of this matter to state court.  Cf. Ritchey, 139 F.3d
17  at 1319-20 (denying remand where the statute of limitations had
18  expired at the time plaintiff filed the complaint).[8]

19                        III.  CONCLUSION

20       The court concludes that plaintiffs fail to state a cause of
21  action against the only non-diverse defendant, and that the

22  _____

23       [8]Unlike in a number of other cases transferred to this MDL,
    the defendants here did not supply the court with any summary
24  judgment-type evidence to establish the retailer defendant's
    fraudulent joinder.  However, the court nonetheless finds that a
25  plain reading of the complaint does not allow a conclusion that
    plaintiffs state a cause of action against Bill's Dollar Store.
26

ORDER
Page - 12 -

1  failure is obvious according to the settled rules of Mississippi.
2  As such, the court finds Bill's Dollar Store fraudulently joined
3  and DENIES plaintiff's motion to remand the case to the state
4  courts of Mississippi.
5       DATED at Seattle, Washington this 26th day of November,
6  2002.
7                              BARBARA JACOBS ROTHSTEIN
8                              UNITED STATES DISTRICT JUDGE
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

ORDER
Page - 13 -