UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS,
EASTERN LAW DIVISION

| | | |
|---|---|---|
| ZEFERINA MONTELONGO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No.    08-cv-1687 |
| | ) | |
| WINTERSET DENTAL CARE, P.C., ANIL K. | ) | |
| AGARWAL, D.D.S., individually and as | ) | |
| agent and servant of WINTERSET DENTAL | ) | Judge Andersen |
| CARE, P.C., GARY F. ALDER, D.D.S., | ) | |
| individually and as agent and servant of | ) | |
| WINTERSET DENTAL CARE, P.C., and | ) | |
| MERCK & CO., INC., a foreign corporation, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MOTION TO REMAND TO
THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

Plaintiff, Zeferina Montelongo, by and through her attorneys, Law Offices of Lucas and

Cárdenas, P.C., respectfully asks this Honorable Court to remand this case back to the Circuit

Court of Cook County, Illinois, and in support of her motion, she states the following:

**HISTORY:**

The plaintiff, Zeferina Montelongo, was born on November 17, 1952.  She is currently 55

years old.  She is married to Jesus Montelongo and resides at 5017 South Ridgeway Avenue

Chicago, Illinois 60632.  She is now and has been at all relevant times a resident of the State of

Illinois.  Sometime in 2000, she was diagnosed with Sjogren's syndrome by Dr. Neill Peters at

Mercy Hospital in Cook County, Illinois.  Sjogren's syndrome is an autoimmune disease that

inhibits the production of certain bodily fluids such as saliva and tears.  Due to the decreased

saliva people with Sjogren's syndrome are more susceptible to tooth decay.

- 2 -

Ms. Montelongo began seeing a dentist named Anil K. Agarwal of the Winterset Dental Group on or about June 2, 1997 and continued her care and treatment with Dr. Agarwal until March of 2006.  A true and correct copy of the invoice depicting the dates of service is attached hereto and marked as "Exhibit A."  During the course of her dental care and treatment at Winterset she also was treated by other dentists in addition to Dr. Agarwal.  Specifically, on July 28, 2005, Dr. Gary Alder provided care and treatment to her at Winterset Dental in that he extracted her teeth numbered 23, 24, 25 and 26.  See "Exhibit A."

At all relevant times, Dr. Agarwal, Dr. Alder and Winterset Dental Group were and are now residents of the State of Illinois.  At all relevant times, the plaintiff's dental care and treatment was performed in the State of Illinois.

From July 28, 2005 and until and including April 18, 2006 Ms. Montelongo had continuous pain and discomfort in her lower jaw at or near the extraction site.  Despite numerous visits to the dentists at Winterset Dental Group during this time period, Ms. Montelongo's lower jaw bone infection and abscess were not diagnosed nor treated.  The lack of treatment for this infection caused the jaw bone to decay and slough away requiring the placement of metal plate in her jaw and treatment for the infectious disease throughout her body.  The jaw surgery to remove the decayed bone and insert the plate was performed at the University of Illinois on September 26, 2006.  A true and correct copy of the operative report dated September 26, 2006 is attached hereto and marked as "Exhibit B."

During and at the same time as the dentists' negligent course of the treatment, the plaintiff was actively taking the prescription drug Fosamax.  The plaintiff was first prescribed Fosamax on August 24, 2005.  A true and correct copy of the prescription for Fosamax is attached hereto and marked as "Exhibit C."

- 3 -

Fosamax is manufactured and distributed by Merck, Inc.. Studies have shown that Fosamax has been linked specifically with jaw bone decay. A true and correct copy of Department of Health and Human Services Public Health Service Food and Drug Administration "ODS Postmarketing Safety Review" No. D040283 and dated August 25, 2004 is attached hereto and marked as "Exhibit D."

The concurrent negligence of the dentists' failure to identify and treat the infection and Merck's distribution of Fosamax, a drug known to cause necrosis of the jaw, caused one single indivisible injury to the plaintiff, namely necrosis of the lower mandible and placement of a metal plate.

**ARGUMENT:**

**A.    Merck's Position**

Merck, Inc. in its Notice of Removal has alleged that federal jurisdiction exists because the Illinois defendants were fraudulently joined. Merck alleges that the plaintiff added the Illinois resident dentists to destroy diversity. (Merck's Not. of Removal at pgs. 7-10.)

Merck relies on In re Rezulin Prods. Liab. Litig., Case No. 00 Civ.2483 (LAK), 2003 W.L. 21276425 (S.D.N.Y. June 2, 2003) for the proposition that "the court found that malpractice claims against the plaintiff's former physicians were not properly joined to a products liability complaint, where the plaintiff alleged that the physicians had failed to properly diagnose and monitor the plaintiff's medical condition, where that condition allegedly arose from the use of a drug." (Merck Mot. To Remove p.8)

In addition to the Southern District of New York case mentioned, Merck also cited a Minnesota case for the proposition that:

- 4 -

"The plaintiff cannot assert claims against the dental defendants based upon an allegation that they knew or should have known of some presumed link between Fosamax and osteonecrosis, where the plaintiff also contends that Merck withheld that information and failed to provide warnings. *See In re Baycol Prods. Litig.*, Case No. 03-3150, 2003 WL 23305516, at *2 (D. Minn., Dec 15, 2003) (finding doctor fraudulently joined because, where plaintiff claimed that manufacturer failed to properly represent the risks of a drug, the plaintiff 'failed to demonstrate that her physician knew or should have known of Baycol's risks')."

Both of the cases cited by Merck are wholly distinguishable from the case at bar. In both cases the allegations against the defendant doctor were in the alternative and, in at least one of the cases, the plaintiff failed to demonstrate the doctor knew or should have known the risks associated with the drug. In the cases cited by Merck, either the manufacturer was liable because it failed to warn or the physician was liable because he knew or should have known of the risks before prescribing. In the case at bar, the allegations against the dentists and Merck are not in the alternative. The plaintiff is alleging that all the defendants were concurrently negligent thereby causing one indivisible injury to the plaintiff.

In order for Merck to sustain its burden under the fraudulent joinder doctrine, the court must determine that Dr. Agarwal, Dr. Alder and Winterset Dental Group have been improperly joined and that there is no reasonable possibility that plaintiff would recover on her claims against these defendants in state court.

**B.    Plaintiff's Position**

The case at bar is more analogous to Alegre v. Aguayo, M.D., Case No. 06 C 5744, 2007 U.S. Dist. LEXIS 3266 (N.D. IL. 2007), a true and correct copy of which is attached hereto and marked as "Exhibit E." In Alegre, District Court Judge Amy J. St. Eve made a thorough analysis of many of the same issues that are present in the case at bar. It should be noted that Merck was a defendant in the Alegre case as well as the case at bar.

- 5 -

### 1.    Jurisdiction

First, Judge St. Eve determined that a motion to remand should be decided prior to a motion to stay because the court must first assure itself that it has jurisdiction over the matter stating:

> "The constitutional significance of jurisdiction, concerns of judicial efficiency and the importance of allowing plaintiffs to choose their forum, together with the language of 28 U.S.C. § 1447(c), which directs that 'if any time before judgment it appears that the district court lacks subject matter jurisdiction, the case *shall* be remanded' (emphasis added), dictate that 'a court's first step should be to make a preliminary assessment of the jurisdictional issue.' Meyers, 143 F. Supp. 2d at 1048. Then, 'if this preliminary assessment suggests that removal was improper, the court should promptly complete its consideration and remand the case to state court.' Id. at 1049. …. The requirement that jurisdiction established as a threshold matter, 'springs from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'" Alegre 2007 U.S. Dist LEXIS 3266 at *6.

Based upon the foregoing, it is clear that the court should first address the plaintiff's motion to remand. The plaintiff in the instant action maintains that complete diversity is lacking and that the case should be remanded to the Circuit Court of Cook County, Illinois.

### 2.    Fraudulent Joinder

Next the District Court addressed the issue of fraudulent joinder and stated that the "party arguing fraudulent joinder must demonstrate that there is 'no reasonable possibility that a state court would rule against the in-state defendant.'" Alegre 2007 U.S. Dist. LEXIS 3266 at *10. In Alegre, the District Court found that Merck failed to meet this burden in that 1) plaintiff's allegations against Merck and the doctors were not inconsistent and 2) that Merck had simply ignored allegations of the doctors' negligence that precluded the application of the fraudulent joinder doctrine. Alegre 2007 U.S. Dist. LEXIS 3266 at *12 and 13.

- 6 -

Merck, in the case at bar, never addresses nor mentions this issue in its notice of removal. The plaintiff alleges that she has stated a clear cause of action against the defendant dentists and points to the fact that they are at issue in the case. The plaintiff filed the complaint against these dentists and they have answered the complaint and would have proceeded to the discovery phase of the case but for the removal of this cause of action to federal court. None of the defendants brought a motion to dismiss for failure to state a cause of action under Illinois law and Illinois Supreme Court Rule 622 affidavits were attached to the complaint stating that a dentist has reviewed the medical records of the plaintiff and in his opinion the defendant dentists deviated from the standard of care. A true and correct copy of the answers to the complaint and 622 affidavits are attached hereto and marked as "Exhibit F." Therefore, as in the <u>Alegre</u> case, the application of the fraudulent joinder doctrine is not applicable.

### 3.    Fraudulent Misjoinder

The <u>Alegre</u> court next addressed the issue of fraudulent misjoinder. Merck claimed that the in-state defendants were misjoined because the claims against the doctors and Merck do not arise out of the same occurrence. <u>Alegre</u> 2007 U.S. Dist. LEXIS 3266 at *15. The court stated that even though it declined to follow <u>Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353, 1360 (11th Cir. 1996)</u>, the plaintiff had not misjoined any defendants. <u>Alegre</u> 2007 U.S. Dist. LEXIS 3266 at *18. The court reasoned that:

> "Illinois law, similar to federal law, allows plaintiffs to join defendants 'against whom a liability is asserted either jointly, severally or in the alternative arising out of the same transaction or series of transactions.' <u>735 ILCS 5/2-405(a)</u>; compare <u>Fed. R. Civ. P. 20(a)</u> (allowing joinder of parties as defendants 'if there is asserted against them jointly, severally or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence or series of transactions or occurrences and if any question of law or fact common to all

- 7 -

> defendants will arise in the action'). 'The objective of joinder is the economy of actions and trial convenience.'" <u>Alegre</u> 2007 U.S. Dist. LEXIS 3266 at *18.

Based upon the foregoing, the court remanded the case back to the state court.

### 4.    Indivisible Injury

In addition to <u>Alegre</u>, the Seventh Circuit has long recognized that independent tortfeasors can cause an indivisible injury.  In <u>Watts vs. James Laurent, et al.</u>, 774 F.2d 168, 179, (7th Cir. 1985), the Court stated "it is axiomatic that where several independent actors concurrently or consecutively produce a single, indivisible injury, each actor will be held jointly and severally liable for the entire injury.  (Citations omitted.)"

In <u>DePaepe vs. General Motors Co.</u>, 33 F.3d 737, 742, (7th Cir. 1994) the court stated:

> "DePaepe's quadriplegia was an indivisible injury that could not reasonably be apportioned between two possible causes–those being the Buick's collision with the other vehicle and the second impact with the allegedly defective sun visor/header, as there was no clear evidence showing that either but not both had caused a distinct portion of the injury.  (Citations omitted.)  The district court should therefore have ruled as a matter of law the DePaepe's injury was indivisible and that it was incapable of apportionment."

The same rationale holds true in the case at bar.  There is no clear evidence that either but not both of the concurrent actions of the dentists and Merck caused a separate injury to the plaintiff.  Since this is an indivisible injury the case cannot be divided.

The plaintiff in the case at bar has made allegations of concurrent negligence.  The plaintiff alleges that the dentists were negligent in that they failed to prevent, diagnose and treat the infection of the jaw during their course of care and treatment of the plaintiff.  The plaintiff has furthered alleged that during that negligent course of treatment, the plaintiff was prescribed and ingested FOSAMAX which has been linked to necrosis of the jaw.

- 8 -

Consistent with the rationale as stated in both <u>Alegre</u> and <u>Watts,</u> the plaintiff has a right to pursue her claims against the concurrent tortfeasors (dentists and Merck) in a single action. To divide the cases would cause an insurmountable burden upon the plaintiff.  At the trial against the dentists, the defendant dentists would argue that Merck is liable for the injury because they did not disclose the drugs propensity to attack the jaw bone–yet Merck would not be a party to the case.  At the trial against Merck, defendant Merck would maintain that the dentists were liable for the injury in that they failed to prevent, diagnose and treat the underlying jaw infection.  Again, if the court divided the case, the dentists would not be a party to the case.  The plaintiff would be unable in each case to prove to the jury what portion or percentage of her jaw injury was caused by the individual defendant's negligence.  The most judicially feasible route is to allow the plaintiff to maintain all of her causes of action in one case and have the jury determine liability based upon all the facts of the case as they truly existed concurrently.

### C.    Conclusion

Based upon the forgoing, the plaintiff did not fraudulently join or misjoin the dentists in the case at bar.  Since the dentists are proper parties to the case, complete diversity does not exist.  Therefore,  the case should be remanded to the Circuit Court of Cook County, Illinois in its entirety.  Merck's Motion to Stay and Motion to Sever should be denied.

s/ Katherine A. Cárdenas
_____
Katherine A. Cárdenas

Law Offices of Lucas & Cárdenas, P.C.
77 West Washington Street, Suite 900
Chicago, Illinois 60602
312-781-0082
312-332-4718 (fax)

- 9 -

## CERTIFICATE OF SERVICE

I hereby certify that on April 15, 2008 a copy of the foregoing was served by first class mail, postage prepaid, on:

Attorneys for Merck:
Dmitry Shifrin
Bryan Cave LLP
161 North Clark Street, Suite 4300
Chicago, Illinois 60601

Stephen G. Strauss
Bryan Cave LLP
211 North Broadway, Suite 3600
St. Louis, Missouri 63102

Attorneys for Winterset & Dr. Agarwal:
John M. Green and
Sylvia Karalekas
Green Law Offices, LLC
200 West Jackson Boulevard, Suite 2060
Chicago, Illinois 60606

Attorneys for Dr. Alder:
Drew Balac
Weldon-Linne & Vogt
105 West Madison Street, Suite 1400
Chicago, Illinois 60602

s/ Katherine A. Cárdenas
_____
Katherine A. Cárdenas

Law Offices of Lucas & Cárdenas, P.C.
77 West Washington Street, Suite 900
Chicago, Illinois 60602
312-781-0082
312-332-4718 (fax)

**Dr. Anil K. Agarwal, DDS**
**Winterset Dental Care**
8559 S. Pulaski Rd.
Chicago, IL 60652
Tel: 1-773-582-0035

## RECEIPT

| Date | Account Number |
|------|----------------|
| 11/28/2006 | 01132 |

**Mr. Jesus Montelongo**
5017 S. Ridgeway Avenue
Chicago IL 60632

| Amount Due |
|------------|
| $0.00 |

| Date | Tooth | Surf. | Code | Name | Description | Charges | Payments |
|------|-------|-------|------|------|-------------|---------|----------|
| 03/18/1997 | | | 00110 | Jesus | Initial oral exam | $35.00 | |
| 03/18/1997 | | | D0274 | Jesus | Bitewings-4 | $25.00 | |
| 03/18/1997 | | | D0330 | Jesus | Panorex single film | $75.00 | |
| 03/18/1997 | | | 00001 | Jesus | Cash Pymt ---Thank You | | $60.00 |
| 03/31/1997 | UL | | 4341 | Jesus | Perio Scale and Root Plane | $115.00 | |
| 03/31/1997 | LL | | 4341 | Jesus | Perio Scale and Root Plane | $115.00 | |
| 03/31/1997 | | | D9910 | Jesus | Desensitizing Medicaments | $10.00 | |
| 04/12/1997 | 15 | | D0220 | Jesus | Intraoral first film | $10.00 | |
| 04/12/1997 | 14 | OL | D2331 | Jesus | Composite 2 surface | $115.00 | |
| 04/12/1997 | 15 | DOL | D2331 | Jesus | Composite 2 surface | $135.00 | |
| 04/12/1997 | | | 00001 | Jesus | Cash Pymt ---Thank You | | $100.00 |
| 04/19/1997 | | LR | 04341 | Jesus | Perio Scale and Root Plane | $115.00 | |
| 04/19/1997 | | UR | 04341 | Jesus | Perio Scale and Root Plane | $115.00 | |
| 04/19/1997 | 30 | OB | D2331 | Jesus | Composite 2 surface | $115.00 | |
| 04/19/1997 | 31 | OB | D2331 | Jesus | Composite 2 surface | $115.00 | |
| 04/19/1997 | | | 00001 | Jesus | Cash Pymt ---Thank You | | $50.00 |
| 04/21/1997 | | | 00003 | Jesus | Primary Ins Pymt | | $135.00 |
| 05/02/1997 | | | 00003 | Jesus | Primary Ins Pymt | | $184.00 |
| 05/09/1997 | | | 00003 | Jesus | Primary Ins Pymt | | $194.40 |
| 05/16/1997 | | | 00003 | Jesus | Primary Ins Pymt | | $368.00 |
| 05/27/1997 | 5 | DO | D2331 | Jesus | Composite 2 surface | $115.00 | |
| 05/27/1997 | 4 | MO | D2331 | Jesus | Composite 2 surface | $115.00 | |
| 05/27/1997 | 2 | OL | D2331 | Jesus | Composite 2 surface | $115.00 | |
| 05/27/1997 | | | 00001 | Jesus | Cash Pymt ---Thank You | | $60.00 |
| 06/02/1997 | | | 00110 | Zeferina | Initial oral exam | $38.00 | |
| 06/02/1997 | | | D0220 | Zeferina | Intraoral first film | $10.00 | |
| 06/02/1997 | | | D0230 | Zeferina | Intraoral one add. film | $10.00 | |
| 06/02/1997 | | | D0272 | Zeferina | Bitewing-two films | $18.00 | |
| 06/02/1997 | | | D0330 | Zeferina | Panorex single film | $75.00 | |
| 06/14/1997 | | | 01230 | Jesus | Topical fluoride/Adult | $12.00 | |
| 06/14/1997 | | | D1110 | Jesus | Prophylaxis - Adult | $50.00 | |
| 06/14/1997 | | | 00001 | Jesus | Cash Pymt ---Thank You | | $50.00 |
| 06/23/1997 | | | 00001 | Zeferina | Cash Pymt ---Thank You | | $500.00 |
| 06/23/1997 | | | 00002 | Zeferina | Check Pymt #112039 | | $1,000.00 |
| 06/28/1997 | | | 00003 | Jesus | Primary Ins Pymt | | $15.40 |
| 06/30/1997 | | | 00003 | Zeferina | Primary Ins Pymt | | $147.00 |
| 07/07/1997 | 7 | | D2750 | Zeferina | Porcelain fused gold crown | $650.00 | |
| 07/07/1997 | 8 | | D2750 | Zeferina | Porcelain fused gold crown | $650.00 | |
| 07/07/1997 | 9 | | D2750 | Zeferina | Porcelain fused gold crown | $650.00 | |

**Dr. Anil K. Agarwal, DDS**
**Winterset Dental Care**
**8559 S. Pulaski Rd.**
**Chicago, IL 60652**
**Tel: 1-773-582-0035**

**RECEIPT**

| Date | Account Number |
|---|---|
| 11/28/2006 | 01132 |

**Mr. Jesus Montelongo**
**5017 S. Ridgeway Avenue**
**Chicago IL 60632**

| Amount Due |
|---|
| $0.00 |

| Date | Tooth | Surf. | Code | Name | Description | Charges | Payments |
|---|---|---|---|---|---|---|---|
| 07/07/1997 | 6 | | D2750 | Zeferina | Porcelain fused gold crown | $650.00 | |
| 07/07/1997 | 10 | | D2750 | Zeferina | Porcelain fused gold crown | $650.00 | |
| 07/28/1997 | 8 | | D0220 | Zeferina | Intraoral first film | $10.00 | |
| 07/28/1997 | | | 00001 | Zeferina | Cash Pymt ---Thank You | | $300.00 |
| 08/04/1997 | | | 00003 | Zeferina | Primary Ins Pymt | | $659.00 |
| 08/06/1997 | 17 | | D3310 | Zeferina | Root canal-1 | $410.00 | |
| 08/25/1997 | 7 | | D2954 | Zeferina | Prefabricated post & core | $210.00 | |
| 08/25/1997 | | | 00001 | Zeferina | Cash Pymt ---Thank You | | $300.00 |
| 09/22/1997 | | | 00001 | Zeferina | Cash Pymt ---Thank You | | $300.00 |
| 09/26/1997 | 8 | | D0220 | Jesus | Intraoral first film | $10.00 | |
| 09/29/1997 | | | 04910 | Jesus | Periodontal Maintenance | $55.00 | |
| 10/06/1997 | | | 01230 | Zeferina | Topical fluoride/Adult | $12.00 | |
| 10/06/1997 | | | D1110 | Zeferina | Prophylaxis - Adult | $50.00 | |
| 10/06/1997 | | | 00001 | Zeferina | Cash Pymt ---Thank You | | $100.00 |
| 10/08/1997 | | | D0210 | Jesus | Intraoral complete series | $80.00 | |
| 10/08/1997 | | | D4010 | Jesus | Periodontal examination | $35.00 | |
| 11/17/1997 | | | 00001 | Zeferina | Cash Pymt ---Thank You | | $400.00 |
| 12/10/1997 | 20 | | D3320 | Zeferina | Root canal-2 | $475.00 | |
| 12/10/1997 | | | 00001 | Zeferina | Cash Pymt ---Thank You | | $300.00 |
| 12/15/1997 | 20 | | 02952 | Zeferina | Cast post & core | $210.00 | |
| 12/15/1997 | | | 00001 | Zeferina | Cash Pymt ---Thank You | | $200.00 |
| 12/29/1997 | | | 00002 | Jesus | Check Pymt #113 | | $500.00 |
| 12/29/1997 | | | 00003 | Jesus | Primary Ins Pymt | | $0.00 |
| 01/03/1998 | | | D0120 | Jesus | Periodic oral exam | $15.00 | |
| 01/03/1998 | | | D0220 | Jesus | Intraoral first film | $12.00 | |
| 02/16/1998 | 22 | | D2750 | Zeferina | Porcelain fused gold crown | $675.00 | |
| 02/16/1998 | 21 | | D2750 | Zeferina | Porcelain fused gold crown | $675.00 | |
| 02/16/1998 | 20 | | D2750 | Zeferina | Porcelain fused gold crown | $675.00 | |
| 02/16/1998 | | | 00002 | Zeferina | Check Pymt #132 | | $564.20 |
| 03/14/1998 | | | 00003 | Zeferina | Primary Ins Pymt | | $912.50 |
| 03/16/1998 | | | 00002 | Zeferina | Check Pymt #143 | | $100.00 |
| 04/01/1998 | 8 | | 07110 | Jesus | Extraction Single Tooth | $100.00 | |
| 04/01/1998 | | LR | D4260 | Jesus | Osseous surgery per q. | $650.00 | |
| 04/01/1998 | | JL | D4260 | Jesus | Osseous surgery per q. | $650.00 | |
| 04/01/1998 | | UR | D4260 | Jesus | Osseous surgery per q. | $650.00 | |
| 04/01/1998 | | | 00002 | Jesus | Check Pymt #150 | | $300.00 |
| 04/20/1998 | | | 01230 | Zeferina | Topical fluoride/Adult | $14.00 | |
| 04/20/1998 | | | D0120 | Zeferina | Periodic oral exam | $18.00 | |
| 04/20/1998 | | | D1110 | Zeferina | Prophylaxis - Adult | $55.00 | |

Continued

**Dr. Anil K. Agarwal, DDS**
**Winterset Dental Care**
**8559 S. Pulaski Rd.**
**Chicago, IL 60652**
**Tel: 1-773-582-0035**

**RECEIPT**

| Date | Account Number |
|------|----------------|
| 11/28/2006 | 01132 |

**Mr. Jesus Montelongo**
**5017 S. Ridgeway Avenue**
**Chicago IL 60632**

| Amount Due |
|------------|
| $0.00 |

| Date | Tooth | Surf. | Code | Name | Description | Charges | Payments |
|------|-------|-------|------|------|-------------|---------|----------|
| 04/20/1998 | | | 00002 | Zeferina | Check Pymt #154 | | $200.00 |
| 04/27/1998 | | | 00002 | Zeferina | Check Pymt #161 | | $250.00 |
| 05/04/1998 | 27 | | D2750 | Zeferina | Porcelain fused gold crown | $675.00 | |
| 05/04/1998 | 29 | | D2750 | Zeferina | Porcelain fused gold crown | $675.00 | |
| 05/04/1998 | 28 | | D2750 | Zeferina | Porcelain fused gold crown | $675.00 | |
| 05/04/1998 | | | 00002 | Zeferina | Check Pymt #162 | | $100.00 |
| 05/08/1998 | | | 00003 | Zeferina | Primary Ins Pymt | | $73.00 |
| 05/30/1998 | | | 00003 | Jesus | Primary Ins Pymt | | $36.00 |
| 06/15/1998 | | | 00002 | Zeferina | Check Pymt #174 | | $200.00 |
| 07/01/1998 | | | 00002 | Jesus | Check Pymt #184 | | $100.00 |
| 07/17/1998 | | | 00003 | Jesus | Primary Ins Pymt | | $1,352.00 |
| 07/29/1998 | | | 00002 | Jesus | Check Pymt #190 | | $125.00 |
| 08/17/1998 | 24 | B | D2330 | Zeferina | Composite 1 surface | $105.00 | |
| 08/17/1998 | | | 00001 | Zeferina | Cash Pymt ---Thank You | | $100.00 |
| 08/31/1998 | | | 00001 | Zeferina | Cash Pymt ---Thank You | | $300.00 |
| 09/11/1998 | | | 00003 | Zeferina | Primary Ins Pymt | | $76.00 |
| 10/12/1998 | | | 00001 | Zeferina | Cash Pymt ---Thank You | | $200.00 |
| 12/22/1998 | | | 00002 | Zeferina | Check Pymt #241 | | $150.00 |
| 01/22/1999 | | | 00002 | Zeferina | Check Pymt #289 | | $250.00 |
| 03/27/1999 | | | 00002 | Zeferina | Check Pymt #258 | | $500.00 |
| 04/05/1999 | | | 01230 | Zeferina | Topical fluoride/Adult | $14.00 | |
| 04/05/1999 | | | D1110 | Zeferina | Prophylaxis - Adult | $58.00 | |
| 04/19/1999 | | | 00002 | Zeferina | Check Pymt #267 | | $200.00 |
| 04/30/1999 | | | 01230 | Jesus | Topical fluoride/Adult | $14.00 | |
| 04/30/1999 | | | D0120 | Jesus | Periodic oral exam | $18.00 | |
| 04/30/1999 | | | D0220 | Jesus | Intraoral first film | $12.00 | |
| 04/30/1999 | | | D0274 | Jesus | Bitewings-4 | $30.00 | |
| 04/30/1999 | | | D1110 | Jesus | Prophylaxis - Adult | $58.00 | |
| 04/30/1999 | | | 00002 | Zeferina | Check Pymt #274 | | $100.00 |
| 05/22/1999 | 30 | DL | 02150 | Jesus | Amalgam 1-two-surface | $100.00 | |
| 05/22/1999 | | | 00001 | Zeferina | Cash Pymt ---Thank You | | $125.00 |
| 05/26/1999 | | | 00003 | Zeferina | Primary Ins Pymt | | $44.00 |
| 06/01/1999 | | | 00003 | Jesus | Primary Ins Pymt | | $82.40 |
| 06/01/1999 | | | 00002 | Zeferina | Check Pymt #89334877 | | $3,325.00 |
| 06/01/1999 | | | AmerG | Zeferina | Finance Charge From Amer. | ($175.00) | |
| 06/09/1999 | 25 | | D3310 | Zeferina | Root canal-1 | $425.00 | |
| 06/09/1999 | 26 | | D3310 | Zeferina | Root canal-1 | $425.00 | |
| 06/09/1999 | | | 00002 | Zeferina | Check Pymt #1 | | $1,000.00 |
| 06/12/1999 | 2 | DO | D2331 | Jesus | Composite 2 surface | $120.00 | |

Continued

Dr. Anil K. Agarval, DDS
Winterset Dental Care
8559 S. Pulaski Rd.
Chicago, IL 60652
Tel: 1-773-582-0035

**RECEIPT**

| Date | Account Number |
|------|----------------|
| 11/28/2006 | 01132 |

Mr. Jesus Montelongo
5017 S. Ridgeway Avenue
Chicago IL 60632

| Amount Due |
|------------|
| $0.00 |

| Date | Tooth | Surf. | Code | Name | Description | Charges | Payments |
|------|-------|-------|------|------|-------------|---------|----------|
| 06/21/1999 | | | 00003 | Jesus | Primary Ins Pymt | | $41.60 |
| 06/30/1999 | | | D9910 | Zeferina | Desensitizing Medicaments | $10.00 | |
| 07/09/1999 | 24 | | D3310 | Zeferina | Root canal-1 | $425.00 | |
| 07/09/1999 | 23 | | D3310 | Zeferina | Root canal-1 | $425.00 | |
| 07/12/1999 | | | 00003 | Jesus | Primary Ins Pymt | | $72.00 |
| 07/26/1999 | 24 | | D2750 | Zeferina | Porcelain fused gold crown | $700.00 | |
| 07/26/1999 | 23 | | D2750 | Zeferina | Porcelain fused gold crown | $700.00 | |
| 07/26/1999 | 24 | | D2954 | Zeferina | Prefabricated post & core | $225.00 | |
| 07/26/1999 | 23 | | D2954 | Zeferina | Prefabricated post & core | $225.00 | |
| 07/27/1999 | | | 00003 | Zeferina | Primary Ins Pymt | | $656.00 |
| 08/02/1999 | 25 | | D2750 | Zeferina | Porcelain fused gold crown | $700.00 | |
| 08/02/1999 | 26 | | D2750 | Zeferina | Porcelain fused gold crown | $700.00 | |
| 08/02/1999 | 26 | | D2954 | Zeferina | Prefabricated post & core | $225.00 | |
| 08/02/1999 | 25 | | D2954 | Zeferina | Prefabricated post & core | $225.00 | |
| 08/16/1999 | | | 00001 | Zeferina | Cash Pymt ---Thank You | | $100.00 |
| 08/16/1999 | | | 00003 | Zeferina | Primary Ins Pymt | | $28.00 |
| 09/11/1999 | | | D0120 | Jesus | Periodic oral exam | $18.00 | |
| 09/11/1999 | | | D1110 | Jesus | Prophylaxis - Adult | $58.00 | |
| 09/11/1999 | | | 00001 | Zeferina | Cash Pymt ---Thank You | | $100.00 |
| 09/27/1999 | | | D9910 | Zeferina | Desensitizing Medicaments | $10.00 | |
| 09/27/1999 | | | 00002 | Zeferina | Check Pymt #358 | | $150.00 |
| 10/11/1999 | | | 01230 | Zeferina | Topical fluoride/Adult | $14.00 | |
| 10/11/1999 | | | D0220 | Zeferina | Intraoral first film | $12.00 | |
| 10/11/1999 | | | D1110 | Zeferina | Prophylaxis - Adult | $58.00 | |
| 10/11/1999 | | | D9910 | Zeferina | Desensitizing Medicaments | $10.00 | |
| 10/11/1999 | | | 00002 | Zeferina | Check Pymt #365 | | $100.00 |
| 10/18/1999 | | | 00003 | Jesus | Primary Ins Pymt | | $58.40 |
| 11/15/1999 | | | 00001 | Zeferina | Cash Pymt ---Thank You | | $100.00 |
| 01/18/2000 | | | 00002 | Zeferina | Check Pymt #399 | | $200.00 |
| 02/11/2000 | 8 | | D6245 | Jesus | Pontic-porcelain/ceramic | $700.00 | |
| 02/11/2000 | 9 | | D6740 | Jesus | Crown-porcelain/ceramic | $600.00 | |
| 02/11/2000 | 7 | | D6740 | Jesus | Crown-porcelain/ceramic | $600.00 | |
| 02/11/2000 | | | 00001 | Jesus | Cash Pymt ---Thank You | | $300.00 |
| 03/18/2000 | | | D1110 | Jesus | Prophylaxis - Adult | $58.00 | |
| 03/18/2000 | | | 00002 | Jesus | Check Pymt #512 | | $200.00 |
| 03/18/2000 | | | 00003 | Jesus | Primary Ins Pymt | | $1,500.00 |
| 04/01/2000 | | | 00002 | Zeferina | Check Pymt #516 | | $100.00 |
| 04/24/2000 | | | 01230 | Zeferina | Topical fluoride/Adult | $15.00 | |
| 04/24/2000 | | | D0120 | Zeferina | Periodic oral exam | $20.00 | |

Continued

**Dr. Anil K. Agarwal, DDS**
**Winterset Dental Care**
**8559 S. Pulaski Rd.**
**Chicago, IL 60652**
**Tel: 1-773-582-0035**

# RECEIPT

| Date | Account Number |
|------|----------------|
| 11/28/2006 | 01132 |

**Mr. Jesus Montelongo**
**5017 S. Ridgeway Avenue**
**Chicago IL 60632**

| Amount Due |
|------------|
| $0.00 |

| Date | Tooth | Surf. | Code | Name | Description | Charges | Payments |
|------|-------|-------|------|------|-------------|---------|----------|
| 04/24/2000 | | | D1110 | Zeferina | Prophylaxis - Adult | $60.00 | |
| 04/24/2000 | | | D9910 | Zeferina | Desensitizing Medicaments | $10.00 | |
| 04/24/2000 | | | 00002 | Zeferina | Check Pymt #522 | | $100.00 |
| 08/07/2000 | | | D1110 | Jesus | Prophylaxis - Adult | $60.00 | |
| 10/30/2000 | | | 01230 | Zeferina | Topical fluoride/Adult | $15.00 | |
| 10/30/2000 | | | D0120 | Zeferina | Periodic oral exam | $20.00 | |
| 10/30/2000 | | | D1110 | Zeferina | Prophylaxis - Adult | $60.00 | |
| 10/30/2000 | | | D9910 | Zeferina | Desensitizing Medicaments | $10.00 | |
| 10/30/2000 | | | 00002 | Zeferina | Check Pymt #676 | | $200.00 |
| 11/27/2000 | 20 | | D0220 | Zeferina | Intraoral first film | $15.00 | |
| 01/06/2001 | | | D0120 | Jesus | Periodic oral exam | $20.00 | |
| 01/06/2001 | | | D1110 | Jesus | Prophylaxis - Adult | $60.00 | |
| 01/06/2001 | | | 00002 | Zeferina | Check Pymt #707 | | $167.10 |
| 01/15/2001 | | | 9940 | Zeferina | Nightguard | $50.00 | |
| 01/15/2001 | | | D0120 | Zeferina | Periodic oral exam | $20.00 | |
| 01/15/2001 | 29 | | D0220 | Zeferina | Intraoral first film | $15.00 | |
| 01/15/2001 | 20 | | D0220 | Zeferina | Intraoral first film | $15.00 | |
| 01/26/2001 | | | 00002 | Jesus | Check Pymt #089302936 | | $2,375.00 |
| 01/26/2001 | | | AmerG | Jesus | Finance Charge From Amer. | ($125.00) | |
| 02/05/2001 | | | 00003 | Jesus | Primary Ins Pymt | | $64.00 |
| 02/06/2001 | 19 | | D6030 | Jesus | Endosseous implant | $1,300.00 | |
| 03/05/2001 | | | D1110 | Zeferina | Prophylaxis - Adult | $60.00 | |
| 03/05/2001 | | | D9630 | Zeferina | Medications by report | $18.00 | |
| 04/16/2001 | | | FreePX | Zeferina | Free cleaning for referrals | ($60.00) | |
| 05/21/2001 | | | D0120 | Jesus | Periodic oral exam | $20.00 | |
| 05/21/2001 | | | D1110 | Jesus | Prophylaxis - Adult | $60.00 | |
| 06/04/2001 | 31 | L | D2330 | Jesus | Composite 1 surface | $115.00 | |
| 07/03/2001 | | | 00003 | Jesus | Primary Ins Pymt | | $64.00 |
| 07/09/2001 | | | D0120 | Zeferina | Periodic oral exam | $20.00 | |
| 07/09/2001 | | | D1110 | Zeferina | Prophylaxis - Adult | $60.00 | |
| 07/09/2001 | | | D1204 | Zeferina | Topical Flouride | $15.00 | |
| 07/09/2001 | | | D9910 | Zeferina | Desensitizing Medicaments | $10.00 | |
| 07/20/2001 | 9 | | D2921 | Zeferina | Cement crown | $50.00 | |
| 09/10/2001 | | | D2750 | Jesus | Porcelain fused gold crown | $1,200.00 | |
| 10/08/2001 | | | 00003 | Jesus | Primary Ins Pymt | | $81.60 |
| 10/29/2001 | | | D1110 | Jesus | Prophylaxis - Adult | $60.00 | |
| 10/29/2001 | | | 00003 | Jesus | Primary Ins Pymt | | $683.20 |
| 11/19/2001 | | | 0001b | Jesus | Refund | | ($284.80) |
| 12/10/2001 | | | D1110 | Zeferina | Prophylaxis - Adult | $60.00 | |

**Dr. Anil K. Agarwal, DDS**
**Winterset Dental Care**
**8559 S. Pulaski Rd.**
**Chicago, IL 60652**
**Tel: 1-773-582-0035**

# RECEIPT

| Date | Account Number |
|------|----------------|
| 11/28/2006 | 01132 |

**Mr. Jesus Montelongo**
**5017 S. Ridgeway Avenue**
**Chicago IL 60632**

| Amount Due |
|------------|
| $0.00 |

| Date | Tooth | Surf. | Code | Name | Description | Charges | Payments |
|------|-------|-------|------|------|-------------|---------|----------|
| 12/10/2001 | | | D9910 | Zeferina | Desensitizing Medicaments | $10.00 | |
| 12/14/2001 | | | 00003 | Jesus | Primary Ins Pymt | | $48.00 |
| 02/04/2002 | | | D1110 | Jesus | Prophylaxis - Adult | $60.00 | |
| 02/04/2002 | | | D9910 | Jesus | Desensitizing Medicaments | $10.00 | |
| 02/25/2002 | | | D0220 | Zeferina | Intraoral first film | $15.00 | |
| 02/25/2002 | | | D0230 | Zeferina | Intraoral one add. film | $10.00 | |
| 02/25/2002 | 24 | | D2954 | Zeferina | Prefabricated post & core | $250.00 | |
| 03/19/2002 | | . | 00003 | Jesus | Primary Ins Pymt | | $56.00 |
| 04/15/2002 | | | D0120 | Zeferina | Periodic oral exam | $20.00 | |
| 04/15/2002 | | | D0210 | Zeferina | Intraoral complete series | $90.00 | |
| 04/15/2002 | | | D1110 | Zeferina | Prophylaxis - Adult | $60.00 | |
| 04/15/2002 | | | D1204 | Zeferina | Topical Flouride | $15.00 | |
| 04/15/2002 | | | 00002 | Zeferina | Check Pymt #962 | | $311.00 |
| 05/20/2002 | 20 | MB | D2331 | Zeferina | Composite 2 surface | $130.00 | |
| 05/20/2002 | 13 | MB | D2331 | Zeferina | Composite 2 surface | $130.00 | |
| 05/20/2002 | | | OxyFre | Zeferina | Fresh Breath System | $36.00 | |
| 05/31/2002 | 20 | | D0220 | Zeferina | Intraoral first film | $15.00 | |
| 05/31/2002 | | | 00002 | Jesus | Check Pymt #999 | | $485.00 |
| 06/24/2002 | | | D1110 | Jesus | Prophylaxis - Adult | $62.00 | |
| 06/24/2002 | | | OxyFre | Jesus | Fresh Breath System | $12.00 | |
| 07/08/2002 | | I | 9110 | Zeferina | Emergency treatment of dent | $50.00 | |
| 07/08/2002 | 5 | | D0220 | Zeferina | Intraoral first film | $16.00 | |
| 07/15/2002 | 5 | ML | D2331 | Zeferina | Composite 2 surface | $150.00 | |
| 07/27/2002 | | | 00003 | Jesus | Primary Ins Pymt | | $49.60 |
| 08/16/2002 | 8 | | D2920 | Zeferina | Recement crown | $50.00 | |
| 08/16/2002 | | | OxyFre | Zeferina | Fresh Breath System | $12.00 | |
| 08/16/2002 | | | OxyFre | Zeferina | Fresh Breath System | $11.00 | |
| 08/26/2002 | | | D0120 | Zeferina | Periodic oral exam | $22.00 | |
| 08/26/2002 | | | D1110 | Zeferina | Prophylaxis - Adult | $0.00 | |
| 08/26/2002 | | | D1204 | Zeferina | Topical Flouride | $18.00 | |
| 08/26/2002 | | | 00002 | Zeferina | Check Pymt #1033 | | $300.00 |
| 09/09/2002 | 24 | | D0220 | Zeferina | Intraoral first film | $16.00 | |
| 09/09/2002 | 13 | DL | D2331 | Zeferina | Composite 2 surface | $150.00 | |
| 12/02/2002 | | | D0120 | Jesus | Periodic oral exam | $22.00 | |
| 12/02/2002 | | | D0272 | Jesus | Bitewing-two films | $26.00 | |
| 12/02/2002 | | | D1110 | Jesus | Prophylaxis - Adult | $62.00 | |
| 12/02/2002 | | | D1204 | Jesus | Topical Flouride | $18.00 | |
| 12/02/2002 | | | OxyFre | Jesus | Fresh Breath System | $11.00 | |
| 12/02/2002 | | | 00002 | Jesus | Check Pymt #1051 | | $230.40 |

Continued

**Dr. Anil K. Agarwal, DDS**
**Winterset Dental Care**
**8559 S. Pulaski Rd.**
**Chicago, IL 60652**
**Tel: 1-773-582-0035**

**RECEIPT**

| Date | Account Number |
|------|----------------|
| 11/28/2006 | 01132 |

**Mr. Jesus Montelongo**
**5017 S. Ridgeway Avenue**
**Chicago IL 60632**

| Amount Due |
|------------|
| $0.00 |

| Date | Tooth | Surf. | Code | Name | Description | Charges | Payments |
|------|-------|-------|------|------|-------------|---------|----------|
| 01/06/2003 | 5 | F | D2330 | Zeferina | Composite 1 surface | $140.00 | |
| 01/06/2003 | | | 00002 | Zeferina | Check Pymt #1070 | | $279.00 |
| 01/14/2003 | | | D0330 | Jesus | Panoramic Xray | $90.00 | |
| 01/14/2003 | | | D4010 | Jesus | Periodontal examination | $50.00 | |
| 01/23/2003 | | | 00003 | Jesus | Primary Ins Pymt | | $61.60 |
| 02/04/2003 | | | 4341 | Jesus | Perio Scale and Root Plane | $190.00 | |
| 02/04/2003 | | | 4341 | Jesus | Perio Scale and Root Plane | $190.00 | |
| 02/04/2003 | | | 4341 | Jesus | Perio Scale and Root Plane | $190.00 | |
| 02/04/2003 | | | 4341 | Jesus | Perio Scale and Root Plane | $190.00 | |
| 02/04/2003 | | | 00002 | Jesus | Check Pymt #1293 | | $330.00 |
| 02/24/2003 | | | 00003 | Jesus | Primary Ins Pymt | | $108.00 |
| 03/17/2003 | | | 00003 | Jesus | Primary Ins Pymt | | $608.00 |
| 03/18/2003 | 31 | | D0220 | Jesus | Intraoral first film | $16.00 | |
| 04/07/2003 | 2 | D | 4381 | Jesus | Local App.Chemo.Microsphe | $25.00 | |
| 04/07/2003 | 30 | D | 4381 | Jesus | Local App.Chemo.Microsphe | $25.00 | |
| 04/07/2003 | | | D0120 | Jesus | Periodic oral exam | $22.00 | |
| 04/07/2003 | | | D0232 | Jesus | Intraoral two add. film | $22.00 | |
| 04/07/2003 | | | D1110 | Jesus | Prophylaxis - Adult | $62.00 | |
| 04/16/2003 | | | 00003 | Jesus | Primary Ins Pymt | | $12.80 |
| 06/11/2003 | | | 00003 | Jesus | Primary Ins Pymt | | $124.80 |
| 07/14/2003 | 31 | DL | D2331 | Jesus | Composite 2 surface | $150.00 | |
| 07/14/2003 | | | OxyFre | Jesus | Fresh Breath System | $36.00 | |
| 08/04/2003 | 29 | DOL | D2332 | Jesus | Composite 3 surface | $160.00 | |
| 08/18/2003 | 30 | | D2750 | Jesus | Porcelain fused gold crown | $775.00 | |
| 09/02/2003 | | | 00003 | Jesus | Primary Ins Pymt | | $120.00 |
| 09/08/2003 | | | 00002 | Jesus | Check Pymt #1357 | | $387.50 |
| 09/12/2003 | | | 00003 | Jesus | Primary Ins Pymt | | $398.40 |
| 09/12/2003 | | | 00003 | Jesus | Primary Ins Pymt | | $128.00 |
| 09/15/2003 | | | D1110 | Jesus | Prophylaxis - Adult | $62.00 | |
| 09/15/2003 | | | D1204 | Jesus | Topical Flouride | $18.00 | |
| 09/15/2003 | | | D0120 | Zeferina | Periodic oral exam | $22.00 | |
| 09/15/2003 | | | D0272 | Zeferina | Bitewing-two films | $26.00 | |
| 09/15/2003 | | | D1110 | Zeferina | Prophylaxis - Adult | $62.00 | |
| 12/29/2003 | 31 | | D7140 | Jesus | Simple extr. erupted or expo | $150.00 | |
| 01/05/2004 | 2 | | D0220 | Jesus | Intraoral first film | $16.00 | |
| 01/05/2004 | 2 | | D7140 | Jesus | Simple extr. erupted or expo | $150.00 | |
| 01/05/2004 | | | 00002 | Jesus | Check Pymt #1135 | | $40.00 |
| 01/19/2004 | | | D0120 | Jesus | Periodic oral exam | $22.00 | |
| 01/19/2004 | | | D1110 | Jesus | Prophylaxis - Adult | $62.00 | |

Continued

**Dr. Anil K. Agarwal, DDS**
**Winterset Dental Care**
**8559 S. Pulaski Rd.**
**Chicago, IL 60652**
**Tel: 1-773-582-0035**

**RECEIPT**

| Date | Account Number |
|---|---|
| 11/28/2006 | 01132 |

**Mr. Jesus Montelongo**
**5017 S. Ridgeway Avenue**
**Chicago IL 60632**

| Amount Due |
|---|
| $0.00 |

| Date | Tooth | Surf. | Code | Name | Description | Charges | Payments |
|---|---|---|---|---|---|---|---|
| 01/19/2004 | 13 | DF | D2392 | Zeferina | Posterior comp.two sur. | $160.00 | |
| 01/28/2004 | | | 00003 | Jesus | Primary Ins Pymt | | $113.60 |
| 02/23/2004 | | | 00003 | Jesus | Primary Ins Pymt | | $67.20 |
| 05/03/2004 | | | D0120 | Zeferina | Periodic oral exam | $25.00 | |
| 05/03/2004 | 24 | | D0220 | Zeferina | Intraoral first film | $18.00 | |
| 05/03/2004 | | | D1110 | Zeferina | Prophylaxis - Adult | $68.00 | |
| 05/03/2004 | | | D1204 | Zeferina | Topical Flouride | $20.00 | |
| 05/03/2004 | | | 00002 | Zeferina | Check Pymt #1178 | | $574.10 |
| 06/12/2004 | 7 | | D2750 | Zeferina | Porcelain fused gold crown | $825.00 | |
| 06/12/2004 | 7 | | D2950 | Zeferina | Crown buildup | $175.00 | |
| 07/12/2004 | | | 00002 | Zeferina | Check Pymt #1213 | | $1,000.00 |
| 09/21/2004 | | | D0120 | Jesus | Periodic oral exam | $25.00 | |
| 09/21/2004 | | | D0272 | Jesus | Bitewing-two films | $28.00 | |
| 09/21/2004 | | | D1110 | Jesus | Prophylaxis - Adult | $68.00 | |
| 09/21/2004 | | | D1204 | Jesus | Topical Flouride | $20.00 | |
| 11/03/2004 | | | 00003 | Jesus | Primary Ins Pymt | | $112.80 |
| 11/15/2004 | | | D0120 | Zeferina | Periodic oral exam | $25.00 | |
| 11/15/2004 | | | D1110 | Zeferina | Prophylaxis - Adult | $68.00 | |
| 11/15/2004 | | | D1204 | Zeferina | Topical Flouride | $20.00 | |
| 11/15/2004 | | | D9910 | Zeferina | Desensitizing Medicaments | $10.00 | |
| 02/14/2005 | | | 9110 | Zeferina | Emergency treatment of dent | $50.00 | |
| 02/14/2005 | | | D0220 | Zeferina | Intraoral first film | $18.00 | |
| 02/14/2005 | | | D0230 | Zeferina | Intraoral one add. film | $14.00 | |
| 03/05/2005 | 29 | | D3320 | Zeferina | Root canal-2 | $625.00 | |
| 03/05/2005 | | | 12a | Zeferina | CareCredit | | $4,083.20 |
| 03/19/2005 | | | D0220 | Zeferina | Intraoral first film | $18.00 | |
| 03/19/2005 | | | D0232 | Zeferina | Intraoral two add. film | $28.00 | |
| 05/05/2005 | 29 | | D2954 | Zeferina | Prefabricated post & core | $275.00 | |
| 05/05/2005 | 28 | | D4249 | Zeferina | Crown lenghtening | $400.00 | |
| 05/05/2005 | 27 | | D4249 | Zeferina | Crown lenghtening | $400.00 | |
| 05/05/2005 | 29 | | D4249 | Zeferina | Crown lenghtening | $400.00 | |
| 05/31/2005 | | | 4910 | Jesus | Periodontal Maintenance | $70.00 | |
| 05/31/2005 | | | D0120 | Jesus | Periodic oral exam | $25.00 | |
| 05/31/2005 | | | D1204 | Jesus | Topical Flouride | $20.00 | |
| 06/02/2005 | 28 | | D3310 | Zeferina | Root canal-1 | $525.00 | |
| 06/02/2005 | 27 | | D3310 | Zeferina | Root canal-1 | $525.00 | |
| 06/09/2005 | | | OxyFre | Zeferina | Fresh Breath System | $63.00 | |
| 06/18/2005 | | | 00003 | Jesus | Primary Ins Pymt | | $93.00 |
| 06/30/2005 | L | | D5860 | Zeferina | Complete overdenture | $1,600.00 | |

**Dr. Anil K. Agarwal, DDS**
**Winterset Dental Care**
8559 S. Pulaski Rd.
Chicago, IL 60652
Tel: 1-773-582-0035

**RECEIPT**

| Date | Account Number |
|------|----------------|
| 11/28/2006 | 01132 |

**Mr. Jesus Montelongo**
5017 S. Ridgeway Avenue
Chicago IL 60632

| Amount Due |
|------------|
| $0.00 |

| Date | Tooth | Surf. | Code | Name | Description | Charges | Payments |
|------|-------|-------|------|------|-------------|---------|----------|
| 07/05/2005 | | | 12a | Zeferina | CareCredit | | $1,531.00 |
| 07/23/2005 | 21 | | D3310 | Zeferina | Root canal-1 | $525.00 | |
| 07/23/2005 | 22 | | D3310 | Zeferina | Root canal-1 | $525.00 | |
| 07/28/2005 | 26 | | D7140 | Zeferina | Simple extr. erupted or expo | $150.00 | |
| 07/28/2005 | 23 | | D7140 | Zeferina | Simple extr. erupted or expo | $150.00 | |
| 07/28/2005 | 24 | | D7140 | Zeferina | Simple extr. erupted or expo | $150.00 | |
| 07/28/2005 | 25 | | D7140 | Zeferina | Simple extr. erupted or expo | $150.00 | |
| 08/12/2005 | 6 | | D2920 | Zeferina | Recement crown | $50.00 | |
| 10/01/2005 | 3 | | D7140 | Zeferina | Extraction, erupted tooth or e | $200.00 | |
| 02/04/2006 | | | D4263 | Zeferina | Bone replcmnt graft - 1st site | $1,200.00 | |
| 02/04/2006 | 20 | | D7140 | Zeferina | Extraction, erupted tooth or e | $200.00 | |
| 02/04/2006 | 21 | | D7140 | Zeferina | Extraction, erupted tooth or e | $200.00 | |
| 02/04/2006 | 22 | | D7140 | Zeferina | Extraction, erupted tooth or e | $200.00 | |
| 02/04/2006 | 28 | | D7140 | Zeferina | Extraction, erupted tooth or e | $200.00 | |
| 02/04/2006 | 29 | | D7140 | Zeferina | Extraction, erupted tooth or e | $200.00 | |
| 02/21/2006 | | | D0120 | Jesus | Periodic oral exam | $25.00 | |
| 02/21/2006 | | | D0274 | Jesus | Bitewings 4 films | $40.00 | |
| 02/21/2006 | | | D4910 | Jesus | Periodontal Maintenance | $85.00 | |
| 02/27/2006 | | | 00001 | Zeferina | Cash Pymt ---Thank You | | $100.00 |
| 03/04/2006 | | | 00001 | Zeferina | Cash Pymt ---Thank You | | $300.00 |
| 03/10/2006 | | | D0120 | Zeferina | Periodic oral exam | $25.00 | |
| 03/10/2006 | | | D1110 | Zeferina | Prophylaxis - Adult | $68.00 | |
| 03/10/2006 | | | 00001 | Zeferina | Cash Pymt ---Thank You | | $93.00 |
| 03/14/2006 | 3 | L | D2330 | Jesus | Composite 1 surface,anterior | $150.00 | |
| 03/14/2006 | 29 | DO | D2331 | Jesus | Composite 2 surface,anterior | $160.00 | |
| 03/14/2006 | 15 | | D2750 | Jesus | Porcelain fused gold crown | $900.00 | |
| 03/14/2006 | 15 | | D2950 | Jesus | Core buildup, including any p | $175.00 | |
| 03/14/2006 | | | 00002 | Jesus | Check Pymt #1246 | | $550.00 |
| 03/15/2006 | | | 00003 | Jesus | Primary Ins Pymt | | $85.00 |
| 03/27/2006 | | | 0001c | Jesus | Nonsufficient funds # | | ($550.00) |
| 03/27/2006 | | | D0220 | Zeferina | Intraoral first film | $0.00 | |
| 03/27/2006 | | | D0232 | Zeferina | Intraoral two add. film | $0.00 | |
| 03/27/2006 | | | D0232 | Zeferina | Intraoral two add. film | $0.00 | |
| 03/27/2006 | | | 00012 | Jesus | Credit Card Pymt ---Thank Y | | $550.00 |
| 04/03/2006 | | | 0001e | Zeferina | Patient Adj Credit--for Rct | ($1,050.00) | |
| 04/17/2006 | | | 00003 | Jesus | Primary Ins Pymt | | $1,105.60 |
| 10/18/2006 | | | 1ee | Jesus | Ref To Care Credit | $1,420.60 | |
| 10/18/2006 | | | 1ee | Jesus | Ref To Ins Co Dos 3-14-06 | $860.00 | |
| 10/18/2006 | | | 0001e | Jesus | Adj For Incomplete Work-Pat | ($3,150.00) | |

Continued

**Dr. Anil K. Agarwal, DDS**
**Winterset Dental Care**
**8559 S. Pulaski Rd.**
**Chicago, IL 60652**
**Tel: 1-773-582-0035**

**RECEIPT**

| Date | Account Number |
|------|----------------|
| 11/28/2006 | 01132 |

**Mr. Jesus Montelongo**
**5017 S. Ridgeway Avenue**
**Chicago IL 60632**

| Amount Due |
|------------|
| $0.00 |

| Date | Tooth | Surf. | Code | Name | Description | Charges | Payments |
|------|-------|-------|------|------|-------------|---------|----------|
| 10/18/2006 | | | 0001e | Jesus | Adj For Incomplete Work-Je | ($1,075.00) | |
| | | | | | | $37,730.60 | $37,730.60 |

| Amount Due |
|------------|
| $0.00 |

| Future Appointment List | | | |
|------|------|------|------|
| Name | Date | Start Time | End Time |
| | | | |

MONTELONGO, ZEFERINA - 51452340

# Operative Report

\* Preliminary Report \*

Result Type:     Operative Report
Result Date:     July 26, 2006 12:00 AM
Result Status:    Transcribed
Result Title:     Operative Report- ATTENDING: Lesile Heffez, M.D.
Performed By:    Heffez DDS, Lesile on July 28, 2006 9:02 PM

## \* Preliminary Report \*

**Operative Report- ATTENDING: Lesile Heffez, M.D.**
University of Illinois Medical Center at Chicago

Report of Operation     Patient: MONTELONGO, ZEFERINA

DICT: Justin Hollar, M.D.    MRN: 051452340
ATTNG: LESILE HEFFEZ, MD    Date of Surgery: 07/26/2006

PREOPERATIVE DIAGNOSIS: Osteomyelitis of the mandible.

POSTOPERATIVE DIAGNOSIS: Osteomyelitis of the mandible.

SURGEON(S): LESILE HEFFEZ, MD

ASSISTANT(S): Justin Hollar, M.D., Gabriela Oana, M.D.

OPERATION:
1. Debridement of mandible, open.
2. Saucerization of the mandible and perforation of cortical bone.
3. Application of reconstruction plate using a stereolithographic model as to prevent possible pathologic fracture.

ANESTHESIA: General anesthesia via nasal endotracheal intubation.

FLUIDS: 2,400 crystalloid.

DRAINS: Blake drain #15.

SPECIMENS:
1. Inferior border.
2. Superior border.
3. Marrow from superior border.
4. Periosteum of inferior border.
5. Culture and sensitivity of aerobic, anaerobic, fungal, AFB sent.

IMPLANTS: KLS 2.7 mm screws and reconstruction plate, total of 8 screws.

COMPLICATIONS: None.

Printed by:    Oana DDS, Gabriela
Printed on:    8/4/2006 8:26 AM

44



*Operative Report*                                      MONTELONGO, ZEFERINA - 51452340

ESTIMATED BLOOD LOSS: 350 ml.

DISPOSITION: Discharged extubated directly to ICU.

WOUND CLASSIFICATION: 2.

INDICATIONS: The patient is a 53-year-old Hispanic female who presented to the oral surgery clinic for consultation regarding infection and pain in the lower jaw. The patient reports dental work in the lower anterior teeth 1 year ago followed by the extraction of all mandibular teeth. First clinical sign of pain after extractions was July of 2005 following root canal therapy for over-denture teeth. The endodontic therapy failed and teeth were subsequently extracted and bone grafting material was placed. The denture was fabricated and adjusted frequently, but pain persisted. Pain has been continuous since that time. In April of 2006, the patient reported swelling of anterior neck and chin. The patient was seen by an otolaryngologist and Infectious Disease Services. Infectious Disease placed the patient on 1 gram of ertapenem. Clinical and radiographic evaluation determined anterior portion of the mandible showed radiographic changes consistent with pain located on inferior border of mandible. Treatment options were discussed with the patient and husband and all questions were answered. Treatment plan was made for resection of the anterior mandible, anterior to mental foramina, also with placement of reconstruction plate. All risks and benefits were discussed with the patient and her husband and informed consent was obtained.

FINDINGS: Chalky appearance of inferior border bone; no frank sequestra; very dense bone with minimal bleeding from marrow; minimal marrow encountered.

PROCEDURE: On July 26, 2006, the patient was taken to the operating room and was placed in the supine position. Monitors were applied per Anesthesia Service. After smooth IV induction of general anesthesia, the patient was intubated uneventfully. The patient was prepared and draped in a fashion appropriate for a procedure of this type. A single gauze throat pack was placed.

The incision lines were marked using a marking pen. The incision inside the mouth began in area of #31 in the buccal loose areolar tissue. Incision was carried anterior until just posterior of the mental foramen and the incision was carried on to the crest of the mandibular alveolus. This aspect of the incision was carried to the opposite mental foramen and descended again posterior to the mental foramen. The incision carried in the buccal loose soft tissues was carried to area of tooth #18. A full-thickness mucoperiosteal flap was elevated beginning at midline. As mental nerve was approached, it was identified exiting from the mental foramen and was protected at all times. Mental foramen for the opposite side was protected in a similar manner. Both lateral aspects and anterior aspect of the mandible were exposed. The lingual portion of the anterior midline flap was dissected inferiorly to the genial tubercle.

Operative Report                              MONTELONGO, ZEFERINA - 51452340

Using a straight fissure bur under copious irrigation, a slot was drilled into
the anterior buccal plate at the superior aspect. Minimal bleeding of marrow
was noted and minimal marrow was encountered. The anterior-inferior border
was exposed further by reflecting the flap beyond the inferior border so that
the lingual aspect could be visualized. In order to achieve this, the mental
nerves were dissected from the periosteum. At the inferior border, the chalky
appearance of bone was noted and was the area suspected for osteomyelitis.
Using a small round bur, multiple perforations were made in the buccal aspect
between the mental foramina through single cortex. Minimal bleeding was noted
from the perforations. The inferior border on the lingual aspect was removed
from the mandible under copious irrigation using a Bud bur. Soft tissues were
protected by retraction. Lingual aspect of the inferior border was
decorticated. The lingual aspect was then subsequently perforated multiple
times with a small round bur under copious irrigation.

Specimen #2 was sent from the superior border which was removed at midline
using a bur and copious irrigation. All sharp edges were smoothed using
rotary instrumentation. There were no discontinuity defects in the mandible
after corticotomy and perforations. The site was irrigated copiously with
normal saline. Through the marrow was removed from the superior border slot
that was previously sent. Also, marrow from the superior border slot was sent
for microbiology specimen.

The prebent reconstruction plate was not able to traverse both mental nerves.
The reconstruction plate was unable to be adapted to the mandible with this
method. The decision was made to make an extraoral incision for access to
place the reconstruction plate.

Incision orientation was made using a marking pen that started from the left
mastoid process, directed toward the hyoid, and then to mentum. At mentum,
the incision was extended laterally across midline through the submental
crease. The beginning point of the incision was made at the antegonial notch
and ended at submentum. Incision was made through skin and subcutaneous
tissues using a #24 blade. Any bleeding encountered was coagulated using
electrocautery. The superficial layer of the cervical fascia was identified
as a layer and was incised to expose the platysma. The platysma was incised
in a similar fashion to expose the superficial layer of the deep cervical
fascia. The superficial layer of the deep cervical fascia was incised sharply
with a #24 blade in a fashion to identify nerves and vessels. No branches of
the marginal mandibular nerve were encountered. During this last part of the
incision, the facial vein was encountered. It was transected and ligated. At
this level of the dissection, it was carried superiorly to the inferior border
of the mandible. At this point, the periosteum was encountered and incised
sharply to expose the mandible. Upon reflecting the remainder of the
periosteum from the mandible, the reconstruction plate was able to adapt to
the mandible as it was preformed. Retention screw was then placed at the
midline of the chin to hold the plate while placing subsequent screws. Four
screws were placed on the left aspect and 4 screws were placed on the right
aspect. The screws on the right aspect were placed using a trocar through a

rative Report                                    MONTELONGO, ZEFERINA - 51452340

skin incision. Skin incision was made with a #15 blade from skin to subq. The final communication made into the oral flap was made using blunt dissection with a mosquito. The trocar was then placed through the nick incision. The screws on the right side were placed through the trocar. Screws on the left aspect were placed through the submandibular wound. Once the left and right screws were placed and secured, the anterior midline screw was removed and disposed of. The plate was noted to be stable and well-adapted. The last 2 screws on both sides were bicortical and the first screw on the right side was also bicortical.

The oral wound was closed using mattress sutures of 3-0 Vicryl suture. This was completed until hermetic closure was achieved. The submandibular wound was approached next and was irrigated copiously with normal saline followed by antibiotic irrigation. Closure of the submandibular wound was performed in layers. The first layer was periosteum using 3-0 Vicryl suture. A #15 Blake drain was then placed superficial to the periosteum layer. Blake drain was placed through a trocar hole made in the midline submental region. Blake drain was secured with 3-0 nylon suture. The subsequent layers were closed using 3-0 Vicryl suture. Subcuticular layer was closed using 4-0 plain gut. Skin closure was achieved with 5-0 nylon suture. The #15 Blake drain was seen to be sealed due to bulb suction. The wound was dressed with antibiotic ointment layered with Telfa bandage with Tegaderm seal. The right nick incision on the cheek was closed using a simple interrupted suture. This concluded the procedure. The patient was awakened and extubated in the operating room and transferred to the unit bed and transported directly to the intensive care unit.

DD: 07/28/2006
DT: 07/30/2006
LH/cym
JOB:691889

**Completed Action List:**
* Perform by Heffez DDS, Lesile on July 28, 2006 9:02 PM
* Transcribe by 327, on July 30, 2006 6:53 PM

Printed by:      Oana DDS, Gabriela
Printed on:      8/4/2006 8:26 AM

UIC College of Dentistry - Oral and Maxillofacial Surgery Clinic

Montelongo, Zeferina *11/17/1952 (0503986)

01XP, 08/14/2006: 16:46:03



SIRONA SIDEXIS

(SIDEXIS 5.54 . . .)

A14

**Mercy Medical on Pulaski**
5525 S. Pulaski
Chicago, Illinois 60629-4438

**ANN GARCELON, M.D.**
DEA # BG2548294

Affiliated with Mercy Hospital and Medical Center

**For Appointments Call: (773) 585-1955**
**Fax: (773) 284-1824**

NAME _Zeferina Montelongo_    DATE _8-24-05_

ADDRESS _284-1703_    _11/17/92_

**R̶x**

For Informational Purposes Only.

Fosomax 70mg    #4

ī p.o. Qweekly

Refill _11_ times   PRN   NR    _D/ Garcelon_ ,M.D.

☐ May Substitute

☐ ~~May Not Substitute~~



| DEPARTMENT OF HEALTH AND HUMAN SERVICES PUBLIC HEALTH SERVICE FOOD AND DRUG ADMINSTRATION | **ODS POSTMARKETING SAFETY REVIEW** | |
|---|---|---|
| **TO:** Richard Pazdur, M.D., Director, Division of Oncology Drug Products (DODP), HFD-150 | **FROM:** Jennie Chang, Pharm.D. , Safety Evaluator, Division of Drug Risk Evaluation (DDRE), HFD-430 | **ODS PID #** D040283 <br><br> **August 25, 2004** |
| **DATE REQUESTED: May 6, 2004** | **REQUESTOR/Phone #:** Nancy Scher, M.D., DODP, HFD-150 (301) 594-5745 | |
| **DATE RECEIVED: May 6, 2004** | | |
| **DRUG (Est): Pamidronate, zoledronic acid, alendronate, risedronate** | **NDA/IND #** 21-223, 20-036, 20-560, 20-835 | **SPONSOR: Novartis Pharmaceuticals, Merck, Proctor and Gamble Pharmaceuticals** |
| **DRUG NAME (Trade): Aredia (pamidronate) and Zometa (zoledronic acid), Fosamax (alendronate), Actonel (risedronate)** | **THERAPEUTIC CLASSIFICATION: Bisphosphonates** | |
| **EVENT: Osteonecrosis and osteomyelitis** | | |

**Executive Summary:**

This memorandum is an update of a consult that was completed on November 21, 2003 (see DFS for consult) by the Office of Drug Safety regarding osteonecrosis associated with two intravenous bisphosphonates, pamidronate and zoledronic acid.[1] Interest in this adverse event was stimulated from a cluster of reports submitted recently to FDA's postmarketing database in 2003. Additionally, Novartis Pharmaceuticals, the sponsor of zoledronic acid, submitted a "Special Supplement-Changes Being Effected" to include a *Post-Marketing Experience* subsection of the *Adverse Reactions* section of Zometa's package insert to provide information on osteonecrosis.

In this consult, we reviewed new cases of osteonecrosis associated with pamidronate and zoledronic acid that have been submitted since the previous consult. Osteomyelitis cases were included as a significant number of patients presented with a mixed osteonecrosis and osteomyelitis diagnosis. We also evaluated cases of osteonecrosis associated with oral bisphosphonates, namely alendronate and risedronate to determine if this is a therapeutic class effect.

Using the FDA's Adverse Event Reporting System database, a search was undertaken to determine the number of osteonecrosis cases associated with the four bisphosphonates using the MedDRA High Level Term (HLT) Bone Disorders. Cases were included per physician diagnosis of osteonecrosis and osteomyelitis. For pamidronate and zoledronic acid cases, the data lock-points are from October 6, 2003 (data termination point of the previous consult), until May 24, 2004. These cases that were analyzed during this time period were added to ones from the previous consult; thus, a cumulative review of the osteonecrosis cases is presented herein. The alendronate and risedronate cases were also reviewed for the time period from their marketing approvals, September 29, 1995 and March 27, 1998, respectively, until May 24, 2004.

As with the previous consult, the pamidronate and zoledronic acid cases were analyzed together because both bisphosphonates are indicated for the same patient population and most patients received the two bisphosphonates. In cases in which the patient received both bisphosphonates, all patients first received pamidronate prior to switching over to zoledronic acid, except for one patient who received two bisphosphonates on an alternating schedule.

A total of 139 cases, 47 (34%) with pamidronate use, 33 (24%) with zoledronic acid use, and 59 (42%) with both zoledronic acid and pamidronate use, were found in AERS. Less than ten percent of the cases were from foreign sources. For the oral bisphosphonates, 12 alendronate cases were related to osteonecrosis, and only one case was identified for risedronate. It should be noted that many cases did not provide complete information as to other confounding factors for osteonecrosis and osteomyelitis, treatment types for osteonecrosis and osteomyelitis, or outcomes.

Our search yielded mostly cases of osteonecrosis, but there was also a fraction (6%) of patients who had developed osteomyelitis secondary to pamidronate and zoledronic acid use and about one-quarter of the patients who had presented with a



mixed picture of osteomyelitis and osteonecrosis. For the alendronate and risedronate cases, all patients presented with osteonecrosis at time of diagnosis. Table 1 summarizes the characteristics of 139 zoledronic acid and pamidronate cases and Table 2 describes the osteonecrosis cases associated with alendronate use.

Since this issue was first reviewed, our update has identified more cases of osteonecrosis and osteomyelitis associated with pamidronate and zoledronic acid. Additionally, our AERS search has yielded osteonecrosis cases involving oral bisphosphonates, specifically alendronate and risedronate. The previous consult only focused on intravenous bisphosphonates.

Of interest, one reporter, an oral surgeon, provided us with a substantial number of cases associated with zoledronic acid and pamidronate use, which have since been published.[2] This same reporter submitted nine alendronate cases and the one risedronate case, all involving osteonecrosis of the jaw. As with the previous consult, most of the cases were submitted to us by oral surgeons.

Our postmarketing data indicate a safety concern exists for zoledronic acid and pamidronate, in reference to osteonecrosis, despite the confounders in these cases. It appears that osteonecrosis may be a class effect as exhibited by alendronate cases, in addition to zoledronic acid and pamidronate. Based on our recommendations from the previous consult[1], changes to the product label for zoledronic acid have been made to include language about osteonecrosis, but more language is necessary to highlight this adverse event because it is associated with the therapeutic class of bisphosphonates, as evidenced by our case analysis. This language should also be included in the other bisphosphonate product labels, namely those of alendronate, risedronate, and pamidronate. The case analysis of the intravenous bisphosphonates also revealed that some of the patients presented with a mixed diagnosis of osteomyelitis and osteonecrosis and in some cases, only osteomyelitis. Thus, language about this should be included in the *Post-Marketing Experience* subsection of the *Adverse Reactions*.

**Search Date:** From their respective marketing approval dates until May 24, 2004. The various marketing approval dates for the bisphosphonates are as follows:

| | |
|---|---|
| alendronate | September 29, 1995 |
| pamidronate | October 31, 1991 |
| risedronate | March 27, 1998 |
| zoledronic acid | October 6, 2003 |

**Search Criteria:** Using the AERS database, the following MedDRA term was applied: High Level Term (HLT) Bone Disorders. The cases were then individually reviewed and included in the analysis if a diagnosis of osteonecrosis was recorded.

**Search Results:**

A total of 139 cases, 47 (34%) with pamidronate use, 33 (24%) with zoledronic acid use, and 59 (42%) with both zoledronic acid and pamidronate use, were found in AERS. Less than 10% of the cases were from foreign sources. For the oral bisphosphonates, 12 alendronate cases pertained to osteonecrosis, and only one case was found for risedronate. It should be noted that many cases did not provide complete information as to other confounding factors for osteonecrosis, treatment types for osteonecrosis, or outcomes.

*Intravenous Bisphosphonates: Pamidronate and zoledronic acid*

Table 1 summarizes the characteristics of 139 zoledronic acid and pamidronate cases. Following the same format as the previous consult, these cases are presented in one table because their efficacy is linked to the same mechanism. Additionally, many patients received both bisphosphonates; thus, difficulty lies in classifying the cases according to bisphosphonate use as the half-lives of the bisphosphonates are long.[1,2] In cases in which patients received both bisphosphonates, all patients first received pamidronate prior to switching over to zoledronic acid, except for one case in which the patient alternated between zoledronic acid and pamidronate. A significant number of zoledronic acid and pamidronate cases were submitted, but the data collected by the sponsor was incomplete for a number of variables (see Novartis' briefing package submitted on June 21, 2004).

Pertaining to patient demographics for the pamidronate and zoledronic acid cases, the average patient age was 63 years, and the majority of the patients were of female gender. For the two largest treatment groups, 60 (43%) patients received either bisphosphonate for osteolytic lesions secondary multiple myeloma and 52 (37%) for bone metastases arising from breast cancer. Lung, uterine, prostate, and colon cancers, and chronic myelocytic leukemia comprised the other malignancies. Only one patient in our case series received a bisphosphonate for a noncancerous indication, which was post-menopausal osteoporosis. This patient received treatment previously with alendronate.

Slightly more than two-thirds of the patients were diagnosed with osteonecrosis and about one-quarter had a mixed diagnosis of osteomyelitis and osteonecrosis. Only six percent of the patients presented with osteomyelitis. The reaction onset in these patients extended past one year, with the duration of onset longer for pamidronate than zoledronic acid. The duration of onset of osteonecrosis and osteomyelitis was about six years for pamidronate and 14 months for zoledronic acid. For patients receiving both bisphosphonates, the average duration of reaction onset was over three years. Site of osteonecrosis/osteomyelitis was the jaw for all cases, except for one which was the femoral head.

Factors which may have contributed to osteonecrosis/osteomyelitis include chemotherapy, radiation, steroids, thalidomide, and bone marrow transplant. Over half of the patients received chemotherapy. Although 19 (14%) patients were radiated at their tumor site, only one patient was radiated in the jaw, specifically, the mandible. About half of the patients had received steroids.

Development of osteonecrosis/osteomyelitis occurred in 57 (41%) patients after a dental procedure consisting of a tooth extraction or root canal. Detection of osteonecrosis occurred after spontaneous tooth loss in four patients.

There were only five cases in which the patient reported as recovered from the event. Fourteen patients had improved outcomes, but had not fully recovered at the time of report. Two patients expired, but the cause of death was not stated in one case, which was reported by a foreign source. In the second case, one patient died from cardiac failure, not related to bisphosphonate treatment. For the remainder of the other cases, outcomes were not provided. The treatment modalities of osteonecrosis varied. Some patients received antibiotics and debridement, but others received more invasive types of treatment, including surgical resections, as shown in Table 1.

*Oral bisphosphonates: Alendronate and Risedronate*

The demographics and clinical characteristics of the alendronate cases are presented in Table 2. For risedronate, there was only one case reported. The AERS search yielded only one case of risedronate, it is presented below. For alendronate, 12 cases were identified, nine of which were from domestic sources and were reported by an oral surgeon who had treated these patients in his practice. This oral surgeon also identified a large number of pamidronate and zoledronic acid cases. Treatment indication for alendronate therapy was osteoporosis for all cases. All patients were elderly, as the average age was 70 years and most patients were of female gender. Outcomes and concomitant medications were not provided. Three-quarters of the patients received sequestrectomies for treatment of their osteonecrosis.

One osteonecrosis case involving risedronate was identified. An 80 year-old female had received risedronate (dose and duration, and outcome were not stated) for osteoporosis and subsequently developed necrotic bone of the left mandible following tooth extraction. Of note, the reporter is the same oral surgeon who reported all of the domestic alendronate cases.

**Discussion:**

This consult is an update of a prior consult; thus, please refer to the discussion points raised previously.[1]

Since this issue was first reviewed, our update has identified more cases of osteonecrosis associated with pamidronate and zoledronic acid. Additionally, our AERS search has identified osteonecrosis cases involving oral bisphosphonates, specifically alendronate and risedronate. The previous consult only focused on intravenous bisphosphonates. One reporter, an oral surgeon, submitted all nine domestic alendronate cases and one risedronate case, all involving osteonecrosis of the jaw. Of interest, this same reporter provided us with a substantial number of cases associated with zoledronic acid and pamidronate use, which have since been published.[2] As with the previous consult, most of the cases were submitted to us by oral surgeons.

The cases involving oral bisphosphonates suggest that this adverse event may be a class event, rather than limited to intravenous bisphosphonates. Despite the fact that in the majority of the cases, osteonecrosis was detected in the jaws and the cases were submitted by the same reporter, the common factor of alendronate treatment dismisses the idea that other variables may have influenced this adverse event. It should be noted that oral bisphosphonates are not as potent as the intravenous bisphosphonates, but they share the mechanism of action.

Although the issue involving the preponderance of the number of cases reported by oral surgeons and dentists was discussed in the prior consult, there remains a concern that reporter bias may affect the validity of the reports. The seriousness of the cases, along with the morbidity, does serve to discount this concern. Furthermore, we have received cases from other sources, such as dentists, oncologists, other oral surgeons. A fraction of these cases were also submitted by foreign reporters.

**Conclusion:**

Our postmarketing data indicate a continuing safety concern exists for the oral and intravenous bisphosphonates, despite the confounders in these cases. Based on our recommendations from the previous consult[1], changes to the product label for zoledronic acid have been made to include language about osteonecrosis, but more language is necessary to highlight this adverse event as this is associated with the therapeutic class of bisphosphonates, as evidenced by our case analysis. This language should also be included in the other bisphosphonate product labels, namely those of alendronate, risedronate, and pamidronate. The case analysis of the intravenous bisphosphonates also revealed that some of the patients presented with a mixed diagnosis of osteomyelitis and osteonecrosis and in some cases, only osteomyelitis. Thus, language about this should be included in the *Post-Marketing Experience* subsection of the *Adverse Reactions*.

| **Reviewer's Signature / Date:** | |
|---|---|
| **Team Leader's Signature / Date:** | **Division Director's Signature / Date:** |

**Table 1.  Demographics for Pamidronate and Zoledronic Acid Cases from Marketing Approval until May 24, 2004**

| Selected Characteristics | n=139 |
|---|---|
| **Approval date** | |
| Pamidronate | 10/31/1991 |
| Zoledronic acid | 8/20/2001 |
| **Reporting year** | 2001-2004 |
| **Geographic region of reporting source** | |
| Domestic | 120 (92%) |
| Foreign | 19 (8%) |
| **Age** | N=132 |
| Range (years) | 34-88 |
| Mean | 63.2 |
| Median | 65 |
| **Gender** | |
| Female | 79 (57%) |
| Male | 58 (42%) |
| Unknown | 2 (1.4%) |
| **Cancer type** | |
| Breast[1] | 52 (37%) |
| Multiple myeloma[3] | 60 (43%) |
| Prostate | 11 (8%) |
| Lung | 2 (1%) |
| Chronic myelocytic leukemia | 1 |
| Colon | 1 |
| Lymphoma | 1 |
| Uterine | 1 |
| None | 1 |
| Unknown | 9 (4%) |
| **Diagnosis** | |
| Osteonecrosis | 97 (70%) |
| Osteomyelitis | 9 (6%) |
| Mixed, osteomyelitis and osteonecrosis | 33 (24%) |
| **Bisphosphonate treatment** | |
| Pamidronate only | 47 (34%) |
| Zoledronic acid only | 33 (24%) |
| Pamidronate & zoledronic Acid | 59 (42%) |
| **Reaction onset** | |
| Pamidronate only (n=45) | n=23 |
| Range, days | 272-4211 |
| Mean | 2233 |
| Median | 2233 |
| Zoledronic acid only (n=22) | n=14[4] |
| Range, days | 60-703 |
| Mean | 459 |
| Median | 441 |
| Pamidronate and zoledronic acid together | n=34 |
| Range, days | 180-2433 |
| Mean | 1267 |
| Median | 1180 |
| **Site of osteonecrosis** | |
| Jaw | 138 |
| Femoral head | 1 |

[1]  One patient had a concurrent diagnosis of ovarian cancer.

[2]  One patient was receiving an experimental medication.

[3]  One patient had a concurrent diagnosis of prostate cancer.

**Table 1.  Demographics for Pamidronate and Zoledronic Acid Cases (Continued)**

| | |
|---|---|
| **Contributory factors*** | |
| **Chemotherapy** | 78 (56%) |
| **Radiation[1]** | 19 (14%) |
| **Steroids** | 67 (48%) |
| **Thalidomide** | 17 (12%) |
| **Bone marrow transplant** | 6 (4%) |
| **Dental procedure leading to osteonecrosis** | |
| **Tooth extraction, root canal** | 57 (41%) |
| **Spontaneous tooth loss** | 4 (3%) |
| **Treatment modalities*** | |
| **Antibiotics** | 18 (13%) |
| **Maxillectomy** | 6 (4%) |
| **Debridement** | 15 (11%) |
| **Oral surgery, unspecific** | 10 (7%) |
| **Tooth extraction** | 10 (7%) |
| **Sequestrectomy** | 9 (6%) |
| **Mandibulectomy** | 9 (6%) |
| **Oxygen** | 1 |
| **Oral antral fistula** | 3 |
| **Ostectomy** | 1 |
| **Root canal** | 2 |
| **Outcome*** | |
| **Improved** | 14 |
| **Recovered** | 5 |
| **Unknown** | 97 |
| **Not recovered** | 21 |
| **Death** | 2 |

\* Not mutually exclusive
[1] Only one patient had radiation to the oral cavity (mandible).

**Table 2.  Demographics for Alendronate Cases[a]**

| Selected Characteristics | n=12 |
|---|---|
| **Approval date** | 9/29/1995 |
| **Reporting year** | 1997-2004 |
| **Country of origin** | |
| **Domestic** | 9 |
| **Foreign** | 3 |
| **Age** | |
| **Range (years)** | 59-82 |
| **Mean** | 70.3 |
| **Median** | 70 |
| **Gender** | |
| **Female** | 10 |
| **Male** | 2 |
| **Treatment indication** | |
| **Osteoporosis** | 12 |
| **Site of osteonecrosis** | |
| **Dental cavity** | 9 |
| **Femoral head** | 2 |
| **Vertebrae** | 1 |
| **Treatment modalities** | |
| **Sequestrectomy** | 9 |
| **Unknown** | 3 |
| **Concomitant medications** | |
| **Unknown** | 12 |
| **Outcome** | |
| **Unknown** | 11 |
| **Recovered** | 1 |

[a] One patient was also receiving zoledronic acid concomitantly.

cc:   NDA 21-223, 20-036, 20-560, 20-835
      HFD-150  Pazdur / Scher / Staten / Ibrahim
      HFD-510  Orloff / Colman / Hedin / Stadel
      HFD-430  Avigan / Chang / Green / Birdsong

---

[1] Chang J.  Consult: Pamidronate- and zoledronic acid- osteonecrosis.  DFS entry on November 21, 2003.

[2] Ruggiero SL, Mehrotra B, Rosenberg TJ, Engroff SL.  Osteonecrosis of the jaws associated with the use of bisphosphonates:  a review of 63 cases.  J Oral Maxillofac Surg  62:527-534, 2004.

---------------------------------------------------------------------------------------------

**This is a representation of an electronic record that was signed electronically and this page is the manifestation of the electronic signature.**

---------------------------------------------------------------------------------------------

```
 /s/
----------------------
Jennie Chang
1/31/05 03:01:44 PM
DRUG SAFETY OFFICE REVIEWER


Mark Avigan
2/1/05 11:00:11 AM
DRUG SAFETY OFFICE REVIEWER
```

LexisNexis* *Total Research System*                    Switch Client ┊ Preferences ┊ Sign Off ┊ ? Help

**My Lexis™** ┊ **Search** ┊ **Research Tasks** ┊ **Get a Document** ┊ *Shepard's©* ┊ **Alerts** ┊ Total L

Service: **Get by LEXSEE®**
Citation: **2007 U.S. DIST. LEXIS 3266**

*2007 U.S. Dist. LEXIS 3266, \**

⬇ View Available Briefs and Other Documents Related to this Case

INES ALEGRE, Individually and as Legal Guardian of DAVID ALEGRE, Plaintiff, v. JORGE N. AGUAYO, M.D., NORWEGIAN AMERICAN HOSPITAL, INC., MERCK & CO. INC., and MEDCO HEALTH SOLUTIONS, Defendants.

Case No. 06 C 5744

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

2007 U.S. Dist. LEXIS 3266

January 17, 2007, Decided

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff legal guardian sued defendants, a drug manufacturer, a doctor, a hospital and a prescription management company, and alleged that her spouse was harmed by taking the manufacturer's prescription pain medication. The manufacturer moved to stay pending its anticipated transfer pursuant to 28 U.S.C.S. § 1407 to the multidistrict litigation (MDL) proceeding in another district, and the guardian moved for remand.

**OVERVIEW:** The guardian alleged that the doctor (and through respondeat superior, his employer, the hospital) were liable not only because the doctor prescribed the drug, but because he prescribed the drug at doses and durations which were far in excess of that recommended by the manufacturer and as practiced by the medical community. The manufacturer's notice argued that even though the doctor and the hospital were Illinois citizens, removal was proper because the guardian, in an effort to defeat diversity jurisdiction, improperly named the doctor and the hospital as defendants. However, the manufacturer's fraudulent joinder argument failed for two reasons. First, allegations that the manufacturer concealed the risks of the drug and allegations that doctors were aware of the risks of the drug were not necessarily inconsistent. Second, the manufacturer simply ignored allegations regarding the doctor's prescription of the drug that were critical to the fraudulent joinder analysis. The presence of the hospital and the doctor destroyed the complete diversity necessary for the court's jurisdiction over the matter and rendered removal improper under 28 U.S.C.S. § 1441(b).

**OUTCOME:** The manufacturer's motion to stay was denied, and the guardian's motion for remand was granted. Accordingly, the court



remanded the case to the Circuit Court of Cook County, Illinois. All remaining pending motions were transferred to the Circuit Court of Cook County with the case. The guardian's request for costs was denied.

**CORE TERMS:** misjoinder, fraudulent joinder, fraudulent, removal, diversity jurisdiction, prescribed, joinder, reply, prescription, fraudulently, dose, manufacturer, durations, destroy, join, cardiovascular, jurisdictional, prescribing, prescribe, notice, heater, matter jurisdiction, medical community, increased risk, cases involving, transfer order, federal jurisdiction, series of transactions, transferred, occurrence

## LEXISNEXIS® HEADNOTES                                    ⊟ **Hide**

Civil Procedure > Removal > Elements > Removability

***HN1*** Defendants may remove civil suits filed in state court to federal court pursuant to 28 U.S.C.S. § 1441 and related statutes. Courts should interpret the removal statute narrowly and presume that the plaintiff may choose his or her forum. The burden of establishing federal jurisdiction falls on the party seeking removal.  More Like This Headnote

Civil Procedure > Venue > Multidistrict Litigation

***HN2*** A court retains full jurisdiction over an action until such time as a transfer order by the U.S. Judicial Panel on Multidistrict Litigation (JPML) is filed in the office of the clerk of the district court of the transferee district. A pending JPML transfer motion or conditional transfer order does not affect the jurisdiction of the transferor court or its ability to rule upon any pending motions.  More Like This Headnote

Civil Procedure > Removal > Postremoval Remands > Motions for Remand
Civil Procedure > Venue > Multidistrict Litigation

***HN3*** The pendency of a motion to remand to state court is not a sufficient basis to avoid inclusion in multidistrict litigation proceedings, and remand motions can be presented to and decided by the transferee judge.  More Like This Headnote

Civil Procedure > Removal > Postremoval Remands > Jurisdictional Defects

***HN4*** The constitutional significance of jurisdiction, concerns of judicial efficiency, and the importance of allowing plaintiffs to choose their forum, together with the language of 28 U.S.C.S. § 1447(c), which directs that if at any time before judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded, dictate that a court's first step should be to make a preliminary assessment of a jurisdictional issue. Then, if this preliminary assessment suggests that removal is improper, the court should promptly complete its consideration and remand the case to state court.  More Like This Headnote | *Shepardize: Restrict By Headnote*

Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview 🔖

**HN5** A federal court must assure itself that it possesses jurisdiction over the subject matter of an action before it can proceed to take any action respecting the merits of the action. The requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without exception. More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Jurisdiction > Diversity Jurisdiction > Citizenship > General Overview 🔖
Civil Procedure > Parties > Joinder > Fraudulent Joinder 🔖

**HN6** Fraudulent joinder of parties does not destroy diversity jurisdiction. A party arguing fraudulent joinder must demonstrate that there is no reasonable possibility that a state court would rule against the in-state defendant. More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview 🔖
Civil Procedure > Parties > Joinder > Fraudulent Joinder 🔖

**HN7** No United States Supreme Court authority suggests that joinder of non-fraudulent claims is a question that implicates the subject matter jurisdiction of a federal court; federal courts have traditionally held that matters of state civil procedure have no bearing on the existence or nonexistence of federal subject matter jurisdiction in a given case; and the pronounced lack of clarity in fraudulent misjoinder jurisprudence renders its application a violation of the Seventh Circuit's first virtue of any jurisdictional rule, specifically, its clarity and ease of implementation. More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Parties > Joinder > General Overview 🔖

**HN8** Illinois law, similar to federal law, allows plaintiffs to join defendants " against whom a liability is asserted either jointly, severally or in the alternative arising out of the same transaction or series of transactions. 735 Ill. Comp. Stat. 5/2-405(a). The objective of joinder is the economy of actions and trial convenience. The determining factors are that the claims arise out of closely related transactions and that there is in the case a significant question of law or fact that is common to the parties. More Like This Headnote

Civil Procedure > Parties > Joinder > General Overview 🔖

**HN9** Relevant transactions need not have much in common to allow for joinder of defendants, so long as the transactions are "closely related." More Like This Headnote

Civil Procedure > Remedies > Costs & Attorney Fees > Costs > General Overview 🔖

**HN10** The mere fact that a defendant fails to carry his burden does not of itself require an award of costs to the plaintiff. More Like This Hea

**Available Briefs and Other Documents Related to this Case:**

U.S. District Court Motion(s)
U.S. District Court Pleading(s)

**COUNSEL: [*1]** For Ina Alegre, Individually and as Legal Guardian of guardian ad litem David Alegre, Plaintiff: Edward Anthony Wallace, Mark Richard Miller, Wexler Toriseva Wallace LLP, Chicago, IL; Jennifer Lynn Orendi, Ashcraft & Gerel, LLP, Washington, DC.

For Norwegian American Hospital, Inc., Defendant: James W. Kopriva, Cassiday Schade LLP, Chicago, IL.

For Merck & Co, Inc., Defendant: Brian Alan Sher, LEAD ATTORNEY, Bryan Cave, Chicago, IL; Dmitry Shifrin, Jena M. Valdetero, Bryan Cave LLP, Chicago, IL; Stephen G Strauss, Bryan Cave, LLP, St. Louis, MO.

For Medco Health Solutions, Defendant: Joshua Sloane Singewald, Julie Marie Kennedy, Thomas J. Andrews, Johnson & Bell, Ltd., Chicago, IL.

**JUDGES:** Amy J. St. Eve, United States District Judge.

**OPINION BY:** Amy J. St. Eve

**OPINION**

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Before the Court is Defendant Merck & Co.'s Motion to Stay and Plaintiff Ines Alegre's Motion for Remand. For the following reasons, Defendant's Motion to Stay is denied, and Plaintiff's Motion for Remand is granted.

**BACKGROUND**

On September 29, 2004, Plaintiff Ines Alegre filed her Complaint in this matter in the Circuit Court **[*2]** of Cook County, Illinois, naming Merck & Co. ("Merck"), Dr. Jorge N. Aguayo, Norwegian American Hospital, Inc. ("Norwegian") and Medco Health Solutions ▾as defendants. Ms. Alegre filed the Complaint both on her own behalf (specifically, through a loss of consortium claim (R. 1-1, Compl. at PP 167-170)) and as legal guardian of her husband, Mr. Alegre. (*Id.* at P 1.) Plaintiff alleges that Mr. Alegre was harmed by taking Merck's prescription pain medication -- Vioxx. Specifically, Plaintiff alleges that Merck failed to fully disclose health risks, and particularly the risk of "thromboembolic adverse events, such as heart attacks and strokes" associated with use of Vioxx. (*Id.* at P 21.)

Plaintiff alleges that Dr. Aguayo (and through *respondeat superior,* his employer, Norwegian) are liable not only because Dr. Aguayo prescribed Vioxx, but because he prescribed Vioxx "for chronic pain at doses and durations which were far in excess of that recommended by the manufacturer and in doses and durations which were far in excess of that practiced by any responsible member of the medical community."

(*Id.* at P 61.) Plaintiff also claims, on information and belief, that "Dr. Aguayo **[*3]** actually knew of the increased risk for cardiovascular events associated with Vioxx, but continued to prescribe Vioxx to Mr. Alegre at high doses for long durations, at the expense of the health and safety of Mr. Alegre, and in conscious disregard of the foreseeable harm caused by Vioxx." (*Id.* at P 66.)

Plaintiff and Dr. Aguayo are citizens of Illinois (*id.* at PP 1-2), Norwegian is incorporated and located in Illinois (*id.* at P 3), and Merck is a citizen of New Jersey. (R. 14-1, Am. Notice of Removal at P 12.) On October 23, 2006, Merck filed a Notice of Removal removing Plaintiff's action to this Court's diversity jurisdiction and 28 U.S.C. § 1332 (R. 1-1), which they amended one week later, on October 30, 2006. (R. 14-1.) The citizenship of the parties would normally render Merck's removal improper. *See* 28 U.S.C. § 1441(b) (a defendant may remove an action not founded on a claim or right arising under the Constitution, treaties or laws of the United States "only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought"); **[*4]** 28 U.S.C. § 1332(a) (district courts do not have diversity jurisdiction over suits between citizens of the same state). Merck's notice argued that even though Dr. Aguayo and Norwegian are Illinois citizens, removal is proper in this case because Plaintiffs, in an effort to defeat diversity jurisdiction, improperly named Dr. Aguayo and Norwegian as defendants under both the doctrine of fraudulent joinder (R. 14-1, Am. Notice of Removal at PP 16 - 20) and the similarly named but distinct doctrine of fraudulent misjoinder. (*Id.* at PP 21 - 24.)

Merck has moved the Court to stay all proceedings in this action pending its anticipated transfer pursuant to 28 U.S.C. § 1407 to the multidistrict litigation ("MDL") proceeding that has been established in the Eastern District of Louisiana (*In re Vioxx Products Liability Litigation,* MDL No. 1657, 360 F. Supp. 2d 1352) to coordinate federal product liability actions related to Vioxx. (R. 12-1.) Plaintiff has both opposed Merck's motion and has filed a motion to remand this action to the Cook County Circuit Court. (R. 19-1.)

## LEGAL STANDARD

*HN1* Defendants may remove civil suits filed in state court to federal **[*5]** court pursuant to 28 U.S.C. § 1441 and related statutes. "Courts should interpret the removal statute narrowly and presume that the plaintiff may choose his or her forum." *Doe v. Allied-Signal, Inc.,* 985 F.2d 908, 911 (7th Cir. 1993). The burden of establishing federal jurisdiction falls on the party seeking removal. *Boyd v. Phoenix Funding Corp.,* 366 F.3d 524, 529 (7th Cir. 2004).

## ANALYSIS

### I. Timing of Consideration of Motion to Remand

The first question confronting the Court is whether to address Plaintiff's remand motion now or to stay all proceedings, which could result in the MDL judge ruling on the remand motion if the case is transferred to the Eastern District of Louisiana. The Court will consider Plaintiff's remand motion now.

Merck's stay motion argues that because resolution of all similar remand motions serves the interests of judicial economy and uniformity of decision, and because a stay will not unduly prejudice Plaintiff, this Court should order a stay of all proceedings. (R. 12-1, Merck's Mot. to Stay at 4-7.) In response, Plaintiff argues that because federal jurisdiction is in doubt, **[\*6]** this Court has both the ability and the duty to consider its jurisdiction over this matter prior to ruling on Merck's motion to stay. (R. 19-1, Opp. to Merck's Mot. to Stay and Mot. for Remand at 6-8.)

*HN2* This Court "retains full jurisdiction over this action until such time as a transfer order by the JPML is filed in the office of the clerk of the district court of the transferee district." *Rutherford v. Merck & Co.,* 428 F. Supp. 2d 842, 845 (S.D. Ill. 2006) (citing *Illinois Mun. Retirement Fund v. Citigroup, Inc.,* 391 F.3d 844, 850 (7th Cir. 2004)). "A pending JPML transfer motion or conditional transfer order does not affect the jurisdiction of the transferor court or its ability to rule upon any pending motions." *Meyers v. Bayer AG,* 143 F. Supp. 2d 1044, 1046 (E.D. Wis. 2001) (citing Rules of Procedure of the J.P.M.L. R. 1.5; *General Elec. Co. v. Byrne,* 611 F.2d 670, 673 (7th Cir. 1979)). Given that to this point Merck has merely identified this action on a "tag-along letter," meaning that a Conditional Transfer Order has not yet issued (R. 27-1, Merck's Reply in Supp. of Mot. to Stay and Opp. to Pl.'s Mot. to Remand **[\*7]** at 1), the Court clearly has the discretion to first rule on either the remand motion or the motion to stay. Courts have reached both conclusions on this question, often without providing a great deal of guidance on how they reached their decision. See *Meyers,* 143 F. Supp. 2d at 1047-48 (citing cases). The *Meyers* court, recognizing this deficit, formulated a compelling and logical framework for deciding whether to first address a remand motion or a motion to stay. See *id.* at 1048-49. The Court adopts the *Meyers* framework set forth below. See, e.g., *Rutherford,* 428 F. Supp. 2d at 845-46; *Riddle v. Merck & Co.,* Civil No. 06-172-GPM, 2006 U.S. Dist. LEXIS 22085, 2006 WL 1064070 at \*2 (S.D. Ill. Apr. 21, 2006); *Martin v. Merck & Co.,* No. S-05-750 LKK/PAN, 2005 U.S. Dist. LEXIS 41232, 2005 WL 1984483 at \*1-2 (E.D. Cal. Aug. 15, 2005); *Chinn v. Belfer,* No. Civ. 02-00131-ST, 2002 U.S. Dist. LEXIS 20343, 2002 WL 31474189 at \* 3 (D. Ore. June 19, 2002).

In support of its view that the Court should stay proceedings prior to considering Plaintiff's remand motion, Merck correctly stresses that *HN3* "[t]he pendency of a motion to remand to state court is not a sufficient basis **[\*8]** to avoid inclusion in [MDL] proceedings," and that remand motions in this matter "can be presented to and decided by the transferee judge." *In re Vioxx Prods. Liab. Litig.,* 360 F. Supp. 2d 1352, 1354 (J.P.M.L. 2005). Nothing in this language, however, *requires* this Court to stay proceedings prior to consideration of Plaintiff's remand motion. Furthermore, the primary policy justification for Merck's view -- specifically, that an MDL judge can consider similar remand motions together more efficiently than other district judges can by considering such motions on an individual basis, while also producing more uniform results -- does not apply in this case.

Plaintiff's allegations that Dr. Aguayo prescribed an excessive amount of Vioxx to Mr. Alegre distinguish this case from the more common scenario in which a plaintiff names a physician as a defendant for merely

prescribing a drug and failing to warn of its risks. As explained further below, this factual difference significantly impacts the analysis of Merck's fraudulent joinder argument. Despite its extensive reference to the number and type of cases previously transferred to the MDL judge in Louisiana as well **[*9]** as to the characteristics of individual cases, Merck fails to point to any remand motion pending in the MDL requiring analysis of this issue. As a result, there is no indication that any efficiency or uniformity gain will result from transfer of this case to the MDL judge.

The benefits of consideration of the remand motion at this stage, on the other hand, are clear. The *Meyers* court explained that **HN4** the constitutional significance of jurisdiction, concerns of judicial efficiency, and the importance of allowing plaintiffs to choose their forum, together with the language of 28 U.S.C. § 1447(c), which directs that "[i]f at any time before judgment it appears that the district court lacks subject matter jurisdiction, the case *shall* be remanded" (emphasis added), dictate that "a court's first step should be to make a preliminary assessment of the jurisdictional issue." *Meyers, 143 F. Supp. 2d at 1048.* Then, "[i]f this preliminary assessment suggests that removal was improper, the court should promptly complete its consideration and remand the case to state court." *Id.* at 1049. The *Meyers* court went on to explain **[*10]** the course of action that should follow if the preliminary assessment indicates that the jurisdictional issue at hand is "factually or legally difficult," including the circumstances in which the Court should consider addressing a motion to stay. *Id.* The Court, however, need not discuss later steps in the process. The Court finds, as explained further below, that a preliminary review of Plaintiff's remand motion establishes -- without any need to resort to difficult factual or legal issues -- that removal was improper in this case. This approach is consistent with the Seventh Circuit's clear directive that **HN5** "a federal court must assure itself that it possesses jurisdiction over the subject matter of an action before it can proceed to take any action respecting the merits of the action." *Cook v. Winfrey,* 141 F.3d 322, 325 (7th Cir. 1998). "The requirement that jurisdiction be established as a threshold matter 'springs from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'"*Id.* (quoting *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94-95, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998)).

## II. Fraudulent Joinder **[*11]** of Dr. Aguayo and Norwegian

Merck argues that Plaintiffs do not have a legitimate claim against Dr. Aguayo and Norwegian, and that Plaintiffs joined them in their complaint in a fraudulent attempt to destroy the Court's diversity jurisdiction. If this is correct, Merck's removal of this case is proper, because **HN6** fraudulent joinder of parties does not destroy diversity jurisdiction. *Schwartz v. State Farm Mut. Auto. Ins. Co.,* 174 F.3d 875, 878 (7th Cir. 1999). A party arguing fraudulent joinder must demonstrate that there is "no reasonable possibility that a state court would rule against the in-state defendant." *Id.* (quoting *Poulos v. Naas Foods, Inc.,* 959 F.2d 69, 73 (7th Cir. 1992)). Merck contends that there is no possibility that an Illinois court would rule against Dr. Aguayo (and, as a result, that respondeat superior, against Norwegian) because Plaintiff's allegations against Dr. Aguayo are internally inconsistent with those against Merck. Specifically, Merck claims that Plaintiff's allegation that Dr. Aguayo

decided to prescribe Vioxx despite his awareness of the increased risks for cardiovascular events associated with the drug is inconsistent **[*12]** with Plaintiff's claim that Merck concealed the alleged risks of Vioxx from everyone, including the medical community and Dr. Alegre. (R. 27-1, Merck's Reply in Supp. of Mot. to Stay and Opp. to Pl.'s Mot. to Remand at 10.)

Merck's fraudulent joinder argument fails for two reasons. First, allegations that Merck concealed the risks of Vioxx and allegations that doctors were aware of the risks of Vioxx are not necessarily inconsistent. Merck is not the only source of information on its drug, and indeed, Plaintiff's Complaint specifically discusses independent sources of information on Vioxx, such as studies and journal articles, that could have educated physicians about the drug. *See, e.g.*, R. 1-1, Compl. at P 37 (discussing an August 2001 article in the *Journal of the American Medical Association* that "highlighted the dangerous cardiovascular adverse event profile of COX-2 inhibitors, particularly VIOXX"). Merck's argument has failed in at least one other case for this reason. *See Melton v. Merck & Co.*, Civil Action No. 7:06-45-JMH, 2006 U.S. Dist. LEXIS 37376, 2006 WL 1543036 at *3 (E.D. Ky. June 1, 2006) (finding that Merck's "inconsistent pleading" argument fails because "[i]t is **[*13]** perfectly plausible that a drug manufacturer could engage in a pattern of concealing information about a drug's risks, and yet that reasonable Health Care Providers would still have known of the risks from the information that had come out").

Second, Merck simply ignores allegations regarding Dr. Aguayo's prescription of Vioxx that are critical to the fraudulent joinder analysis. Merck points to a number of cases in which a court found fraudulent joinder when a plaintiff (1) alleges that a pharmaceutical company concealed the risks associated with a drug; and (2) includes a claim against a physician based on the physician's decision to prescribe a drug despite knowledge of its risks. (R. 27-1, Merck's Reply in Supp. of Mot. to Stay and Opp. to Pl.'s Mot. to Remand at 10-11.) The nature of Plaintiff's allegations against Dr. Aguayo, however, differ from this more common factual scenario because Plaintiff claims that Dr. Aguayo not only prescribed Vioxx to Mr. Alegre, but that he prescribed Vioxx "at doses and durations which were far in excess of that recommended by the manufacturer and in doses and durations which were far in excess of that practiced by any responsible member of the **[*14]** medical community." (R. 1-1, Compl. at P 61.) This allegation, and others like it, provide the basis for an Illinois law negligence claim against Dr. Aguayo independent of his mere prescription of Vioxx to Mr. Alegre, foreclosing application of the fraudulent joinder doctrine. *See Jones v. Chicago HMO Ltd. of Ill.*, 191 Ill. 2d 278, 730 N.E.2d 1119, 1130, 246 Ill. Dec. 654 (Ill. 2000) (in professional negligence cases, "professionals are expected to use the same degree of knowledge, skill, and ability as an ordinarily careful professional would exercise under similar circumstances").

Other courts in recent cases involving allegations against physicians as well as against drug companies for their failure to warn of side effects or dangers of drugs -- including the MDL judge in another case involving allegations "different" from the standard case involving claims against doctors for mere prescription of Vioxx -- have similarly refused to find fraudulent joinder. *See* Tr. of Proceedings Before Hon. Eldon E. Fallon at 3-6, *Tallas v. Merck & Co.*, MDL Docket No. 1657 (E.D. La. Aug. 30, 2006) (finding that plaintiff did not fraudulently join physician when

plaintiff alleged not only that physician prescribed **[*15]** drug, but that physician did not examine or monitor plaintiff); _K.B. v. Janssen Pharm., L.P.,_ No. 4:05CV1914 HEA, 2006 U.S. Dist. LEXIS 8443, 2006 WL 544015 at *3 (E.D. Mo. Mar. 3, 2006) (finding that plaintiffs did not fraudulently join physicians when plaintiffs alleged not only that physicians prescribed drug, but that they failed to monitor plaintiffs after prescribing the drug and failed to properly follow drug packaging when prescribing drug); _Storlien v. Weigand,_ No. 05-1283-JTM, 2006 U.S. Dist. LEXIS 80787, 2006 WL 3068878 at *3 (D. Kan. Oct. 25, 2006) (holding that while a fraudulent joinder argument "might have legs" if plaintiff's complaint was limited to allegations of prescribing medication without adequate warning, plaintiff did not fraudulently join physician when plaintiff "also advanced a general claim of medical malpractice against [the physician]). The same conclusion is warranted here.

### III. Fraudulent Misjoinder of Dr. Aguayo and Norwegian

In addition to their fraudulent joinder argument, Merck also contends that Dr. Aguayo and Norwegian were fraudulently misjoined because the claims against Dr. Aguayo and Norwegian do not arise from the same transaction or occurrence as those against **[*16]** Merck. The doctrine of fraudulent misjoinder arose from the Eleventh Circuit's decision in _Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353, 1360 (11th Cir. 1996),_ in which the court held that while "mere misjoinder" will not destroy diversity jurisdiction, "egregious" misjoinder of claims is tantamount to fraudulent joinder and may consequently destroy diversity. Merck, stressing that this doctrine has also been adopted in the Fifth Circuit [1] and in several district courts, argues that the Court should apply the doctrine here and sever or dismiss Plaintiff's claims against Dr. Aguayo and Norwegian without prejudice. (R. 27-1, Merck's Reply in Supp. of Mot. to Stay and Opp. to Pl.'s Mot. to Remand at 12-15.)

---

**FOOTNOTES**

1 It is not entirely clear that the Fifth Circuit has "adopted" the _Tapscott_ test. The portion of the Fifth Circuit case that Merck cites merely notes that "it _might be_ concluded that misjoinder of plaintiffs should not be allowed to defeat diversity jurisdiction." _In re Benjamin Moore & Co.,_ 309 F.3d 296, 298 (5th Cir. 2002) (emphasis added). A subsequent Fifth Circuit opinion from this same litigation declined to reach the fraudulent jurisdiction issue for reasons unrelated to the doctrine itself, but added that it was making its decision "without detracting from the force of the _Tapscott_ principle . . . ." _In re Benjamin Moore & Co.,_ 318 F.3d 626, 630 (5th Cir. 2002). Neither of these statements provides a clear adoption of _Tapscott,_ and the Fifth Circuit has yet to apply the _Tapscott_ doctrine in any case.

---

**[*17]** The Court declines to follow _Tapscott_ or apply the doctrine of fraudulent misjoinder here. Following a thorough and persuasive analysis of fraudulent misjoinder and the case law examining the doctrine, the Southern District of Illinois recently declined to follow _Tapscott. See Rutherford, 428 F. Supp. 2d at 850-55._ The _Rutherford_ court detailed the rationale for its conclusion at length, noting, _inter alia,_ that (1) <sup>HN7</sup> "no Supreme Court authority suggests that joinder of non-fraudulent claims is a question that implicates the subject matter

jurisdiction of a federal court; (2) federal courts have traditionally held that matters of state civil procedure have no bearing on the existence or nonexistence of federal subject matter jurisdiction in a given case; and (3) the pronounced lack of clarity in fraudulent misjoinder jurisprudence renders its application a violation of the Seventh Circuit's "first virtue of any jurisdictional rule," specifically, its "clarity and ease of implementation" *Id.* (citing *Knudsen v. Liberty Mut. Ins. Co.*, 411 F.3d 805, 806 (7th Cir. 2005)). With particular stress on the currently muddled state of fraudulent **[*18]** misjoinder jurisprudence and the resulting impact on ease of application of jurisdictional rules, the Court will follow *Rutherford's* well-reasoned lead in this case.

Merck argues that the Court should apply the doctrine of fraudulent misjoinder, despite the lack of binding authority on the question, to preclude what they call Plaintiff's "blatantly improper scheme to prejudice Merck and attempt to evade federal jurisdiction." (R. 27-1, Merck's Reply in Supp. of Mot. to Stay and Opp. to Pl.'s Mot. to Remand at 13.) Even if the Court were to recognize the doctrine of fraudulent misjoinder in this case, however, Plaintiff has not misjoined any defendants here. *HN8* Illinois law, similar to federal law, allows plaintiffs to join defendants "against whom a liability is asserted either jointly, severally or in the alternative arising out of the same transaction or series of transactions." 735 ILCS 5/2-405(a); *compare* Fed. R. Civ. P. 20(a) (allowing joinder of parties as defendants "if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same **[*19]** transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action"). "The objective of joinder is the economy of actions and trial convenience." *Boyd v. Travelers Ins. Co.*, 166 Ill. 2d 188, 652 N.E.2d 267, 272, 209 Ill. Dec. 727 (Ill. 1995). "The determining factors are that the claims arise out of closely related 'transactions' and that there is in the case a significant question of law or fact that is common to the parties." *Id.*

Merck argues that there is no connection between Plaintiff's claims against Merck, which focus on inadequate disclosure of the risks associated with use of Vioxx, and Plaintiff's claims against Dr. Aguayo, which focus in large part on his prescription of an excessive dose of Vioxx to Mr. Alegre. (R. 27-1, Merck's Reply in Supp. of Mot. to Stay and Opp. to Pl.'s Mot. to Remand at 12-13.) Merck, which appears to focus on the disparate nature of the relevant transactions, reads the "same transaction" requirement too strictly. The Illinois Supreme Court has clearly indicated that *HN9* relevant transactions need not have much in common to allow for joinder of defendants, so long as the transactions **[*20]** are "closely related." *See Boyd*, 652 N.E.2d at 272-73 (finding the explosion of a water heater and the subsequent loss of the heater by an insurance company closely related, allowing for joinder of claims against water heater manufacturer and insurance company, because "[the insurance company] assumed possession of the heater for the sole purpose of determining the cause of the explosion").

Here, Vioxx's alleged failure to disclose the dangers of Vioxx and Dr. Aguayo's alleged prescription of an excessive amount of the drug are closely related in that they are the two factors that led to the ingestion of Vioxx that Mr. Alegre claims caused his heart attack. The acts are further interrelated in that Plaintiff's Complaint alleges upon information

and belief that "Dr. Aguayo actually knew of the increased risk for cardiovascular events associated with Vioxx, but continued to prescribe Vioxx to Mr. Alegre . . . in conscious disregard of the foreseeable harm caused by Vioxx." (R. 1-1, Compl. at P 66.) The transmittal of information (or lack thereof) from Merck or independent sources such as journal articles to Dr. Aguayo to Mr. Alegre provides another common series of **[\*21]** transactions and a question of fact common to the defendants. _See Copeland v. Eli Lilly & Co._, No. 05-04318-CV-C-NKL, 2005 U.S. Dist. LEXIS 39070, 2005 WL 3533394 at *5 (finding in a factually similar case that "the chain of communication -- and any breaks in it -- from the drug manufacturer to the patient is a common issue of fact"). These interrelations between Plaintiff's claims against Merck and those against Dr. Aguayo (and Norwegian) support that joinder here will lead to the intended benefits of joinder of defendants -- economy of actions and trial convenience -- outlined by the Illinois Supreme Court in _Boyd._ In sum, regardless of whether Merck's burden is to establish "egregious misjoinder" or "mere misjoinder," it cannot carry its burden here.

## IV. Plaintiff's Request for Costs

In her reply brief, Plaintiff argues that because Merck's briefs ignored relevant case law and the allegations against Dr. Aguayo in the Complaint, the Court should award Plaintiff the costs she incurred in briefing the issues before the Court. Plaintiff points to _Kuperstein v. Hoffman-Laroche, Inc.,_ 457 F. Supp. 2d 467, 474 (S.D.N.Y. 2006), in which the court awarded costs based **[\*22]** on a pharmaceutical defendant's "failure to address the governing law or accurately represent the factual allegations of the Complaint." The Court does not find that Merck ignored relevant law or misrepresented any allegations in the Complaint, and as the _Kuperstein_ court itself noted, **HN10** "the mere fact that the defendant fails to carry his burden does not of itself require an award of costs to the plaintiff." _Id._ at 472. As a result, Plaintiff's request for costs is denied.

## CONCLUSION

Plaintiff did not fraudulently join or fraudulently misjoin Defendants Dr. Jorge N. Aguayo and Norwegian American Hospital, Inc. in this matter, and they are proper defendants in this case. Their presence both destroys the complete diversity necessary for the Court's jurisdiction over this matter and renders removal improper under 28 U.S.C. § 1441(b). Accordingly, the Court remands the case to the Circuit Court of Cook County, Illinois. All remaining pending motions are transferred to the Circuit Court of Cook County with this case. Plaintiff's request for costs is denied.

Dated: January 17, 2007

AMY J. ST. EVE

United States District Judge **[\*23]**

Service: **Get by LEXSEE®**
Citation: **2007 U.S. DIST. LEXIS 3266**

View:  Full
Date/Time:  Monday, April 14, 2008 - 5:36 PM EDT

* Signal Legend:
- Warning: Negative treatment is indicated
- Questioned: Validity questioned by citing refs
- Caution: Possible negative treatment
- Positive treatment is indicated
- Citing Refs. With Analysis Available
- Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

*My Lexis*™ | Search | Research Tasks | Get a Document | *Shepard's®* | Alerts | Total Litigator | Transactional Advisor | Counsel Selector
History | Delivery Manager | Dossier | Switch Client | Preferences | Sign Off | Help

 LexisNexis®

About LexisNexis  |  Terms & Conditions  |  Contact Us
Copyright ©  2008 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.



RECEIVED

MAR 05 2008

140-1384                     MWL/DDB          2810          #34404

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

ZEFERINA MONTELONGO                )
                                                         )
                                                         )
            Plaintiff,                               )
                                                         )
            v.                                       )          Court No.:  07 L 7858 E
                                                         )
WINTERSET DENTAL CARE, P.C.,      )
ANIL K. AGARWAL, D.D.S., Individually and  )
as agent and servant of WINTERSET    )
DENTAL CARE, P.C., and GARY F. ALDER,  )
D.D.S, individually and as agent and servant  )
of WINTERSET DENTAL CARE, P.C.   )
                                                         )
            Defendants                          )
                                                         )

## NOTICE OF FILING

TO:    See Attached Service List

PLEASE TAKE NOTICE that on **March 4, 2008**, we filed with the Clerk of the Circuit Court of Cook County, Illinois, County Department, Law Division, **DEFENDANT DR. ALDER'S ANSWER TO PLAINTIFF'S AMENDED COMPLAINT AT LAW,** a copy of which is attached hereto and hereby served upon you.

**WELDON-LINNE & VOGT**
**105 W. Madison**
**14th Floor**
**Chicago, Illinois 60602**
**(312) 236-5151**

## PROOF OF SERVICE

Drew Balac, an attorney, being first duly sworn on oath, deposes and states that the attached document(s) were mailed to the attorneys on the attached service list as addressed by depositing same in the U.S. Mail Chute at 105 West Madison, St., Suite 1400, Chicago, Illinois 60602 on **March 4, 2008.**

_Drew Balac_



140-1384

## SERVICE LIST

*Montelongo v. Gary Adler, DDS*
*07 L 007858 E*

## ATTORNEYS FOR PLAINTIFF

Ms. Katherine Cardenas
Lucas & Cardenas PC
77 West Washington
Suite 900
Chicago, Illinois  60602
312/781-0082
312/332-4718 (F)

## ATTORNEYS FOR DR. ANIL AGARWAL AND WINTERSET DENTAL CARE, P.C.

Mr. John Green
Green Law Offices, LLC
200 West Jackson Boulevard, Suite 2060
Chicago, Illinois  60606

140-1384                          MWL/DDB                          #34404

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

| | | |
|---|---|---|
| ZEFERINA MONTELONGO | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Court No.:  07 L 7858 E |
| | ) | |
| WINTERSET DENTAL CARE, P.C., | ) | |
| ANIL K. AGARWAL, D.D.S., Individually and | ) | |
| as agent and servant of WINTERSET | ) | |
| DENTAL CARE, P.C., and GARY F. ALDER, | ) | |
| D.D.S, individually and as agent and servant | ) | |
| of WINTERSET DENTAL CARE, P.C. | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |

## DEFENDANT DR. ALDER'S ANSWER TO PLAINTIFF'S
## AMENDED COMPLAINT AT LAW

Defendant, DR. GARY F. ALDER, by and through his attorneys, WELDON-LINNE &

VOGT, and for his Answer to the Plaintiff's Amended Complaint at Law, states as follows:

### Count I – Malpractice Winterset Dental Care, P.C.

The allegations contained in Count I of the Plaintiff's Amended Complaint at Law are
not directed to this defendant. If the allegations can be construed to be directed to this defendant,
then they are denied.

### Count II – Malpractice vs. Agarwal, D.D.S., Individually and
### as Agent and Servant of Winterset Dental Care, P.C.

The allegations contained in Count II of the Plaintiff's Amended Complaint at Law are
not directed to this defendant. If the allegations can be construed to be directed to this defendant,
then they are denied.

## Count III- Malpractice vs. Adler, D.D.S., Individually and as Agent and Servant of Winterset Dental Care, P.C.

1.      On July 28, 2005 and for a long time prior and subsequent thereto the defendant, Gary F. Alder, D.D.S., was and it now an Illinois licensed dentist practicing dentistry in the Chicago Metropolitan Area.

> **ANSWER:**     The Defendant admits the allegations contained in paragraph 1 of Count III of Plaintiff's Amended Complaint at law.

2.      On the date aforesaid and prior and subsequent thereto, the defendant, Gary F. Alder, D.D.S., individually and as agent and servant of Winterset Dental Care, P.C., performed general dental care for the plaintiff, Zeferina Montelongo.

> **ANSWER:**     The Defendant admits only that he treated the Plaintiff prior to and on July 28, 2005.  The Defendant denies the remaining allegations contained in paragraph 2 of Count III of Plaintiff's Amended Complaint at Law.

3.      On the date aforesaid the defendant, Gary F. Alder, D.D.S., individually and as agent and servant of Winterset Dental Care, P.C., extracted plaintiff's teeth numbered 23, 24, 25 and 26 and, shortly thereafter, measured, fit her, and provided her with a replacement dental plate and following-up dental care.

> **ANSWER**:     The Defendant admits that he extracted plaintiff's teeth numbered 23, 24, 25 and 26 on July 28, 2005 but denies the remaining allegations contained in paragraph 3 of Count III of Plaintiff's Amended Complaint at Law.

4.      In the process of extracting the aforesaid teeth and providing the replacement dental plate and follow-up care, it was duty of defendant, Gary F. Alder, D.D.S., individually and as agent and servant of Winterset Dental Care, P.C., to do so in a reasonably careful and safe manner.

> **ANSWER**:     The Defendant admits only those duties imposed on him by law.

5.      In disregard to the duty described in the foregoing paragraph, the defendant, Gary F. Alder, D.D.S., individually and as agent and servant of Winterset Dental Care, P.C., was guilty of one or more of the following professional careless and negligent acts and/or omissions:

   a. Extracted the plaintiff's teeth in a negligent and violent manner, causing trauma to the surrounding tissues;

   b. Failed to make a careful and thorough examination of plaintiff's teeth and surrounding tissues and bone before the extractions to determine the plaintiff's hyper susceptibility to post extraction infection;

2

c.  Failed to make careful and through examinations of plaintiff's lower jaw post-extraction to determine the cause of plaintiff's pain;

d.  Failed to take proper and indicated actions to prevent post-extraction infections;

e.  Failed to make proper impressions and proper and timely adjustments to insure that plaintiff's replacement partial plate fit the plaintiff's oral structures;

f.  Failed to perform timely and appropriate post-extraction tests to determine the cause of plaintiff's pain;

g.  Failed to properly and timely diagnose the plaintiff's post-extraction infection;

h.  Failed to recognize and appreciate the plaintiff's pre-existing Sjoren's syndrome as a presentation that made her more susceptible to post-extraction infection;

i.  Failed to refer her timely to a specialist when he was unable to determine the cause of her intractable post-extraction pain and discomfort.

j.  Failed to timely take the appropriate films of the plaintiff's mouth and jaw;

k.  Failed to administer pre-extraction prophylactic antibiotic medication;

l.  Failed to timely administer antibiotic medication post-extraction;

m.  Otherwise carelessly and negligent extracted plaintiff's teeth, provide the replacement partial plate, and provide post-extraction dental care.

**ANSWER**:    The Defendant denies all of the allegations contained in paragraphs 5(a) through 5 (m) of Count III of the Plaintiff's Amended Complaint at Law.

6.      As a direct and proximate result of one or more of the forgoing careless and negligent acts and/or omissions, plaintiff sustained severe and permanent injuries, in that her lower jaw bone became infected and abscessed so as to cause the bone to decay and slough away requiring the placement of a metal plate in her jaw.  Because of the injuries, plaintiff suffered sever and unnecessary anguish, distress and pain and her jaw became useless for eating and speaking, and remained so for a long time.  To this date it is difficult for her to eat or speak, all due to plaintiff' damage.  She was caused to endure great pain and suffering and in the future will be caused to endure such pain and suffering; she was caused to have an increased risk of injury; she was caused to expend large sums of money as and for medical, dental and hospital care and attention in an effort to cure herself of these injuries and in the future will be caused to make such expenditures; she was caused to become disfigured and disabled; she was caused to absent herself from her regular employment, thereby losing large sums of money in the form of lost wages and in the future will be caused to sustain such losses.

3

**ANSWER**:   The Defendant denies all of the allegations contained in paragraph 6 of Count III of the Plaintiff's Amended Complaint at law.

7.   Plaintiff was not aware of her infection, its causes and its affect on her mouth and jaw until she sought the help of another dentist on April 18, 2006 who, upon examination and proper tests, diagnosed an abscess and infection and referred her to specialists for following-up care and treatment.

**ANSWER**:   The Defendant has insufficient information to either admit or deny the allegations contained in paragraph 7 of Count III of the Plaintiff's Amended Complaint.

8.   Plaintiff's attorney, Katherine A. Cardenas, attached hereto her affidavit that she has obtained a consultation of a health care professional as required by 735 ILCS 5/2-622(a)(1). A copy of the affidavit and the corresponding dental report is attached hereto as "Exhibit C."

**ANSWER**:   The Defendant admits only that plaintiff's attorney attached an affidavit and health care professional's report to Plaintiff's Amended Complaint at Law but denies the allegations contained therein in their entirety.

WHEREFORE, Defendant, GARY F. ALDER, D.D.S., by and through his attorneys,

WELDON-LINNE & VOGT, denies that he is liable to the plaintiff for any sum of money

whatsoever and prays that this Court dismiss the Plaintiffs' Amended Complaint at Law and

award the defendant the cost of attorney's fees he has incurred in defending this action.

Respectfully Submitted,

**WELDON-LINNE & VOGT**

By: _Drew Balac_

Drew Balac

**Weldon-Linne & Vogt**
105 W. Madison Street
Suite 1400
Chicago, IL 60602
#34404
Pldgs./Answer to Amended Complaint

4

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

|  |  |  |
|---|---|---|
| ZEFERINA MONTELONGO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No: 07 L 007858 |
| | ) | |
| WINTERSET DENTAL CARE, P.C. and | ) | |
| ANIL K. AGARWAL, D.D.S., | ) | |
| individually and as agent and servant of | ) | |
| WINTERSET DENTAL CARE, P.C., | ) | |
| | ) | |
| Defendants. | ) | |

COPY
RECEIVED

NOV 2 8 2007

By_____

## NOTICE OF FILING

TO:    David H. Lucas
       Katherine A. Cardenas
       LAW OFFICES OF LUCAS AND CARDENAS, P.C.
       77 West Washington Street, Suite 900
       Chicago, Illinois  60602

PLEASE TAKE NOTICE THAT on  November 27, 2007 , the undersigned will file with the Clerk of the Circuit Court of Cook County, Illinois:

### ANSWER TO AMENDED COMPLAINT AT LAW.

GREEN LAW OFFICES

By:_____
One of the Attorneys for  Defendants,
Winterset Dental Care, P.C. and
Anil K. Agarwal, D.D.S

John M. Green
Sylvia Karalekas
GREEN LAW OFFICES
175 West Jackson Boulevard, Suite 1600
Chicago, Illinois 60604
312-922-1181

### PROOF OF SERVICE

I, Chris Gruzlewski, a non-attorney* certify:  that I served the above documents by mailing a copy to  above-named attorney(s) at the address(es) as listed above, and depositing the same in the U.S. mail at 175 W. Jackson, Chicago, IL at 5:00 pm on November 27, 2007, with proper postage prepaid.

[ ]    Under penalties as provided by law pursuant to IL.REV.STAT.      Date:_____
       CHAP 110 SEC 1-109 I certify that the statements set forth
       herein are true and correct.

_____

Document #: 1284780



50290-GRE

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

| | | |
|---|---|---|
| ZEFERINA MONTELONGO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No: 07 L 007858 |
| | ) | |
| WINTERSET DENTAL CARE, P.C., | ) | |
| ANIL K. AGARWAL, D.D.S., | ) | |
| individually and as agent and servant of | ) | |
| WINTERSET DENTAL CARE, P.C., | ) | |
| and GARY F. ALDER, D.D.S., | ) | |
| individually and as agent and servant of | ) | |
| WINTERSET DENTAL CARE, P.C., | ) | |
| | ) | |
| Defendants. | ) | |

## ANSWER TO AMENDED COMPLAINT AT LAW

NOW COME the defendants, WINTERSET DENTAL CARE, P.C. and ANIL K.

AGARWAL, D.D.S., individually by and through their attorney, GREEN LAW OFFICES, and

in response to plaintiff's Amended Complaint at Law, states as follows:

### Count I

1.      Defendant, Winterset Dental Care, P.C., admits the allegations in Paragraph 1 of

Count I of plaintiff's Amended Complaint at Law.

2.      Defendant admits the allegations in Paragraph 2 of Count I of plaintiff's Amended

Complaint at Law.

3.      Defendant, Winterset Dental Care, P.C., admits providing general dental care and

services to the plaintiff by and through its agent, Anil K. Agarwal, and denies that any other

agents or servants performed dental care to the plaintiff.

4.      Defendant admits that said extractions occurred and follow-up treatment was rendered at Winterset Dental, but denies any allegations of agency and master/servant relationship.

5.      Defendant, Winterset Dental Care, P.C., admits to only that duty imposed upon them by law and further states that such duty arises by operation of law and not by the allegations of the pleader.

6.      Defendant, Winterset Dental Care, P.C., denies the allegations in Paragraph 6 of plaintiff's Amended Complaint at Law and specifically denies said Paragraphs (a) through (m).

7.      Defendant, Winterset Dental Care, P.C., denies the allegations in Paragraph 7 of plaintiff's Amended Complaint at Law.

8.      Defendant, Winterset Dental Care, P.C., has insufficient knowledge with which to admit or deny the allegations in Paragraph 8 of Count I of the plaintiff's Amended Complaint at Law and demands strict proof thereof.

9.      Defendant, Winterset Dental Care, P.C., admits that said affidavit and healthcare provider reports are attached, but denies the allegations therein and the sufficiency of each.

WHEREFORE, the defendant, Winterset Dental Care, P.C., denies that this plaintiff is entitled to any judgment whatsoever and further prays that this Court enter an order dismissing Count I of the plaintiff's Amended Complaint at Law and assess costs associated with this suit.

## Count II

1.      Defendant, Anil K. Agarwal, D.D.S. (Agarwal), admits the allegations in Paragraph 1 of Count II of plaintiff's Amended Complaint at Law.

2.      Defendant, Agarwal, admits the allegations in Paragraph 2 of Count II of plaintiff's Amended Complaint at Law.

3.      Defendant, Agarwal, admits the allegations of Paragraph 3 of Count II of plaintiff's Amended Complaint at Law.

4.      Defendant, Agarwal, denies the allegations in Paragraph 4 of Count II of plaintiff's Amended Complaint at Law.

5.      Defendant, Agarwal, admits only that duty imposed upon him by law and further states that such duty arises by operation of law and not by the allegations of the pleader.

6.      Defendant, Agarwal, admits that he was an agent of Winterset Dental Care, P.C., but denies the remaining allegations of Paragraph 6 of Count II of plaintiff's Amended Complaint at Law and specifically denies Subparagraphs (a) through (m).

7.      Defendant, Agarwal, denies the allegations in Paragraph 7 of Count II of plaintiff's Amended Complaint at Law.

8.      Defendant, Agarwal, has insufficient knowledge with which to admit or deny the allegations in Paragraph 8 of plaintiff's Complaint at Law and demands strict proof thereof.

9.      Defendant, Agarwal, admits the existence of said affidavit and healthcare provider report, but denies the allegations and its sufficiencies.

WHEREFORE, the defendant, Agarwal, denies this plaintiff is entitled to any judgment whatsoever, and further prays that this Court enter an order dismissing Count II of plaintiff's Amended Complaint at Law and assess costs associated with this suit.

## Count III

Defendant, Winterset Dental Care, P.C. and Anil K. Agarwal, D.D.S., make no answer to Count III of plaintiff's Amended Complaint at Law, as the allegations of negligence are not directed towards these defendants.  Further answering, defendant, Winterset Dental Care, P.C., denies any and all allegations of agency and master/servant relationship between defendant, Gary

F. Alder, D.D.S. and Winterset Dental Care, P.C., that are contained within Count III of plaintiff's Amended Complaint at Law.

GREEN LAW OFFICES

By: _____
        One of the Attorneys for
WINTERSET DENTAL CARE, P.C. and
ANIL K. AGARWAL, D.D.S.

STATE OF ILLINOIS        )
                         ) SS:
COUNTY OF C O O K        )

<u>AFFIDAVIT</u>

SYLVIA KARALEKAS, an attorney for the defendant(s), being first duly sworn and under oath, states that the allegations of lack of sufficient knowledge are true and correct to the best of her knowledge.

SUBSCRIBED & SWORN TO
Before me this  27th  day of
_____November____ 2007

_____
Notary Public

"OFFICIAL SEAL"
CHRISTOPHER C. GRUZLEWSKI
Notary Public  State of Illinois
My Commission Expires Oct. 22, 2008

John M. Green
Sylvia Karalekas
GREEN LAW OFFICES
175 West Jackson Blvd.
Suite 1600
Chicago, Illinois  60604
(312) 922-1181

Document #: 1284628

Attorney No. 34534

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

| | | |
|---|---|---|
| ZEFERINA MONTELONGO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs | ) | No.    2007 L 7858 E |
| | ) | |
| WINTERSET DENTAL CARE, P.C. and | ) | |
| ANIL K. AGARWAL, D.D.S., individually and | ) | |
| as agent and servant of WINTERSET | ) | |
| DENTAL CARE, P C., | ) | |
| | ) | |
| Defendants. | ) | |

### 622 REPORT - WINTERSET DENTAL CARE, P.C.

My name is Jeffery F. West, D.D.S. I am a dentist licensed to practice dentistry in all its branches. I currently practice dentistry in North Carolina. By reason of my education and experience I am familiar with and know the applicable standards of care, methods, procedures and treatments relevant to the allegations at issue in this case.

I have reviewed Ms. Zeferina Montelongo's records from Winterset Dental Care, P.C., her drug history from Prime Therapeutics, LLC, and medical records from University of Illinois at Chicago. Based upon my review of these records, it is my opinion that there is a reasonable and meritorious cause for filing a lawsuit against Winterset Dental Care, P.C. for its care and treatment of Zeferina Montelongo. Winterset Dental Care, P.C., through its agents and servants, provided substandard care and treatment to Ms. Montelongo in that it failed to properly prescribe antibiotics pre and post extraction for the extractions done on September 28, 2005, failed to properly diagnose cause of plaintiff's post extraction pain, failed to timely refer the plaintiff to an oral surgeon or other a specialist, failed to properly and timely diagnose plaintiff's post extraction infection, and failed to prevent plaintiff's severe infection when it knew

- 2 -

or should have known that plaintiff's pre-existing medical conditions and medications caused

her to be more susceptible to infection.  These acts and omissions were the proximate cause of

the plaintiff's irreparable jaw bone damage and necessitated placement of plate.

Jeffery F. West, D.D.S.
136 S. Sharon Amity Road, Suite 201
Charlotte, North Carolina 28211
Dental License No. _____

Attorney No. 34554

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, LAW DIVISION

| | | |
|---|---|---|
| ZEFERINA MONTELONGO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No.    2007 L 7858 E |
| | ) | |
| WINTERSET DENTAL CARE, P.C. and | ) | |
| ANIL K. AGARWAL, D.D.S., individually and | ) | |
| as agent and servant of WINTERSET | ) | |
| DENTAL CARE, P.C., | ) | |
| | ) | |
| Defendants. | ) | |

## 622 REPORT - ANIL K. AGARWAL, D.D.S.

My name is Jeffery F. West, D.D.S. I am a dentist licensed to practice dentistry in all its branches. I currently practice dentistry in North Carolina. By reason of my education and experience I am familiar with and know the applicable standards of care, methods, procedures and treatments relevant to the allegations at issue in this case.

I have reviewed Ms. Zeferina Montelongo's records from Winterset Dental Care, P.C., her drug history from Prime Therapeutics, LLC, and medical records from University of Illinois at Chicago. Based upon my review of these records, it is my opinion that there is a reasonable and meritorious cause for filing a lawsuit against Anil K. Agarwal, D.D.S. for his care and treatment of Zeferina Montelongo. Anil K. Agarwal, D.D.S. provided substandard care and treatment to Ms. Montelongo in that he failed to properly prescribe antibiotics pre and post extraction for the extractions done on September 28, 2005, failed to properly diagnose the cause of plaintiff's post extraction pain, failed to timely refer the plaintiff to an oral surgeon or other a specialist, failed to properly and timely diagnose plaintiff's post extraction infection, and failed to prevent plaintiff's severe infection when he knew or should have known that plaintiff's

- 2 -

pre-existing medical conditions and medications caused her to be more susceptible to infection.

These acts and omissions were the proximate cause of the plaintiff's irreparable jaw bone

damage and necessitated placement of plate.

Jeffery F. West, D.D.S.
735 S. Sharon Amity Road, Suite 201
Charlotte, North Carolina 28211
Dental License No. _NC   4419_

Attorney No. 34554

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

| | | | |
|---|---|---|---|
| ZEFERINA MONTELONGO, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| vs. | ) | No. | 2007 L 7858 E |
| | ) | | |
| WINTERSET DENTAL CARE, P.C. and | ) | | |
| ANIL K. AGARWAL, D.D.S., individually and | ) | | |
| as agent and servant of WINTERSET | ) | | |
| DENTAL CARE, P.C., | ) | | |
| | ) | | |
| Defendants. | ) | | |

## 622 REPORT - GARY F. ALDER, D.D.S.

My name is Jeffery F. West, D.D.S.  I am a dentist licensed to practice dentistry in all its branches.  I currently practice dentistry in North Carolina.  By reason of my education and experience I am familiar with and know the applicable standards of care, methods, procedures and treatments relevant to the allegations at issue in this case.

I have reviewed Ms. Zeferina Montelongo's records from Winterset Dental Care, P.C., her drug history from Prime Therapeutics, LLC, and medical records from University of Illinois at Chicago.  Based upon my review of these records, it is my opinion that there is a reasonable and meritorious cause for filing a lawsuit against Gary F. Alder, D.D.S. for his care and treatment of Zeferina Montelongo.  Gary F. Alder, D.D.S. provided substandard care and treatment to Ms. Montelongo in that he failed to properly prescribe antibiotics pre and post extraction for the extractions done on September 28, 2005, failed to properly diagnose the cause of plaintiff's post extraction pain, failed to timely refer the plaintiff to an oral surgeon or other a specialist, failed to properly and timely diagnose plaintiff's post extraction infection, and failed to prevent plaintiff's severe infection when he knew or should have known that plaintiff's

- 2 -

pre-existing medical conditions and medications caused her to be more susceptible to infection.

These acts and omissions were the proximate cause of the plaintiff's irreparable jaw bone

damage and necessitated placement of plate.

Jeffery F. West, D.D.S.
1355. Sharon Amity Road, Suite 201
Charlotte, North Carolina 28211
Dental License No. _NC 4419_