UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

| | | |
|---|---|---|
| ZEFERINA MONTELONGO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 08-cv-1687 |
| | ) | |
| WINTERSET DENTAL CARE, P.C., | ) | Judge Andersen |
| *et. al*, | ) | |
| Defendants. | ) | |

## DEFENDANT MERCK & CO., INC.'S OPPOSITION
## TO PLAINTIFF'S MOTION TO REMAND
## AND REPLY IN SUPPORT OF MOTIONS TO STAY AND TO SEVER

Defendant Merck & Co., Inc. ("Merck"), by its undersigned counsel, hereby files this

memorandum in opposition to Plaintiff's Motion to Remand, and in support of Merck's Motion

to Stay and Motion to Sever. The Court should decline to hear that motion now. Plaintiff's

claims here set forth the same allegations pled against Merck in dozens of other cases involving

the prescription medication FOSAMAX® ("Fosamax"). The Judicial Panel on Multidistrict

Litigation ("MDL Panel") has instructed that such cases should be heard as part of the Fosamax

MDL proceedings in the Southern District of New York. Plaintiff's attempt to defeat diversity

jurisdiction by adding her claims against Merck to claims against other defendants are no

different from such attempts by other plaintiffs in other districts, in cases that have already been

transferred to the MDL Court for coordinated disposition. The issue of whether this case should

be transferred before further proceedings is properly before the MDL Panel for decision, and the

Plaintiff has already filed a brief with the MDL Panel setting forth the same arguments opposing

transfer that she makes here. This Court should postpone consideration of Plaintiff's Motion to

Remand until the MDL Panel makes its determination, and Merck's Motion to Stay should be

granted.

If this Court were to address Plaintiffs' Motion to Remand, that motion should be denied.[1]  Plaintiff's own statements demonstrate that the in-state dentists upon whom Plaintiff bases her remand motion have been fraudulently/improperly joined in this action.  Plaintiff's claims against Merck focus upon the warning that Merck allegedly should have provided Plaintiff's prescribing physician before she began taking Fosamax and *after* Plaintiff already had the dental problems of which she complains.  By contrast, Plaintiff's claims against the Illinois-resident dentists are based upon alleged negligence in performing dental procedures and an alleged negligent failure to properly treat her in light of a longstanding medical condition wholly unrelated to Fosamax.  Such claims against the in-state dentists are not based upon on the same transactions or occurrence as the claims against Merck, and the dentists are not properly joined in this action.  Merck's Motion to Sever the claims against the Dental Defendants should be granted, and Plaintiff's Motion to Remand should be denied with regard to the Plaintiff's claims against Merck.

<u>PROCEDURAL HISTORY</u>

Plaintiff Zeferina Montelongo is a citizen of Illinois who claims to have been injured as a result of using Fosamax at her physician's direction.  Fosamax is a prescription medication manufactured by Defendant Merck, which is a resident of New Jersey.  On August 16, 2006, the Judicial Panel on Multidistrict Litigation (the "MDL Panel") issued a transfer order establishing MDL Proceeding No. 1789, styled *In re Fosamax Products Liability Litigation*, to coordinate the many cases filed across the country relating to Fosamax.  *See In re Fosamax Prods. Liab. Litig.*,

---

[1]  On March 24, 2008, before the Plaintiff filed her Motion to Remand, Merck filed a Motion to Stay this case until the MDL Panel decides whether to transfer it to the Fosamax MDL proceedings.  That brief stay should be granted until the MDL Panel fulfills its role of determining how this case would most efficiently proceed.

444 F. Supp. 2d 1347 (Jud. Pan. Mult. Lit. 2006).  As of this date, the MDL Panel has issued at least 52 Conditional Transfer Orders requiring the transfer of at least 133 actions to MDL No. 1789, where at least 521 cases are now pending, including both the transferred cases and cases filed directly in the transferee court.

Plaintiffs have filed motions to remand, before transfer, in many cases that have been sent to the Fosamax MDL proceedings, including many cases in which plaintiffs sought to avoid diversity jurisdiction by adding third parties such as dentists, sales representatives, pharmacies, and distributors.  District Courts receiving such motions have repeatedly concluded that the transferee court should address such remand issues in a coordinated manner, including the question of whether additional defendants—such as the in-state dentists in this case—were improperly or fraudulently joined.  *See* Order filed 7/9/2007 in *Anderson v. Brite Dental Corp., et al.*, Case No. 8:07-CV-965-T-27EAJ (M.D. Fla.) (Ex. 1 hereto) (staying all proceedings and dismissing motion to remand without prejudice to renew before transferee court); Order filed 6/14/2007 in *Demsky, et al. v. Merck & Co., et al.*, Case No. CV 07-2839 (FMC) (PJWx) (C.D. Cal.) (Ex. 2 hereto); Minute Orders dated 4/12/2007 and 5/15/2007 in *Walla v. Merck & Co., et al.*, Case No. 07-C-1864 (N.D. Ill.) (same); (Ex. 3 hereto); Order filed 2/7/2007 in *Bogard, et al., v. Merck & Co., Inc., et al.,* Case No. C-06-6917 SC (N.D. Cal.) (same) (Ex. 4 hereto); Order filed 2/2/2007 in *Ferraro, et al. v. Merck & Co., et al.*, Case No. CV 06-7733 (FMC) (PJWx) (C.D. Cal.) (same) (Ex. 5 hereto); Order filed 12/7/2006 in *Clayton, et al. v. Merck & Co., et al.*, Case No. CV 06-6398 (FMC) (PJWx) (C.D. Cal.) (same) (Ex. 6 hereto); Order filed 12/6/2006 in *Morris, et al. v. Merck & Co., et al.*, Case No. CV 06-5587 (FMC) (PJWx) (C.D. Cal.) (same) (Ex. 7 hereto); *see also* Order filed 3/16/2007 in *Potgeiter v. Merck & Co., Inc.,* Case No. 07-cv-00002-DMC-MF (D.N.J.) (staying case pending transfer, where motion to remand had been

filed) (Ex. 8 hereto); Order filed 2/2/2007 in *Goya v. Merck & Co., et al.,* Case No. 06-CV-2574 H (AJB) (S.D. Cal.) (deferring decision on motion to remand for 60 days while MDL Panel addresses transfer issues) (Ex. 9 hereto); Order filed 11/01/2006 in *Purdy, et al., v. Merck & Co., et al.*, Case No. 2:06-cv-223-KS-MTP (S.D. Miss) (staying case pending transfer, where motion to remand was filed) (Ex. 10 hereto). Each of the cases cited above has been transferred to the Fosamax MDL proceedings, and all remand issues in those cases will be addressed by the transferee court.

The transferee court has already put a process in place to address the filing and resolution of motions to remand. Motions to remand were filed for all pending Fosamax cases in the Fosamax MDL proceedings on March 31, 2008, and those motions are presently pending before the MDL court. *See Case Management Order No. 14* (Ex. 11 hereto). For newly transferred cases, motions to remand may be filed in the MDL proceedings immediately upon transfer, and Merck must file its response within 14 days. *Id.* One of the pending motions to remand, in *Anderson v. Brite Dental Corp.*, involves improperly joined dentists, and will require the MDL court to address the same issues present in this case.

Plaintiff filed this case in Illinois state court in or about July 2007, naming as defendants only Winterset Dental Care, P.C., Anil K. Agarwal, D.D.S., and Gary F. Alder, D.D.S. (collectively "the Dental Defendants"). Merck was not named as a defendant in the original or first amended complaints. On February 14, 2008, Plaintiff filed a Second Amended Complaint, naming Merck as a defendant for the first time. Merck was served with the Complaint on February 26, 2008, and removed the case to this Court on March 21, 2008. On March 24, 2008, long before Plaintiff filed her motion to remand, Merck filed a Motion to Stay this case, and a Motion to Sever the claims against Merck from the Plaintiff's claims against the Dental

Defendants.

On April 16, 2008, the MDL Panel issued Conditional Transfer Order No. 52, providing for the transfer of this case to the Fosamax MDL Proceedings. *See* Conditional Transfer Order No. 52 (Ex. 12 hereto). Plaintiff gave the MDL Panel notice of her opposition to transfer on or about April 29, and on May 13 filed a Motion before the MDL Panel setting forth her reasons why the MDL Panel should not transfer this case. *See* Plf's Motion to Vacate CTO 52 (Ex. 13 hereto). The Plaintiff's argument to the MDL Panel is precisely the same argument that she makes here, and she has asked the Panel to address whether it would be more efficient to decide her remand issues in this Court or as part of the Fosamax MDL Proceedings. That issue is now before the MDL Panel for decision.

## FACTUAL BACKGROUND

Plaintiff alleges that she "suffered severe and permanent jaw injuries" including osteonecrosis of the jaw, and that "her lower jaw bone became infected and abscessed so as to cause the bone to decay and slough away requiring the placement of a metal plate in her jaw." Complaint, Count IV ¶ 9. In her Motion to Remand, Plaintiff makes it plain that her alleged infection and injury occurred even before she began taking Fosamax. Plaintiff underwent dental surgery, performed by the Dental Defendants on July 28, 2005, at which time several teeth were extracted. Mot to Remand at 2; *see also* Complaint ¶ 4. At that time, Plaintiff had been suffering from Sjogren's syndrome for the past five years. Mot. to Remand at 1; Complaint ¶ 6.h. According to Plaintiff, her Sjogren's syndrome made her teeth "more susceptible to tooth decay" and "more susceptible to post-extraction infection." Mot to Remand at 1; Complaint ¶ 6.h. From the date of surgery, Montelongo claims to have suffered "continuous pain and discomfort in her lower jaw" as a result of an infection. Mot. to Remand at 2. She claims that

the Dental Defendants failed to treat her for this infection, which ultimately "caused the jaw bone to decay and slough away." Mot. to Remand at 2; Complaint ¶ 3. As a result, Plaintiff's original claims against the Dental Defendants made no reference to Fosamax whatsoever, but instead asserted that the Dental Defendants were negligent in the extraction of her teeth, failed to make a proper examination before the extraction "to determine the plaintiff's hyper susceptibility to post extraction infection," failed to make a proper post-extraction examination and to provide proper post-extraction treatment and testing, and failed to properly treat her in light of her pre-existing Sjogren's syndrome. Complaint ¶ 6.a to 6.m. Plaintiff's original claims in this case had no relationship whatsoever to Fosamax.

It was not until her Second Amended Complaint that Plaintiff first made any claim against Merck. Plaintiff now asserts that she was first prescribed Fosamax on August 24, 2005, a month *after* the dental surgery of which she complains and *after* her alleged dental infection had begun. Mot. to Remand at 2. There is no allegation that the Dental Defendants had any role in prescribing Fosamax, which would have been prescribed by her physician for the purposes of treating osteoporosis, and not by a dentist. Nor does Plaintiff present any allegations to connect Fosamax to her pre-existing infection. Nor would there be a basis for such a claim - even the experts relied upon by the plaintiffs in the Fosamax MDL proceedings have stated that Fosamax causes no risk of injury unless it has been used continuously for at least three years. *See, e.g.,* Robert E. Marx, D.D.S., *Oral & Intravenous Bisphosphonate-Induced Osteonecrosis of the Jaws* 82, 87 (Quintessence Publ., 2007) (observing that "regular use of an oral bisphosphonate for a period of less than 3 years suggests minimal or no risk," and "the risk of developing exposed bone does not become significant until 3 years of continuous use.") (Ex. 14 hereto).

<u>**ARGUMENT**</u>

**I.**    **This Action Should Be Stayed.**

As set forth in Merck's Motion to Stay, this action should be stayed until the MDL Panel determines whether Plaintiff's Motion to Remand would be more efficiently addressed in this Court or in concert with other similar motions raised in the Fosamax cases. "The pendency of a motion to remand to state court is not a sufficient basis to avoid inclusion in Section 1407 proceedings," *In re Vioxx Products Liab. Litig.*, 360 F. Supp. 2d 1352 (Jud. Pan. Mult. Lit. 2005), and "a majority of courts have concluded that it is often appropriate to stay preliminary pretrial proceedings while a motion to transfer and consolidate is pending with the MDL Panel because of the judicial resources that are conserved." *Rivers v. The Walt Disney Co.*, 980 F. Supp. 1358, 1362 (C.D. Cal. 1997). A brief delay in this case, while the MDL Panel decides whether to consolidate this case with the Fosamax MDL proceedings, will serve the interests of judicial economy and will not prejudice any of the parties. *See id.* at 1362.

The Plaintiff, in her opposition to Merck's Motion to Stay, ignores the key purpose for that motion. Under 28 U.S.C. § 1407(b), the MDL Panel is specifically charged with determining the most efficient manner in which cases such as this should be addressed. The Plaintiff has, in her filings before the MDL Panel, opposed the transfer of this case and has placed the issues of efficiency and economy squarely before the MDL Panel for decision. Pursuant to Rule 7.4(d) of the Rules of the Judicial Panel on Multidistrict Litigation, Plaintiff has already made her arguments to the MDL Panel as to why this case should not be transferred. *See* Plf's Mot. To Vacate CTO 52 (Ex. 13 hereto). The MDL Panel will determine the most efficient disposition of this case, as § 1407(b) requires. Merck simply asks that proceedings in this Court be stayed for a brief time, while the MDL Panel resolves the issues before it.

There is ample basis to support the transfer of this case to the Fosamax MDL proceedings. As noted above, the transferee court, as part of the Fosamax MDL proceedings, is already addressing remand issues such as those raised by Plaintiff. The Orders at Exhibits 1 through 10 all stayed cases in which Motions to Remand had been filed, and each of those cases has been transferred to the Fosamax MDL proceedings.

Given the fact that these same issues are being and will be raised in other Fosamax cases that are or will be part of the Fosamax MDL proceedings, this Court should stay any decision on Plaintiff's motion to remand until the MDL Panel can make the appropriate determination as to whether this action, too, should be consolidated with the MDL proceedings.

## II.    At The Appropriate Time, Plaintiff's Motion To Remand Should Be Denied With Respect To Her Claims Against Merck, And Merck's Motion To Sever Should Be Granted.

If the MDL Panel does not order the transfer of this case to the MDL proceedings, this Court should deny the Plaintiff's Motion to Remand with respect to the Fosamax-related claims against Merck, and the Court should sever the claims against Merck from the unrelated claims that Plaintiff has made against the Dental Defendants. These unrelated claims have been fraudulently joined and misjoined to defeat diversity, and the citizenship of the Dental Defendants should be disregarded for purposes of determining diversity jurisdiction over Plaintiff's claims against Merck.

In the Seventh Circuit, diversity jurisdiction cannot be destroyed by the fraudulent or improper joinder of nondiverse parties. *See, e.g., Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir. 1993) "[d]iversity jurisdiction cannot be destroyed by joinder of nondiverse parties if such joinder is fraudulent."). The citizenship of such fraudulently joined or misjoined parties must be ignored for purposes of determining diversity. *See, e.g., Wilson v. Republic Iron & Steel*

*Co.*, 257 U.S. 92, 97 (1921); *Schwartz v. State Farm Mutual Automobile Ins. Co.*, 174 F.3d 875, 878 (7th Cir. 1999); *Hoosier Energy Rural Electric Co-op., Inc. v. Amoco Tax Leasing IV Corp.*, 34 F.3d 1310, 1315 (7th Cir. 1994). Parties are improperly joined or misjoined where there is no common transaction or occurrence connecting the claims against those parties. *See* Fed. R. Civ. Proc. 20.

Plaintiff's claims against the Dental Defendants are based on alleged negligence in performing oral surgery, and an alleged failure to prevent, diagnose, and treat an infection that Plaintiff incurred before she began taking Fosamax at her doctor's direction. Such claims have nothing in common with the products liability claims against Merck, and they fail to meet the requirements for proper joinder under Federal Rule of Civil Procedure 20. Plaintiff's own statements demonstrate the complete lack of any relationship between the claims against the Dental Defendants and her new allegations against Merck. Before Plaintiff ever started taking Fosamax, by her own admission, the Dental Defendants had allegedly been negligent in providing pre-operative care, had allegedly been negligent in performing dental surgery, and had allegedly been negligent in providing post-operative care, including alleged negligence in failing to recognize that Plaintiff was "hyper-susceptible" to infection as a result of a long-standing medical condition. Complaint Count I, ¶¶ 6.a to 6.h; Mot to Remand at 1-2. As a result, according to the Plaintiff, she incurred an infection in her jaw before she ever took Fosamax. Mot. to Remand at 2.

Plaintiff alleges that she was not prescribed Fosamax by her physician until a month after the alleged dental surgery, at which time she had already become infected. Mot. to Remand at 2. She alleges no connection between her doctor's decision to prescribe Fosamax and the alleged dental surgery. Even under the theories espoused by plaintiffs in the Fosamax MDL

proceedings, Fosamax must be taken continuously for at least three years before Fosamax causes any alleged risk of osteonecrosis of the jaw.[2]  The fraudulent and improper joinder of the Dental Defendants is obvious under well-settled state law because Plaintiff's claims for dental malpractice are not based upon the same transaction or occurrence as her claims against Merck.

The allegations in this case fail for the same reason that the United States District Court for the Southern District of New York found claims against a physician to have been improperly joined to products liability claims against a drug manufacturer in *In re Rezulin Prods. Liab. Litig.*, Case No. 00 Civ. 2483 (LAK), 2003 WL 21276425 (S.D.N.Y. June 2., 2003) (Ex. 15 hereto).  In that case, the court found that malpractice claims against the plaintiff's former physicians were not properly joined to a products liability complaint, where the plaintiff alleged that the physicians had failed to properly diagnose and monitor the plaintiff's medical condition, where that condition allegedly arose from the use of a drug.  The court held that the malpractice claim against the doctors did not arise from the same transaction or occurrence as the claims against the drug's manufacturer.

Plaintiff does not allege that any of her medical malpractice claims against the Dental Defendants relate to Fosamax, and she cannot properly make such a claim where she also contends that Merck concealed information relating to Fosamax.[3]  Here, as in *In re Rezulin*, there

---

[2] Merck does not agree that Fosamax causes any risk of osteonecrosis.  Even the *plaintiffs'* experts in the Fosamax MDL proceedings, however, have never contended that Fosmax would have any effect on an *existing* jaw infection.  To the contrary, Plaintiff's experts have testified that Fosamax must be taken for years before it poses any alleged risk of osteonecrosis of the jaw.

[3] The Plaintiff cannot assert claims against the Dental Defendants based upon an allegation that they knew or should have known of some presumed link between Fosamax and osteonecrosis where she *also* contends that Merck withheld that information and failed to provide warnings.  *See In re Baycol Prods. Litig.*, Case No. 03-3150, 2003 WL 23305516, at *2 (D. Minn, Dec. 15, 2003) (finding doctor fraudulently joined because, where plaintiff claimed that manufacturer failed to properly represent the risks of a drug, the plaintiff "failed to demonstrate that her physician knew or should have known of Baycol's risks") (Ex. 16 hereto); *Spier v. Bayer Corp.*, No. 02-4835, 2003 WL 21223842 (D. Minn. May

is no common nexus between the facts that Plaintiff must prove to show (1) that the Dental

Defendants were negligent in failing to observe her preexisting condition of Sjoren's syndrome

and her hyper susceptibility to infection, in allegedly failing to conduct proper pre- and post-

operative testing, or in performing oral surgery, and (2) that Merck should be liable for allegedly

failing to provide proper warnings to Plaintiff's physician about ONJ. None of the facts provable

against the Dental Defendants would be relevant to the issues of what warnings were or should

have been provided by Merck to a prescribing physician.

The facts of this case are different from those addressed in *Alegre v. Aguayo*, No. 06 C

5744, 2007 WL 141891 (N.D. Ill. Jan 17, 2007) (Ex. to Plf's Mot. to Remand), upon which

Plaintiff relies. In *Alegre*, the plaintiff alleged products liability claims against Merck arising

from an alleged failure to provide warnings relating to the prescription medication Vioxx, and

the plaintiff also pled negligence claims against the physician who allegedly prescribed

overdosages of Vioxx. Unlike this case, the claims in *Alegre* against Merck and the treating

physician both hinged upon the prescription of Vioxx and what the prescribing physician knew

or should have known about Vioxx at the time that it was prescribed. In this case, by contrast,

Plaintiff was allegedly already a victim of negligence before Fosamax was ever prescribed, she

had already suffered the injury that she alleges, and she does not allege that the Dental

Defendants had any knowledge or should have had any knowledge of her use of Fosamax. There

---

27, 2003) (same) (Ex. 17 hereto); *In re Rezulin Prods. Liab. Litig.*, Case No. 00 Civ. 2483 (LAK), 2003
WL 21276425 (S.D.N.Y. June 2., 2003) (affirming magistrate judge's conclusion that plaintiffs had no
likelihood of success on claims that physicians had failed to warn of the risks of a drug, where same
claims were asserted against manufacturer of drug) (Ex. 15 hereto).

is simply no connection between the underlying facts necessary to prove the claims against Merck and the claims against the Dental Defendants.[4]

For these reasons, Plaintiff's claims against Merck should be severed from her unrelated claims against the Dental Defendants, as Merck requests in its Motion to Sever.  Should the Plaintiff's motion to remand be addressed at this time, the Motion to Sever should be granted first, and the Plaintiff's motion should be denied with respect to her claims against Merck.

---

[4] The court in *Alegre*, *supra*, also concluded that the Seventh Circuit would not recognize egregious misjoinder as a basis for removal.  The *Alegre* court, however, conceded that there was no binding authority on this point, *Id.* at *6, and courts from across the country have recognized that it is improper for a plaintiff to misjoin unrelated parties for the purpose of defeating diversity jurisdiction. *See, e.g., Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir.1996), *overruled in part on other grounds, Cohen v. Office Depot. Inc.*, 204 F.3d 1069, 1072 (11th Cir.2000); *In re Benjamin Moore & Co.*, 309 F.3d 296, 298 (5th Cir. 2002) (observing that "[i]t might be concluded that misjoinder of plaintiffs should not be allowed to defeat diversity jurisdiction"); *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*, 294 F. Supp. 2d 667, 673 (E.D. Pa. 2003) (holding that 'the same principles of fraudulent joinder apply where a plaintiff is improperly joined with another plaintiff so as to defeat diversity jurisdiction"); *see also In re Rezulin Prods. Liab. Litig.*, 2003 W.L. 21276425, at *1 (Ex. 15 hereto); *In re Baycol Prods. Litig.*, 2003 WL 22341303, at *2 (D. Minn. 2003) (Ex. 18 hereto); *In re Diet Drugs*, No. Civ. A. 98-20478, 1203, 1999 WL 554584, at *2 (E.D. Pa. July 16, 1999) (Ex. 19 hereto).  Merck submits that egregious misjoinder is a proper basis for removal, that it would be recognized by the Seventh Circuit, and that it should be applied in this case.

**CONCLUSION**

For the foregoing reasons, Merck respectfully asks the Court to grant its Motion to Stay until the MDL Panel determines whether this case should be transferred to the Fosamax MDL proceedings.  Should the Court choose to address the Motion to Remand, however, Merck's Motion to Sever should be granted and the Motion to Remand should be denied with respect to Merck.


Dated:  May 16, 2008



Respectfully submitted,


BRYAN CAVE LLP

By:  _____s/ Stephen G. Strauss_____
     Dmitry Shifrin, #6279415
     161 North Clark Street, Suite 4300
     Chicago, IL  60601-3315
     Telephone:  (312) 602-5000
     Facsimile:  (312) 602-5050

     and

     Stephen G. Strauss, #6278807
     Bryan Cave LLP
     211 North Broadway, Suite 3600
     St. Louis, MO  63102-2750
     Telephone:  (314) 259-2000
     Facsimile:   (314) 259-2020

     *Attorneys for Merck & Co., Inc.*

## **CERTIFICATE**

I hereby certify that on this 16th day of May, 2008, a copy of the foregoing was served by first class mail, postage prepaid, on:

Katherine A. Cardenas
Lucas and Cardenas, P.C.
77 West Washington Street, Suite 900
Chicago, IL 60602

*Attorneys for Plaintiff*

John Green
Green Law Offices
200 West Jackson
Suite 2060
Chicago, IL  60606
(312) 676-5980

Drew Balac
Weldon-Linne & Vogt
105 W. Madison, Suite 1400
Chicago, IL  60602
(312) 236-5151

*Attorneys for Dental Defendants*

_____/s/ Stephen G. Strauss_____

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

NANCY ANDERSON,

         **Plaintiff,**

vs.                                                    Case No. 8:07-CV-965-T-27EAJ

BRITE DENTAL CORPORATION d/b/a
CREATIVE DENTAL CARE, *et al.*,

         **Defendants.**

_____/

## ORDER

**BEFORE THE COURT** is Defendant Merck & Co., Inc.'s Motion to Stay Proceedings

Pending Transfer to Multidistrict Litigation (Dkt. 6).[1] Upon consideration, it is

**ORDERED AND ADJUDGED** that Defendant Merck & Co., Inc.'s Motion to Stay

Proceedings Pending Transfer to Multidistrict Litigation (Dkt. 6) is **GRANTED** and this case is

**STAYED** pending a decision by the Multidistrict Litigation Court on whether this action should be

transferred. "[T]he [Judicial Panel on Multidistrict Litigation "JPML"] has the power to transfer

cases with motions to remand pending and the district courts have discretion to stay actions pending

decisions of the JPML even where jurisdictional questions exist." *Falgoust v. Microsoft*

*Corporation*, 2000 WL 462919, *2 (E.D. La. 2000); *see also, In re Ivy*, 901 F.2d 7, 9 (2d Cir. 1990)

("MDL Panel has jurisdiction to transfer a case in which a jurisdictional objection is pending,

(citations omitted) that objection to be resolved by transferee court"); *Medical Society of the State*

*of New York v. Connecticut General Corp.,* 187 F. Supp. 2d 89, 91 (S.D. N.Y. 2001) ("it is equally

within this Court's power to decline to decide a motion which challenges this Court's subject matter

jurisdiction while awaiting the MDL Panel's decision on transfer"); *In re Asbestos Products Liability*

---

[1] Merck represents that the other defendants consent to the stay, but Plaintiff objects to it. (Dkt. 6, p. 8). Plaintiff did not file a response to Defendant's motion to stay.

*Litigation*, 170 F. Supp. 2d 1348, 1349 n.1 (Jud.Pn.Mult.Lit. 2001) (holding district court judge has

the authority to either wait for a transfer order without ruling on a motion to remand, or to rule on

the motion before a transfer order has been issued).

Consistency and economy would be served by resolution of the removal issues by a single

court after transfer by the JPML because other Fosamax cases may involve the same issues. *See*

*Moore v. Wyeth-Ayerst Laboratories*, 2002 WL 31558416 (D. Md. 2002) (deferring consideration

of motion to remand and staying pretrial proceedings pending transfer to *In re Diet Drugs* because

the "transferee court has experience deciding motions to remand in this case involving pharmacies,

and has intimate familiarity with the issues involving products liability claims arising from the use

of Pondimin"); *see also, Falgoust*, 2000 WL 462919 at *1 (staying action pending JPML transfer

despite motion to remand because the case "present[ed] questions of fact similar to the other actions

pending before the JPML" and because "the same jurisdictional question raised" had been raised

before and in the future would likely be raised in other cases pending against the defendant in other

districts).

In the event that the JPML determines that transfer of this case is not warranted, Plaintiff may

renew her motion to remand with this Court. The interests of judicial economy are best served by

staying this action until the JPML makes a transfer determination. The Clerk is directed to

administratively close this case and deny all pending motions as moot.

**DONE AND ORDERED** in chambers this ___6ᵗʰ___ day of July, 2007.

**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to:
Counsel of Record

2



P Send

FILED
CLERK, U.S. DISTRICT COURT

JUN 1 4 2007

CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

1
2
3
4
5
6
7
8                   **UNITED STATES DISTRICT COURT**
9                   **CENTRAL DISTRICT OF CALIFORNIA**

10  JERI DEMSKY, et al.,                    )  CV 07-2839 FMC (PJWx)

11                                          )  ORDER GRANTING DEFENDANT'S
                    Plaintiffs,             )  MOTION TO STAY AND DENYING
12                                          )  PLAINTIFFS' MOTION TO REMAND
    vs.                                     )
13                                          )
    MERCK & CO., INC., a New Jersey         )
14  Corporation; McKESSON                   )
    CORPORATION, a Delaware                 )
15  corporation; DOES 1-50,                 )
                                            )
16                  Defendants.             )

17

18                                          #14

19

20                              DOCKETED ON CM
                                   entered
21                                 JUN 1 4 2007

                                BY              085

22          This matter is before the Court on Defendant Merck & Co., Inc.'s unopposed

23  Motion to Stay Proceedings (docket no. 11) and Plaintiffs' Motion to Remand to

24  State Court (docket no. 13), filed on May 24, 2007, and May 29, 2007, respectively.

25  The Court has considered the documents submitted in connection with the motions

26  and deems this matter appropriate for decision without oral argument. *See* Fed. R.

27  Civ. P. 78, Local Rule 7-15. Accordingly, the hearings set for June 18, 2007, and

1   July 2, 2007, are removed from the Court's calendar. For the reasons and in the
2   manner set forth below, the Court **GRANTS** Defendant's Motion to Stay and
3   **DENIES** Plaintiffs' Motion to Remand without prejudice to the filing of a renewed
4   motion in the event that the Judicial Panel on Multidistrict Litigation (JPML) does
5   not transfer this case to Multidistrict Litigation (MDL) No. 1789, *In Re: Fosamax*
6   *Prods. Liab. Litig.*

7             **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

8       Plaintiffs took the prescription drug Fosamax, which is manufactured and sold
9   by Defendant Merck & Co., Inc. (Merck) and distributed by Defendant McKesson
10   Corporation (McKesson). Plaintiffs filed their Complaint in the Superior Court for
11   the State of California, County of Los Angeles, on April 18, 2007. Plaintiffs allege,
12   *inter alia,* that Defendants misrepresented (affirmatively and through a failure to
13   warn) that Fosamax was a safe and effective treatment for osteoporosis, Paget's
14   Disease, and other conditions. Plaintiffs further allege that, as a proximate result of
15   ingesting Fosamax, they have been permanently and severely injured.

16       On April 30, 2007, Defendant Merck removed the action to this Court on the
17   basis of diversity under 28 U.S.C. § 1332, alleging that Defendant McKesson, a
18   California citizen, is fraudulently joined. In their motion to remand, Plaintiffs argue
19   that joinder was proper. In its Motion for Stay, Merck maintains that resolution of
20   the question of the propriety of Plaintiffs' joinder of McKesson should be deferred
21   pending transfer of this action to the MDL proceedings in *In Re Fosamax Prods.*
22   *Liab. Litig.*, and that all other proceedings in this action should be stayed until such
23   time.

24                    **STANDARD OF LAW**

25      "A trial court may, with propriety, find it is efficient for its own docket and the
26   fairest course for the parties to enter a stay of an action before it, pending resolution
27   of independent proceedings which bear upon the case.*" Leyva v. Certified Grocers*

1  *of California, Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979); *see also Landis v. North*
2  *American Co.*, 299 U.S. 248, 254, 81 L. Ed. 153, 57 S. Ct. 163 (1936) ("[T]he power
3  to stay proceedings is incidental to the power inherent in every court to control the
4  disposition of the causes on its docket with economy of time and effort for itself, for
5  counsel, and for litigants.").

6                              **DISCUSSION**

7          A stay of all proceedings until such time as the JPML renders its final
8  decision regarding transfer is in the interest of judicial economy. A steady succession
9  of cases involving the drug Fosamax are being filed in this district and other districts
10 throughout the country and are awaiting transfer to the MDL proceedings.[1] Given the
11 similarity of this litigation to other recent pharmaceutical products liability litigation,
12 the Court finds that there are likely to be many more cases (in this district or
13 otherwise) that present the precise question of the propriety of joinder of Defendant
14 McKesson and/or other "distributor" defendants. Consideration of Plaintiffs' remand
15 motion by this Court at this juncture would therefore run the risk of inconsistent
16 rulings among different judges in different districts and/or would constitute an
17 inefficient use of judicial resources. *Cf. Stempien v. Eli Lilly & Co.*, 2006 U.S. Dist.
18 LEXIS 28408 *4 (N.D. Cal. 2006) ("[E]ven if the Court were to grant Plaintiffs'
19 motion to relate all Zyprexa cases naming McKesson Corporation in this district,
20 judges in other California districts would nonetheless have to decide the issue, thus
21 resulting in unnecessarily duplicative litigation, an inefficient use of judicial
22 resources, and the risk of inconsistent results.").

23

24

25          [1] According to the JPML website, there are now 154 actions pending in MDL No. 1789, *In*
26 *Re: Fosamax Prods. Liab. Litig*. *See* http://www.jpml.uscourts.gov/ (follow "Pending MDLs," then
   "Distribution of Pending MDL Dockets").
27

**CONCLUSION**

Based on the foregoing, Defendant Merck & Co., Inc.'s Motion to Stay Proceedings (docket no. 14) is **GRANTED**. Proceedings in this case are STAYED until issuance of a final decision by the JPML regarding transfer or for sixty (60) days, whichever is earlier.

Plaintiffs' Motion to Remand (docket no. 11) is **DENIED** without prejudice to the filing of a renewed motion if transfer is denied.

**IT IS SO ORDERED.**

Dated: June 14, 2006

FLORENCE-MARIE COOPER, JUDGE
UNITED STATES DISTRICT COURT

4

Order Form (01/2005)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 07 C 1864 | **DATE** | 4/12/2007 |
| **CASE TITLE** | Walla vs. Merck & Co., Inc. et al | | |

**DOCKET ENTRY TEXT**

Defendant Merck & Co., Inc.'s motion to stay all proceedings before this Court is granted. Motion hearing set for 4/19/2007 is vacated. After a careful review of the pleadings in this recently removed lawsuit, this Court hereby dismisses said state court complaint without prejudice to the pending transfer to MDL No. 1789 and the filing of an appropriate amended federal complaint or motion to remand before the transferee judge.

| | Courtroom Deputy Initials: | DL |
|---|---|---|



07C1864 Walla vs. Merck & Co., Inc. Et al                                                                                    Page 1 of 1

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois − CM/ECF LIVE, Ver 3.0**
**Eastern Division**

Dianne Walla

                                        Plaintiff,

v.                                                              Case No.: 1:07−cv−01864
                                                                Honorable Ruben Castillo

Merck & Co., Inc., et al.

                                        Defendant.

---

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Tuesday, May 15, 2007:

            MINUTE entry before Judge Ruben Castillo :Motion hearing held on 5/15/2007.
Plaintiff's motion for remand [18] is denied without prejudice to its renewal before the
transferee judge. Mailed notice(rao, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of
Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was
generated by CM/ECF, the automated docketing system used to maintain the civil and
criminal dockets of this District. If a minute order or other document is enclosed, please
refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our
web site at *www.ilnd.uscourts.gov*.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JENNIFER BOGARD and ROBERT BOGARD, | ) | No. C-06-6917 SC |
| Plaintiffs, | ) ) | |
| v. | ) ) | ORDER GRANTING DEFENDANT'S MOTION TO |
| MERCK & CO., INC., a New Jersey | ) ) | STAY AND DENYING PLAINTIFFS' MOTION TO |
| Corporation; McKESSON CORPORATION, a Delaware Corporation; DOES 1-50, | ) ) | REMAND |
| inclusive, | ) ) | |
| Defendants. | ) ) ) | |

I.    INTRODUCTION

Upon removing this action to federal court, Defendant Merck & Co., Inc. ("Merck") filed a Notice of Pendency of Other Proceeding and a Motion to Stay the Proceedings. See Docket Nos. 1, 3, 5. Defendant seeks the stay in order to give the Judicial Panel on Multidistrict Litigation ("JPML") the opportunity to transfer the case to Multidistrict Litigation No. 1789, In Re: Fosamax Prods. Liab. Litig. Plaintiffs Jennifer and Robert Bogard opposed Merck's motion and filed a Motion to Remand. See Docket Nos. 9 and 10. For the reasons stated herein, the Court GRANTS Defendant's Motion to Stay and DENIES Plaintiffs' Motion to Remand without prejudice.

II.    BACKGROUND

Plaintiff Jennifer Bogard alleges that she ingested and was

1  injured by the prescription drug Fosamax, which is manufactured by

2  Merck and marketed, distributed, and sold by Defendant McKesson

3  Corporation ("McKesson"). See Complaint, Docket No. 10.

4  Plaintiffs filed suit in the California Superior Court for the

5  County of San Francisco. See Docket No. 10. Merck removed the

6  case to federal court on the basis of diversity jurisdiction, 28

7  U.S.C. § 1332, alleging that McKesson, a California citizen, was

8  fraudulently joined. See Docket No. 1.

9

10  **III. LEGAL STANDARD**

11      "[T]he power to stay proceedings is incidental to the power

12  inherent in every court to control the disposition of the causes

13  on its docket with economy of time and effort for itself, for

14  counsel, and for litigants." Landis v. North American Co., 299

15  U.S. 248, 254 (1936). "A trial court may, with propriety, find it

16  is efficient for its own docket and the fairest course for the

17  parties to enter a stay of an action before it, pending resolution

18  of independent proceedings which bear upon the case." Leyva v.

19  Certified Grocers of California, Ltd., 593 F.2d 857, 863 (9th Cir.

20  1979).

21

22  **IV.   DISCUSSION**

23      Appropriate grounds for transferring a case to multidistrict

24  litigation include promoting "the just and efficient conduct of

25  such actions." 28 U.S.C. § 1407(a). The issue of whether

26  McKesson was fraudulently joined in order to destroy federal

27  jurisdiction is identical to that posed in other Fosamax cases.

28

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1   See Tanzer Decl., Docket No. 17 (including an order from Morris v.

2   Merck & Co., Inc. et al., a case from the Central District of

3   California addressing the same issue and concluding that a stay

4   was appropriate). As the Morris court and others have concluded,

5   consideration of Plaintiffs' Motion to Remand and the issue of

6   fraudulent joinder outside the JPML would foster "unnecessarily

7   duplicative litigation, an inefficient use of judicial resources,

8   and the risk of inconsistent results." Stempien v. Eli Lilly and

9   Co., 2006 WL 1214836, at *1 (N.D. Cal., May 4, 2006) (discussing

10  the potentially fraudulent joinder of McKesson in the Zyprexa

11  litigation). In the interests of judicial economy, the best

12  results will be obtained by referring the case to Multidistrict

13  Litigation No. 1789, In Re: Fosamax Prods. Liab. Litig. for

14  resolution of this issue in coordinated pretrial proceedings.

15

16  **V.    CONCLUSION**

17      The Court GRANTS Defendant's Motion to Stay. All proceedings

18  in this case are STAYED until issuance of a final decision by the

19  JPML regarding transfer or for sixty (60) days, whichever is

20  earlier. In addition, the Court DENIES Plaintiffs' Motion to

21  Remand without prejudice to re-file in the event transfer is

22  unsuccessful.

23

24      IT IS SO ORDERED.

25

26      Dated: February 6, 2007

27                                        UNITED STATES DISTRICT JUDGE

28

3

P Send





# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NANCY FERRARO, a single woman; LILLIE H. AUGERSON, a single woman; LUIGA MORRA, a single woman; EVELYN LACEY, a single woman; JERRY W. GRAHAM, a single woman; MINA A. HOLCOMB, a single woman, <br><br> Plaintiffs, <br><br> vs. <br><br> MERCK & CO., INC., a New Jersey Corporation; McKESSON CORPORATION, a Delaware corporation; DOES 1-50 <br><br> Defendants. | CV 06-7733 FMC (PJWx) <br><br> ORDER GRANTING DEFENDANT'S MOTION TO STAY AND DENYING PLAINTIFFS' MOTION TO REMAND |



This matter is before the Court on Plaintiffs' Motion to Remand to State Court (docket no. 11), and Defendant Merck & Co., Inc.'s Motion to Stay Proceedings (docket no. 14), filed on January 4, 2007, and January 11, 2007, respectively. The Court has considered the moving and opposition documents submitted in connection with the motions. The Court deems this matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78, Local Rule 7-15. Accordingly, the hearing set for

1  February 5, 2007, is removed from the Court's calendar. For the reasons and in the

2  manner set forth below, the Court **GRANTS** Defendant's Motion to Stay and

3  **DENIES** Plaintiffs' Motion to Remand without prejudice to the filing of a renewed

4  motion in the event that the Judicial Panel on Multidistrict Litigation ("JPML") does

5  not transfer this case to Mutlidistrict Litigation ("MDL") No. 1789, *In Re: Fosamax*

6  *Prods. Liab. Litig.*

7           **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

8           Plaintiffs Nancy Ferraro, Lillie H. Augerson, Luiga Morra, Evelyn Lacey,

9  Jerry W. Graham, and Mina A. Holcomb took the prescription drug Fosamax, which

10 is manufactured and sold by Defendant Merck & Co., Inc. ("Merck") and distributed

11 by Defendant McKesson Corporation ("McKesson"). Plaintiffs filed their Complaint

12 in the Superior Court for the State of California, County of Los Angeles, on

13 December 1, 2006. Plaintiffs allege, *inter alia,* that Defendants misrepresented

14 (affirmatively and through a failure to warn) that Fosamax was a safe and effective

15 treatment for osteoporosis, Paget's Disease, and other conditions. Plaintiffs further

16 allege that, as a proximate result of ingesting Fosamax, they have been permanently

17 and severely injured.

18          On December 6, 2006, Defendant Merck removed the action to this Court on

19 the basis of diversity under 28 U.S.C. § 1332, alleging that Defendant McKesson,

20 a California citizen, is fraudulently joined. In their motion to remand, Plaintiffs

21 argue that joinder was proper.   In its Opposition to the motion and in its separate

22 Motion for Stay, Merck maintains that resolution of the question of the propriety of

23 Plaintiffs' joinder of McKesson should be deferred pending transfer of this action

24 to the MDL proceedings in *In Re Fosamax Prods. Liab. Litig.*, and that all other

25

26

27

2

1  proceedings in this action should be stayed until such time.[1]  McKesson joins in

2  Merck's Opposition to the motion to remand and in the Motion to Stay in all

3  respects.

### STANDARD OF LAW

5  "A trial court may, with propriety, find it is efficient for its own docket and the

6  fairest course for the parties to enter a stay of an action before it, pending resolution

7  of independent proceedings which bear upon the case." *Leyva v. Certified Grocers*

8  *of California, Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979); *see also Landis v. North*

9  *American Co.*, 299 U.S. 248, 254, 81 L. Ed. 153, 57 S. Ct. 163 (1936) ("[T]he power

10  to stay proceedings is incidental to the power inherent in every court to control the

11  disposition of the causes on its docket with economy of time and effort for itself, for

12  counsel, and for litigants.").

### DISCUSSION

14  A stay of all proceedings until such time as the JPML renders its final

15  decision regarding transfer is in the interest of judicial economy.  A steady succession

16  of cases involving the drug Fosamax are being filed in this district and other districts

17  throughout the country and are awaiting transfer to the MDL proceedings.[2]  Given

18  the similarity of this litigation to other recent pharmaceutical products liability

19  litigation, the Court finds that there are likely to be many more cases (in this district

20  or otherwise) which present the precise question of the propriety of joinder of

21

22  [1]Pursuant to Rule 7.4 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, the JMPL issued a Conditional Transfer Order on December 27, 2006.  Plaintiffs were required to file a Motion to Vacate that Order on or before January 25, 2007. *See* Request for Judicial Notice in Support of Merck & Co., Inc.'s Opposition to Plaintiff's Motion to Remand, Exhibits 3-4.

25  [2] According to the JPML website, there are now 77 actions pending in MDL No. 1789, *In Re: Fosamax Prods. Liab. Litig. See* http://www.jpml.uscourts.gov/Pending_MDLs/pending_mdls. html (follow "Distribution of Pending MDL Dockets").

3

1   Defendant McKesson and/or other "distributor" defendants.[3] Consideration of

2   Plaintiffs' remand motion by this Court at this juncture would therefore run the risk

3   of inconsistent rulings between different judges in different districts and/or would

4   constitute an inefficient use of judicial resources. *Cf. Stempien v. Eli Lilly & Co.,*

5   2006 U.S. Dist. LEXIS 28408 *4 (N.D. Cal. 2006) ("[E]ven if the Court were to grant

6   Plaintiffs' motion to relate all Zyprexa cases naming McKesson Corporation in this

7   district, judges in other California districts would nonetheless have to decide the

8   issue, thus resulting in unnecessarily duplicative litigation, an inefficient use of

9   judicial resources, and the risk of inconsistent results.").

10                              **CONCLUSION**

11          Based on the foregoing, Defendant Merck & Co., Inc.'s Motion to Stay

12   Proceedings (docket no. 14) is **GRANTED**. Proceedings in this case are STAYED

13   until issuance of a final decision by the JPML regarding transfer or for sixty (60)

14   days, whichever is earlier.

15   / /

16   / /

17   / /

18   / /

19   / /

20

21          [3]As Defendants point out, two Fosamax cases which name both Merck and McKesson as

22   Defendants were recently removed (by Merck) to the district courts for the Northern and Southern
     Districts of California. *See* Request for Judicial Notice in Support of Defendant Merck & Co., Inc.'s

23   Reply Memorandum in Support of Motion to Stay Proceedings, Exhibit 3. The Court takes judicial
     notice of the fact that Merck is raising the same issues of fraudulent joinder in those cases and has

24   filed a similar motion to stay proceedings pending possible transfer to the MDL action in the
     Northern District case. *See* Fed. R. Civ. P. 201; *United States ex. rel. Robinson Rancheria Citizens*

25   *Council v. Borneo, Inc.,* 971 F.2d 244, 248 (9th Cir. 1992) (court may take judicial notice of

26   "proceedings in other courts, both within and without the federal judicial system, if those
     proceedings have a direct relation to matters at issue.").

27



FILED
CLERK, U S DISTRICT COURT

DEC - 7 2006

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ANNE E. CLAYTON,                    )    CV 06-6398 FMC (PJWx)
                                    )
                Plaintiff,          )    ORDER GRANTING DEFENDANT'S
                                    )    MOTION TO STAY AND DENYING
vs.                                 )    PLAINTIFF'S MOTION TO REMAND
                                    )
MERCK & CO., INC., a New Jersey     )    ┌──────────────────────────┐
Corporation; McKESSON              )    │  DOCKETED ON CM           │
CORPORATION, a Delaware             )    │  ʰᵉⁿᵗᵉʳᵉᵈ                  │
corporation; DOES 1-50              )    │     DEC - 7 2006          │
                                    )    │                          │
                Defendants.         )    │  BY            085        │
                                    )    └──────────────────────────┘

    This matter is before the Court on Plaintiff's Motion to Remand to State

Court (docket no. 10), and Defendant Merck & Co., Inc.'s Motion to Stay

Proceedings (docket no. 12), filed on November 3, 2006 and November 8, 2006,

respectively. The Court has considered the moving, opposition and reply

documents submitted in connection with the motions.  The Court deems this

matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78,

Local Rule 7-15. Accordingly, the hearing set for December 11, 2006, is

removed from the Court's calendar. For the reasons and in the manner set forth

below, the Court GRANTS Defendant's Motion to Stay and DENIES Plaintiff's



# 19

1   Motion to Remand without prejudice to the filing of a renewed motion in the

2   event that the Judicial Panel on Multidistrict Litigation ("JPML") does not

3   transfer this case to Mutlidistrict Litigation ("MDL") No. 1789, *In Re: Fosamax*

4   *Prods. Liab. Litig.*

5   ## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

6       Plaintiff, Anne E. Clayton, took the prescription drug Fosamax, which is

7   manufactured and sold by Defendant Merck & Co., Inc. ("Merck") and

8   distributed by Defendant McKesson Corporation ("McKesson"). Plaintiff filed

9   her Complaint in the Superior Court for the State of California, County of Los

10  Angeles, on September 28, 2006. Plaintiff alleges, *inter alia,* that Defendants

11  misrepresented (affirmatively and through a failure to warn) that Fosamax was a

12  safe and effective treatment for osteoporosis, Paget's Disease and other

13  conditions. Plaintiff further alleges that, as a proximate result of injesting

14  Fosamax, she has been permanently and severely injured.

15      On October 6, 2006, Defendant Merck removed the action to this Court on

16  the basis of diversity under 28 U.S.C. § 1332, alleging that Defendant McKesson,

17  a California citizen, is fraudulently joined. In her motion to remand, Plaintiff

18  argues that joinder was proper. In its Opposition to the motion and in its

19  separate Motion for Stay, Merck maintains that resolution of the question of the

20  propriety of Plaintiff's joinder of McKesson should be deferred pending transfer

21  of this action to the MDL proceedings in *In Re Fosamax Prods. Liab. Litig.*, and

22  that all other proceedings in this action should be stayed until such time.[1]

23  McKesson joins in Merck's Opposition to the motion to remand and the Motion

24  _____

25  [1] Pursuant to Rule 7.4 of the Rules of Procedure of the Judicial Panel on Multidistrict
    Litigation, the JMPL issued a Conditional Transfer Order on November 2, 2006. Plaintiff's Motion
26  to Vacate that Order is currently pending. *See* Request for Judicial Notice in Support of Merck &
    Co., Inc.'s Opposition to Plaintiff's Motion to Remand, Exhibits 1-2.

27

1   to Stay in all respects.

2   **STANDARD OF LAW**

3   "A trial court may, with propriety, find it is efficient for its own docket and

4   the fairest course for the parties to enter a stay of an action before it, pending

5   resolution of independent proceedings which bear upon the case." *Leyva v.*

6   *Certified Grocers of California, Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979); *see also*

7   *Landis v. North American Co.*, 299 U.S. 248, 254, 81 L. Ed. 153, 57 S. Ct. 163

8   (1936) ("[T]he power to stay proceedings is incidental to the power inherent in

9   every court to control the disposition of the causes on its docket with economy of

10  time and effort for itself, for counsel, and for litigants.").

11  **DISCUSSION**

12  A stay of all proceedings until such time as the JPML renders its final

13  decision regarding transfer is in the interest of judicial economy.   A steady

14  succession of cases involving the drug Fosamax are being filed in this district

15  and other districts throughout the country and are awaiting transfer to the MDL

16  proceedings.[2]  Given the similarity of this litigation to other recent

17  pharmaceutical products liability litigation, the Court finds that there are likely to

18  be many more cases (in this district or otherwise) which present the precise

19  question of the propriety of joinder of Defendant McKesson and/or other

20  "distributor" defendants.[3]  Consideration of Plaintiff's remand motion by this

21  _____

22  [2] According to the JPML website, there are now 58 actions pending in MDL No. 1789, *In Re:*
    *Fosamax Prods. Liab. Litig. See* http://www.jpml.uscourts.gov/Pending_MDLs/pending_mdls.
23  html (follow "Distribution of Pending MDL Dockets").

24  [3] As Defendants point out, two Fosamax cases which name both Merck and McKesson as
    Defendants were recently removed (by Merck) to the district courts for the Northern and Southern
25  Districts of California. *See* Request for Judicial Notice in Support of Defendant Merck & Co., Inc.'s
    Reply Memorandum in Support of Motion to Stay Proceedings, Exhibits 2-3.  The Court takes
26  judicial notice of the fact that Merck is raising the same issues of fraudulent joinder in those cases

27

1  Court at this juncture would therefore run the risk of inconsistent rulings between

2  different judges in different districts and/or would constitute an inefficient use of

3  judicial resources. *Cf. Stempien v. Eli Lilly & Co.*, 2006 U.S. Dist. LEXIS

4  28408 *4 (N.D. Cal. 2006) ("[E]ven if the Court were to grant Plaintiffs' motion

5  to relate all Zyprexa cases naming McKesson Corporation in this district, judges

6  in other California districts would nonetheless have to decide the issue, thus

7  resulting in unnecessarily duplicative litigation, an inefficient use of judicial

8  resources, and the risk of inconsistent results.").

9                                 **CONCLUSION**

10       Based on the foregoing, Defendant Merck & Co., Inc.'s Motion to Stay

11  Proceedings (docket no. 12) is GRANTED.  Proceedings in this case are

12  STAYED until issuance of a final decision by the JPML regarding transfer or for

13  sixty (60) days, whichever is earlier.

14       Plaintiff's Motion to Remand (docket no. 10) is DENIED without

15  prejudice to the filing of a renewed motion if transfer is denied.

16

17  IT IS SO ORDERED.

18  December 7, 2006

19                              FLORENCE MARIE COOPER, JUDGE

20                              UNITED STATES DISTRICT COURT

21

22

23

24  and has filed a similar motion to stay proceedings pending possible transfer to the MDL action in

25  the Northern District case.  *See* Fed. R. Civ. P. 201; *United States ex. rel. Robinson Rancheria*

    *Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (court may take judicial notice

26  of "proceedings in other courts, both within and without the federal judicial system, if those

27  proceedings have a direct relation to matters at issue.").

                                        4



1

2

3

4

5

6

7

8          UNITED STATES DISTRICT COURT

9          CENTRAL DISTRICT OF CALIFORNIA

10   EDWARD A. MORRIS and RUTH P. )      CV 06-5587 FMC (PJWx)
     MORRIS, husband and wife; HELEN )
11   F. TRACY, a single woman; JUDY C. )  ORDER GRANTING DEFENDANT'S
     PENN and BUDDY W. PENN, wife  )     MOTION TO STAY AND DENYING
12   and husband,                  )     PLAINTIFFS' MOTION TO REMAND
                                    )
13                Plaintiffs,       )
                                    )
14   vs.                            )
                                    )
15   MERCK & CO., INC., a New Jersey )
     Corporation; McKESSON         )
16   CORPORATION, a Delaware        )
     corporation; DOES 1-50         )
17                                  )
                                    )
18                Defendants.       )

19

20

21          This matter is before the Court on Plaintiffs' Motion to Remand to State

22   Court (docket no. 18), and Defendant Merck & Co., Inc.'s Motion to Stay

23   Proceedings (docket no. 23), filed on October 26, 2006 and November 6, 2006,

24   respectively.  The Court has considered the moving, opposition and reply

25   documents submitted in connection with the motions.   The Court deems this

26   matter appropriate for decision without oral argument.  See Fed. R. Civ. P. 78,

27   Local Rule 7-15.  Accordingly, the hearing set for December 11, 2006, is



1    removed from the Court's calendar.  For the reasons and in the manner set forth

2    below, the Court GRANTS Defendant's Motion to Stay and DENIES Plaintiffs'

3    Motion to Remand without prejudice to the filing of a renewed motion in the

4    event that the Judicial Panel on Multidistrict Litigation ("JPML") does not

5    transfer this case to Mutlidistrict Litigation ("MDL") No. 1789, *In Re: Fosamax*

6    *Prods. Liab. Litig.*

7         **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

8       Plaintiffs Edward A. Morris, Helen F. Tracy and Judy C. Penn took the

9    prescription drug Fosamax, which is manufactured and sold by Defendant Merck

10    & Co., Inc. ("Merck") and distributed by Defendant McKesson Corporation

11    ("McKesson").  Plaintiffs filed their Complaint in the Superior Court for the

12    State of California, County of Los Angeles, on August 16, 2006.  Plaintiffs

13    allege, *inter alia,* that Defendants misrepresented (affirmatively and through a

14    failure to warn) that Fosamax was a safe and effective treatment for osteoporosis,

15    Paget's Disease and other conditions.   Plaintiffs further allege that, as a

16    proximate result of injesting Fosamax, they have been permanently and severely

17    injured. Co-Plaintiffs Ruth P. Morris and Buddy W. Penn are bringing separate

18    claims for loss of consortium.

19       On September 6, 2006, Defendant Merck removed the action to this Court

20    on the basis of diversity under 28 U.S.C. § 1332, alleging that Defendant

21    McKesson, a California citizen, is fraudulently joined.  In their motion to

22    remand, Plaintiffs argue that joinder was proper.   In its Opposition to the motion

23    and in its separate Motion for Stay, Merck maintains that resolution of the

24    question of the propriety of Plaintiffs' joinder of McKesson should be deferred

25    pending transfer of this action to the MDL proceedings in *In Re Fosamax Prods.*

26    *Liab. Litig,*, and that all other proceedings in this action should be stayed until

27

2

1  such time.[1] McKesson joins in Merck's Opposition to the motion to remand and

2  the Motion to Stay in all respects.

3  ## STANDARD OF LAW

4      "A trial court may, with propriety, find it is efficient for its own docket and

5  the fairest course for the parties to enter a stay of an action before it, pending

6  resolution of independent proceedings which bear upon the case." *Leyva v.*

7  *Certified Grocers of California, Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979); *see also*

8  *Landis v. North American Co.*, 299 U.S. 248, 254, 81 L. Ed. 153, 57 S. Ct. 163

9  (1936) ("[T]he power to stay proceedings is incidental to the power inherent in

10  every court to control the disposition of the causes on its docket with economy of

11  time and effort for itself, for counsel, and for litigants.").

12  ## DISCUSSION

13      A stay of all proceedings until such time as the JPML renders its final

14  decision regarding transfer is in the interest of judicial economy.   A steady

15  succession of cases involving the drug Fosamax are being filed in this district

16  and other districts throughout the country and are awaiting transfer to the MDL

17  proceedings.[2]  Given the similarity of this litigation to other recent

18  pharmaceutical products liability litigation, the Court finds that there are likely to

19  be many more cases (in this district or otherwise) which present the precise

20  question of the propriety of joinder of Defendant McKesson and/or other

21

22  _____

23  [1]Pursuant to Rule 7.4 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, the JMPL issued a Conditional Transfer Order on September 22, 2006.   Plaintiffs'

24  Motion to Vacate that Order is currently pending. *See* Request for Judicial Notice in Support of Merck & Co., Inc.'s Motion to Stay Proceedings, Exhibits 1-2.

25

26  [2] According to the JPML website, there are now 58 actions pending in MDL No. 1789, *In Re: Fosamax Prods. Liab. Litig. See* http://www.jpml.uscourts.gov/Pending_MDLs/pending_mdls.

27  html (follow "Distribution of Pending MDL Dockets").

1  "distributor" defendants.[3]  Consideration of Plaintiffs' remand motion by this

2  Court at this juncture would therefore run the risk of inconsistent rulings between

3  different judges in different districts and/or would constitute an inefficient use of

4  judicial resources. *Cf. Stempien v. Eli Lilly & Co.*, 2006 U.S. Dist. LEXIS 28408

5  *4 (N.D. Cal. 2006) ("[E]ven if the Court were to grant Plaintiffs' motion to

6  relate all Zyprexa cases naming McKesson Corporation in this district, judges in

7  other California districts would nonetheless have to decide the issue, thus

8  resulting in unnecessarily duplicative litigation, an inefficient use of judicial

9  resources, and the risk of inconsistent results.").

10                              **CONCLUSION**

11       Based on the foregoing, Defendant Merck & Co., Inc.'s Motion to Stay

12  Proceedings (docket no. 23) is GRANTED.  Proceedings in this case are

13  STAYED until issuance of a final decision by the JPML regarding transfer or for

14  sixty (60) days, whichever is earlier.

15       Plaintiffs' Motion to Remand (docket no. 18) is DENIED without

16  prejudice to the filing of a renewed motion if transfer is denied.

17

18  IT IS SO ORDERED.

19  December _6_, 2006                    *Florence Marie Cooper*

20                                  FLORENCE MARIE COOPER, JUDGE

21                                  UNITED STATES DISTRICT COURT

22  _____

23       [3]As Defendants point out, two Fosamax cases which name both Merck and McKesson as
     Defendants were recently removed (by Merck) to the district courts for the Northern and Southern

24  Districts of California. *See* Request for Judicial Notice in Support of Defendant Merck & Co., Inc.'s
     Reply Memorandum in Support of Motion to Stay Proceedings, Exhibits 1-2. The Court takes

25  judicial notice of the fact that Merck is raising the same issues of fraudulent joinder those cases and
     has filed a similar motion to stay proceedings pending possible transfer to the MDL action in the

26  Northern District case. *See* Fed. R. Civ. P. 201; *United States ex. rel. Robinson Rancheria Citizens

27  Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (court may take judicial notice of
     "proceedings in other courts, both within and without the federal judicial system, if those
     proceedings have a direct relation to matters at issue.").

                                    4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MARY ELLEN POTGIETER, | ) | Case No.: 07-cv-00002-DMC-MF |
| Plaintiff, | ) | |
| | ) | ORDER STAYING |
| v. | ) | PROCEEDINGS PENDING |
| | ) | TRANSFER TO MDL NO. 1789 |
| MERCK & CO., INC., | ) | |
| Defendant. | ) | |

THIS MATTER having been brought before the Court on the motion of defendant to stay proceedings pending transfer to MDL No. 1789; and the Court having considered the submissions of the parties in support of and in opposition to the motion; and for good cause having been shown:

IT IS on this _15_ day of _March_, 2007,

ORDERED that defendant's Motion to Stay is GRANTED. This action is stayed pending a transfer decision from the Judicial Panel on Multidistrict Litigation.

Honorable Dennis M. Cavanaugh, U.S.D.J.

1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDNA GOYA, an individual,<br><br>                                  Plaintiff,<br><br>        vs.<br><br>MERCK & CO., INC., a corporation;<br>MCKESSON CORPORATION, a<br>corporation; and DOES 1-100,<br>inclusive,<br><br>                                  Defendants. | CASE NO. 06-CV-2574 H (AJB)<br><br>**ORDER DENYING MERCK & CO.'S MOTION FOR A STAY WITHOUT PREJUDICE AND DEFERRING RULING ON MOTION TO REMAND**<br>(Doc. Nos. 6 & 10) |

        Defendant Merck & Co., Inc. ("Merck") removed this case from state court on
November 21, 2006. (Doc. No. 1.) In her complaint, Plaintiff Edna Goya alleges that
she suffered injuries caused by her use of Merck's product, Fosamax. (Id.) On
December 14, 2006, Merck filed a motion to stay proceedings. (Doc. No. 6.) Plaintiff
filed a response in opposition on December 29, 2006. (Doc. No. 9.) Merck filed a reply
on January 3, 2007. (Doc. No. 12.) On January 3, 2007, Defendant McKesson
Corporation filed a notice that it joins in Merck's request for a stay. (Doc. No. 14.) In
its motion, Merck asks the Court to stay the proceedings pending a decision by the
Judicial Panel on Multidistrict Litigation ("JPMDL") as to whether this action should
be transferred to In re Fosamax Prods. Liab. Litig., MDL No. 1789, currently pending
before Judge John Keenan in the Southern District of New York.

1    On December 29, 2006, Plaintiff filed a motion to remand. (Doc. No. 10.)
2  Merck filed a response in opposition on January 26, 2007. (Doc. No. 18.) McKesson
3  filed a joinder in Merck's response on January 23, 2007. (Doc. No. 17.)

4    As indicated in a previous order, pursuant to its discretion under Civil Local Rule
5  7.1(d)(1), the Court submits the motions on the papers without oral argument.

6    On December 27, 2006, the JPMDL entered an order conditionally transferring
7  this case to the In re Fosamax proceedings. (Jeffrey M. Tanzer Decl. Supp. Def.'s
8  Reply Supp. Mot. to Stay Proceedings, Ex. 1.) Plaintiff indicates that she will oppose
9  final transfer, however. If Plaintiff files an opposition, according to Rule 7.4 of the
10 Rules of Procedure of the JPMDL, the conditional transfer order will be stayed until
11 further order of the JPMDL, and the JPMDL will set the matter for hearing. See Rules
12 of Procedure of the JPMDL, Rule 7.4(c)-(d). Then, the JPMDL will determine whether
13 to issue a final transfer order.

14    Under the rules of procedure of the JPMDL, a pending conditional transfer order
15 does not affect pretrial proceedings in the district court and does not in any way limit
16 the pretrial jurisdiction of the district court. See Rule 1.5 of the Rules of Procedure for
17 the Judicial Panel on Multidistrict Litigation. Nevertheless, district courts have inherent
18 power to stay their own proceedings. The power to stay a case is "incidental to the
19 power inherent in every court to control the disposition of the causes on its docket with
20 economy of time and effort for itself, for counsel, and for litigants." Landis v. N. Am.
21 Co., 299 U.S. 248, 254 (1936); see also CMAX, Inc. v. Hall, 300 F.2d 265, 268 (9th
22 Cir. 1962). Whether to grant a stay is left to the sound discretion of the trial court.
23 CMAX, Inc., 300 F.2d at 268. Courts generally take into consideration judicial
24 economy and prejudice to the parties in determining whether to enter a stay. See, e.g.,
25 Rivers v. Walt Disney Co., 980 F. Supp. 1358, 1360 (C.D. Cal. 1997); see also Landis,
26 299 U.S. at 254-55.

27    Given that this case was recently filed and the JPMDL has already entered a
28 conditional transfer order, the Court finds that a formal stay is not required to preserve

06cv2574

1   judicial resources and to avoid prejudice to Merck. Accordingly, the Court **DENIES**

2   Merck's motion for a stay without prejudice. The Court notes that at least 58 cases

3   have already been transferred to the coordinated proceedings before Judge Keenan, and

4   additional cases, such as this one, are currently awaiting transfer decisions by the

5   JPMDL. Therefore, although the Court declines to impose a formal stay, the Court does

6   not expect the parties to pursue the case or conduct any discovery while awaiting the

7   JPMDL's decision.

8       Additionally, Plaintiff has recently filed a motion to remand this action. As at

9   least one court has noted: "The general rule is for federal courts to defer ruling on

10  pending motions to remand in MDL litigation until after the JPMDL has transferred the

11  case to the MDL panel." Jackson v. Johnson & Johnson, Inc., No. 01-2113 DA, 2001

12  WL 34048067, at *6 (W.D. Tenn. April 3, 2001); see also In re Amino Acid Lysine

13  Antitrust Litig., 910 F. Supp. 696, 700 (J.P.M.L. 1995) ("[T]he pending motion to

14  remand . . . can be presented to and decided by the transferee judge."). Accordingly,

15  the Court will **DEFER** ruling on Plaintiff's motion to remand for 60 days, subject to

16  further deferral if the JPMDL has not entered a final ruling on transfer at that time. If

17  the JPMDL declines to enter a final transfer order, the motion to remand will be

18  pending before this Court. If, however, the JPMDL enters a final transfer order

19  consolidating this case for pretrial proceedings in the Southern District of New York,

20  the Court notes that the motion will be pending before the transferee court and no

21  longer before this Court.

22      IT IS SO ORDERED.

23  Dated: _February 1, 2007_

24                                  MARILYN L. HUFF, District Judge
                                    UNITED STATES DISTRICT COURT

25

26

27

28

06cv2574

1  Copies To:

2  Magistrate Judge Battaglia

3  Hector G. Gancedo
   Tina B. Neives
4  Amy M. Boomhouwer
   Gancedo & Nieves, LLP
5  144 W. Colorado Blvd.
   Pasadena, CA 91105

6
   Douglas Emhoff
7  Jeffrey Tanzer
   Venable LLP
8  2049 Century Park East, Suite 2100
   Los Angeles, CA 90067

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

06cv2574

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

JENNIE PURDY, ET AL.                                              **PLAINTIFFS**

**VERSUS**                                    CIVIL ACTION NO. 2:06-cv-223-KS-MTP

MERCK & COMPANY, INC., ET AL.                                    **DEFENDANTS**

### ORDER

Pending before the Court is Merck's Motion to Stay Pending Transfer to MDL No. 1789

[7]. Additionally, Plaintiff has filed a Motion to Remand [8] thereby requiring a stay under the

local rules.

IT IS, THEREFORE, ORDERED that this action is stayed pending a transfer decision

from the Judicial Panel on Multidistrict Litigation, remand to state court, or further order of this

court.

SO ORDERED, this the 1st day of November, 2006.


                                        s/ Michael T. Parker
                                        United States Magistrate Judge

EXHIBIT **6** PAGE **8**

Case 1:06-md-01789-JFK-JCF    Document 217    Filed 12/26/2007    Page 1 of 1

USDC SONY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12-26-07

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

....................................................

IN RE:

FOSAMAX PRODUCTS LIABILITY LITIGATION

*This Document Relates To All Actions*

....................................................

MASTER FILE

1:06-MD-1789 (JFK)

## CASE MANAGEMENT ORDER NO. 14
### (Regarding Motions to Remand)

JOHN F. KEENAN, United States District Judge:

It has become apparent that motions to remand which were filed in transferor courts and remain pending before this Court, as well as those which are expected to be filed in this Court, will raise overlapping challenges to this Court's subject matter jurisdiction. In order to resolve these jurisdictional issues promptly and efficiently, it is hereby ORDERED that:

1. For cases transferred to this Court on or before March 1, 2008:  All remand motions shall be served on the Defendant by March 31, 2008. Defendant shall serve its response to these remand motions on or before April 21, 2008. Plaintiffs may serve a reply on or before May 2, 2008.  On May 2, 2008, each party shall file its motion papers and provide the Court with courtesy copies. Defendant also shall file on the master docket a list of all cases with remand motions pending as of that date.

2. For cases transferred to this Court after March 1, 2008:  On the last business day of June 2008 and every second month thereafter, Defendant shall notify the Court of any new remand motions that have been filed. Defendant shall file and serve papers in opposition thereto within fourteen days. Plaintiffs affected by such motions may serve and file reply papers, and provide the Court with courtesy copies of their motion papers, within fourteen days thereafter.

SO ORDERED.

Dated:       New York, N.Y.
             December 26, 2007

                                        *John F. Keenan*
                                        JOHN F. KEENAN
                                        United States District Judge

# UNITED STATES JUDICIAL PANEL
### on
# MULTIDISTRICT LITIGATION

**IN RE: FOSAMAX PRODUCTS LIABILITY LITIGATION**                    MDL No. 1789

(SEE ATTACHED SCHEDULE)

## CONDITIONAL TRANSFER ORDER (CTO-52)

On August 16, 2006, the Panel transferred four civil actions to the United States District Court for the Southern District of New York for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. *See* 444 F.Supp.2d 1347 (J.P.M.L. 2006). Since that time, 123 additional actions have been transferred to the Southern District of New York. With the consent of that court, all such actions have been assigned to the Honorable John F. Keenan.

It appears that the actions on this conditional transfer order involve questions of fact that are common to the actions previously transferred to the Southern District of New York and assigned to Judge Keenan.

Pursuant to Rule 7.4 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, 199 F.R.D. 425, 435-36 (2001), these actions are transferred under 28 U.S.C. § 1407 to the Southern District of New York for the reasons stated in the order of August 16, 2006, and, with the consent of that court, assigned to the Honorable John F. Keenan.

This order does not become effective until it is filed in the Office of the Clerk of the United States District Court for the Southern District of New York. The transmittal of this order to said Clerk shall be stayed 15 days from the entry thereof. If any party files a notice of opposition with the Clerk of the Panel within this 15-day period, the stay will be continued until further order of the Panel.

FOR THE PANEL:

Jeffery N. Lüthi
Clerk of the Panel

**IN RE: FOSAMAX PRODUCTS LIABILITY LITIGATION**                    MDL No. 1789

## SCHEDULE CTO-52 - TAG-ALONG ACTIONS

**DIST. DIV. C.A. #**          **CASE CAPTION**

ARKANSAS EASTERN
   ARE  4  08-245          Kizzie Gray v. Merck & Co., Inc.

ILLINOIS NORTHERN
   ILN  1  08-1687          Zeferina Montelongo v. Winterset Dental Care, P.C., et al.
   ILN  1  08-1833          Alexa Maestranzi v. Merck & Co., Inc., et al.

**IN RE: FOSAMAX PRODUCTS LIABILITY LITIGATION**                              MDL No. 1789

## INVOLVED COUNSEL LIST (CTO-52)

Katherine Ann Cardenas
LAW OFFICES OF LUCAS
& CARDENAS PC
77 West Washington Street
#900
Chicago, IL 60602

M. King Hill, III
VENABLE LLP
210 Allegheny Avenue
Towson, MD 21204

Katharine R. Latimer
SPRIGGS & HOLLINGSWORTH
1350 I Street, N.W.
9th Floor
Washington, DC 20005

Kevin James O'Shea
SERPICO PETROSINO & DIPIERO LTD
61 West Superior Street
Chicago, IL 60610

Christopher A. Seeger
SEEGER WEISS
One William Street
10th Floor
New York, NY 10004-2502

Dmitry Shifrin
BRYAN CAVE LLP
161 North Clark Street
Suite 4300
Chicago, IL 60601-3206

Stephen G. Strauss
BRYAN CAVE LLP
One Metropolitan Square
211 N. Broadway
Suite 3600
St. Louis, MO 63102-2750

Terry O. Tottenham
FULBRIGHT & JAWORSKI LLP
600 Congress Avenue
Suite 2400
Austin, TX 78701-2011

George R. Wise, Jr.
BRAD HENDRICKS LAW FIRM
500 Pleasant Valley Drive
Suite C
Little Rock, AR 72227

**BEFORE THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

Received

MAY 1 5 2008

Venable-Towson

**MDL No. 1789 - In re: Fosamax Products Liability Litigation**

Zeferina Montelongo v. Winterset Dental Care, P.C., et al., N.D. Illinois, C.A. No. 1:08-1687

**MOTION TO VACATE THE CONDITIONAL TRANSFER ORDER**

Now comes the plaintiff, Zeferina Montelongo, by and through her attorneys, Law Offices of Lucas & Cárdenas, P.C., in the above captioned action which is included on the conditional transfer order (CTO-52). Plaintiff, Zeferina Montelongo, hereby moves this Honorable Court to vacate the conditional transfer order and remand this cause of action to the Northern District of Illinois for further handling. The plaintiff, Zeferina Montelongo, attaches hereto her Brief in Support of her Motion to Vacate the Conditional Transfer Order.

Respectfully submitted
By:

*Katherine A. Cárdenas*

Katherine A. Cárdenas
Law Offices of Lucas & Cárdenas
77 W. Washington Street, Suite 900
Chicago, Illinois 60602
312-781-0082 phone
312-332-4718 fax
AttorneyCardenas@yahoo.com
Counsel for Zeferina Montelongo

**BEFORE THE JUDICIAL PANEL ON**
**MULTIDISTRICT LITIGATION**

**MDL No. 1789 - In re: Fosamax Products Liability Litigation**

Zeferina Montelongo v. Winterset Dental Care, P.C., et al., N.D. Illinois, C.A.
No. 1:08-1687

**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO**
**VACATE THE CONDITIONAL TRANSFER ORDER**

Now comes the Plaintiff, Zeferina Montelongo, by and through her attorneys, Law

Offices of Lucas & Cárdenas, P.C., and as and for her Brief in Support of Plaintiff's Motion to

Vacate the Conditional Transfer Order, she states the following:

**HISTORY:**

The plaintiff, Zeferina Montelongo, was born on November 17, 1952. She is currently 55

years old. She is married to Jesus Montelongo and resides at 5017 South Ridgeway Avenue,

Chicago, Illinois 60632. She is now and has been at all relevant times a resident and citizen of

the State of Illinois. Sometime in 2000, she was diagnosed with Sjogren's syndrome by Dr. Neill

Peters at Mercy Hospital in Cook County, Illinois. Sjogren's syndrome is an autoimmune

disease that inhibits the production of certain bodily fluids such as saliva and tears. Due to the

decreased saliva people with Sjogren's syndrome are more susceptible to tooth decay.

Ms. Montelongo began seeing a dentist named Anil K. Agarwal of the Winterset Dental

Group on or about June 2, 1997 and continued her care and treatment with Dr. Agarwal until

March of 2006. A true and correct copy of the invoice depicting the dates of service is attached

- 2 -

hereto and marked as "Exhibit A."  During the course of her dental care and treatment at

Winterset she also was treated by other dentists in addition to Dr. Agarwal.  Specifically, on

July 28, 2005, Dr. Gary Alder provided care and treatment to her at Winterset Dental in that he

extracted her teeth numbered 23, 24, 25 and 26.  See "Exhibit A."

At all relevant times, Dr. Agarwal, Dr. Alder and Winterset Dental Group were and are

now residents and citizens of the State of Illinois.  At all relevant times, the plaintiff's dental care

and treatment was performed in the State of Illinois.

From July 28, 2005 and until and including April 18, 2006 Ms. Montelongo had

continuous pain and discomfort in her lower jaw at or near the extraction site.  Despite numerous

visits to the dentists at Winterset Dental Group during this time period, Ms. Montelongo's lower

jaw bone infection and abscess were not diagnosed nor treated.  The lack of treatment for this

infection caused the jaw bone to decay and slough away requiring the placement of a metal plate

in her jaw and treatment for the infectious disease throughout her body.  The jaw surgery to

remove the decayed bone and insert the plate was performed at the University of Illinois on

July 26, 2006.  A true and correct copy of the operative report dated July 26, 2006 is attached

hereto and marked as "Exhibit B."

During and at the same time as the dentists' negligent course of the treatment, the

plaintiff was actively taking the prescription drug Fosamax.  The plaintiff was first prescribed

Fosamax on August 24, 2005.  A true and correct copy of the prescription for Fosamax is

attached hereto and marked as "Exhibit C."

- 3 -

Fosamax is manufactured and distributed by Merck, Inc. Studies have shown that Fosamax has been linked specifically with jaw bone decay. A true and correct copy of Department of Health and Human Services Public Health Service Food and Drug Administration "ODS Postmarketing Safety Review" No. D040283 dated August 25, 2004 is attached hereto and marked as "Exhibit D."

The concurrent negligence of the dentists' failure to identify and treat the infection and Merck's distribution of Fosamax, a drug known to cause necrosis of the jaw, caused one single indivisible injury to the plaintiff, namely necrosis of the lower mandible and placement of a metal plate.

**ARGUMENT:**

**A.    Merck's Position**

Merck, Inc., in its Notice of Removal from the Circuit Court of Cook County, Illinois to the Northern District of Illinois, has alleged that federal jurisdiction exists because the Illinois defendants were fraudulently joined. Merck alleges that the plaintiff added the Illinois resident dentists to destroy diversity. (Merck's Not. of Removal at pgs. 7-10.)

Merck relies on In re Rezulin Prods. Liab. Litig., Case No. 00 Civ.2483 (LAK), 2003 W.L. 21276425 (S.D.N.Y. June 2, 2003) for the proposition that "the court found that malpractice claims against the plaintiff's former physicians were not properly joined to a products liability complaint, where the plaintiff alleged that the physicians had failed to properly diagnose and monitor the plaintiff's medical condition, where that condition allegedly arose from the use of a drug." (Merck Mot. To Remove p.8) This case was originally filed in the

- 4 -

Mississippi state court and presumably the federal court applied Mississippi law to the facts

presented.

In addition to the Southern District of New York case mentioned, Merck also cited a

Minnesota case for the proposition that:

> "The plaintiff cannot assert claims against the dental defendants based upon an
> allegation that they knew or should have known of some presumed link between
> Fosamax and osteonecrosis, where the plaintiff also contends that Merck withheld
> that information and failed to provide warnings. *See In re Baycol Prods. Litig.*,
> Case No. 03-3150, 2003 WL 23305516, at *2 (D. Minn., Dec 15, 2003) (finding
> doctor fraudulently joined because, where plaintiff claimed that manufacturer
> failed to properly represent the risks of a drug, the plaintiff 'failed to demonstrate
> that her physician knew or should have known of Baycol's risks')."

Both of the cases cited by Merck are wholly distinguishable from the case at bar. In both

cases the allegations against the defendant doctor were in the alternative and, in at least one of

the cases, the plaintiff failed to demonstrate the doctor knew or should have known of the risks

associated with the drug. In the cases cited by Merck, either the manufacturer was liable because

it failed to warn or the physician was liable because he knew or should have known of the risks

before prescribing. Further, both cases are presumably applying the laws of states other than

Illinois. In the case at bar, the allegations against the dentists and Merck are not in the

alternative. The plaintiff is alleging that all the defendants were concurrently negligent thereby

causing one indivisible injury to the plaintiff. Under Illinois law it is proper to keep the causes of

action against the dentists and Merck together.

In order for Merck to sustain its burden under the fraudulent joinder doctrine, the court

must determine that Dr. Agarwal, Dr. Alder and Winterset Dental Group have been improperly

- 5 -

joined and that there is no reasonable possibility that plaintiff would recover on her claims

against these defendants in state court.

**B.    Plaintiff's Position**

The case at bar is more analogous to Alegre v. Aguayo, M.D., Case No. 06 C 5744, 2007

U.S. Dist. LEXIS 3266 (N.D. IL. 2007). In Alegre, District Court Judge Amy J. St. Eve made a

thorough analysis of many of the same issues that are present in the case at bar. It should be

noted that Merck was a defendant in the Alegre case as well as the case at bar.

**1.    Jurisdiction**

First, Judge St. Eve determined that a motion to remand should be decided prior to a

motion to stay because the court must first assure itself that it has jurisdiction over the matter

stating:

> "The constitutional significance of jurisdiction, concerns of judicial efficiency and
> the importance of allowing plaintiffs to choose their forum, together with the
> language of 28 U.S.C. § 1447(c), which directs that 'if any time before judgment
> it appears that the district court lacks subject matter jurisdiction, the case *shall* be
> remanded' (emphasis added), dictate that 'a court's first step should be to make a
> preliminary assessment of the jurisdictional issue.' Meyers, 143 F. Supp. 2d at
> 1048. Then, 'if this preliminary assessment suggests that removal was improper,
> the court should promptly complete its consideration and remand the case to state
> court.' Id. at 1049. .... The requirement that jurisdiction be established as a
> threshold matter, 'springs from the nature and limits of the judicial power of the
> United States' and is 'inflexible and without exception.'" Alegre 2007 U.S. Dist
> LEXIS 3266 at *6.

Based upon the foregoing, it is clear that the court should first address the plaintiff's

motion to remand. The plaintiff in the instant action maintains that complete diversity is lacking

and that the case should be remanded to the Circuit Court of Cook County, Illinois.

- 6 -

### 2.    Application of Illinois Law

Precedent requires the application of Illinois law to the facts and circumstances presented in the instant matter.  Even when cases are transferred to the MDL, the MDL court must apply the law from the initiating state court.  The MDL court in In re Jackson National Life Insurance Company Premium Litigation, MDL No. 1122, 2000 U.S. Dist. LEXIS 5376, (W.D. Mich. 2000) relating to Tench v. Jackson Nat'l Life Ins. Co., W.D. Mich. No. 5:99-CV-132 was faced with somewhat similar circumstances in that the Tench claim was originally filed in the Circuit Court of Cook County, Illinois.  2000 U.S. Dist. LEXIS 5376 at *1.  The case was then removed to the Northern District of Illinois.  Id.  The case was then transferred to the MDL panel under 28 U.S.C. § 1407.  Id.  The MDL court then addressed the plaintiff's motion for remand back to the Circuit Court of Cook County.  Id.

The MDL court stated:

"The party invoking the Court's jurisdiction bears the burden of proving the diversity jurisdiction requirements. The removal petition is to be strictly construed, with all doubts resolved against removal. Due regard for state governments' rightful independence requires federal courts scrupulously to confine their own jurisdiction to precise statutory limits." Citations omitted.

2000 U.S. Dist. LEXIS 5376 at *2.

When deciding the remand issues the MDL court looked to Illinois law, specifically the Illinois Consumer Fraud Act.  2000 U.S. Dist. LEXIS 5376 at *8.  The MDL court ruled that the defendant could not meet the jurisdictional requirements and remanded the case back to the Circuit Court of Cook County, Illinois.  2000 U.S. Dist. LEXIS 5376 at *12. Upon review of Illinois law, it is evident that the case at bar must also be remanded.

- 7 -

### 3.    Fraudulent Joinder

In <u>Alegre</u>, the District Court next addressed the issue of fraudulent joinder and stated that the "party arguing fraudulent joinder must demonstrate that there is 'no reasonable possibility that a state court would rule against the in-state defendant.'" <u>Alegre</u> 2007 U.S. Dist. LEXIS 3266 at *10. In <u>Alegre</u>, the District Court found that Merck failed to meet this burden in that 1) plaintiff's allegations against Merck and the doctors were not inconsistent and 2) that Merck had simply ignored allegations of the doctors' negligence that precluded the application of the fraudulent joinder doctrine. <u>Alegre</u> 2007 U.S. Dist. LEXIS 3266 at *12 and 13.

Merck, in the case at bar, never addresses nor mentions this issue in its notice of removal. The plaintiff alleges that she has stated a clear cause of action against the defendant dentists and points to the fact that they are at issue in the case. The plaintiff filed the complaint against these dentists and they have answered the complaint and would have proceeded to the discovery phase of the case but for the removal of this cause of action to federal court. None of the defendants brought a motion to dismiss for failure to state a cause of action under Illinois law and Illinois Supreme Court Rule 622 affidavits were attached to the complaint stating that a dentist has reviewed the medical records of the plaintiff and in his opinion the defendant dentists deviated from the standard of care. A true and correct copy of the answers to the complaint and 622 affidavits are attached hereto and marked as "Exhibit E." Therefore, as in the <u>Alegre</u> case, the application of the fraudulent joinder doctrine is not applicable.

- 8 -

### 4.    Fraudulent Misjoinder

The <u>Alegre</u> court next addressed the issue of fraudulent misjoinder. Merck claimed that the in-state defendants were misjoined because the claims against the doctors and Merck do not arise out of the same occurrence. <u>Alegre</u> 2007 U.S. Dist. LEXIS 3266 at \*15. The court stated that even though it declined to follow <u>Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353, 1360 (11th Cir. 1996)</u>, the plaintiff had not misjoined any defendants. <u>Alegre</u> 2007 U.S. Dist. LEXIS 3266 at \*18. The court reasoned that:

> "Illinois law, similar to federal law, allows plaintiffs to join defendants 'against whom a liability is asserted either jointly, severally or in the alternative arising out of the same transaction or series of transactions.' <u>735 ILCS 5/2-405(a)</u>; compare <u>Fed. R. Civ. P. 20(a)</u> (allowing joinder of parties as defendants 'if there is asserted against them jointly, severally or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action'). 'The objective of joinder is the economy of actions and trial convenience.'" <u>Alegre</u> 2007 U.S. Dist. LEXIS 3266 at \*18.

Based upon the foregoing, the court remanded the case back to the state court.

### 5.    Indivisible Injury

In addition to <u>Alegre</u>, the Seventh Circuit has long recognized that independent tortfeasors can cause an indivisible injury. In <u>Watts vs. James Laurent, et al.</u>, 774 F.2d 168, 179, (7th Cir. 1985), the Court stated "it is axiomatic that where several independent actors concurrently or consecutively produce a single, indivisible injury, each actor will be held jointly and severally liable for the entire injury. (Citations omitted.)"

In <u>DePaepe vs. General Motors Co.</u>, 33 F.3d 737, 742, (7th Cir. 1994) the court stated:

- 9 -

"DePaepe's quadriplegia was an indivisible injury that could not reasonably be apportioned between two possible causes–those being the Buick's collision with the other vehicle and the second impact with the allegedly defective sun visor/header, as there was no clear evidence showing that either but not both had caused a distinct portion of the injury. (Citations omitted.) The district court should therefore have ruled as a matter of law the DePaepe's injury was indivisible and that it was incapable of apportionment."

The same rationale holds true in the case at bar. There is no clear evidence that either but not both of the concurrent actions of the dentists and Merck caused a separate injury to the plaintiff. Since this is an indivisible injury the case cannot be divided.

The plaintiff in the case at bar has made allegations of concurrent negligence. The plaintiff alleges that the dentists were negligent in that they failed to prevent, diagnose and treat the infection of the jaw during their course of care and treatment of the plaintiff. The plaintiff has furthered alleged that during that negligent course of treatment, the plaintiff was prescribed and ingested FOSAMAX which has been linked to necrosis of the jaw. Merck's negligence in distributing and marketing a drug with these propensities was a contributing factor in the plaintiff's injury.

Consistent with the rationale as stated in both Alegre and Watts, the plaintiff has a right to pursue her claims against the concurrent tortfeasors (dentists and Merck) in a single action. To divide the cases would cause an insurmountable burden upon the plaintiff. At the trial against the dentists, the defendant dentists would argue that Merck is liable for the injury because they did not disclose the drugs propensity to attack the jaw bone–yet Merck would not be a party to the case. At the trial against Merck, defendant Merck would maintain that the dentists were liable for the injury in that they failed to prevent, diagnose and treat the underlying jaw infection.

- 10 -

Again, if the court divided the case, the dentists would not be a party to the case. The plaintiff

would be unable in each case to prove to the jury what portion or percentage of her jaw injury

was caused by the individual defendant's negligence. The most judicially feasible route is to

allow the plaintiff to maintain all of her causes of action in one case and have the jury determine

liability based upon all the facts of the case as they truly existed concurrently.

When a plaintiff has one single indivisible injury, judicial economy requires that all the

defendants responsible for the injury are joined in the cause of action. In Woods v. Cole, 181

Ill.2d 512; 693 N.E.2d 333, 230 Ill.Dec. 204 (S. Ct. IL. 1998), the Supreme Court of Illinois held

that where defendants' independent but concurrent actions cause one single indivisible injury, the

defendants will be found to be jointly and severally liable. 181 Ill.2d at 516.

Woods was relied upon in LeClercq v. The Lockformer Co., 2002 U.S.Dist. Lexis 8682,

54 ERC (BNA) 1506, 32 ELR 20701, (N.D. Ill. May 6, 2002) when discussing the independent

yet concurrent actions of defendants causing an indivisible injury. The Court stated:

> "The common law doctrine of joint and several liability provides that when two or
> more individuals tortiously contribute to the same, indivisible injury, each
> individual may be held jointly [*7] and severally liable for the entire injury. See
> W. Keeton, Prosser & Keeton on Torts §§ 47, 50-52 (5th Ed. 1984). So, a
> tortfeasor who acts independently and concurrently with another individual to
> produce an indivisible injury to a plaintiff may be held jointly and severally liable
> for that injury, even though the tortfeasor **does not act in concert with the other
> individual and shares no common purpose with them**. Woods v. Cole, 181
> Ill.2d 512, 517, 693 N.E.2d 333, 336 (Ill. 1998). Illinois recognizes that this type
> of **'independent concurring tortfeasor'** is not 'held liable for the entirety of a
> plaintiff's injury because he or she is responsible for the actions of the other
> individuals who contribute to the plaintiff's injury. Rather, **an independent,
> concurring tortfeasor is held jointly and severally liable because the
> plaintiff's injury cannot be divided into separate portions, and because the
> tortfeasor fulfills the standard elements of tort liability . . .'** Id. Contrary to

- 11 -

Honeywell's contentions, Illinois does not require a plaintiff to attribute proper portions of their injury among the joint tortfeasors to establish proximate cause." (Emphasis added.)

2002 U.S.Dist. Lexis 8682 at *6.

Based upon the clear precedent provided, Merck must be a party to the case along with the defendant dentists. Merck's actions do not need to arise out of the same transaction or occurrence so long as its negligent action concurrently contributed to the indivisible injury. Merck's negligence was a contributing cause of the plaintiff's injury and therefore Merck should be required to remain in this cause of action in state court.

**CONCLUSION**

Based upon the forgoing, the plaintiff did not fraudulently join or misjoin the dentists in the case at bar. Since the dentists are proper parties to the case, complete diversity does not exist. Therefore, the case should be remanded to the Circuit Court of Cook County, Illinois in its entirety.

Katherine A. Cárdenas

Law Offices of Lucas & Cárdenas, P.C.
77 West Washington Street, Suite 900
Chicago, Illinois 60602
312-781-0082
312-332-4718 (fax)
AttorneyCardenas@yahoo.com
Counsel for Plaintiff Zeferina Montelongo

# Oral & Intravenous Bisphosphonate–Induced Osteonecrosis of the Jaws

*History, Etiology, Prevention, and Treatment*



Robert E. Marx, DDS



quintessence books

Library of Congress Cataloging-in-Publication Data

Marx, Robert E.
   Oral & intravenous bisphosphonate–induced osteonecrosis of the
   jaws : history, etiology, prevention, and treatment / Robert E. Marx.
      p. ; cm.
   Includes bibliographical references and index.
   ISBN-13: 978-0-86715-462-7 (softcover)
   1. Jaws--Necrosis.  2. Diphosphonates--Toxicology.  3. Osteope-
   trosis--Etiology.    I. Title.  II. Title: Oral and intravenous bisphos-
   phonate–induced osteonecrosis of the jaws.
     [DNLM:  1. Jaw Diseases--etiology--Case Reports.  2. Osteone-
   crosis--etiology--Case Reports.  3. Diphosphonates--adverse effects
   --Case Reports.  4. Drug Therapy--adverse effects--Case Reports.
   5. Jaw Diseases--therapy--Case Reports.  6. Osteonecrosis--therapy
   --Case Reports.    WU 140.5 M392o 2007]
   RC936.M365 2007
   617.5'22--dc22

                                        2006029745



© 2007 Quintessence Publishing Co, Inc

Quintessence Publishing Co, Inc
4350 Chandler Drive
Hanover Park, Illinois 60133
www.quintpub.com

All rights reserved. This book or any part thereof may not be reproduced, stored in a retrieval system, or
transmitted in any form or by any means, electronic, mechanical, photocopying, or otherwise, without prior
written permission of the publisher.

Editor: Lisa C. Bywaters
Design: Dawn Hartman
Production: Patrick Penney

Printed in Canada

Case 1:08-cv-01687 Document 20-13 Filed 05/16/2008 Page 3 of 4

**Table 6-2** Primary indications and dosage information for all bisphosphonates currently available

| Drug name (proprietary) | Primary indication | Contains nitrogen? | Recommended dose | Relative potency | Relative risk for ONJ |
|---|---|---|---|---|---|
| Etidronate (Didronel) | Paget disease | No | 300–750 mg/day for 6 months | 1 | 0 |
| Tiludronate (Skelid) | Paget disease | No | 400 mg/day for 3 months | 50 | 0 |
| Residronate (Actonel) | Osteoporosis | Yes | 5 mg/day; 35 mg/week | 1,000 | 1 |
| Alendronate (Fosamax) | Osteoporosis | Yes | 10 mg/day; 70 mg/week | 1,000 | 12 |
| Ibandronate (Boniva) | Osteoporosis | Yes | 2.5 mg/day or 150 mg/month | 1,000 | Unknown |

ONJ: osteonecrosis of the jaws.

# Assessing the Dental Risks of Developing Osteonecrosis of the Jaws

## Medical history

Risk assessment begins with the medical history. Today both physicians and dentists should incorporate questions about bisphosphonate use into the medical history: Which ones have been taken? For how long, and at what dose and frequency? Was there prior or concomitant use of prednisone or another steroid? Generally speaking, Fosamax poses a greater risk than Actonel, while the risk associated with Boniva is unknown. The recommended dose for Fosamax is 10 mg daily or 70 mg once a week; for Actonel, 5 mg daily or 35 mg once a week; and for Boniva, 150 mg once a month (occasion-ally a dose of 2.5 mg daily is prescribed) (Table 6-2). When these bisphosphonates are taken at doses higher than are recommended, the risk of developing osteonecrosis increases.

Regular use of an oral bisphosphonate for a period of less than 3 years suggests minimal or no risk. Regular use for a period greater than 3 years suggests a risk profile that steadily increases with the length of use. Whether taken daily, weekly, or monthly, the dosing schedule is irrelevant since all bisphosphonates have a half-life that exceeds 10 years, and all of them accumulate in bone. Prior or concomitant use of prednisone increases the risk of developing osteonecrosis since it enhances collagen breakdown.

## Examination

A second means of assessing risk is through a clinical and radiographic

# Prevention of Oral Bisphosphonate–Induced Osteonecrosis

## Before initiating oral bisphosphonate therapy

### Dental-oral preparation

Prevention of oral bisphosphonate–induced osteonecrosis requires close mutual cooperation and communication between the treating physician and the patient's dental team. This begins with the physician recommending an oral bisphosphonate to treat osteopenia, osteoporosis, or another indicated condition. Ideally, the physician would refer the patient for a dental evaluation prior to beginning the oral bisphosphonate course. The dentist should accomplish a complete oral examination with appropriate radiographs and then follow up with a treatment plan aimed at preventing the need for invasive dental procedures. For the cancer patient requiring a course of intravenous bisphosphonates, the physician would be asked to delay therapy for 2 months while the dentist reduces and/or eliminates known dental risk factors. Since oral bisphosphonates are poorly absorbed in the intestines, they accumulate in bone much more slowly than intravenous bisphosphonates. Consequently, the risk of developing exposed bone does not become significant until 3 years of continuous use, and the timetable for improving dental health is therefore much more flexible. Nonetheless, unsalvageable teeth and multilobulated tori should be removed; all periodontal therapy, root canal treatments, and restorative or prosthetic treatment, if necessary, should be provided; and dental implants, if elected, can be placed at this time. However, informed consent concerning the potential for implant loss and/or exposed bone related to oral bisphosphonates should be obtained as the patient continues bisphosphonate therapy and exceeds 3 years of continuous use.

Patients who maintain optimal dental health reduce the risk of developing dental abscesses or periodontitis as well as the possibility of needing tooth removal, periodontal surgery, dental implant placements, or other invasive dental procedures. While such measures should prevent numerous cases of oral bisphosphonate–induced osteonecrosis, it cannot prevent all of them. Spontaneous bone exposure related to oral bisphosphonates, particularly of the lingual cortex in the molar regions, accounts for about 50% of cases (Fig 6-13). These spontaneous exposures have occurred in patients who were in optimal dental health and exhibited excellent plaque control, demonstrating that this type of oral bisphosphonate–induced osteonecrosis cannot be prevented even with the best dental care.

### Intermittent use of bisphosphonates

A second strategy for reducing the incidence of oral bisphosphonate–induced

87



**H**In re Rezulin Products Liability Litigation
S.D.N.Y.,2003.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
In re: REZULIN PRODUCTS LIABILITY
LITIGATION (MDL No. 1348)
**No. MDL 1348, 00 Civ. 2843(LAK).**

June 2, 2003.

PRETRIAL ORDER NO. 150

KAPLAN, J.
**\*1** This Document Relates to: 02 Civ. 6812(LAK)

(Motions to Remand-*Lusteck* )

This action was brought in a Mississippi state court, removed to federal court on the basis of diversity notwithstanding the presence of a non-diverse physician defendant, and transferred to this Court. Plaintiff moves to remand on the ground that the physician defendant deprives the Court of complete diversity.

The complaint against the physician is for medical malpractice (count II) and breach of express and implied warranty that Rezulin was safe and effective (counts V and VI). Counts V and VI are asserted also against the drug's manufacturer. The alleged malpractice was the physician's alleged negligent failures to (1) conduct liver and cardiac monitoring even after physicians were warned of the risk of liver and cardiac damage, (2) warn plaintiff of the risks associated with Rezulin and (3) diagnose plaintiff's liver dysfunction in time to prevent irreparable injury. (Cpt ¶¶ 26-28)

Magistrate Judge Katz, in a report and recommendation dated April 28, 2003, concluded that plaintiff had no meaningful possibility of success against the doctor on counts V, VI, and the failure to warn and monitor claims in count II, but thought the failure to diagnose malpractice claim sufficient, albeit misjoined with the claims against the manufacturers and other defendants in this case. He therefore recommended severance and remand of the malpractice claim to the state court, that the doctor be dropped as a defendant here, and that the motion to remand otherwise be denied. Plaintiff objects, arguing that the physician was joined properly, that the sufficiency of the malpractice claim against him destroys diversity, that the physician in any case did not join in the removal as required, and that the entire action therefore should be remanded.

Everything turns on the propriety of the joinder of the physician. The malpractice claim here is based in substance on the physician's failure to diagnose plaintiff's alleged liver dysfunction. The breach of warranty and other claims go principally to the safety and efficacy of the drug and have little if anything to do with the malpractice claim. For the reasons set forth by the Magistrate Judge, the joinder of the malpractice claim with the others was inappropriate because the claims do not both involve common questions of law or fact and assert "joint, several, or alternative liability ... arising from the same transaction, occurrence, or series of transactions or occurrences."Fed.R.Civ.P. 20. *Accord, e.g., Lee v. Mann*, 2000 WL 724046, at \*2 (Va.Cir.Ct. Apr. 5, 2000) (claims against drug manufacturer and malpractice claim against prescribing physician did "not arise out of the 'same transaction or occurrence' "). Plaintiff has no meaningful prospect of success on the other claims against the physician.

Accordingly, the Court adopts the report and recommendation of the Magistrate Judge. The motion to remand is granted to the extent, and only to the extent, that Count II of the complaint is severed and remanded to the Court from which it was removed. Dr. Evans is dropped as a defendant on the balance of the complaint. The motion to remand is denied in all other respects.

**\*2** SO ORDERED.

S.D.N.Y.,2003.
In re Rezulin Products Liability Litigation
Not Reported in F.Supp.2d, 2003 WL 21276425
(S.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                      Page 2
Not Reported in F.Supp.2d, 2003 WL 21276425 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d, 2003 WL 21276425 (S.D.N.Y.))**

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d, 2003 WL 23305516 (D.Minn.)
**(Cite as: Not Reported in F.Supp.2d, 2003 WL 23305516 (D.Minn.))**

C In re Baycol Products Litigation
D.Minn. 2003.
Only the Westlaw citation is currently available.
United States District Court, D. Minnesota.
In re: BAYCOL PRODUCTS LITIGATION.
Nanette LOWE,
v.
BAYER et al.
ORA LEE WASHINGTON,
v.
BAYER et al.
**MDL No. 1431 (MJD/JGL)**
**Civil Case No. 03-3150**
**Civil Case No. 03-3151**

December 15, 2003.

MEMORANDUM AND ORDER

**\*1** This Document also relates to:

Carol E. Rhodes, Rhodes Law Offices, for and on behalf of Plaintiffs.

William F. Goodman Ill, Rebecca Wiggs, and C. Alleen McClain, Watkins & Eager PLLC, for and on behalf of Bayer Corporation.

Joshua J. Wiener, Butler Snow O'Mara Stevens & Cannada, for and on behalf of SmithKline Beecham Corporation d/b/a GlaxoSmithKline.

This matter is before the Court upon Plaintiffs' Motions for Remand to the Circuit Court of Jefferson County, Mississippi. Defendants oppose the motions, arguing that this Court has diversity jurisdiction over Plaintiffs' claims.

**I. BACKGROUND**

These cases were originally filed in Mississippi state court, and both Plaintiffs are citizens of the state of Mississippi. The complaints are virtually identical, with only the applicable names and dates being different in each complaint. Therefore, any citations to the complaint will include the identical paragraphs in both complaints, unless otherwise noted. Plaintiffs

allege that they were prescribed Baycol and suffered permanent injuries; mental, emotional, and physical pain and suffering; worry, depression, anxiety, and psychological problems; loss of income and earning capacity; and loss of vitality and capacity to enjoy life as a result of taking the drug. (Compl. ¶¶ 351, 81, 89.) Plaintiffs have asserted a number of claims against Defendants Bayer and GlaxoSmithKline. Plaintiffs have also asserted claims against their treating physicians.

Defendants timely removed this action to the United States District Court, District of Mississippi asserting subject matter jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332(a). In the removal petition, Defendants asserted that the non-diverse defendants, Plaintiffs' treating physicians, were fraudulently joined. Subsequently, these matters were transferred to this Court by the Judicial Panel on Multidistrict Litigation.

**II. STANDARD**

Remand to state court is proper if the district court lacks subject matter jurisdiction over the asserted claims. 28 U.S.C. § 1447(c). In reviewing a motion to remand, the court must resolve all doubts in favor of remand to state court, and the party opposing remand has the burden of establishing federal jurisdiction by a preponderance of the evidence. See In re Business Men's Assurance Co. of America, 992 F.2d 181, 183 (8th Cir. 1983) (citing Steel Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006, 1010 (3rd Cir. 1987), cert. dismissed 484 U.S. 1021 (1988)). In determining the propriety of remand, the Court must review the plaintiffs' pleadings as they existed at the time of removal. See Pullman Co. v. Jenkins, 305 U.S. 534, 537 (1939); Crosby v. Paul Hardeman, Inc., 414 F.2d 1, 3 (8th Cir. 1969).

**\*2** "Joinder is fraudulent and removal is proper when there exists no reasonable basis in fact and law supporting a claim against the resident defendants." Wiles v. Capitol Indem. Corp.., 280 F.3d 868, 871 (8th Cir. 2001) (citation omitted). The burden is on the removing party to show that there is no possibility that the plaintiff will be able to state a cause of action against the resident defendant.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                      Page 2
Not Reported in F.Supp.2d, 2003 WL 23305516 (D.Minn.)
**(Cite as: Not Reported in F.Supp.2d, 2003 WL 23305516 (D.Minn.))**

See *Masepohl v. American Tobacco Co., Inc.*, 974 F. Supp. 1245, 1250 (D. Minn. 1997). In deciding this issue, the Court may consider the pleadings and supporting affidavits. See *Parnas v. General Motors Corp.*, 879 F. Supp. 91, 92 (E.D. Mo. 1995).

### III. DISCUSSION

Plaintiffs have asserted a number of claims against Bayer and Glaxo ("Defendants") based in strict liability, negligence, misrepresentation, fraud, and breach of implied and express warranties. (Compl. ¶¶ 34-73.) Generally, the claims against Defendants are based on allegations that Baycol was unsafe and in an unreasonably dangerous condition when marketed; that Defendants knew Baycol was unsafe; that Defendants failed to adequately warn of Baycol's risks; that Defendants failed to conduct proper testing of Baycol; and that Defendants made false statements to physicians and the public regarding Baycol's safety. (*Id.*) Plaintiff Washington also asserts negligence claims against her physician, Dr. McArthur; and Plaintiff Lowe asserts identical claims against her physician, Dr. Bills. (Compl. ¶¶ 74-89.)

Defendants argue that the main thrust of Plaintiffs' complaints is that Defendants misrepresented the safety of Baycol, and failed to warn of the serious risks associated with Baycol when manufacturing and selling the drug. Thus, according to Defendants, Plaintiffs have failed to sufficiently plead either that their physicians proximately caused Plaintiffs' injuries, or that the physicians knew or should have known of Baycol's risks. In addition, Defendants aver that Plaintiffs have failed to provide a sufficient factual basis for their allegations that the physicians did not perform the appropriate testing recommended by Defendants. Having failed to alleged a cause of action against the physicians, Defendants assert that the physicians' joinder in this case was fraudulent. For support, Defendants cite, *inter alia,* another case decided in conjunction with this MDL, *Spier v. Bayer Corp.*, No. 02-4835, 2003 WL 21223842 (D. Minn. May 27, 2003). In *Spier*, this Court concluded that since the complaint alleged that Bayer failed to properly represent Baycol's safety and failed to adequately warn physicians of Baycol's risks, the plaintiff failed to demonstrate that her physician know or should have known of Baycol's risks. See *Spier*, 2003 WL 21223842, at *2. This Court found that the plaintiff s physician had been fraudulently joined, and denied the plaintiffs motion to remand to state court. *See id.* The Court finds that the complaints in the instant cases suffer from the same deficiencies as the complaint in *Spier*.

**\*3** Plaintiffs assert that their physicians violated the appropriate standard of care in the following ways:

A. Failing to conduct adequate pre-clinical testing, post-marketing surveillance, and blood tests to determine the safety of Baycol;

B. Negligently or carelessly prescribing Baycol;

C. Failing to warn or inform [Plaintiffs] prior to or during [their] use of Baycol … about the … risks and/or side effects, of which these Defendant [physicians] knew or should have known;

D. The need for comprehensive, regular monitoring to ensure discovery of potentially serious side effects;

E. The possibility of dying or becoming disabled as a result of the drug's use and/or having to undergo surgery to correct kidney damage that [sic];

F. That Rhabdomyolysis may result in permanent injuries.

(Compl. ¶ 77.) Plaintiffs also assert that their physicians did not perform "adequate and/or subsequent lab tests recommended by the manufacturers of Baycol," did not properly monitor Plaintiffs' Baycol use, and were "otherwise careless or negligent in other material respects to be shown at trial."(*Id.* ¶¶ 79, 80, 88.)

The vast majority of Plaintiffs' complaints, however, support the position that the manufacturers concealed Baycol's risks, and that the physicians did not know those risks prior to prescribing the drug. The complaints state, *inter alia,* that

Drug Company Defendants knew, or should have known, that unreasonably dangerous risks were associated with the use of [Baycol] … and permitted [Baycol] to be promoted and sold without adequate warnings of the serious side effects and dangerous risks to the consuming public.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 3
Not Reported in F.Supp.2d, 2003 WL 23305516 (D.Minn.)
**(Cite as: Not Reported in F.Supp.2d, 2003 WL 23305516 (D.Minn.))**

Drug Company Defendants … failed to advise or adequately warn the public, doctors, hospitals, or clinics that there were special risks associated with the use of Baycol.

Drug Company Defendants engaged in, and conspired together, to defraud and deceive Plaintiff[s] and [their] prescribing physician[s], pharmacist and members of the general public.

Drug Company Defendants engaged in a fraudulent advertising, marketing and distribution scheme … directed at Plaintiff[s], [their] prescribing physician [s], pharmacist[s] and the general public.

Drug Company Defendants … falsely and fraudulently represented to physicians … and members of the general public, that the drug was in fact safe and not unreasonably dangerous to its users.

Drug Company Defendants … failed to inform and advise Plaintiff[s] [and their] prescribing physician[s] … that the side effects of rhabdomyolysis and renal failure were known prior to approval of the drug.

Drug Company Defendants … failed to emphasi[ze] to Plaintiffs [and their] prescribing physician[s] … that patients with pre-existing kidney problems should not take Baycol and that there was no reliable way to protect them.

**\*4** Drug Company Defendants … failed to advise Plaintiff[s] [and their] prescribing physician[s] … prior to June 2001 that taking higher starting dosages of Baycol created a substantially higher risk of rhabdomyolysis and renal failure.

Drug Company Defendants, with the intent to deceive and defraud Plaintiff[s] and [their] prescribing physician[s] … fraudulently … represented that the drug Baycol had side effects comparable to placebo when, in fact, clinical trials … revealed that patients who took Baycol had an incidence of muscle pain almost seven times higher … and joint pain almost four times higher than patients given placebos.

Drug Company Defendants … falsely promoted Baycol to Plaintiff[s] [and their] prescribing physician[s] … as a drug whose safety was backed up by clinical tests. The Drug Company Defendants … further fraudulently failed to inform Plaintiff[s] [and their] prescribing physician[s] … that since January 2000, over 100 fatalities were linked to the use of Baycol.

Plaintiff[s] and [their] prescribing physician[s] had a right to rely on such statements, representations, omissions, advertisements or promotional schemes which were material to the decision to take or prescribe Baycol and, [their] prescribing physician[s] would not have prescribed it, if [they] had known that said statements … were deceptive, false, incomplete, misleading, and untrue.

(Compl. ¶¶ 53, 55, 65, 66, 69(C), 69(D), 69(E), 69(F), 69(H), 69(J), 70.)

The Court finds that Plaintiffs have failed to demonstrate that their physicians knew or should have known of Baycol's risks. *Spier, 2003 WL 21223842, at \*2.* A defendant cannot be held liable for failing to warn of unknown risks. Therefore, Plaintiffs' motions to remand must be denied on this basis. *Seeid.*(stating that "conclusory allegations" are insufficient to defeat a finding of fraudulent joinder).

Plaintiffs also aver that their physicians "did not perform adequate and/or subsequent lab tests recommended by the manufacturers of Baycol," and did not properly monitor Plaintiffs' Baycol use. (Compl. ¶¶ 79, 88.) The complaints never identify any specific tests or monitoring, other than "liver tests," which their physicians failed to conduct, and do not even state that Plaintiffs suffered liver problems as a result of taking Baycol. The Court also finds these conclusory allegations insufficient to defeat a finding of fraudulent joinder. The overwhelming thrust of Plaintiffs' complaints is that no one, not even their physicians, were properly informed about Baycol's risks. In addition, Plaintiffs do not even attempt to establish what tests and monitoring were required once Baycol was prescribed, and thus, have failed to establish any standard of care which their physicians allegedly breached. Accordingly, Plaintiffs' motions are denied.

**IT IS HEREBY ORDERED:**

**\*5** (1) Plaintiff Nannette Lowe's Motion for Remand to the Circuit Court of Jefferson County, Mississippi

Not Reported in F.Supp.2d                                                Page 4
Not Reported in F.Supp.2d, 2003 WL 23305516 (D.Minn.)
**(Cite as: Not Reported in F.Supp.2d, 2003 WL 23305516 (D.Minn.))**

[Doc. No. 7 in Civil Case No. 03-3150] is DENIED; and

(2) Plaintiff Ora Lee Washington's Motion for Remand to the Circuit Court of Jefferson County, Mississippi [Doc. No. 6 in Civil Case No. 03-3151] is DENIED.

Date: _____

_____, MICHAEL J. DAVIS, United States District Court

11 NO. 1 Andrews Class Action Litig. Rep. 17 11 NO. 1 Andrews Class Action Litig. Rep. 17 11 NO. 1 Andrews Class Action Litig. Rep. 17 11 NO. 1 Andrews Class Action Litig. Rep. 17
D.Minn. 2003.
In re: BAYCOL PRODUCTS LITIGATION. Nanette LOWE, v. BAYER et al. ORA LEE WASHINGTON, v. BAYER et al.
Not Reported in F.Supp.2d, 2003 WL 23305516 (D.Minn.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.



In re Baycol Products Litigation
D.Minn.,2003.
Only the Westlaw citation is currently available.
United States District Court,D. Minnesota.
In re: BAYCOL PRODUCTS LITIGATION
**No. MDL 1431(MJD), 02-4835.**

May 27, 2003.

Akim A. Anastopoulo and Samuel K. Allen, Anastopoulo Law Firm for and on behalf of Plaintiffs.

Celeste T. Jones and Andrew G. Melling, McNair Law Firm, N.A. and Gene E. Schaerr, Sidley Austin Brown & Wood LLP for and on behalf of Bayer Corporation.

DAVIS, J.
*1 This Document also relates to: Genevieve Spier v. Bayer Corporation et al.,

This matter is before the Court upon Plaintiff's motion for remand. Bayer Corporation ("Bayer") opposes the motions, arguing that this Court has diversity jurisdiction over Plaintiff's claims.

*Background*

Plaintiff Genevieve Spier is a citizen of the state of South Carolina. She was prescribed Baycol by Defendant Dr. Terrell Stone in February 1999; which she took until August 2001. Complaint ¶ 6. She alleges that she was injured as a result of ingesting Baycol.

Plaintiff has asserted claims against the pharmaceutical manufacturers, as well as her personal physician, Dr. Stone. Because Dr. Stone is also a citizen of the state of South Carolina, this action was originally filed in state court. Bayer Corporation timely removed this action to the United States District Court, District of South Carolina asserting subject matter jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332(a). In its removal petition, Bayer asserts that the only non-diverse defendant, Dr. Stone, was fraudulently joined as Plaintiff failed to state a cause of action against him.

*Standard*

Remand to state court is proper if the district court lacks subject matter jurisdiction over the asserted claims. 28 U.S.C. § 1447(c). In reviewing a motion to remand, the court must resolve all doubts in favor of remand to state court, and the party opposing remand has the burden of establishing federal jurisdiction by a preponderance of a the evidence. *In re Business Men's Assurance Co. of America,* 992 F.2d 181, 183 (8th Cir.1983) (citing *Steel Valley Auth. v. Union Switch & Signal Div.,* 809 F.2d 1006, 1010 (3rd Cir.1987)cert. dismissed484 U.S. 1021 (1988)).

Joinder is fraudulent and removal is proper when there exists no reasonable basis in fact and law supporting a claim against the resident defendant." *Wiles v. Capitol Indemnity Corporation,* 280 F.3d 868, 870 (8th Cir.2001). The burden is on the removing party to show that there is no possibility that the plaintiff will be able to state a cause of action against the resident defendant or that there has been outright fraud in the pleading of jurisdictional facts. *Parnas v. General Motors Corporation,* 879 F.Supp. 91, 92 (E.D.Mo.1995). In deciding this issue, the Court may consider the pleadings and supporting affidavits. *Id.*

Plaintiff has asserted a number of claims against Bayer Corporation and SmithKlineBeecham (the "Baycol Defendants") based in strict liability, negligence, misrepresentation and fraud, and breach of warranty. In support of these claims. Plaintiff alleges that Baycol was unaccompanied by proper warnings, and that the Baycol Defendants failed to perform adequate testing.*Id.* ¶ 20.Plaintiff further alleges that after the Baycol Defendants knew or should have known of Baycol's risks of serious injury, they failed to provide adequate warnings to Plaintiff and/or her physicians ..." *Id.* ¶ 22."Further, Defendants failed to warn the Plaintiff, her physicians, her insurance company or the public that such product was not safe."*Id.* ¶ 25.In support of her misrepresentation/fraud claim, she alleges that the "Baycol Defendants, through advertising, labeling, and other communications, made misrepresentations to physicians and the public, including the Plaintiff

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

and Plaintiff's insurance company ... about the safety and efficacy of Baycol ..."*Id.* ¶ 27."Physicians and their patients, including the Plaintiff and the insurance company, relied on these Defendants fraudulent misrepresentations, and the Plaintiff was harmed as a result."*Id.* ¶ 30.

**\*2** In her Complaint, she also asserts a claim of negligence against Dr. Stone. Specifically, she alleges that Dr. Stone "knew, or should have known, that Baycol was a dangerously defective drug which posed unacceptable risks of serious injury which were unknown and unknowable by Plaintiff."*Id.* ¶ 18.She also alleges that Dr. Stone negligently failed to warn Plaintiff of the risks associated with Baycol and that such negligence was the cause of her injuries. *Id.* ¶ 26.She further alleges that Dr. Stone could have used a safer statin, but instead prescribed Baycol. *Id.*

It is Bayer's position that given the allegations in Plaintiff's complaint, that the Baycol Defendants misrepresented the safety of Baycol, and failed to warn physicians of the serious risks associated with Baycol, Plaintiff has failed to show that Dr. Stone knew or should have known of the serious risks associated with Baycol.

Plaintiff responds that she anticipates that Bayer will assert the "learned intermediary doctrine" as a defense to Plaintiff's claims. Assuming such doctrine will apply in this case, liability will be assumed by her physician, making the physician an indispensable party. Bayer responds, however, that the learned intermediary doctrine has no bearing on whether a cause of action exists against a doctor for failure to warn of unknown risks. The Court agrees.

In determining whether a party has been fraudulently joined, the Court looks to Plaintiff's Complaint. Reading the Complaint as a whole, it is clear that the main thrust of this action is that the Baycol Defendants misrepresented Baycol's risks and failed to adequately warn of such risks. Plaintiff has not included any factual assertions in her Complaint to support the conclusory allegation that Dr. Stone "knew or should have known" of Baycol's risks. Her conclusory allegations, however, will not defeat a finding of fraudulent joinder. *See*e.g.*In re: Rezulin Products Liability Litigation,* 2003 WL 43356 at \*1 (S.D.N.Y. Jan. 6, 2003) (citing *Strickland v. Brown*

*Morris Pharmacy Inc., 1996 WL 537736 at \*2 (E.D.La. Sept. 20, 1996)*; *In re: Rezulin Products Liability Litigation,* 133 F.Supp.2d 272, 295 (S.D.N.Y.2001).*See*also,*Silver v. H & R Block, Inc., 105 F.3d 394 (8th Cir.1997)* (conclusory allegations not sufficient to withstand motion to dismiss). Based on the allegations contained in the Complaint, the Court finds that there is no reasonable basis in fact and law supporting a claim against Dr. Stone.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's Motion for remand is DENIED.

D.Minn.,2003.
In re Baycol Products Litigation
Not Reported in F.Supp.2d, 2003 WL 21223842 (D.Minn.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.



D.Minn. 2003.
Only the Westlaw citation is currently available.
United States District Court, D. Minnesota.
In re: BAYCOL PRODUCTS LITIGATION,
BLAKENEY et al.,
v.
BAYER AG et al.,
**MDL No. 1431 (MJD)**
**Case No. 03-2931**

2003.

BAYCOL ORDER

**\*1** T. Roe Frazer, II and Patrick D. McMurtray,
Frazer & Davidson, P.A. for and on behalf of
Plaintiffs.

William F. Goodman, III, Rebecca Lee Wiggs, and
C. Alleen McLain, Watkins & Eager PLLC for and
on behalf of Bayer Corporation.

This matter is before the Court upon Plaintiff's
motion for remand.

*Background*

This action involves multiple plaintiffs who allege
they each suffered injury as a result of ingesting
Baycol, with the exception of Willie Mae Aikens,
who has brought suit individually and on behalf of all
wrongful death beneficiaries of Delia Easley. All
plaintiffs are residents of the state of Mississippi and
have asserted claims of strict liability, negligence,
breach of warranty, fraud and negligent infliction of
emotional distress against Defendants Bayer AG,
Bayer Corporation and GlaxoSmithKline (the "Seller
Defendants"). In addition, Plaintiff Aikens has
asserted a claim against Ms. Easley's treating
physician, Dr. Lenito Sinay, and the clinic at which
Ms. Easley received medical care. Complaint ¶¶ 48-
56. Plaintiffs also name as defendants John Does 1-
10, who are identified as "entities and/or individuals
whose identities are unknown at this time, but whose
conduct has contributed and/or proximately caused or
contributed to Plaintiff's injuries."*Id.* ¶ 5(h).

Bayer Corporation timely removed this action to the
United States District Court, District of Mississippi
asserting subject matter jurisdiction based on
diversity of citizenship under 28 U.S.C. § 1332(a). In
the removal petitions, Bayer asserted that the non-
diverse defendants, Dr. Sinay, and the Central
Mississippi Family Health Clinic were fraudulently
joined, and that the plaintiffs' claims were
fraudulently misjoined.

*Standard*

Remand to state court is proper if the district court
lacks subject matter jurisdiction over the asserted
claims. 28 U.S.C. § 1447(c). In reviewing a motion to
remand, the court must resolve all doubts in favor of
remand to state court, and the party opposing remand
has the burden of establishing federal jurisdiction by
a preponderance of the evidence. *In re Business
Men's Assurance Co. of America,* 992 F.2d 181, 183
(8th Cir. 1983) (citing *Steel Valley Auth. v. Union
Switch & Signal Div.,* 809 F.2d 1006, 1010 (3rd Cir.
1987)*cert. dismissed*484 U.S. 1021 (1988)).

1. Fraudulent Joinder

"Joinder is fraudulent and removal is proper when
there exists no reasonable basis in fact and law
supporting a claim against the resident
defendants."*Wiles v. Capitol Indemnity Corporation,*
280 F.3d 868, 870 (8th Cir. 2001). The burden is on
the removing party to show that there is no possibility
that the plaintiff will be able to state a cause of action
against the resident defendant or that there has been
outright fraud in the pleading of jurisdictional facts.
*Parnas v. General Motors Corporation,* 879 F. Supp.
91, 92 (E.D. Mo. 1995). In deciding this issue, the
Court may consider the pleadings and supporting
affidavits. *Id.*

**\*2** Generally, the claims asserted against the Seller
Defendants are based on allegations that these
Defendants falsely and deceptively misrepresented
material facts concerning Baycol's risks, and that
Baycol is defective, unsafe and unreasonably
dangerous, and failed to warn of Baycol's risks. In

Not Reported in F.Supp.2d                                                                     Page 2
Not Reported in F.Supp.2d, 2003 WL 22341303 (D.Minn.)
**(Cite as: Not Reported in F.Supp.2d, 2003 WL 22341303 (D.Minn.))**

addition, Plaintiff Aikens alleges that decedent Delia Easley was prescribed Baycol by Dr. Sinay on May 6, 1999, and admitted to the hospital on August 20, 2001 where she was diagnosed with significant renal failure, and elevated liver function tests. *Id.* ¶¶ 49-50.Ms. Easley continued to have health problems and eventually died of a stroke caused by kidney disease. *Id.* ¶ 51.Plaintiff Aiken alleges that Ms. Easley's physician, Dr. Sinay, negligently failed to adequately test Plaintiff Easley, and to properly diagnose her Baycol-related injuries, and negligently failed to order her to cease taking Baycol. *Id.* ¶ 54.

It is the Seller Defendants' position that when considering all of the allegations in the complaint, the main thrust of which is that the Seller Defendants misrepresented the safety of Baycol and failed to warn physicians of the serious risks associated with Baycol, Plaintiff Aikens has failed to sufficiently plead that Ms. Easley's physician proximately caused her injuries, or that the physician knew or should have known of Baycol's risks. Having failed to alleged a cause of action against the physician, the Seller Defendants assert his joinder in this case was fraudulent. The Court disagrees.

In the Complaint, Plaintiff Aikens does more than allege that Ms. Easley's physician negligently prescribed Baycol. As demonstrated above, she has specifically alleged that Ms. Easley's physician failed to properly diagnose and treat the symptoms experienced by Plaintiff after ingesting Baycol, and that he failed to properly diagnose and treat the conditions she suffered that were caused by Baycol. Based on these allegations, this Court cannot find that Plaintiff Aikens has failed to allege a state law claim against Dr. Sinay.

2. Fraudulent Misjoinder

Other than Plaintiff Aikens, no other plaintiff named in the instant action has asserted a claim against a non-diverse defendant. The Seller Defendants argue that the claims of these plaintiffs were fraudulently misjoined with the claims of Plaintiff Aikens, and that such misjoinder cannot defeat diversity jurisdiction.

Fraudulent misjoinder was first addressed by the Eleventh Circuit in *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353 (11th Cir. 1996)*abrogated on*

*other grounds*, *Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000). At issue in *Tapscott* was whether the district court properly held that plaintiffs had misjoined claims, disregarded the citizenship of the improperly joined plaintiffs, severed and remanded the remainder of the action to state court. The Eleventh Circuit affirmed, finding that "[m]isjoinder may be just as fraudulent as the joinder of a resident defendant against who a plaintiff has no possibility of a cause of action."*Id.* at 1360.The court further stated ""[w]e do not hold that mere misjoinder is fraudulent joinder, but we do agree with the district court that Appellants' attempt to join these parties is so egregious as to constitute fraudulent joinder."*Id.*

**\*3** Courts faced with fraudulent misjoinder claims have interpreted *Tapscott* as not only requiring a finding of misjoinder, but the additional finding of a bad faith attempt to defeat diversity. *Seeeg.*, *Coleman v. Conseco, Inc.*, 238 F.Supp.2d 804, 817 (S.D. Miss. 2002)(requiring a finding of "collusive joinder"); *Ferry v. Bedum America Corporation*, 185 F.Supp.2d 1285, 1291 (M.D. Fla. 2002)(requiring a finding that joinder is "egregious"); *In re: Diet Drugs*, 1999 WL 554584 (E.D. Pa. 1999)(agreeing that mere misjoinder does not warrant a finding of fraudulent joinder). Other courts have refused to apply *Tapscott*'s egregious standard when considering misjoinder of plaintiffs in the context of remand petitions. *In re: Rezulin Products Liability Litigation*, 168 F.Supp.2d 136, 147-148 (S.D.N.Y. 2001). In *Rezulin*, a number of plaintiffs sued in one action for injuries allegedly sustained as a result of ingesting Rezulin. One of the plaintiffs, however, also alleged a claim against a non-diverse home health care provider. The court found that the home health care provider had not been fraudulently joined.*Id.* at 144.The court further found that the plaintiffs' claims were misjoined under Fed.R.Civ.P. 20. *Id.* at 146.The court then declined to apply the *Tapscott* egregiousness standard to the misjoinder issue before it because:

Arguably a plaintiff's right to choose among defendants and claims - the principal reason for imposing a strict standard of fraudulent joinder to effect removal - is not compromised where claims of co-plaintiffs are severed or dismissed. This is not to say the cost and efficiency benefits to joined plaintiffs are immaterial; they simply do not carry the

Not Reported in F.Supp.2d                                                                                                    Page 3
Not Reported in F.Supp.2d, 2003 WL 22341303 (D.Minn.)
**(Cite as: Not Reported in F.Supp.2d, 2003 WL 22341303 (D.Minn.))**

same weight when balanced against the defendant's right to removal.

Based on its finding that the plaintiffs' claims had been misjoined, and that the claims of one plaintiff destroyed diversity jurisdiction, the court severed that action, and retained jurisdiction over the remaining claims in which complete diversity existed. *Id.* at 148.

The doctrine of fraudulent misjoinder has not yet been addressed by the Eighth Circuit Court of Appeals. While the relevant case law does not set forth a specific standard to apply to a fraudulent misjoinder claim, under either the egregious standard, or the standard adopted in *Rezulin*, this Court finds that the claims of Plaintiff Aikens has been fraudulently joined with the other plaintiffs, warranting severance and remand of Plaintiff Aikens's claims only.[FN1]

> **FN1.** This Court is aware that Plaintiffs' motion to remand had been granted by the district court in the Southern District of Mississippi. That order, however, has no effect as it was filed after the action had been transferred by the Judicial Panel on Multidistrict Litigation. In addition, this Court notes that the Mississippi District Court did not address the fraudulent misjoinder argument in its order.

**\*4** This Court has previously found that the fact that plaintiffs were residents of the same state, and who alleged claims against Bayer AG, Bayer Corporation and GlaxoSmithKline based on injuries suffered as a result of ingesting Baycol, without more, did not satisfy the requirements of Rule 20. Pretrial Order No. 31 (July 5, 2002).[FN2] With respect to this case, Plaintiffs have made no attempt to demonstrate to the Court that joinder of Plaintiff Aikens' claims with the other plaintiffs is proper, in light of PTO 31 and 61. In addition, there is no showing that the plaintiffs other than Plaintiff Aikens has asserted a claim against a non-diverse defendant. It thus appears that these claims have been misjoined, and that such misjoinder should not defeat diversity jurisdiction.

> **FN2.** Plaintiffs moved for reconsideration of PTO 31, which motion was denied by PTO 61. Plaintiffs moved to reconsider PTO 61,

to the extent that joinder of plaintiffs claims may be proper in circumstances where in addition to residing in the same state, plaintiffs' claims share other common characteristics. As demonstrated in Pretrial Order No. 88, joinder may be proper where plaintiffs share a number of common characteristics.

Pursuant to Fed.R.Civ.P. 21, the Court will sever the claims of Plaintiff Aikens and remand the Aikens action to state court. Subsequent to severance, there is complete diversity among the remaining plaintiffs and defendants. As the Court may exercise diversity jurisdiction over the remaining claims, the motion to remand as to these claims must be denied.

Accordingly, IT IS HEREBY ORDERED that Plaintiff Aikens is severed from this action, and remanded to the Circuit Court of the Second Judicial District of Hinds County, Mississippi. Plaintiffs' motion to remand with respect to the remaining plaintiffs is DENIED.

Date: _____ 2003

_____, michael J. Davis, United States District Court

D.Minn. 2003.
In re: BAYCOL PRODUCTS LITIGATION,
BLAKENEY et al., v. BAYER AG et al.,
Not Reported in F.Supp.2d, 2003 WL 22341303
(D.Minn.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                 Page 1
Not Reported in F.Supp.2d, 1999 WL 554584 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d, 1999 WL 554584 (E.D.Pa.))**

▷In re Diet Drugs
E.D.Pa.,1999.
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.
In re: DIET DRUGS (Phentermine, Fenfluramine,
Dexfenfluramine) Products Liability Litigation
Maggie M. CHANEY, et. al.
v.
GATE PHARMACEUTICALS, et. al.
**No. Civ.A. 98-20478, 1203.**

July 16, 1999.

F. Hilton-Green Tomlinson, Pritchard Mccall &
Jones, Birmingham, AL, Arnold Levin, Levin,
Fishbein, Sedran & Berman, Philadelphia, PA,
George M. Fleming, Houston, TX, James L. Doyle,
II, Rand P. Nolen, Fleming, Hovenkamp and
Grayson, P.C., Houston, TX, for Maggie M. Chaney,
Plaintiff.
F. Hilton-Green Tomlinson, Arnold Levin, George
M. Fleming, James L. Doyle, II, Rand P. Nolen, (See
above), for Betty J. Williams, Plaintiff.
F. Hilton-Green Tomlinson, Arnold Levin, George
M. Fleming, James L. Doyle, II, Rand P. Nolen, (See
above), for Leroy T. Trotter, Plaintiff.
F. Hilton-Green Tomlinson, Arnold Levin, George
M. Fleming, James L. Doyle, II, Rand P. Nolen, (See
above), for John E. Reed, Plaintiff.
F. Hilton-Green Tomlinson, Arnold Levin, George
M. Fleming, James L. Doyle, II, Rand P. Nolen, (See
above), for James F. Barthel, Plaintiff.
F. Hilton-Green Tomlinson, Arnold Levin, George
M. Fleming, James L. Doyle, II, Rand P. Nolen, (See
above), for Virginia Ann Hopps, Plaintiff.
F. Hilton-Green Tomlinson, Arnold Levin, George
M. Fleming, James L. Doyle, II, Rand P. Nolen, (See
above), for Virginia Hassell, Plaintiff.
F. Hilton-Green Tomlinson, Arnold Levin, George
M. Fleming, James L. Doyle, II, Rand P. Nolen, (See
above), for Evelyn Turner, Plaintiff.
F. Hilton-Green Tomlinson, Arnold Levin, George
M. Fleming, James L. Doyle, II, Rand P. Nolen, (See
above), for Deborah Saunders, Plaintiff.
F. Hilton-Green Tomlinson, Arnold Levin, George
M. Fleming, James L. Doyle, II, Rand P. Nolen, (See
above), for Catherine Herman, Plaintiff.
F. Hilton-Green Tomlinson, Arnold Levin, George

M. Fleming, James L. Doyle, II, Rand P. Nolen, (See
above), for Mary C. Smith, Plaintiff.
James C. Barton, Jr., Johnston, Barton, Proctor,
Swedlaw and Naff, Birmingham, AL, for Gate
Pharmaceuticals, a division of Teva Pharmaceuticals,
USA., Inc., Defendant.
Lawrence B. Clark, Lange, Simpson, Robinson &
Somerville, Birmingham, AL, for Smithkline
Beecham Corporation, Defendant.
E. AnnMC Mahan, Spain and Gillon, Birmingham,
AL, for Jones Medical Industries, Inc., f/k/a Abana
Pharmaceuticals, Inc., Defendant.
J. Allen Sydnor, Jr., Birmingham, AL, for Richwood
Pharmaceuticals Company, Inc., Defendant.
Katharine A. Weber, Maynard, Cooper and Gale,
Birmingham, AL, Ellen Steury, Arnold & Porter,
Washington, DC, Steven H. Bergman, Arnold and
Porter, Los Angeles, CA, Tony G. Miller, Maynard,
Cooper and Gale, Birmingham, AL, Maibeth J.
Porter, Maynard, Cooper & Gale, P. C., Birmingham,
AL, Steven P. Lockman, Arnold & Porter,
Washington, DC, for A.H. Robins Company,
Incorporated, Defendant.
Katharine A. Weber, Ellen Steury, Steven H.
Bergman, Tony G. Miller, Maibeth J. Porter, Steven
P. Lockman, for Wyeth-Ayerst Laboratories,
Division of American Home Products Corporation,
Defendant.
Labella S. Alvis, Sharon D. Stuart, Rives and
Peterson, Birmingham, AL, Thomas W. Christian,
Rives and Peterson, Birmingham, AL, for
Interneuron Pharmaceuticals, Inc., Defendant.
Larry W. Harper, Karen Walker Casey, Porterfield
Harper & Mills PA, Birmingham, AL, for Ion
Laboratories, Inc., Defendant.
Samuel H. Franklin, Lightfoot, Franklin, White and
Lucas, Birmingham, AL, Harlan I. Prater, IV, Robin
H. Graves, Lee M. Hollis, Lightfoot, Franklin &
White, Birmingham, AL, for Medeva
Pharmaceuticals, Inc., Defendant.
Steven A. Stadtmauer, Lester, Schwab, Katz, &
Dwyer, New York, NY, for Goldline Laboratories,
Inc., Defendant.
Emily Sides Bonds, Helen C. Foster, Walston, Wells,
Anderson & Bains, Birmingham, AL, for Qualitest
Pharmaceuticals Inc., Defendant.
Steven A. Stadtmauer, (See above), for Zenith
Goldline Pharmaceuticals, Inc., Defendant.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                      Page 2
Not Reported in F.Supp.2d, 1999 WL 554584 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d, 1999 WL 554584 (E.D.Pa.))**

Emily Sides Bonds, Helen C. Foster, (See above), for United Research Laboratories Inc., Defendant.

Denise M. Smith, Benesch, Friedlander, Coplan, and Aronoff, Cincinnati, OH, for Shire Richwood Inc., Defendant.

Frank Chester Woodside, Cincinnati, OH, James W. Gewin, Bradley, Arant, Rose and White, Birmingham, AL, for Modern Wholesale Drug Co. Inc., f/k/a Rugby Laboratories Inc., Defendant.

Michael K. Choy, John W. Scott, Haskell, Slaughter, Young, Johnston and Gallion, Birmingham, AL, for Geneva Pharmaceuticals, Inc., Defendant.

Gary B. Cutler, Independence Square West, Phila, PA, Nessa B. Math, Margolis, Edelstein and Scherlis, Phila, PA, William C. Wood, Norman, Fitzpatrick, Wood, Parker and Kendrick, Birmingham, AL, for Camall Company, Defendant.

Lawrence B. Clark, (See above), for King Pharmaceuticals, Inc., Defendant.

*MEMORANDUM AND PRETRIAL ORDER NO. 769*

BECHTLE, J.

**\*1** Presently before the court are plaintiffs Maggie M. Chaney's, Betty J. Williams', Leroy T. Trotter's, John E. Reed's, James F. Barthel's, Virginia Ann Hopps', Virginia Hassell's, Evelyn Turner's, Deborah Saunders', Catherine Herman's and Mary C. Smith's ("Plaintiffs") motion to remand the above civil action to state court and defendants A.H. Robins Company, Inc. ("Robins") and Wyeth-Ayerst Laboratories Division of American Home Products Corporation ("Wyeth") responses thereto.[FN1] For the following reasons, the court will deny Plaintiffs' motion to remand and will drop certain Plaintiffs from this civil action pursuant to Rule 21 of the Federal Rules of Civil Procedure.

> FN1. Plaintiffs have also filed several unopposed motions relating to this civil action that do not require discussion in the court's Memorandum. The court will identify and rule on those motions in the accompanying Order.

## I. *BACKGROUND*

On January 15, 1998, Plaintiffs filed this civil action in the Circuit Court of Montgomery County, Alabama.[FN2] On February 17, 1998, Robins and Wyeth filed a notice of removal to the United States

District Court for the Middle District of Alabama, Northern Division. The removal was based upon complete diversity of citizenship under 28 U.S.C. § 1332.[FN3] While this civil action was pending before the Middle District of Alabama, Plaintiffs filed an Amended Complaint. Additionally, Plaintiffs filed a motion to remand the action back to state court. Subsequently, the Judicial Panel on Multidistrict Litigation transferred this civil action to this transferee district court for inclusion in MDL No. 1203.

> FN2. The Complaint asserts only state common law claims and no federal claims are presented.

> FN3. That statute provides:

> > The district courts shall have original jurisdiction of all actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between-

> > (1) citizens of different States;

> > (2) citizens of a State and citizens or subjects of a foreign state;

> > (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and

> > (4) a foreign state, defined in Section 1603(a) of this title, as plaintiff and citizens of a State or of different States.

> 28 U.S.C. § 1332(a).

## II. *DISCUSSION*

Under 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). An action based upon diversity shall be removable "only if none of the parties in interest properly joined and served as defendants is a citizen

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

of the state in which such action is brought .”28 U.S.C. § 1441(b). Thus, only if an action could have originally been brought in federal court may it be removed from state court to federal court. The removing party bears the burden of establishing federal jurisdiction. *Boyer v. Snap-On Tools Corp.,* 913 F.2d 108, 111 (3d Cir.1990). The removal statute is “strictly construed against removal” and all doubts are resolved in favor of remand. *Id.* The existence of diversity jurisdiction is generally determined by analyzing the plaintiff's complaint. *Abels v. State Farm Fire & Cas. Co.,* 770 F.2d 26, 29 (3d Cir.1985).

A. *Defendants' Compliance with* 28 U.S.C. § 1446

Plaintiffs assert that Defendants failed to comply with the procedural requirements of 28 U.S.C. § 1446, which requires all joined defendants to join in the notice of removal within thirty days of service of the initial pleading.[FN4]28 U.S.C. § 1446(b). Defendant Abana Pharmaceuticals, Inc. (“Abana”) was served with Plaintiffs' initial pleading on January 22, 1998. Plaintiffs assert that Abana did not consent to or join in the notice of removal within thirty days of that date. Abana filed its notice of joinder in the removal on February 23, 1998. Plaintiffs are correct that February 23, 1998, on its face, falls outside of the prescribed thirty day time period. February 23, 1998 was exactly thirty-two days measured from January 22, 1998. However, the thirtieth day measured from January 22, 1998 was Saturday, February 21, 1998. Federal Rule of Civil Procedure 6(a) governs the computation of the time period set forth in 28 U.S.C. 1446(b).*Medina v. Wal-Mart Stores, Inc.,* 945 F.Supp. 519, 521 (W.D.N.Y.1996); *Barton v. Lloyds of London,* 883 F.Supp. 641, 642 n. 3 (M.D.Ala.1995); *Aguado v. Milwaukee Elec. Tool Corp.,* C.A. 90-0159, 1990 WL 18817, at [*2] (E.D.Pa. Feb. 26, 1990).Rule 6(a) provides that “[t]he last day of the period so computed shall be included, unless it is a Saturday, a Sunday or a legal holiday, ... in which event the period runs until the end of the next day which is not one of the aforementioned days a Saturday, a Sunday, or a legal holiday.”Fed.R.Civ.P. 6(a). Because Abana's time period for filing their joinder in the notice of removal ended on a Saturday, filing the notice on Monday, February 22, 1998, was permissible. The court finds that Defendants complied with the procedural requirements of 28 U.S.C. § 1446.

FN4. Plaintiffs do not challenge any other aspect of any Defendants' compliance with 28 U.S.C. § 1446.

B. *Diversity of Citizenship and Fraudulent Joinder*

**\*2** Plaintiffs ask the court to remand this action to state court because at least one of the Plaintiffs is a citizen of the same state as one of the Defendants.[FN5]Diversity jurisdiction only exists when all plaintiffs are citizens of different states than that of all defendants named in the action.*Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267 (1806). On the face of the Complaint, complete diversity does not exist. However, Robins and Wyeth assert that certain Plaintiffs were fraudulently misjoined in this action to defeat diversity jurisdiction. They request that the court sever the claims of the non-diverse Plaintiffs and retain jurisdiction over the remaining Plaintiffs' claims.

FN5. Plaintiffs' Evelyn Turner and Mary C. Smith and defendants Medeva Pharmaceuticals, Inc. and Ion Laboratories, Inc. are citizens of Texas. (Compl. ¶¶ 12, 15, 23 and 24.) Additionally, plaintiff Catherine Herman and defendants Gate Pharmaceuticals and Smithkline Beecham Corporation are citizens of Pennsylvania. (Compl. ¶¶ 14, 16 and 17.) Finally, plaintiff Virginia Hassell and defendant Wyeth are citizens of New Jersey. (Comp. ¶ 11, Def.'s Notice of Removal ¶ 13.)

1. Fraudulent Joinder

The doctrine of fraudulent joinder allows the court to disregard parties that are fraudulently joined in a civil action when determining whether complete diversity of citizenship exists. The doctrine recognizes that although plaintiffs are normally free to choose their own forum, a party may not be joined “solely for the purpose of defeating federal diversity jurisdiction.”*Schwartz v. State Farm Mut. Auto. Ins. Co.,* 174 F.3d 875, 878 (7th Cir.1999); *Pampillonia v. RJR Nabisco, Inc.,* 138 F.3d 459, 460-61 (2d Cir.1998); *Tapscott v. MS Dealer Serv. Corp.,* 77 F.3d 1353, 1360 (11th Cir.1996). Parties must have some connection to the controversy if their joinder will defeat diversity jurisdiction. *See*Wilson v.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 554584 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d, 1999 WL 554584 (E.D.Pa.))**

*Republic Iron & Steel Co.,* 257 U.S. 92, 97 (1921) (holding that "right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy"). In the diversity context, a district court examining fraudulent joinder is not required to find fraud in the common law sense of that term. *Katz v. Costa Armatori, S.p.A.,* 718 F.Supp. 1508, 1513 (S.D.Fla.1989); *see also Lewis v. Time, Inc.,* 83 F.R.D. 455, 460 (E.D.Cal.1979) (explaining that fraudulent joinder "does not reflect on the integrity of plaintiff or counsel ... but is merely the rubric applied when a court finds either that no cause of action is stated against the nondiverse defendant, or in fact no cause of action exists"). Accordingly, the court is not required to delve into the subjective intent behind the preparation or structure of the plaintiff's pleadings. When conducting a fraudulent joinder analysis, the court looks to the plaintiff's complaint at the time the petition for removal was filed and assumes all factual allegations contained in the complaint to be true. *Batoff,* 977 F.2d at 851-52. Additionally, a removing party who charges that a plaintiff has fraudulently joined a party to destroy diversity jurisdiction has a "heavy burden of persuasion." *Boyer,* 913 F.2d at 111.

Fraudulent joinder may be established where a defendant shows "there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant." *Boyer,* 913 F.2d at 111. Fraudulent joinder may also be established if "there is outright fraud in the plaintiff's pleading of jurisdictional facts." *Triggs v. John Crump Toyota, Inc.,* 154 F.3d 1284, 1287 (11th Cir.1998); *Pampillonia v. RJR Nabisco, Inc.,* 138 F.3d 459, 461 (2d Cir.1998). In *Tapscott v. MS Dealer Serv. Corp.,* 77 F.3d 1353, 1360 (11th Cir.1996), the Eleventh Circuit recognized a third circumstance in which fraudulent joinder can be found. In *Tapscott,* the court stated that "misjoinder can be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action." *Tapscott,* 77 F.3d at 1360. Defendants do not argue that outright fraud is present in Plaintiffs' pleading of jurisdictional facts or that Plaintiffs cannot prove a claim against a nondiverse defendant. Instead, Defendants ask the court to apply *Tapscott's* egregious joinder analysis to this case.

*3 In *Tapscott,* the court, relying on *Wilson v. Republic Iron & Steel Co.,* 257 U.S. 92 (1921), held that plaintiffs' attempt to join certain defendants in the same civil action was so egregious as to constitute fraudulent joinder because the transactions between certain plaintiffs and defendants had "no real connection" to the transactions involving the other parties. *Tapscott,* 77 F.3d at 1360. In so holding, the court did not find that any misjoinder could be labeled fraudulent. *Id.* In order to be considered fraudulent under *Tapscott* there must be an "egregious misjoinder." [FN6] *Id.* As the court will discuss below, the plaintiffs in this civil action are clearly misjoined under Federal Rule of Civil Procedure 20(a). However, before reaching that issue the court must find that the joinder is so egregious that it constitutes fraudulent joinder because it wrongfully deprives Defendants the right of removal. *See Alabama Southern Railway Co. v. H.C. Thompson,* 200 U.S. 206, 218 (1906) (stating that "[f]ederal courts may and should take such action as will defeat attempts to wrongfully deprive parties entitled to sue in the [f]ederal courts of the protection of their rights in those tribunals").

> FN6. The court notes that although the facts of *Tapscott* concerned the misjoinder of certain defendants, the reasoning of that case has been applied to find that the egregious misjoinder of plaintiffs may also constitute fraudulent joinder. *See Lyons v. American Tobacco Co.,* No. 96-0881, 1997 WL 809677, at *4 (S.D.Ala. Sept. 30, 1997) (finding plaintiffs fraudulently misjoined); *Koch v. PLM Int'l, Inc.,* No. 97-0177, 1997 WL 907917, at *4 (S.D.Ala. Sept. 24, 1997) (same).

Initially, the court agrees with *Tapscott* in that a finding of mere misjoinder does not itself warrant a finding of fraudulent misjoinder.[FN7] *Tapscott,* 77 F.3d at 1360. However, the pleading presently before the court goes well beyond mere misjoinder. In the instant pleading, Plaintiffs attempt to join persons from seven different states into one civil action who have absolutely no connection to each other except that they each ingested fenfluramine, Redux (dexfenfluramine), phentermine or some combination of those drugs. Plaintiffs do not allege that they took the same drug or combination of drugs. Further, Plaintiffs do not allege that they received the drugs

from the same source or any other similar connection. The Complaint was originally filed in Montgomery County, Alabama. Only two of the nine remaining Plaintiffs reside in Alabama.[FN8] Two Plaintiffs are listed as residents of Texas. The remaining Plaintiffs are listed as citizens of California, Florida, New Jersey, North Carolina and Pennsylvania. The nonresident Plaintiffs do not allege any contact with Alabama. Additionally, Plaintiffs do not allege that they received or purchased diet drugs in Alabama or from a source located in Alabama. Defendants correctly argue that Plaintiffs fail to point to any logical basis for the proposed joinder of the nonresident Plaintiffs [FN9] That argument is particularly compelling when most of the nonresident Plaintiffs reside in a jurisdiction in which at least one Defendant is a citizen. Indeed, the court finds that the structure of this pleading is devoid of any redeeming feature as respects the underlying purposes of the joinder rules. The joinder rules are designed "to promote trial convenience and expedite the final determination of disputes." *Saval v. BL Ltd.,* 710 F.2d 1027, 1031 (4th Cir.1983) (citing *Mosley v. General Motors Corp.,* 497 F.2d 1330 (8th Cir.1974)). The joinder of several plaintiffs who have no connection to each other in no way promotes trial convenience or expedites the adjudication of the asserted claims. Rather, the joinder of such unconnected, geographically diverse plaintiffs that present individual circumstances material to the final outcome of their respective claims would obstruct and delay the adjudication process. Given Plaintiffs' vast geographic diversity and lack of reasonable connection to each other, the court finds that the attempted joinder of the nonresident Plaintiffs wrongfully deprives Defendants of their right of removal.

> **FN7.** That view is consistent with the notion that the Federal Rules of Civil Procedure shall not be construed to extend the jurisdiction of federal district courts. Fed.R.Civ.P. 82.

> **FN8.** Eleven Plaintiffs were listed on the Complaint. On February 22, 1999, the court entered Pretrial Order No. 479, dismissing plaintiffs John Reed and Leroy Trotter from the action.

> **FN9.** The court also finds that joinder of

these plaintiffs would be improper under the Alabama Rules of Civil Procedure. The Alabama Rules of Civil Procedure regarding joinder of parties are virtually identical to the Federal Rules of Civil Procedure that govern joinder of parties in federal court. Ala. R. Civ. P. 20. Additionally, like its Federal counterpart, the Alabama joinder rule is intended to promote trial convenience and limit prejudice to the parties involved. *Turpin Vise Ins. Agency, Inc. v. Foremost Ins. Co.,* 705 So.2d 368, 370-71 (Ala.1997). Accordingly, the court's reasoning discussed below supports a finding that joinder of these plaintiffs in a single civil action would be improper under the Alabama Rules. *See also City of Birmingham v. City of Fairfield,* 396 So.2d 692, 696 (Ala.1981) (stating that because Alabama procedural rules are modeled after federal procedural rules, Alabama courts look to federal court decisions for guidance when construing Alabama Rules).

**\*4** Because the court finds that the Plaintiffs that destroy diversity jurisdiction are fraudulently joined it may ignore the citizenship of the those parties and exercise jurisdiction over this civil action. Once the court properly exercises jurisdiction, the Federal Rules of Civil Procedure may be applied to shape this civil action to one that comports with those Rules. Accordingly, the court will exercise its discretion under Federal Rule of Civil Procedure 21 and dismiss the non-diverse Plaintiffs' claims without prejudice. Additionally, the court will examine the propriety of joining the remaining two Plaintiffs in a single civil action.[FN10]

> **FN10.** The remaining two Plaintiffs, Chaney and Williams, are Alabama citizens. According to the certified copy of the docket for this civil action forwarded to this court by the United States District Court for the Middle District of Alabama, Plaintiffs filed an Amended Complaint on April 16, 1998, after several defendants filed answers, naming Qualitest Pharmaceuticals, Incorporated ("Qualitest") as a defendant. Qualitest is also an Alabama citizen which would destroy diversity jurisdiction. However, on March 22, 1999, both Chaney

and Williams filed motions to dismiss Qualitest and certain other defendants from this civil action. The court will grant those motions removing the diversity destroying defendant from this civil action.

2. Permissive Joinder of Remaining Plaintiffs

Plaintiffs assert that they are properly joined in this action under Federal Rule of Civil Procedure 20(a).[FN11] Joinder of plaintiffs under Rule 20(a) is proper if the right asserted arises "out of the same transaction, occurrence, or series of transactions or occurrences" and if there is a "question of law or fact common to all these persons" arising in the action. Fed.R.Civ.P. 20(a). Plaintiffs argue that Rule 20(a) is satisfied because all plaintiffs were "harmed by diet drugs manufactured, marketed, and sold by the defendants."(Pls.' Mem. Supp. Mot. to Remand at 7.) They further assert that "the facts pertaining to the Defendants' conduct are common to all of the Plaintiffs" and "the legal issues of duty, breach of duty, proximate cause and resulting harm are common to all of the Plaintiffs."*Id.* Plaintiffs also argue that their respective purchases of phentermine, dexfenfluramine and fenfluramine are a series of transactions that satisfy the transaction or occurrence requirement of Rule 20(a). The court recognizes that there may be questions of law and fact that are common to these Plaintiffs regarding their respective claims against Defendants. However, the court disagrees with Plaintiffs' assertions that their respective purchases and ingestion of diet drugs, as presently alleged, are a series of transactions or occurrences which satisfy Rule 20(a).

> FN11.Rule 20(a) states in relevant part:
>
> > (a) Permissive Joinder. All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action.
>
> > Fed.R.Civ.P. 20(a).

To satisfy Rule 20(a)'s transaction or occurrence requirement, "the central facts of each plaintiff's

claim [must] arise on a somewhat individualized basis out of the same set of circumstances."*In re Orthopedic Bone Screw Prod. Liab. Litig.,* MDL No. 1014, 1995 WL 428683, at *2 (E.D.Pa. July 17, 1995). The claims of plaintiffs who have not purchased or received diet drugs from an identical source, such as a physician, hospital or diet center, do not satisfy the transaction or occurrence requirement. See*Simmons v. Wyeth Lab., Inc.,* No. 96-6631, 1996 WL 617492, at *4 (E.D.Pa. Oct. 24, 1996) (severing misjoined plaintiffs under similar circumstances). The remaining Plaintiffs, who are both Alabama residents, do not allege that they purchased or received diet drugs from an identical source. However, because these remaining Plaintiffs are Alabama citizens it is possible they purchased or received diet drugs from the same source. The court will not sever these plaintiffs at this time. Rather, for the reasons explained below the court will defer that decision to the appropriate transferor court upon remand by the Judicial Panel on Multidistrict Litigation ("JPML").

**\*5** The court notes that several other Complaints transferred to this court for inclusion in MDL No. 1203 list multiple plaintiffs in a single civil action. In order to efficiently direct the court's resources to the pretrial coordination efforts that it was designated to perform, the court is not inclined at this stage of the litigation to address the propriety of joinder, except in the most egregious cases. This case, with eleven Plaintiffs selected from seven different states where, coincidentally, a number of Defendants also have citizenship seems to have been an innovative, but unwise, pleading strategy that interferes with the court's ability to administer this case for pretrial purposes. Cases that do not present similarly objectionable elements will not likely be candidates for misjoinder consideration in this transferee court. Rather, such objections should be raised in the transferor districts upon remand by the JPML.

III. *CONCLUSION*

For the foregoing reasons, the court will deny Plaintiffs' motion to remand the civil action back to state court and drop certain Plaintiffs from this civil action pursuant to Rule 21 of the Federal Rules of Civil Procedure.

An appropriate Order follows.

Not Reported in F.Supp.2d                                                           Page 7
Not Reported in F.Supp.2d, 1999 WL 554584 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d, 1999 WL 554584 (E.D.Pa.))**

*PRETRIAL ORDER NO. 769*

AND NOW, TO WIT, this 16th day of July, 1999, upon consideration of plaintiff Maggie M. Chaney's, Betty J. Williams', Leroy T. Trotter's, John E. Reed's, James F. Barthel's, Virginia Ann Hopps', Virginia Hassell's, Evelyn Turner's, Deborah Saunders', Catherine Herman's and Mary C. Smith's motion to remand, IT IS ORDERED that said motion is DENIED.

IT IS FURTHER ORDERED that, pursuant to Federal Rule of Civil Procedure 21, Plaintiffs James F. Barthel, Virginia Ann Hopps, Virginia Hassell, Evelyn Turner, Deborah Saunders and Catherine Herman are DROPPED from this civil action as follows:

(1) dropped plaintiffs have thirty (30) days from the date of this Order to file a new complaint, in a proper venue, containing the claims that they pled in their original complaints;

(2) dropped plaintiffs shall not name new or additional defendants in any complaints filed pursuant to this Order, but a plaintiff may name fewer defendants;

(3) when a new complaint is filed, if filed in federal court, plaintiff's counsel shall notify the Judicial Panel on Multidistrict Litigation ("JPML") that the new civil action is a potential tag-along action and has been filed. Plaintiff's counsel shall also forward to the JPML a copy of both the newly filed complaint and the docket sheet for each action;

(4) defendants shall not file any notices of opposition with the Clerk of the JPML with regard to the JPML's entry of a conditional transfer order to this district for inclusion in MDL No. 1203 for any of the potential tag-along actions filed pursuant to this Order;

(5) dropped plaintiffs are deemed to have ongoing MDL No. 1203 actions currently before this court for all purposes during the time period between the date of this Order and any filing under this Order of a new complaint and while their actions are in the process of being transferred as tag-along actions to this court. Dropped plaintiffs continue to be under the obligation to furnish required case-specific discovery on a timely basis;

**\*6** (6) dropped plaintiffs who choose not to file new civil actions in federal court within the thirty (30) day period will have their actions dismissed with prejudice by the court unless such plaintiff notifies this court, in writing, within the same thirty (30) day period that a new civil action has been filed in a state court;

(7) after the expiration of the thirty (30) day time period for filing of new complaints for dropped plaintiffs, upon being advised in writing as to which of the dropped plaintiffs have filed new complaints the court will enter an order dismissing those plaintiffs from this civil action without prejudice; and

(8) for the application of statutes of limitations, laches, or other time bar laws, the filing date of a newly filed action pursuant to this Order shall be deemed to relate back to the date that any dropped plaintiff originally filed his or her complaint in so far as the new complaint alleges only the claims alleged in the original complaint and joins only the defendants named (or fewer) in the original complaint or the successors of such original defendants.

IT IS FURTHER ORDERED that:

(1) plaintiff Maggie M. Chaney's motion to dismiss (document # 200748) defendants Gate Pharmaceuticals, a division of Teva Pharmaceuticals, USA, Inc., Jones Medical Industries, Inc. f/k/a/ Abana Pharmaceuticals, Inc., Richwood Pharmaceutical Company, Inc. a/k/a Shire Richwood, Inc., Ion Laboratories, Inc., Medeva Pharmaceuticals, Inc., Goldline Laboratories, Inc., Qualitest Pharmaceuticals, Inc., Zenith Goldline Pharmaceuticals, Inc., United Research Laboratories, Inc., Modern Wholesale Drug Co. Inc. f/k/a Rugby Laboratories, Inc., Geneva Pharmaceuticals, Inc., Camall Company and King Pharmaceuticals without prejudice is GRANTED.

(2) plaintiff Betty Williams' motion to dismiss (document # 200748) defendants Gate Pharmaceuticals, a division of Teva Pharmaceuticals, USA, Inc., Smithkline Beecham Corporation, Jones Medical Industries, Inc. f/k/a/ Abana

Not Reported in F.Supp.2d                                                                                    Page 8
Not Reported in F.Supp.2d, 1999 WL 554584 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d, 1999 WL 554584 (E.D.Pa.))**

Pharmaceuticals, Inc., Richwood Pharmaceutical Company, Inc. a/k/a/ Shire Richwood, Inc., Ion Laboratories, Inc., Medeva Pharmaceuticals, Inc., Qualitest Pharmaceuticals, Inc., United Research Laboratories, Inc., Modern Wholesale Drug Co. Inc. f/k/a Rugby Laboratories, Inc., Geneva Pharmaceuticals, Inc., Camall Company and King Pharmaceuticals without prejudice is GRANTED.

(3) plaintiffs James F. Barthel's, Virginia Ann Hopps', Virginia Hassell's, Evelyn Turner's, Deborah Saunders's and Catherine Herman's motions to dismiss certain Phentermine Defendants (document # 200748) are DENIED AS MOOT.

(4) plaintiff Mary Smith's motion for voluntary dismissal without prejudice (document # 200749) is GRANTED.

(5) Qualitest Pharmaceuticals Inc.'s motion to dismiss and motion to file a reply (document # 200258) are DENIED AS MOOT.

(6) Plaintiffs' motion to dismiss defendant Upjohn Company (document # 200750) is GRANTED.

(7) Plaintiffs' motion to dismiss defendant Geneva Pharmaceuticals, Incorporated (document # 200874) is GRANTED.

E.D.Pa.,1999.
In re Diet Drugs
Not Reported in F.Supp.2d, 1999 WL 554584 (E.D.Pa.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.